# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MICHAEL LEMMON** *et al.*, | ) |
| | ) |
| | ) |
| *Plaintiffs,* | )    Case No. 1:26-cv-00544-TSC |
| v. | ) |
| | ) |
| **DONALD J. TRUMP** *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## BRIEF OF MEMBERS OF THE UNITED STATES HOUSE OF REPRESENTATIVES AND UNITED STATES SENATE AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

David M. Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C. 20005
202-973-4216
davidgossett@dwt.com

Alexandra Perloff-Giles (*pro hac vice* forthcoming)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
212-402-4043
alexandraperloffgiles@dwt.com

*Counsel for Amici Curiae*

Dated: March 5, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTEREST OF *AMICI CURIAE* ........................................................................ 1

BACKGROUND AND SUMMARY OF ARGUMENT ......................................... 2

ARGUMENT ........................................................................................................ 3

I.    The Plain Text Of The Commemorative Works Act And 40 U.S.C. § 8106 Require Congressional Authorization For The Erection Of An "Independence Arch" In Memorial Circle. ............................................ 3

    A.    The Commemorative Works Act ........................................... 4

    B.    40 U.S.C. § 8106 .................................................................. 10

II.    The History Of Monument Construction In The District And Legislative Intent Of The CWA Confirm The Illegality Of The Planned Independence Arch ........................................................... 10

    A.    Congress has long exercised oversight over the placement of monuments and memorials on federal land in the District of Columbia. ........................................................................... 11

    B.    The legislative history of the CWA confirms Congress's intent to prevent rash construction projects and preserve congressional primacy. ........................................................... 15

CONCLUSION .................................................................................................. 19

APPENDIX: PARTIAL LIST OF COMMEMORATIVE WORKS AUTHORIZED BY STATUTE PURSUANT TO THE COMMEMORATIVE WORKS ACT .............................................. 21

CERTIFICATE OF SERVICE ........................................................................... 26

CERTIFICATE OF COMPLIANCE .................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

40 U.S.C. § 8104 ........................................................................................... 4

\* 40 U.S.C. § 8106 .................................................................................. *passim*

40 U.S.C. § 8107 ........................................................................................... 3

40 U.S.C. § 8711 ......................................................................................... 13

\* Commemorative Works Act, 40 U.S.C. § 8901 *et seq.* ........................... *passim*

    40 U.S.C. § 8901 ................................................................................ 2, 5

    \* 40 U.S.C. § 8902 .......................................................................... 6, 7, 9

    \* 40 U.S.C. § 8903 .......................................................................... 5, 6, 9

    40 U.S.C. § 8904 .................................................................................... 7

    40 U.S.C. § 8905 .................................................................................... 7

    40 U.S.C. § 8906 .................................................................................... 8

    \* 40 U.S.C. § 8908 ................................................................. 8, 9, 10, 18

Joint Res. of Aug. 11, 1848, No. 25, 9 Stat. 340 ........................................ 12

Joint Res. of July 19, 1888, No. 31, 25 Stat. 627 ....................................... 12

Joint Res. of June 26, 1926, No. 763, 48 Stat. 1243 ................................... 12

Pub. L. No. 55-546, 30 Stat. 625 (1898) ..................................................... 12

Pub. L. No. 56-469, 31 Stat. 803 (1901) ..................................................... 12

Pub. L. No. 59-267, 34 Stat. 1413 (1907) ................................................... 12

Pub. L. No. 61-181, 36 Stat. 371 (1910) ..................................................... 13

Pub. L. No. 61-346, 36 Stat. 898 (1911) ..................................................... 12

Pub. L. No. 62-302, 37 Stat. 444 (1912) ..................................................... 13

*\*Authorities on which the* amici *chiefly rely are marked with an asterisk.*

Pub. L. No. 72-146, 47 Stat. 163 (1932) ........................................................ 12

Pub. L. No. 82-592 § 2(a), 66 Stat. 781, 782 (1952) ..................................... 13

Pub. L. No. 84-372, 69 Stat. 694 (1955) ........................................................ 12

Pub. L. No. 86-214, 73 Stat. 445 (1959) ........................................................ 12

Pub. L. No. 86-764, 47 Stat. 164 (1960) ........................................................ 12

Pub. L. No. 87-842, 76 Stat. 1079 (1962) ...................................................... 12

Pub. L. No. 89-305, 79 Stat. 1126 (1965) ...................................................... 12

Pub. L. No. 91-398, 84 Stat. 837 (1970) ........................................................ 12

Pub. L. No. 92-332, 86 Stat. 401 (1972) ........................................................ 12

Pub. L. No. 95-260, 92 Stat. 197 (1978) ........................................................ 12

Pub. L. No. 97-224, 96 Stat. 243 (1982) ........................................................ 12

Pub. L. No. 103-32, 107 Stat. 90 (1993) ........................................................ 14

Pub. L. No. 103-422, 108 Stat. 4356 (1994) .................................................. 14

Pub. L. No. 107-11, 115 Stat. 19 (2001) ........................................................ 15

Pub. L. No. 107-212, 116 Stat. 1062, 1206 (2002) ....................................... 13

Pub. L. No. 108-126, Title II, 117 Stat. 1348, 1349 (Nov. 17, 2003) ........................ 14

Pub. L. No. 118-226, 138 Stat. 2819 (2025) ............................................... 21

## Other Authorities

Dan Diamond et al., *Trump wants to build a 250-foot-tall arch, dwarfing the Lincoln Memorial*, Wash. Post (Jan. 31, 2026) ....................................... 9

Friends of the National WWII Memorial, *Chronology*, https://www.wwiimemorialfriends.org/chronology (last visited Mar. 3, 2026)................................................................................................. 14, 15

* *Hearing before the United States Senate Committee on Energy and Natural Resources' Subcommittee on Public Lands, Reserved Water and Resource Conservation on S. 2522 and H.R. 4378*, 99th Cong. (June 24, 1986)..........*passim*

Jacob R. Straus, *Commemorative Works Act: Siting Memorials in the District of Columbia*, CRS In Focus IF11937, at 1 (Cong. Rsch. Serv., updated Sept. 23, 2024) ............................................................................................... 6, 9

Jacob R. Straus, *Commemorative Works in the District of Columbia: Background and Practice*, CRS Report R41658, at 30 (Cong. Rsch. Serv., updated May 8, 2023) .......................................................... 10, 11, 12, 13

Jacob R. Straus, *Monuments and Memorials Authorized and Completed Under the Commemorative Works Act in the District of Columbia*, CRS Report R43743, at 1 (Cong. Rsch. Serv., updated October 2, 2024) .................... 21

Jacob R. Straus, *Monuments and Memorials in the District of Columbia: Analysis and Options for Proposed Exemptions to the Commemorative Works Act*, CRS Report R43241 (Cong. Rsch. Serv., updated May 8, 2023) .................... 9

