IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael Lemmon, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Donald J. Trump, *et al.*, <br><br> Defendants. | No. 1:26-cv-00544 |

**DECLARATION OF FRANK LANDS, DEPUTY DIRECTOR FOR OPERATIONS, NATIONAL PARK SERVICE**

I, Frank Lands, declare as follows:

1. I am the Deputy Director for Operations for the National Park Service ("NPS"). I have been in this position since May 2023. I served as the Regional Director for the NPS's Pacific West Region from January 2022 until assuming this position. Prior to that time, I was employed by the U.S. Army where I have more than 20 years of experience in managing natural and cultural resources and conservation programs.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. In my current position as Deputy Director of Operations, I am the senior civilian executive and principal advisor to the Director. I provide leadership and guidance to five Associate Directors, and seven Regional Directors. I oversee every aspect of park operations, including the preservation and protection of 85 million acres of land, 167 million museum objects, 33,000 historic structures, and more than 169,000 miles of rivers and streams, as

well as recreation, education, and hospitality services for the more than 300 million people who visit national parks every year, generating $12 billion in local economic impacts.

4. Under the NPS Organic Act of 1916, the NPS is required to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101. This authority extends to historic preservation and construction activities at individual park units in furtherance of the purpose of the park unit at issue.

5. I am aware of that the President has made several statements to the press regarding a proposal to construct a triumphal arch in Memorial Circle ("Arch").

6. The NPS has engaged in preliminary discussions with other federal agencies to see if they have capacity to assist with required environmental compliance, were the project to move beyond the conceptual phase. The legal and compliance processes for a project of this nature will depend, in part, on the scope and nature of the formal proposal and the associated legal framework that emerges from this conceptual phase.

7. If the potential project moves beyond the conceptual stage, NPS will comply with all applicable laws and regulations including, but not limited to, the National Environmental Policy Act ("NEPA"), Section 106 of the National Historic Preservation Act ("NHPA"), Section 7 of the Endangered Species Act ("ESA"), Federal Aviation Administration ("FAA") regulations, and any other applicable laws and regulations, prior to initiating construction of an Arch or authorizing the initiation of such activities. Depending on the

nature and scope of the proposed path forward, the requisite compliance process may include review, consultation and/or approval by National Capital Planning Commission ("NCPC") and the U.S. Commission on Fine Arts ("CFA"). If the final proposal for the Arch meets the definition of a "Commemorative Work" that was not authorized prior to the passage of the Commemorative Works Act ("CWA") in 1986, a host of additional review, consultation, and approval processes could be required, including, but not limited to, Congressional authorizations and consultations with the National Capital Memorial Advisory Commission.

8. NEPA compliance for the construction of an Arch would either include either the use of a categorical exclusion ("CE") or the preparation of an environmental assessment ("EA") or, if impacts were found to be significant, an environmental impact statement ("EIS"). The NPS has not yet drafted an applicable CE, or prepared an EA or EIS for an Arch.

9. Section 106 of the NHPA requires agencies to consider impacts to historic properties prior to commencing a federal undertaking. Construction of an Arch would likely constitute a federal undertaking. As such, in order to comply with the requirements of Section 106 of the NHPA, the NPS would need to identify any historic properties that could be affected, identify relevant stakeholders, and consult with those stakeholders to identify and address any adverse impacts to the historic properties, among other requirements.

10. Construction of an Arch would also require compliance with the ESA, and I understand that there are protected species in the national capital region that may be present in the vicinity of Memorial Circle. Identification of any such species, and compliance with the ESA, would be accomplished through Section 7 consultation with the U.S. Fish and Wildlife Service and, as appropriate, the National Marine Fisheries Service.

11. To comply with FAA regulations regarding construction of an Arch, the NPS would first informally consult with the FAA regarding the height and scale of the proposal, and the FAA would analyze the proposal in light of flight paths and the height of the planes along those paths. If, in this consultation, the FAA were to determine that the proposed project could be in conflict with flight paths and aircraft safety, then the NPS would file a notice of the proposal with the FAA consistent with applicable regulations.

12. Construction of an Arch could also require the NPS to submit the proposed project for NCPC review and approval. If necessary, NCPC would conduct a three-tiered review process consisting of concept, preliminary, and final review. During concept review, NCPC evaluates and provides input on alternatives and general consistency with NCPC policies. During preliminary review, it evaluates the general design approach, site planning, massing, and programmatic relationships to ensure the proposal is conceptually sound and consistent with relevant policies and plans. During final review, it assesses detailed architectural, landscape, and engineering elements to ensure full compliance with its planning standards.

13. Construction of an Arch could also require the NPS to submit the proposed project for CFA review and approval. If necessary, the CFA conducts a two-tiered review process, consisting of concept review and final review. The process begins when an agency submits a project for concept review. Once the concept is endorsed, the project advances to final review, where the Commission examines detailed architectural drawings, materials, landscape plans, and other refined design elements. Projects may return for multiple reviews at either stage to address comments or revisions.

14. In order to construct an Arch, or otherwise authorize its construction, the NPS would also be required to demonstrate compliance with the NPS Organic Act of 1916 by preparing a non-impairment determination for the selected action. A non-impairment determination states in writing that, in the professional judgment of the NPS decision-maker, the action selected in a finding of no significant impact (FONSI), or record of decision (ROD), will not result in impairment to park resources or values. The non-impairment determination is prepared for the selected action only, must be completed prior to the signing of a FONSI or ROD by the NPS decision-maker, and is generally attached to the FONSI or ROD. If the environmental analysis in an EA or an EIS indicates that the action would cause impairment, the NPS may not select that action. NPS policy does not generally require the preparation of a non-impairment determination for actions that fit within a categorical exclusion for the purpose of NEPA compliance.

15. The proposal for construction of an Arch is in the conceptual phase. The NPS has not completed its decision-making process for this potential project. The NPS will follow all applicable legal requirements before making a final decision and before beginning construction of a proposed Arch or authorizing its construction.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2026.

_____
Frank Lands