**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MICHAEL LEMMON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-cv-544 (TSC) |
| DONALD J. TRUMP, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants have filed a notice drawing this Court's attention to the decision issued yesterday in *National Trust for Historic Preservation in the United States v. National Park Service*, 2026 WL 877779 (D.D.C. Mar. 31, 2026). Contrary to Defendants' representation, the decision squarely supports Plaintiffs' arguments in this case.

**1.** In *National Trust*, the court granted a preliminary injunction halting President Donald J. Trump's construction of a ballroom on the White House's grounds. *Id.* at *17. The court concluded that the plaintiff in that case—an organization whose members are likely to experience aesthetic injury if the project proceeds, *see id.* at *14–15—is likely to prevail on the merits of its claim that construction of the ballroom without congressional authorization is ultra vires. *Id.* at *6–12. As relevant here, the court emphasized that the Constitution's Property Clause, Appropriations Clause, and District Clause "establish Congress's primacy over federal property, spending, and the District of Columbia." *Id.* at *5. Because the President lacks "any inherent constitutional authority" to initiate building projects on federal land within the District, the court explained, such a project is ultra vires unless the President "identif[ies] some law that allows him" to proceed. *Id.*

1

The court in *National Trust* observed that the President had failed to identify a source of statutory authority for construction of the ballroom and that the court "could find the President's actions *ultra vires* on that basis alone." *Id.* at *10. It further concluded, however, that the project additionally "r[an] up against [the] explicit statutory prohibition in 40 U.S.C. § 8106." *Id.* at *6. The court accordingly held that the ballroom project is likely ultra vires unless and until it is supported by the "express authority of Congress" that section 8106 requires. *Id.* at *10 (quoting 40 U.S.C. § 8106).

In this case, as in *National Trust*, no statutory authority supports the President's building project. In this case, as in *National Trust*, 40 U.S.C. § 8106 affirmatively prohibits the project absent congressional authorization. In this case, moreover, the Commemorative Works Act requires that the project receive congressional approval *before* it may proceed and that it must then do so under the direction of a congressionally designated sponsor. In this case, then, as in *National Trust*, the President's project is ultra vires.

Defendants contend that this case is distinguishable from *National Trust* because the planned arch, unlike the ballroom, is supposedly supported by statutory authority. ECF 16 (Defs. Notice) at 3. Defendants, though, rely on a 1925 statute that authorized a now-disbanded committee, "as speedily as practicable," to use appropriations of up to $14,750,000 to "prosecute[] to completion" a bridge that was finished in 1932 at a total cost of $12,200,000. Act of Feb. 24, 1925, Pub. L. No. 68-463, § 2, 43 Stat. 974, 974; *see also* ECF 13 (Pls. Reply) at 13–14. As Plaintiffs have explained, it borders on the absurd to suggest that this statute provides authorization for Defendants to undertake a different project—funded by private donations—nearly 100 years after the bridge project concluded. *See* Pls. Reply at 14.

In addition, Defendants argue that here, unlike in *National Trust*, Plaintiffs "have not shown that the project will be managed by an entity that's not subject to the Administrative Procedure Act" (APA), Defs. Notice at 3. As Defendants have themselves observed, however, Defendants Trump, Vince Haley, and the Executive Office of the President are not subject to the APA, and the National Park Service (NPS) has not taken action that is reviewable under the APA. ECF 12 (Defs. Opp.) at 15. The question whether Plaintiffs would have a claim under the Act *if* the non-NPS Defendants were to seek NPS authorization to proceed—which the non-NPS Defendants have *not* stated that they plan to do—is irrelevant to the question whether Defendants are acting ultra vires *now* by proceeding with the arch project in the absence of congressional authorization.

**2.** *National Trust* also holds that the "alleged aesthetic injuries" of "a longtime D.C. resident and a professor of historic preservation who regularly visits" the area around the ballroom both "establishe[s] a substantial likelihood of Article III standing" and "establishes irreparable harm for a preliminary injunction." 2026 WL 877779, at *14. As the court explained, "[i]f construction continues, the harm of an enormous ballroom overshadowing the White House grounds would indeed be 'permanent,'" *id.* at *15 (quoting *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 23d 1, 25 (D.D.C. 2009)), and absent an injunction, the harm would "likely materialize 'before a decision on the merits can be reached.'" *Id.* (quoting *Nat'l Parks Conservation Ass'n v. Semonite*, 282 F. Supp. 3d 284, 288–89 (D.D.C. 2017)); *see also id.* at *15 n.19 (discussing a "cautionary tale" in which construction proceeded while a case progressed and the plaintiff's eventual victory on the merits "prove[d] to be too little, too late").

Those same principles establish Plaintiffs' imminent risk of irreparable injury here. Like the professor in *National Trust*, each plaintiff here has "presented uncontroverted evidence that he regularly visits" the area around the planned project, "that he derives profound aesthetic and

3

symbolic enjoyment" from the environs as they currently exist, and that the planned construction would "irreparably degrade his aesthetic experience of the area." Pls. Reply at 3. And the President's own repeated statements—which Defendants have not disavowed—that the arch is intended to coincide with the Nation's 250th anniversary three months from now create a substantial likelihood that these irreparable aesthetic injuries will arise during the pendency of this lawsuit, absent preliminary relief. *See id.* at 18–19.

Defendants point out that here, unlike in *National Trust*, construction is not yet "ongoing." Defs. Notice at 2. But as the court in *National Trust* explained, "Defendants cannot seriously argue that [a plaintiff] has no claim for imminent aesthetic harm until the completed [structure] is fully visible." 2026 WL 877779, at *15. Rather than freezing a partially completed building project in the center of a busy and historic area of the capital for an indefinite period, the more efficient course is to enjoin unauthorized construction before it begins.

Dated: April 1, 2026                                  Respectfully submitted,

                                                      /s/ Nicolas A. Sansone
                                                      Nicolas A. Sansone (DC Bar No. 1686810)
                                                      Wendy Liu (DC Bar No. 1600942)
                                                      Allison M. Zieve (DC Bar No. 424786)
                                                      Public Citizen Litigation Group
                                                      1600 20th Street NW
                                                      Washington, DC 20009
                                                      (202) 588-1000

                                                      *Counsel for Plaintiffs*

4