Nat'l Cap. Planning Comm'n, *About the Commission*, https://www.ncpc.gov/about/commission/ ............................................................... 7

Nat'l Cap. Planning Comm'n, *About NCPC*, https://www.ncpc.gov/about/ ................ 7

Nat'l Park Serv., *Lady Bird Johnson Park Cultural Landscape*, https://www.nps.gov/articles/600245.htm#4/31.80/-78.13 ................................. 9, 10

U.S. Comm'n of Fine Arts, *Who We Are*, https://www.cfa.gov/about-cfa/who-we-are (last visited Mar. 3, 2026) .......................................................................... 7

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are Members of the United States House of Representatives and United States Senate who serve as Ranking Members on committees or subcommittees with jurisdiction over the construction of monuments in the Nation's Capital, Washington, D.C.[1] In particular, the *amici* are:

*House of Representatives*

- Representative Jared Huffman, who represents the Second Congressional District in California, serves as the Ranking Member on the House Committee on Natural Resources.

- Representative Yassamin Ansari, who represents the Third Congressional District in Arizona, serves as the Ranking Member of the Subcommittee on Energy and Mineral Resources of the House Committee on Natural Resources.

- Representative Maxine Dexter, who represents the Third Congressional District in Oregon, serves as the Ranking Member of the Subcommittee on Oversight and Investigations of the House Committee on Natural Resources.

*Senate*

- Senator Martin Heinrich, who represents New Mexico, serves as Ranking Member on the U.S. Senate Committee on Energy and Natural Resources.

- Senator Angus King, who represents Maine, serves as the Ranking Member of the Subcommittee on National Parks of the U.S. Senate Energy and Natural Resources Committee.

- Senator Jeff Merkley, who represents Oregon, serves as the Ranking Member of the Subcommittee on Interior, Environment, and Related Agencies of the U.S. Senate Committee on Appropriations.

---

[1] No counsel for any party authored this brief in whole or in part, and no person other than the *amici*, their members, or their counsel made a monetary contribution intended to fund the preparation or submission of the brief.

Congress has enacted multiple statutes—in particular, the Commemorative Works Act, 40 U.S.C. § 8901 *et seq.*, and 40 U.S.C. § 8106—to protect its exclusive control over commemorative works on federal land in the Nation's Capital. Congress and its members have an institutional interest in preventing unilateral executive action, such as the President's apparent plan to build the Independence Arch, that would bypass or nullify that statutory framework and undermine the separation of powers.[2]

## BACKGROUND AND SUMMARY OF ARGUMENT

Congress has long specified that only it has the authority to approve the placement of monuments and memorials on federal land in the District of Columbia. This has been true since at least 1912, when Congress enacted the law now codified at 40 U.S.C. § 8106. Section 8106 could not be more plain: It prevents any "building or structure" from being "erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

As the number of proposed monuments proliferated throughout the 20th century, Congress sought to make the process for approving new monuments or memorials more rigorous and structured. The Commemorative Works Act (CWA), Pub. L. No. 99-652, 100 Stat. 3650 (1986), *codified at* 40 U.S.C. §§ 8901–8909, enacted

---

[2] *Amici*'s focus in this brief is on the process by which President Trump has proceeded; *amici* take no position on the appropriateness of the Independence Arch on aesthetic or other grounds—all of which should appropriately be addressed through the comprehensive, reticulated process Congress has created for the review of commemorative works.

in 1986, does just that. It reaffirms congressional primacy through statutory authorization requirements, consultation mandates, and siting restrictions. And it ensures that new commemorative works are the product of deliberation, consensus, and accountability through the legislative process—just the opposite of President Trump's impulsive, unilateral decision to erect an "Independence Arch" in Memorial Circle.

Permitting that Arch to be built without appropriate congressional authorization and review could lead to the unchecked proliferation of monuments, the erosion of public space, and serious constraints on future generations' ability to memorialize their own losses and achievements. These are precisely the problems Congress enacted the CWA to prevent. Even more importantly, permitting the Executive to bypass the statutory approval processes would effectively nullify the CWA and Section 8106, undermining the rule of law and the separation of powers.

## ARGUMENT

### I.    The Plain Text Of The Commemorative Works Act And 40 U.S.C. § 8106 Require Congressional Authorization For The Erection Of An "Independence Arch" In Memorial Circle.

Washington D.C. is not the President's backyard to renovate, relandscape, and build in as he sees fit. Title 40 of the United States Code governs "Public Buildings, Property, and Works," and contains a host of provisions designed to protect the urban landscape of Washington D.C.—ranging from a prohibition on advertising in or around the Washington Monument, 40 U.S.C. § 8107, to a requirement that applications to erect or alter buildings near certain public buildings or parks, in a

3

manner that implicates their exterior appearance, be reviewed by the Commission of Fine Arts, *id.* § 8104(b).

Two Sections or Subchapters of Title 40 expressly prevent the construction of new monuments like the Independence Arch without specific legislative approval. The Commemorative Works Act and 40 U.S.C. § 8106 each make clear that the ultimate authority to decide what monuments and memorials shall be erected on federal lands in the District of Columbia—and where to construct those monuments—lies with Congress, not the Executive. Absent express congressional approval, construction of a permanent commemorative structure, like the arch President Trump plans to erect, flouts these laws and the separation of powers principles that they embody. Moreover, the CWA imposes especially stringent requirements on those seeking to erect monuments in the so-called "Area I" of Washington, D.C., where the risk of overcrowding of monuments is especially pronounced. President Trump's decision to site the arch in Memorial Circle, within Area I, is thus especially an affront to the CWA. Any project for an Independence Arch or other monument at Memorial Circle cannot legally proceed without congressional approval and without adherence to the standards and procedural requirements set forth in the CWA.

### A.    The Commemorative Works Act

Congress explained the purposes of the CWA in the statute itself: "(1) to preserve the integrity of the comprehensive design of the L'Enfant and McMillan plans for the Nation's Capital; (2) to ensure the continued public use and enjoyment of open space in the District of Columbia and its environs, and to encourage the

location of commemorative works within the urban fabric of the District of Columbia;
(3) to preserve, protect and maintain the limited amount of open space available to
residents of, and visitors to, the Nation's Capital; and (4) to ensure that future
commemorative works in areas administered by the National Park Service and the
Administrator of General Services in the District of Columbia and its environs—(A)
are appropriately designed, constructed, and located; and (B) reflect a consensus of
the lasting national significance of the subjects involved." 40 U.S.C. § 8901.

To those ends, the CWA provides that "[c]ommemorative works" may be
erected in the District of Columbia and its environs "only as specifically authorized
by law" and "subject to" the other provisions of the CWA. 40 U.S.C. § 8903(a). In other
words, the CWA prohibits the construction of new "commemorative works" "in areas
administered by the National Park Service and the Administrator of General Services
in the District of Columbia and its environs" without Congress passing a statute
giving express authorization for the commemorative work. *Id.* §§ 8901(4), 8903(a)(1).[3]
A partial list of over 40 commemorative works authorized by specific statutory
enactment pursuant to the CWA is attached as an Appendix to this brief.

The CWA defines a "commemorative work" as "any statue, monument,
sculpture, memorial, plaque, inscription, or other structure or landscape feature . . .

---

[3] *See also, e.g.*, *Hearing before the United States Senate Committee on Energy and Natural Resources' Subcommittee on Public Lands, Reserved Water and Resource Conservation on S. 2522 and H.R. 4378*, 99th Cong. (June 24, 1986) (1986 Congressional Hearing Report), at 33 (CWA "would prohibit the establishment of commemorative works in designated areas referred to on a map unless specifically authorized by Act of Congress") (statement of Manus J. Fish, Reg'l Dir., Nat'l Park Serv.).

designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history . . . ." 40 U.S.C. § 8902(a)(1). And it defines the geographic scope of the CWA as "those lands and properties administered by the National Park Service [NPS] and the General Services Administration [GSA] located in the Reserve, Area I, and Area II as depicted on the map entitled 'Commemorative Areas Washington, DC and Environs,' numbered 869/86501 B, and dated June 24, 2003" (CWA Map). 40 U.S.C. § 8902(a)(2).[4]

In addition to the fundamental requirement of congressional authorization, the CWA also sets forth more-detailed requirements before any commemorative work can be built. Before Congress may enact legislation authorizing any specific commemorative work, "the Committee on Natural Resources of the House of Representatives and the Committee on Energy and Natural Resources of the Senate" must solicit the views of the National Capital Memorial Advisory Commission, *id.* § 8903(d)—an advisory body comprised of: "(1) the Director of the National Park Service; (2) the Architect of the Capitol; (3) the Chairman of the American Battle

---

[4] The Reserve is "the great cross-axis of the Mall, which generally extends from the United States Capitol to the Lincoln Memorial, and from the White House to the Jefferson Memorial." 40 U.S.C. § 8902(a)(3). New commemorative works are prohibited within the Reserve to preserve the integrity of the area. *See* Jacob R. Straus, *Commemorative Works Act: Siting Memorials in the District of Columbia*, CRS In Focus IF11937, at 1 (Cong. Rsch. Serv., updated Sept. 23, 2024). Area I extends slightly beyond the Reserve to include, for example, the United States Holocaust Museum, the National Archives, and other areas adjacent to but not within the Mall—as well as Columbia Island and Theodore Roosevelt Island in the Potomac, which are technically part of the District of Columbia. *See id.* "Area II encompasses all sections of the District of Columbia and its environs not part of the Reserve or Area I." *Id.* Memorial Circle is in Lady Bird Johnson Park, which is on Columbia Island and is part of Area I.

Monuments Commission; (4) the Chairman of the Commission of Fine Arts; (5) the Chairman of the National Capital Planning Commission; (6) the Mayor of the District of Columbia; (7) the Commissioner of the Public Buildings Service of the General Services Administration; and (8) the Secretary of Defense," *id.* § 8904(a). With the benefit of that input, Congress may then vote to approve the new commemorative work.

In authorizing a commemorative work in the District of Columbia or its environs, Congress designates an individual, group, organization, or public entity to be the "sponsor" of that project. *Id.* § 8902(a)(4). Once the sponsor is congressionally authorized to establish a commemorative work, that "sponsor must consult with the National Capital Memorial Advisory Commission regarding the selection of alternative sites and design concepts for the commemorative work," and then submit, via the Secretary of the Interior or the Administrator of General Services, "site and design proposals to the Commission of Fine Arts[5] and the National Capital Planning Commission[6] for their approval." *Id.* § 8905(a). After the Commission of Fine Arts and

---

[5] The Commission of Fine Arts, established by Congress in 1910, is comprised of seven members appointed by the President, each of whom serves a four-year term. *See* U.S. Comm'n of Fine Arts, *Who We Are*, https://www.cfa.gov/about-cfa/who-we-are (last visited Mar. 3, 2026).

[6] The National Capital Planning Commission, established by Congress in 1924, is comprised of 12 members, including three members appointed by the President, two members appointed by the Mayor of the District of Columbia, and seven *ex officio* members such as the Secretary of the Interior, the Administrator of General Services, and the Mayor of the District of Columbia. *See* Nat'l Cap. Planning Comm'n, *About NCPC*, https://www.ncpc.gov/about/ (last visited Mar. 3, 2026); Nat'l Cap. Planning Comm'n, *About the Commission*, https://www.ncpc.gov/about/commission/ (last visited Mar. 3, 2026).

the National Capital Planning Commission have approved the site and design, the Secretary of the Interior or Administrator of General Services must then ensure that the project is "structural[ly] sound[]" and "durab[le]" and "meets high professional standards," that all required contractual documents have been submitted, and that the sponsor has sufficient funds for construction and perpetual maintenance of the work, before issuing a construction permit. *Id.* § 8906(a)(1)-(4), (b)(1).

Additionally, commemorative works within Area I are subject to especially "stringent restrictions." 1986 Congressional Hearing Record at 41 (statement of George M. White, Architect of the Capitol); *see also, e.g.*, *id.* at 42 (statement of Robert E. Gresham, Assistant Exec. Dir. for Operations, Nat'l Cap. Planning Comm'n) (noting that the CWA seeks to "limit[] monuments or memorials on lands within area I of the National Capital region"). In particular, the Secretary of the Interior or the Administrator of General Services must "seek[] the advice of the National Capital Memorial Advisory Commission" and assess whether "the subject of the commemorative work is of preeminent historical and lasting significance to the United States." 40 U.S.C. § 8908(b)(1). If the Secretary or Administrator believes a commemorative work qualifies, he or she may "recommend the location of a commemorative work in Area I" and must notify the National Capital Memorial Advisory Commission, the House Committee on Natural Resources, and the Senate Committee on Energy and Natural Resources in writing of that recommendation. *Id.* The location of a commemorative work in Area I "is deemed to be authorized only if the recommendation is approved by law not later than 150 calendar days after the

notification." *Id.* In other words, any monument must be approved *a second time* by Congress in order to be sited in Area I.[7] *See, e.g.*, Straus, *Commemorative Works Act: Siting Memorials in the District of Columbia*, at 1 ("If that recommendation [by the Secretary or Administrator] occurs, Congress may choose whether to enact legislation to authorize placement in Area I."). These procedures "allow for a fully considered determination of the significance of the commemorative subject prior to its assignment in area I." 1986 Congressional Hearing Record at 99 (statement of Robert W. Good, Chairman, Comm. on the Nat'l Cap., Am. Soc'y of Landscape Architects).

The planned Independence Arch is subject to the CWA: It is a "monument" or "structure" "designed to perpetuate in a permanent manner" the Nation's 250th anniversary. 40 U.S.C. § 8902(a)(1); *see, e.g.*, Dan Diamond et al., *Trump wants to build a 250-foot-tall arch, dwarfing the Lincoln Memorial*, Wash. Post (Jan. 31, 2026), https://www.washingtonpost.com/politics/2026/01/31/trump-arch-memorial-circle/. It is slated to be located in Memorial Circle, within Lady Bird Johnson Park, which is administered by the NPS. *See id.*; Nat'l Park Serv., *Lady Bird Johnson Park Cultural Landscape*, https://www.nps.gov/articles/600245.htm#4/31.80/-78.13 (last visited Mar. 3, 2026). And it is within the District of Columbia and its environs. *See* Jacob R. Straus, *Commemorative Works in the District of Columbia: Background and Practice*,

---

[7] "Should the Secretary or Administrator not recommend placement in Area I or Congress not act upon the recommendation, the [previously congressionally approved] memorial can be placed in Area II without further action." Jacob R. Straus, *Monuments and Memorials in the District of Columbia: Analysis and Options for Proposed Exemptions to the Commemorative Works Act*, CRS Report R43241, at 4 (Cong. Rsch. Serv., updated May 8, 2023) (citing 40 U.S.C. § 8908(b)(2)).

CRS Report R41658, at 30 (Cong. Rsch. Serv., updated May 8, 2023). Independence Arch thus requires congressional authorization and the statutorily prescribed consultations and committee approvals. 40 U.S.C. § 8903(a)(1).

Moreover, because the planned Independence Arch is within Area I, it requires a formal determination by the Secretary or Administrator that the subject—the 250th anniversary of the Nation's founding—"is of preeminent historical and lasting significance to the United States," and additional congressional approval for siting at that location. 40 U.S.C. § 8908(b)(1).

Defendants' failure to seek congressional approval runs afoul of the CWA.

**B.    40 U.S.C. § 8106**

The planned Independence Arch also violates 40 U.S.C. § 8106. Section 8106 could scarce be more clear: "A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." 40 U.S.C. § 8106. Independence Arch is a permanent structure that would be located in Lady Bird Johnson Park, a park run by the National Park Service. *See* Nat'l Park Serv., *Lady Bird Johnson Park*, *supra*. Section 8106 therefore applies too and, like the CWA, requires express congressional authorization for the erection of the Independence Arch.

**II.    The History Of Monument Construction In The District And Legislative Intent Of The CWA Confirm The Illegality Of The Planned Independence Arch.**

The plain text of the relevant statutes leaves little doubt that congressional approval is required. But lest there be any question, the long history and tradition of Congress exercising oversight over the erection of all monuments or memorials on

federal land in the District of Columbia and its environs underscores the illegality of President Trump's effort to exercise unilateral authority. Furthermore, the legislative history of the CWA reveals that the law was designed precisely to prevent impulsive constructions like the planned Arch and shows the risks of bypassing the congressional review process.

### A. Congress has long exercised oversight over the placement of monuments and memorials on federal land in the District of Columbia.

Congressional approval over the erection of new monuments reaches back to the Founding. On May 6, 1783, Arthur Lee, a Virginia delegate to the Confederation Congress, introduced a resolution to erect an equestrian statute to George Washington. *See* Straus, *Commemorative Works in the District of Columbia*, at 1 n.1 (citing Worthington C. Ford et al., eds., *Journals of the Continental Congress, 1774-1789* vol. 25, at 963 (May 6, 1783)). The Continental Congress unanimously agreed. *Id.*[8] Since then, Congress has authorized over 100 memorials for placement on federal land in the District of Columbia. *Id.*, at 1 (citing S. Comm. on Energy & Nat. Res., *The Placement of Commemorative Works on Federal Lands in the District of Columbia and its Environs*, Report to accompany H.R. 4378, 99th Cong., 2nd Sess., S. Rep. 99-421 at 4 (Aug. 15, 1986)). Congress expressly approved, for example, the Andrew

---

[8] It was not until 1853 that Congress appropriated funds and commissioned a sculptor to build the statute. Straus, *Commemorative Works in the District of Columbia*, at 1 n.1 (citing James M. Goode, *Washington Sculpture: A Cultural History of Outdoor Sculpture in the Nation's Capital* 480 (2008)).

Jackson Memorial in 1848,[9] the Benjamin Franklin Memorial in 1888,[10] the Daniel Webster Memorial in 1898,[11] the Ulysses S. Grant Memorial in 1901,[12] the Christopher Columbus Memorial in 1907,[13] the Lincoln Memorial in 1911,[14] the Jefferson Memorial in 1926,[15] the Theodore Roosevelt Memorial in 1932,[16] the Franklin Delano Roosevelt Memorial in 1955,[17] and the Signing of the Declaration of Independence Memorial in 1978.[18]

"While Congress has long been responsible for authorizing memorials on federal land," over time it sought to impose structure and uniformity on what had

---

[9] *See* Joint Res. of Aug. 11, 1848, No. 25, 9 Stat. 340.

[10] *See* Joint Res. of July 19, 1888, No. 31, 25 Stat. 627.

[11] *See* Pub. L. No. 55-546, 30 Stat. 625 (1898).

[12] *See* Pub. L. No. 56-469, 31 Stat. 803 (1901).

[13] *See* Pub. L. No. 59-267, 34 Stat. 1413 (1907).

[14] *See* Pub. L. No. 61-346, 36 Stat. 898 (1911).

[15] *See* Joint Res. of June 26, 1926, No. 763, 48 Stat. 1243.

[16] The Theodore Roosevelt Memorial involved a number of Acts of Congress, including to create a memorial and to authorize expenditure of federal funds for its construction. *See* Pub. L. No. 72-146, 47 Stat. 163 (1932); Pub. L. No. 86-764, 47 Stat. 164 (1960).

[17] The Franklin Delano Roosevelt Memorial likewise involved a number of Acts of Congress, including to establish the FDR Memorial Commission, to reserve a site in West Potomac Park, to authorize the Secretary of the Interior to participate in the planning and design of the memorial, to allocate funds, and to approve the design of the Memorial. *See* Pub. L. No. 84-372, 69 Stat. 694 (1955); Pub. L. No. 86-214, 73 Stat. 445 (1959); Pub. L. No. 87-842, 76 Stat. 1079 (1962); Pub. L. No. 89-305, 79 Stat. 1126 (1965); Pub. L. No. 91-398, 84 Stat. 837 (1970); Pub. L. No. 92-332, 86 Stat. 401 (1972); Pub. L. No. 97-224, 96 Stat. 243 (1982).

[18] *See* Pub. L. No. 95-260, 92 Stat. 197 (1978).

been a "historically haphazard" system. Straus, *Commemorative Works in the District of Columbia*, Summary.

In 1910, Congress created the Commission of Fine Arts to "advise upon the location of statues, fountains, and monuments in the public squares, streets, and parks in the District of Columbia." Pub. L. No. 61-181, 36 Stat. 371 (1910).

In 1912, Congress enacted the law now codified at 40 U.S.C. § 8106, to give Congress express control over development in federal areas in the District: "Hereinafter, there shall not be erected on any reservation, park, or public grounds, of the United States within the District of Columbia, any building or structure without express authority of Congress." Pub. L. No. 62-302, 37 Stat. 444 (1912).[19]

In 1952, Congress created the National Capital Planning Commission "as the central planning agency for . . . the appropriate and orderly development and redevelopment of the National Capital and the conservation of the important natural and historical features thereof." Pub. L. No. 82-592 § 2(a), 66 Stat. 781, 782 (1952) (codified as amended at 40 U.S.C. § 8711(a)).

Finally, in 1986, Congress enacted the CWA to prevent too many monuments and memorials from being built. With its detailed procedural requirements, the CWA

---

[19] The current version of this law, 40 U.S.C. § 8106, was created as part of the codification of Title 40 in 2002. *See* Pub. L. No. 107-212, 116 Stat. 1062, 1206 (2002) ("A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."). The current version is ordered differently but materially identical to the law enacted in 1912.

ensures that no monuments will be built without rigorous deliberation, public transparency, expert input, and accountability in the form of congressional approval.

The World War II Memorial, for example, illustrates how the CWA was designed to work. On December 10, 1987, Representative Marcy Kaptur introduced legislation to authorize a World War II Memorial in the District of Columbia or its environs. *See* Pub. L. No. 103-32, 107 Stat. 90 (1993); Friends of the National WWII Memorial, *Chronology*, https://www.wwiimemorialfriends.org/chronology (last visited Mar. 3, 2026). That legislation was passed and signed into law by President Clinton, who then appointed an advisory board to advise on site selection and design. *Id.* In October 1994, the House and Senate passed Joint Resolution 227 approving the location of the World War II Memorial in Area I. *See* Pub. L. No. 103-422, 108 Stat. 4356 (1994); Friends of the National WWII Memorial, *Chronology*, *supra*.[20] President Clinton then signed that Resolution into law on October 25, 1994. *Id.* Representatives of the Commission of Fine Arts, the National Capital Planning Commission, the National Capital Memorial Commission, the National Park Service, and the U.S. Army Corps of Engineers then considered a number of potential sites within Area I— and the National Capital Planning Commission held public hearings on certain potential sites—before ultimately selecting the Rainbow Pool site. *Id.* After the various commissions approved the design, a construction permit was issued by the

---

[20] The World War II Memorial is now in the area known as the Reserve, but that designation was enacted in 2003, in the Commemorative Works Clarification and Revision Act of 2003—as was the concomitant ban on new memorial structures in the Reserve. *See* Pub. L. No. 108-126, Tit. II, 117 Stat. 1348, 1349 (Nov. 17, 2003).

National Park Service in 2001. *Id.*[21] On April 29, 2004, the National World War II Memorial opened to the public. *Id.*

In short, the World War II Memorial reflects the deliberative and collaborative process that the CWA contemplates—a process that "requires that Congress act twice in order for a memorial to be placed in Area I." 1986 Congressional Hearing Report, at 110 (statement of T. Paul Imse, Jr., Sec'y & Gen. Counsel of the Francis Scott Key Park Found. Inc.). Defendants are not free to circumvent that process—and Congress's central role within it—in the name of expediency.

### B. The legislative history of the CWA confirms Congress's intent to prevent rash construction projects and preserve congressional primacy.

The legislative history of the CWA also confirms Congress's intent to retain and exercise control over the construction of new monuments. At the time the CWA was being considered, Congress "ha[d] before it *18 proposals* to establish memorials and monuments on Federal land in the District of Columbia—an unprecedented number." 1986 Congressional Hearing Report at 23 (opening statement of Sen. Malcolm Wallop) (emphasis added).[22] Congress thus recognized "a clear need for legislative standards" to "assure that Federal lands in Washington, D.C. will continue

---

[21] The House and Senate passed *additional* legislation in 2001 intended to expedite the construction of the World War II memorial at the Rainbow Pool. *See* Pub. L. No. 107-11, 115 Stat. 19 (2001).

[22] These included a memorial for "members of the armed forces of the United States who served in the Korean War," a memorial for Black Revolutionary War Patriots, a memorial for "all women who have served in or with the armed services," and a memorial to "the armored force," to name just a few. *See* 1986 Congressional Hearing Report, at 97 (statement of Rep. Mary Rose Oakar).

to be available for a variety of activities, and that there will be sites remaining for future generations to honor their own." *Id.* at 23–24 (opening statement of Sen. Wallop).

As Senator Wallop, chair of the Senate Subcommittee on Public Lands, Reserved Water and Resources Conservation, explained at the June 24, 1986 hearing on the CWA: "There now remains but a limited number of sites for additional memorials, and yet an infinite number of proposals to establish them. If we are to protect the concept of open space and dignity which contributes so much to the beauty of the Nation's Capital, we must be selective not only in what we choose to commemorate, but we must demand high standards in design and construction." *Id.* at 1–2 (opening statement of Sen. Wallop). Later in the hearing, Senator Wallop observed: "[G]enerations that are going to come in after ours will have significant achievers, and they will probably be called on to save their Nation as our generation was, and a number of other things. That is a hell of a note to come back and say, sorry, boys, history outdid you. You cannot be memorialized. . . . [T]here is a responsibility to the future as well as the past. . . ." *Id.* at 92–93.

Other speakers at the hearing likewise invoked concerns about overcrowding of monuments. For example:

- "[I]t is obvious that we are fast approaching the time when memorials will be consuming what little open space we have left in the District. . . . I recognize that we need to limit the number of memorials in order to preserve the quality of the existing ones." 1986 Congressional Hearing Report at 25 (statement of Sen. Frank Murkowski).

- "The situation we are now facing is one of limited land space in the District for erecting such commemorative works and an ever-increasing number of such proposals. The National Park Service estimates that

16

only 50 appropriate sites remain on which to locate these monuments." *Id.* at 26 (statement of Sen. Dale Bumpers).

- "Because of their significance, availability and visibility, these spaces are increasingly sought for the commemoration of a diverse spectrum of persons, groups or events. There can be no question that, as these spaces become filled with such fractionalized uses and interests they will lose the essential character, dignity and unity of spirit that has become a part of the lives and memories of generations of Americans and visitors to our country." *Id.* at 102 (statement of Robert W. Good, Chairman, Comm. on the Nat'l Cap., Am. Soc'y of Landscape Architects).

The legislative history also reflects a recognition of the need to preserve certain visual axes, including the axis formed by Lincoln Memorial and Arlington Cemetery, which is the sightline implicated by the contemplated placement of an Independence Arch at Memorial Circle:

- "We particularly emphasize the importance of Area I and the need to ensure lasting protection of the historic visual axes, radials and grounds of the Hall, the Washington Monument, the White House, Jefferson and Lincoln Memorials, and Arlington Cemetery." *Id.* at 103 (statement of Robert W. Good, Chairman, Comm. on the Nat'l Cap., Am. Soc'y of Landscape Architects).

Finally, the legislative history reflects the clear understanding that *Congress* had and would retain the authority to decide what new monuments are built. Ralph Spencer—the Vice Chairman of the American Veterans Committee, Inc.—for example, testified at the 1986 Congressional Hearing that "the American people have vested in the Congress the responsibility of authorizing appropriate memorials" and urged that the eventual legislation "make loud and clear that the Congress has the full responsibility for making the choices." 1986 Congressional Hearing Report at 58 (statement of Ralph Spencer, Vice Chairman, Am. Veterans Comm., Inc.). Congresswoman Mary Rose Oakar went further, criticizing the Senate version of the

17

CWA for granting to the Executive (through the Secretary or Administrator) even the limited role of determining that the subject of a commemorative work is of "preeminent historical and lasting significance to the Nation as a whole" and making a *recommendation* to Congress as to the placement of an approved commemorative work in Area I.[23] She testified:

> Mr. Chairman, we are abdicating our responsibility as representatives of this country if we allow the Executive Branch to acquire jurisdiction of what has always been thoroughly accomplished by the Congress of this United States. In the Senate Version, the establishment and placement of future memorials in Area I will be approved by the Executive Branch – Congress will give up its authorization, and in essence become a rubber stamp to the Executive Branch.

*See id.* at 98 (statement of Rep. Oakar).

---

[23] The Senate version of the bill provided: "[N]o commemorative work may be located in Area I unless the Secretary or Administrator (as appropriate), after consultation with the National Capital Memorial Commission, finds that the subject of the commemorative work is of preeminent historical and lasting significance to the Nation. The Secretary or Administrator shall notify the Congress of his determination that a commemorative work should be located within Area I. Unless the Congress enacts a joint resolution approving such determination within ninety days of such notification, the determination shall be deemed disapproved." 1986 Congressional Hearing Report at 6–7. The House version of the bill provided: "[N]o commemorative work may be located at a site in Area I unless the Congress finds that the subject of the commemorative work is of such major historical and lasting significance to the Nation as a whole that placement of the commemorative work in any other site would be appropriate." 1986 Congressional Hearing Report at 15–16. Congresswoman Oakar preferred the House version, but others felt that the Senate bill more clearly "ensure[d] participation by the agencies having expertise in planning, esthetics, and in the management of the memorials." *Id.* at 42 (statement of Robert E. Gresham, Assistant Exec. Dir. for Operations, Nat'l Cap. Planning Comm'n). As noted, the final language of 40 U.S.C. § 8908 largely adopts the formulation of the Senate bill, but gives Congress 150 days to approve the location of a commemorative work in Area I.

Of course, Congresswoman Oakar was being hyperbolic when she suggested that Congress would "abdicat[e] [its] responsibility" and "give up its authorization" if the Secretary or Administrator was empowered simply to recommend approval to Congress. At the end of the day, the final text of the statute, as described above, gives Congress the right to approve (or disapprove) the establishment of any new monuments generally and their placement in Area I specifically. *See, e.g.*, Congressional Hearing Report at 34 (statement of Manus J. Fish, Reg'l Dir., Nat'l Park Serv.) ("We note that the effect of this provision of S. 2522 is to require statutory determination of significance by the Congress for commemorative works in Area I."); *id.* at 40 (statement of Neil H. Porterfield, Vice Chairman, Comm'n of Fine Arts) ("We also note the clear spelling out [in the Senate version] of the fact that all commemorative works in Area I and Area II must be authorized by Congress."). And Congress has exercised that authority repeatedly and carefully. *See* Appendix. Construction of the Independence Arch cannot proceed without similar congressional approval. But Defendants have not sought or obtained such approval—or even the "rubber stamp" version of it that Congresswoman Oakar worried, to date without reason, might become Congress's limited role.

## CONCLUSION

This Court should grant Plaintiff's preliminary injunction motion.

19

Dated: March 5, 2026

Respectfully submitted,

/s/ David M. Gossett

David M. Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C. 20005
202-973-4216
davidgossett@dwt.com

Alexandra Perloff-Giles (*pro hac vice*
forthcoming)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
212-402-4043
alexandraperloffgiles@dwt.com

*Counsel for Amici Curiae*

### APPENDIX: PARTIAL LIST OF COMMEMORATIVE WORKS AUTHORIZED BY STATUTE PURSUANT TO THE COMMEMORATIVE WORKS ACT

The following is a list of 44 commemorative works authorized by statute pursuant to the CWA, noting those statutory authorizations. It is copied from the statutory notes to the official version of 40 U.S.C. § 8903 at uscode.house.gov, available at https://perma.cc/D7E4-H25N. The number of commemorative works authorized under the CWA is in fact somewhat greater,[24] but this is the best list of which *amici* are aware.

- Adams Memorial.—Pub. L. 107–62, Nov. 5, 2001, 115 Stat. 411; Pub. L. 107–315, Dec. 2, 2002, 116 Stat. 2763; Pub. L. 108–7, div. F, title I, §142, Feb. 20, 2003, 117 Stat. 244; Pub. L. 111–169, §1, May 24, 2010, 124 Stat. 1192; Pub. L. 113–291, div. B, title XXX, §3094, Dec. 19, 2014, 128 Stat. 3880; Pub. L. 116–9, title II, §2406, Mar. 12, 2019, 133 Stat. 748.

- African-Americans Civil War Union Memorial.—Pub. L. 102–412, Oct. 14, 1992, 106 Stat. 2104.

- Air Force Memorial.—Pub. L. 103–163, Dec. 2, 1993, 107 Stat. 1973; Pub. L. 106–302, Oct. 13, 2000, 114 Stat. 1062; Pub. L. 107–107, div. B, title XXVIII, §2863(a)–(e), Dec. 28, 2001, 115 Stat. 1330–1332; Pub. L. 118–31, div. B, title XXVIII, §2884, Dec. 22, 2023, 137 Stat. 782.

- American Armored Force Memorial.—Pub. L. 99–620, Nov. 6, 1986, 100 Stat. 3493.

- Armed Forces Members Killed in Attack on Hamid Karzai International Airport, Kabul, Afghanistan, on Aug. 26, 2021, Commemorative Work.—Pub. L. 117–81, div. A, title X, §1087, Dec. 27, 2021, 135 Stat. 1924; Pub. L. 117–263, div. A, title X, §1084, Dec. 23, 2022, 136 Stat. 2800.

---

[24] *See* Jacob R. Straus, *Monuments and Memorials Authorized and Completed Under the Commemorative Works Act in the District of Columbia*, CRS Report R43743, at 1 (Cong. Rsch. Serv., updated October 2, 2024) (asserting that "48 memorials have been authorized for placement in the District of Columbia" pursuant to the CWA as of October 2, 2024). In addition to the monuments listed, Congress approved the Women's Suffrage National Monument on January 4, 2025. *See* Pub. L. No. 118-226, 138 Stat. 2819 (2025).

- Benjamin Banneker Memorial.—Pub. L. 105–355, title V, §512, Nov. 6, 1998, 112 Stat. 3266.

- Black Revolutionary War Patriots Memorial.—Pub. L. 99–500, §101(h) [title I, §118], Oct. 18, 1986, 100 Stat. 1783–242, 1783-266, and Pub. L. 99–591, §101(h) [title I, §118], Oct. 30, 1986, 100 Stat. 3341–242, 3341-266; Pub. L. 99–558, Oct. 27, 1986, 100 Stat. 3144, repealed by Pub. L. 112–239, div. B, title XXVIII, §2860(f), Jan. 2, 2013, 126 Stat. 2165; Pub. L. 99–590, title VIII, §§801, 802, Oct. 30, 1986, 100 Stat. 3339; Pub. L. 100–265, Mar. 25, 1988, 102 Stat. 39, repealed by Pub. L. 112–239, div. B, title XXVIII, §2860(f), Jan. 2, 2013, 126 Stat. 2165; Pub. L. 103–321, §1(a)(1), Aug. 26, 1994, 108 Stat. 1793; Pub. L. 104–333, div. I, title V, §506, Nov. 12, 1996, 110 Stat. 4155; Pub. L. 105–345, §1, Nov. 2, 1998, 112 Stat. 3205; Pub. L. 106–442, Nov. 6, 2000, 114 Stat. 1926; Pub. L. 112–239, div. B, title XXVIII, §2860, Jan. 2, 2013, 126 Stat. 2164; Pub. L. 113–176, Sept. 26, 2014, 128 Stat. 1910; Pub. L. 117–328, div. DD, title VII, §703, Dec. 29, 2022, 136 Stat. 5618.

- Brigadier General Francis Marion Commemorative Work.—Pub. L. 110–229, title III, §331, May 8, 2008, 122 Stat. 781; Pub. L. 114–92, div. B, title XXVIII, §2852, Nov. 25, 2015, 129 Stat. 1184.

- Disabled Veterans' LIFE Memorial.—Pub. L. 106–348, Oct. 24, 2000, 114 Stat. 1358; Pub. L. 109–396, title II, §201, Dec. 15, 2006, 120 Stat. 2713; Pub. L. 110–106, §1, Oct. 25, 2007, 121 Stat. 1022.

- Dwight D. Eisenhower Memorial.—Pub. L. 106–79, title VIII, §8162, Oct. 25, 1999, 113 Stat. 1274; Pub. L. 107–117, div. A, title VIII, §8120(a), (b), Jan. 10, 2002, 115 Stat. 2273, 2274; Pub. L. 109–220, May 5, 2006, 120 Stat. 335; Pub. L. 110–229, title III, §332, May 8, 2008, 122 Stat. 782; Pub. L. 112–74, div. E, title III, Dec. 23, 2011, 125 Stat. 1036; Pub. L. 113–6, div. F, title IV, §1413, Mar. 26, 2013, 127 Stat. 421; Pub. L. 113–76, div. G, title IV, §437(a), Jan. 17, 2014, 128 Stat. 347; Pub. L. 113–235, div. F, title IV, §423(a), Dec. 16, 2014, 128 Stat. 2449; Pub. L. 114–113, div. G, title IV, §419(a), Dec. 18, 2015, 129 Stat. 2579; Pub. L. 115–31, div. G, title IV, §419, May 5, 2017, 131 Stat. 498.

- Enslaved Individuals Who Endured the Middle Passage Commemorative Work.—Pub. L. 117–328, div. DD, title VII, §707, Dec. 29, 2022, 136 Stat. 5620.

- Every Word We Utter Commemorative Work.—Pub. L. 116–217, Dec. 17, 2020, 134 Stat. 1052; Pub. L. 118–226, Jan. 4, 2025, 138 Stat. 2819.

- Fallen Journalists Memorial.—Pub. L. 116–253, Dec. 23, 2020, 134 Stat. 1135; Pub. L. 117–328, div. DD, title VII, §708, Dec. 29, 2022, 136 Stat. 5620.

- First Division Monument.—Pub. L. 116–283, div. A, title X, §1083, Jan. 1, 2021, 134 Stat. 3875.

- Francis Scott Key Memorial.—Pub. L. 99–531, Oct. 27, 1986, 100 Stat. 3022.

- Frederick Douglass Memorial and Gardens.—Pub. L. 106–479, Nov. 9, 2000, 114 Stat. 2184.

- George Mason Memorial.—Pub. L. 101–358, Aug. 10, 1990, 104 Stat. 419; Pub. L. 102–277, Apr. 28, 1992, 106 Stat. 127; Pub. L. 105–182, §1, June 19, 1998, 112 Stat. 516.

- Gold Star Mothers Commemorative Work.—Pub. L. 112–239, div. B, title XXVIII, §2859, Jan. 2, 2013, 126 Stat. 2164.

- Heroic Deeds and Sacrifices of Service Animals and Handlers of Service Animals Commemorative Work.—Pub. L. 117–328, div. DD, title VII, §704, Dec. 29, 2022, 136 Stat. 5618.

- Japanese American Patriotism in World War II Memorial.—Pub. L. 102–502, Oct. 24, 1992, 106 Stat. 3273; Pub. L. 104–333, div. I, title V, §514, Nov. 12, 1996, 110 Stat. 4165.

- Jean Monnet Commemorative Work.—Pub. L. 117–328, div. DD, title VII, §705, Dec. 29, 2022, 136 Stat. 5619.

- Korean War Veterans Memorial.—Pub. L. 99–572, Oct. 28, 1986, 100 Stat. 3226; Pub. L. 100–202, §101(f) [title II, §§1, 2], Dec. 22, 1987, 101 Stat. 1329–195, 1329-196; Pub. L. 100–230, §§1, 2, Jan. 5, 1988, 101 Stat. 1563; Pub. L. 100–267, Mar. 28, 1988, 102 Stat. 41; Pub. L. 105–262, title VIII, §8122, Oct. 17, 1998, 112 Stat. 2332.

- Korean War Veterans Memorial Wall of Remembrance.—Pub. L. 114–230, Oct. 7, 2016, 130 Stat. 947.

- Lincoln Memorial, "I Have a Dream Speech" Commemorative Plaque.—Pub. L. 106–365, Oct. 27, 2000, 114 Stat. 1409; Pub. L. 108–352, §4, Oct. 21, 2004, 118 Stat. 1395.

- Mahatma Gandhi Memorial.—Pub. L. 105–284, §1, Oct. 26, 1998, 112 Stat. 2701.

- Martin Luther King, Jr., Memorial.—Pub. L. 104–333, div. I, title V, §508, Nov. 12, 1996, 110 Stat. 4157; Pub. L. 105–201, §1, July 16, 1998, 112 Stat. 675; Pub. L. 106–176, title I, §108, Mar. 10, 2000, 114 Stat. 26; Pub. L. 108–125, §1, Nov. 11, 2003, 117 Stat. 1347; Pub. L. 109–54, title I, §134(c), Aug. 2, 2005, 119 Stat. 527; Pub. L. 110–453, title III, §301, Dec. 2, 2008, 122 Stat. 5034; Pub. L. 111–88, div. A, title I, §129, Oct. 30, 2009, 123 Stat. 2933.

- Medal of Honor Recipients Commemorative Work.—Pub. L. 117–80, Dec. 27, 2021, 135 Stat. 1539.

- National Desert Storm and Desert Shield Memorial.—Pub. L. 113–291, div. B, title XXX, §3093, Dec. 19, 2014, 128 Stat. 3879; Pub. L. 115–18, Mar. 31, 2017, 131 Stat. 82.

- National Emergency Medical Services Memorial.—Pub. L. 115–275, §1, Nov. 3, 2018, 132 Stat. 4164.

- National Global War on Terrorism Memorial.—Pub. L. 115–51, Aug. 18, 2017, 131 Stat. 1003; Pub. L. 117–81, div. F, title LXVI, §6605, Dec. 27, 2021, 135 Stat. 2442.

- National Peace Garden.—Pub. L. 100–63, June 30, 1987, 101 Stat. 379; Pub. L. 103–321, §1(a)(3), (b), Aug. 26, 1994, 108 Stat. 1793; Pub. L. 105–202, July 16, 1998, 112 Stat. 676.

- Peace Corps Memorial.—Pub. L. 113–78, §1, Jan. 24, 2014, 128 Stat. 647; Pub. L. 116–318, Jan. 5, 2021, 134 Stat. 5069.

- Republic of Texas Legation Memorial.—Pub. L. 116–248, Dec. 22, 2020, 134 Stat. 1124.

- Second Division Memorial.—Act Mar. 3, 1931, ch. 451, 46 Stat. 1515; Pub. L. 115–91, div. A, title III, §352, Dec. 12, 2017, 131 Stat. 1367; Pub. L. 115–141, div. G, title I, §121(a)(1) [div. B, title VII, §7130], Mar. 23, 2018, 132 Stat. 661, 1225A-3.

- Thomas Paine Commemorative Work.—Pub. L. 117–328, div. DD, title VII, §709, Dec. 29, 2022, 136 Stat. 5621.

- Thomas Paine Memorial.—Pub. L. 102–407, Oct. 13, 1992, 106 Stat. 1991; Pub. L. 102–459, Oct. 23, 1992, 106 Stat. 2268; Pub. L. 103–422, Oct. 25, 1994, 108 Stat. 4356; Pub. L. 106–113, div. B, §1000(a)(3) [title I, §142], Nov. 29, 1999, 113 Stat. 1535, 1501A-171.

- Tomas G. Masaryk Memorial.—Pub. L. 107–61, Nov. 5, 2001, 115 Stat. 410.

- Ukrainian Famine-Genocide Victims Memorial.—Pub. L. 109–340, Oct. 13, 2006, 120 Stat. 1864.

- Victims of Communism Memorial.—Pub. L. 103–199, title IX, §905, Dec. 17, 1993, 107 Stat. 2331; Pub. L. 105–277, div. A, §101(e) [title III, §326], Oct. 21, 1998, 112 Stat. 2681–231, 2681-291.

- Vietnam Women's Memorial.—Pub. L. 100–660, Nov. 15, 1988, 102 Stat. 3922; Pub. L. 101–187, Nov. 28, 1989, 103 Stat. 1350.

- Women in Military Service for America Memorial.—Pub. L. 99–500, §101(h) [title I, §117], Oct. 18, 1986, 100 Stat. 1783–242, 1783-266, and Pub. L. 99–591, §101(h) [title I, §117], Oct. 30, 1986, 100 Stat. 3341–242, 3341-266; Pub. L. 99–590, title IX, §§901, 902, Oct. 30, 1986, 100 Stat. 3339; Pub. L. 99–610, Nov. 6, 1986, 100 Stat. 3477; Pub. L. 103–321, §1(a)(2), Aug. 26, 1994, 108 Stat. 1793; Pub. L. 103–337, div. B, title XXVIII, §2855, Oct. 5, 1994, 108 Stat. 3073; Pub. L. 116–92, div. B, title XXVIII, §2834(e)(3)(B), Dec. 20, 2019, 133 Stat. 1894.

- Women Who Worked on the Home Front Commemorative Work.—Pub. L. 117–328, div. DD, title VII, §702, Dec. 29, 2022, 136 Stat. 5617.

- World War II Memorial.—Pub. L. 103–32, May 25, 1993, 107 Stat. 90; Pub. L. 103–422, Oct. 25, 1994, 108 Stat. 4356; Pub. L. 106–58, title VI, §652, Sept. 29, 1999, 113 Stat. 480; Pub. L. 106–117, title VI, §601(b), Nov. 30, 1999, 113 Stat. 1578; Pub. L. 107–11, May 28, 2001, 115 Stat. 19.

- World War II Memorial Prayer Plaque.—Pub. L. 113–123, June 30, 2014, 128 Stat. 1377.

**CERTIFICATE OF SERVICE**

On March 5, 2026, this brief was served via ECF on all registered counsel and transmitted to the Clerk of the Court. Because Defendants have not yet entered an appearance in the case, I also served this brief on Michael Sawyer, Senior Attorney, Natural Resources Section, Environment & Natural Resources Division, U.S. Department of Justice—who we have confirmed represents the Defendants in the litigation—via email to michael.sawyer@usdoj.gov.

<u>/s/    *David M. Gossett*  </u>
David M. Gossett

**CERTIFICATE OF COMPLIANCE**

This brief complies with the page limitation in Local Civil Rule 7(o)(4) because the body of the brief is 19 pages long, and the formatting requirements of Local Civil Rule 5.1.

*/s/    David M. Gossett*
David M. Gossett