**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MICHAEL LEMMON, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 26-cv-544 (TSC) |
| DONALD J. TRUMP, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Nicolas Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

May 27, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 4

Statutory Background ............................................................................................................. 4

Factual Background ................................................................................................................ 6

Procedural History ................................................................................................................. 8

LEGAL STANDARD............................................................................................................... 9

ARGUMENT............................................................................................................................ 9

I.      Plaintiffs have standing............................................................................................ 9

II.     Plaintiffs are entitled to summary judgment on their ultra vires claim............................. 12

III.    Plaintiffs are entitled to summary judgment on their constitutional claim. ...................... 17

IV.     Plaintiffs are entitled to declaratory and injunctive relief................................................. 19

CONCLUSION........................................................................................................................ 22

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*American School of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902).................................................................... 12, 13, 15

*Amoco Production Co. v. Village of Gambell*,
  480 U.S. 531 (1987).................................................................... 20

*Anatol Zukerman & Charles Krause Reporting, LLC v. United States Postal Service*,
  64 F.4th 1354 (D.C. Cir. 2023).................................................... 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................... 9

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020).............................................. 21

*Center for Biological Diversity v. United States Fish & Wildlife Service*,
  146 F.4th 1144 (D.C. Cir. 2025).................................................. 10

*Chamber of Commerce of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)................................................ 12, 13

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006).................................................................... 20

*Federal Express Corp. v. United States Department of Commerce*,
  39 F.4th 756 (D.C. Cir. 2022)............................................ 13, 14, 15

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010).................................................................... 19

*Friends of Gateway v. Slater*,
  257 F.3d 74 (2d Cir. 2001).......................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000).................................................................... 10

*Global Health Council v. Trump*,
  153 F.4th 1 (D.C. Cir. 2025)........................................................ 12

*Harmon v. Brucker*,
  355 U.S. 579 (1958).................................................................... 12

*Heckler v. Chaney*,
  470 U.S. 821 (1985).................................................................... 18

ii

*Holcomb v. Powell*,
   433 F.3d 889 (D.C. Cir. 2006) ........................................................................................... 9

*J.W. Hampton, Jr. & Co. v. United States*,
   276 U.S. 394 (1928) ......................................................................................................... 19

*Kendall v. United States ex rel. Stokes*,
   37 U.S. (12 Pet.) 524 (1838) ............................................................................................ 18

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ......................................................................................................... 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................................... 10

*Morrison v. Olson*,
   487 U.S. 654 (1988) ......................................................................................................... 17

*National Trust for Historic Preservation in the United States v. National Park Service*,
   — F. Supp. 3d —, 2026 WL 533420 (D.D.C. Feb. 26, 2026)............................................. 10, 11

*National Trust for Historic Preservation in the United States v. National Park Service*,
   — F. Supp. 3d —, 2026 WL 877779 (D.D.C. Mar. 31, 2026) ..................................... 13, 15, 20

*Nuclear Regulatory Commission v. Texas*,
   605 U.S. 665 (2025)..................................................................................................... 12, 15

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)......................................................................................................... 10

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) ........................................................................................ 20

*United States v. Texas*,
   577 U.S. 1101 (2016)....................................................................................................... 19

*Utility Air Regulatory Group v. Environmental Protection Agency*,
   573 U.S. 302 (2014)......................................................................................................... 18

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)......................................................................................................... 19

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)........................................................................................... 17, 18, 19, 20

**Statutes**

28 U.S.C. § 2201(a) ......................................................................................................... 19

40 U.S.C. § 68 (1912) ............................................................................................................. 4

40 U.S.C. § 8106 .......................................................................................................... 1, 4, 17

40 U.S.C. § 8711 ................................................................................................................... 5

40 U.S.C. § 8901(1) .............................................................................................................. 5

40 U.S.C. § 8901(4) ......................................................................................................... 5, 15

40 U.S.C. § 8902(a)(1) ..................................................................................................... 5, 16

40 U.S.C. § 8902(a)(2) ................................................................................................. 5, 6, 15

40 U.S.C. § 8902(a)(4) ..................................................................................................... 5, 15

40 U.S.C. § 8903(a) ............................................................................................................. 15

40 U.S.C. § 8903(a)(1) ............................................................................................. 1, 5, 15, 16

40 U.S.C. § 8903(d) .............................................................................................................. 5

40 U.S.C. § 8904 .................................................................................................................. 5

40 U.S.C. § 8905(a) ......................................................................................................... 5, 15

40 U.S.C. § 8906(a)(2) .......................................................................................................... 6

40 U.S.C. § 8908(b) .............................................................................................................. 6

40 U.S.C. § 8908(b)(1) ................................................................................................. 6, 15, 17

40 U.S.C. § 9101 .................................................................................................................. 5

Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 ................................................... 7, 14

Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986) ....................... 4

**Rules**

Federal Rule of Civil Procedure 56(a) ................................................................................... 9

Federal Rule of Evidence 801(d)(2) ................................................................................. 11, 16

Federal Rule of Evidence 803(3) ..................................................................................... 11, 16

**Other Authorities**

David M. Driesen, *Judicial Review of Executive Orders' Rationality*,
    98 Boston University Law Review 1013 (2018) .................................................................. 18

Executive Order No. 6166 (June 10, 1933) ................................................................................. 14

Jacob R. Straus, Congressional Research Service, *Commemorative Works in the District of Columbia: Background and Practice* (updated May 8, 2023)................................................. 4, 6

**INTRODUCTION**

Last October, President Donald J. Trump announced plans to build a massive arch on Memorial Circle—an area of federally administered land in Washington, DC, between the Lincoln Memorial and Arlington National Cemetery—to commemorate the Nation's 250th anniversary. Since then, the Executive Branch has moved steadily forward to actualize the President's vision, touting the arch to the American people as a feature of the anniversary festivities, securing design approval from the Commission of Fine Arts, presenting the arch to the National Capital Planning Commission, requesting an evaluation from the Federal Aviation Administration, and performing on-site testing and geophysical survey work to prepare for the arch's construction.

The President's project, however, lacks legal authority. Congress—not the President—has the constitutional power to initiate building projects on federal land in Washington, DC, and Congress has not authorized the President to build the arch. Indeed, in the Commemorative Works Act, Congress affirmatively prohibited the construction of commemorative works in areas of Washington, DC, that include Memorial Circle except as "specifically authorized by law." 40 U.S.C. § 8903(a)(1). And in 40 U.S.C. § 8106, Congress similarly prohibited the construction of *any* "building or structure" on *any* federally administered public ground in Washington, DC, "without express authority of Congress." Despite these laws expressly requiring Congress's authorization, the President has declared that he does not need it.

Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth are three Vietnam veterans and an architectural historian who regularly visit the area around Memorial Circle and derive profound aesthetic satisfaction from the sightline connecting Arlington National Cemetery to the Lincoln Memorial—an uninterrupted sightline created more than 100 years ago to honor the Nation's reunification following the Civil War. To prevent the irreparable injury that

1

the arch threatens to inflict on their personal experience of this uniquely meaningful landscape, Plaintiffs filed this lawsuit against President Trump, White House Domestic Policy Council Director Vince Haley, the Executive Office of the President, and the National Park Service (NPS). Plaintiffs advance two legal claims: first, that Defendants are engaged in ultra vires executive action by taking steps to build an unauthorized monumental arch and, second, that by directing the arch's construction in open disregard of the Commemorative Works Act and 40 U.S.C. § 8106, President Trump is violating his constitutional duty to take care that Congress's laws be faithfully executed. Plaintiffs seek a declaration that construction of the arch absent Congress's express approval is unlawful and an injunction barring Defendants Haley, Executive Office of the President, and NPS from building it unless and until Congress has enacted a statute authorizing the arch and all other statutory and regulatory prerequisites have been satisfied.

Plaintiffs are entitled to summary judgment. As for Plaintiffs' ultra vires claim, no statute forecloses non-statutory ultra vires review, and, as Defendants have conceded, Plaintiffs have no statutory review mechanism as an alternative means of challenging the arch. On the merits of the claim, no statute authorizes Defendants to construct a monumental arch in Memorial Circle. Defendants claim to have found the requisite authorization in a 1925 statute that directed a now-disbanded commission to build Arlington Memorial Bridge pursuant to a ten-year construction schedule and subject to a fixed expenditure cap. The project that Congress authorized in the 1925 statute, however, was completed nearly a century ago, consistent with the statutory timeline, for a total cost that all but exhausted the statutory cap. The 1925 statute cannot plausibly be read to confer unlimited authority on the Executive Branch to initiate massive new construction projects in the vicinity of Arlington Memorial Bridge, at whatever cost, indefinitely into the future. Because Defendants are acting in excess of their lawful authority by working toward construction of the

2

arch without the congressional authorization required by the Commemorative Works Act and 40 U.S.C. § 8106, Plaintiffs are entitled to summary judgment on their ultra vires claim.

As for Plaintiffs' claim under the U.S. Constitution's Take Care Clause, the President's actions in directing an unauthorized construction project violate his constitutional duty to take care that Congress's laws be faithfully executed. The President's role in our system of government is to effectuate Congress's policy choices through the conscientious implementation of federal statutes—not to violate those statutes in pursuit of pet projects. Because the Supreme Court has made clear that constitutional separation-of-powers guarantees are subject to private enforcement—and because the undisputed facts establish that the President is violating those guarantees—Plaintiffs are also entitled to summary judgment on their constitutional claim.

This Court should thus enter final judgment in Plaintiffs' favor and declare Defendants' construction of an arch on Memorial Circle unlawful. The Court should also enjoin Defendants Haley, Executive Office of the President, and NPS from constructing the arch unless and until Congress has passed a law authorizing it and Defendants have complied with all other statutory and regulatory requirements. Absent an injunction, the arch will irreparably interfere with a symbolic vista that holds profound personal and aesthetic significance for Plaintiffs and for countless others. In contrast, an injunction would not harm Defendants, who may commemorate the Nation's anniversary in any number of lawful ways. Finally, an injunction would serve the public interest. As the outpouring of public comments opposing the arch during proceedings before the Commission of Fine Arts reflects, the American people hold passionate views about whether, where, and how a monument of this nature should be built. Requiring Defendants to subject their project to the congressional scrutiny that the Commemorative Works Act and 40 U.S.C. § 8106

demand will ensure that any monument that is ultimately authorized has received majority support from the People's elected representatives.

## BACKGROUND

**Statutory Background**

Since the founding of Washington, DC, in the late eighteenth century, the configuration of structures and monuments within the city has been subject to careful and deliberate planning. *See* Jacob R. Straus, Cong. Research Serv., *Commemorative Works in the District of Columbia: Background and Practice*, Summary (updated May 8, 2023) (hereafter, Straus, *Commemorative Works*).[1] As the legislative body that speaks on behalf of the American public, Congress has long been responsible for authorizing the monuments and structures that appear on federally administered land within the national capital to tell the story of our country. *See id.*

In 1912, Congress took a substantial step toward formalizing its oversight of construction on public federal land in Washington, DC, by passing a statute prohibiting "any building or structure" from being built on such lands "without express authority of Congress." 40 U.S.C. § 68 (1912). The statute, which has seen only minor, non-substantive amendments in the 110-plus years since its enactment, is now codified at 40 U.S.C. § 8106. Section 8106 speaks categorically: "A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

Nonetheless, even after 1912, "the process for approving site locations, memorial design plans, and funding" for monuments remained "haphazard." Straus, *Commemorative Works*, at Summary. Congress responded in 1986 by passing the Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986). Among the Act's purposes are to "preserve the

---

[1] https://www.congress.gov/crs_external_products/R/PDF/R41658/R41658.12.pdf.

integrity of the comprehensive design of … the Nation's Capital," 40 U.S.C. § 8901(1), and to ensure that commemorative works on federally administered land in Washington, DC, and its environs "are appropriately designed, constructed, and located," and that they "reflect a consensus of the lasting national significance of the subjects involved." *Id.* § 8901(4).

The Commemorative Works Act sets out a detailed process for approving commemorative works—defined to include "any statue, monument, sculpture, … or other structure or landscape feature[] … designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history," *id.* § 8902(a)(1)—in areas in and around Washington, DC, that are administered by NPS or the General Services Administration, *see id.* § 8902(a)(2). To begin, the Act requires that any such work be "specifically authorized by law." *Id.* § 8903(a)(1). And "[i]n considering legislation authorizing commemorative works in the District of Columbia and its environs," Congress must "solicit the views of the National Capital Memorial Advisory Commission." *Id.* § 8903(d); *see id.* § 8904 (establishing the Commission).

Upon authorizing a commemorative work, Congress designates a sponsor that will develop the project. *See id.* § 8902(a)(4). The sponsor then must consult with the National Capital Memorial Advisory Commission "regarding the selection of alternative sites and design concepts for the commemorative work" and must have the Secretary of the Interior or the Administrator of General Services submit "site and design proposals" for the approval of the Commission of Fine Arts and the National Capital Planning Commission. *Id.* § 8905(a); *see id.* § 9101 (establishing the Commission of Fine Arts); *id.* § 8711 (establishing the National Capital Planning Commission). Once the consultation and approval requirements have been satisfied, the sponsor may apply to the Secretary of the Interior or the Administrator of General Services for a construction permit. *See id.* § 8905(a). A permit may issue if, among other things, "knowledgeable individuals qualified

5

in the field of preservation and maintenance have been consulted … to ensure that the commemorative work meets high professional standards." *Id.* § 8906(a)(2).

The Commemorative Works Act imposes special procedural requirements for works located in specific areas around the monumental core of the capital. *See id.* § 8908(b); *see also id.* § 8902(a)(2). Of particular relevance here, commemorative works may be built in an area designated "Area I" only if the Secretary of the Interior or the Administrator of General Services "decides that the subject of the commemorative work is of preeminent historical and lasting significance to the United States," recommends to Congress that the work be sited in Area I, and receives Congress's "approv[al]" of the recommendation "by law." *Id.* § 8908(b)(1).

 Altogether, establishing a monument in the District of Columbia in compliance with the Commemorative Works Act requires the satisfaction of up to twenty-four steps that "help ensure appropriate legislation, site selection, design approval, fundraising, and construction." Straus, *Commemorative Works*, at 28; *see id.* at 28–29 (laying out the steps).

Since the Act's passage in 1986, Congress has enacted forty-eight statutes authorizing commemorative works in Washington, DC. *See id.* at 23–25. Fewer than half of those authorized works, however, have seen their way through the entire statutory process to construction. *Id.* at 23.

**Factual Background**

Memorial Circle, an NPS-administered area that sits inside Lady Bird Johnson Park in Washington, DC, and falls within "Area I" for purposes of the Commemorative Works Act, is situated directly on the visual axis between the Lincoln Memorial and Arlington House, the Robert E. Lee Memorial inside Arlington National Cemetery. *See* Pls. Statement of Undisputed Material Facts (PSOMF) ¶¶ 1–3, 29; Sansone Decl. Exhs. A, B, S. The reciprocal views between those two

structures have historically been left intentionally unobstructed to create a visual symbol of the Nation's reunification following the Civil War. PSOMF ¶ 29; Sansone Decl. Exh. S.

Last October, President Trump announced a plan to build a monumental arch in Memorial Circle. PSOMF ¶ 4; Sansone Decl. Exh. C. Since then, Defendants have repeatedly stated that the planned arch is intended to commemorate the Nation's 250th anniversary. *See, e.g.*, PSOMF ¶¶ 13–19; Sansone Decl. Exhs. D, E, M, N. And Defendants have taken a series of concrete steps toward construction: They have submitted designs for a 250-foot arch to the Commission of Fine Arts, which approved the project (even though only one of the roughly 1,600 public comments received by the Commission fully supported it). PSOMF ¶¶ 6–9, 36–39; Sansone Decl. Exhs. H, I. They have submitted plans for the arch to the National Capital Planning Commission for approval at the Commission's June 4, 2026, hearing. PSOMF ¶ 12; Sansone Decl. Exhs. K, L. And they have asked the Federal Aviation Administration to perform an aeronautical study to assess the impact that the 250-foot arch will have on air traffic. PSOMF ¶ 11; Sansone Decl. Exh. J. Defendants have also conducted on-the-ground surveys and testing in Memorial Circle in preparation for the arch's construction. PSOMF ¶ 10; ECF 32-1 (Bowron Decl.) ¶¶ 5–7.

To date, the only source of legal authority that Defendants have claimed for constructing an arch is the Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 (1925 Act). PSOMF ¶ 23. That statute authorized the now-disbanded Arlington Memorial Bridge Commission to construct a memorial bridge in accordance with the Commission's design, for a sum not to exceed $14.75 million, pursuant to a "ten-year program of expenditures and construction" that the Commission had set forth in a report to Congress the preceding year. 1925 Act, §§ 2, 6, 43 Stat. at 974–75. Although the 1925 Act permitted the Commission to modify the bridge design that it had proposed "without increasing the total cost of the project," *id.* § 1, 43 Stat. at 974, the final design

7

(like the Commission's original design) did not include an arch. PSOMF ¶ 26; Sansone Decl. Exhs. Q, R. Arlington Memorial Bridge opened to the public on January 18, 1932, having been completed for a total cost of $12.2 million, with no monumental arch ever having been part of its design. PSOMF ¶¶ 25–26; Sansone Decl. Exhs. P, Q, R.

Defendants do not intend to await further action from Congress before constructing the arch. PSOMF ¶ 28. Indeed, in a May 21, 2026, press conference, President Trump stated that "[w]e don't need anything from Congress" before building the arch. *Id.* ¶ 27; Sansone Decl. Exh. F.

**Procedural History**

Plaintiffs Michael Lemmon, Shaun Byrnes, and Jon Gundersen are Vietnam War veterans who regularly visit, and intend to continue visiting, Arlington National Cemetery to pay their respects to their fallen comrades and to satisfy their personal and aesthetic interests in the symbolism of the surrounding landscape. PSOMF ¶¶ 31–32; ECF 7-2 (Lemmon Decl.) ¶¶ 2, 6–7; ECF 7-3 (Byrnes Decl.) ¶¶ 2, 8–9; ECF 7-4 (Gundersen Decl.) ¶¶ 2–3, 6–7. Plaintiff Calder Loth is an architectural historian who regularly visits, and intends to continue visiting, Arlington National Cemetery and its surroundings to satisfy his personal, aesthetic, and professional interest in the historically significant views of the Nation's capital. PSOMF ¶¶ 34–35; ECF 7-5 (Loth Decl.) ¶¶ 2, 4–10. Construction of a monumental arch in Memorial Circle will obstruct the views to and from Arlington National Cemetery and will degrade each Plaintiff's aesthetic satisfaction in future visits to the area. PSOMF ¶¶ 30, 33, 35; Sansone Decl. Exh. I; Lemmon Decl. ¶¶ 7–9; Byrnes Decl. ¶¶ 10–13; Gundersen Decl. ¶¶ 8–9; Loth Decl. ¶¶ 8–10.

On February 19, 2026, Plaintiffs filed this lawsuit against President Trump, Director Haley, the Executive Office of the President, and NPS, seeking a declaration that the planned arch is unlawful and an injunction barring Defendants Haley, Executive Office of the President, and NPS

from constructing it unless and until Congress passes a statute authorizing it and all other legal prerequisites have been satisfied. The complaint states two claims for relief. First, the complaint alleges that Defendants are acting ultra vires and in excess of their lawful authority by taking steps to build an arch that Congress has not authorized in Memorial Circle. ECF 1 ¶¶ 52–59. Second, the complaint alleges that the unauthorized arch violates President Trump's constitutional duty to take care that Congress's laws be faithfully executed. *Id.* ¶¶ 60–64.[2]

## LEGAL STANDARD

Plaintiffs are entitled to summary judgment upon a showing that "there is no genuine dispute as to any material fact" and Plaintiffs are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In resolving Plaintiffs' motion, this Court "view[s] the evidence in the light most favorable to [Defendants] and draw[s] all reasonable inferences in [their] favor." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). But if Defendants "fail[] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial," Plaintiffs are entitled to entry of summary judgment in their favor. *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ARGUMENT

### I.    Plaintiffs have standing.

To establish standing at the summary-judgment stage, a plaintiff must present evidence that the defendant's challenged action has caused or will cause the plaintiff to suffer an "injury in

---

[2] Defendants have filed a motion to dismiss, ECF 31, which is currently pending before the Court.

fact" that is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Critically, "[a]n allegation of future injury may suffice" to establish standing "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

Plaintiffs here have made the requisite showing. Each has presented uncontroverted evidence that he regularly visits the landmarks around Memorial Circle, that he derives profound aesthetic and symbolic enjoyment from the existing lines of sight between these landmarks, and that the construction of an arch in Memorial Circle will irreparably degrade his aesthetic experience of the area. *See* Lemmon Decl. ¶¶ 6–9; Byrnes Decl. ¶¶ 8–13; Gundersen Decl. ¶¶ 6–9; Loth Decl. ¶¶ 5–10.

Ample precedent establishes that harm to a plaintiff's personal aesthetic enjoyment of an environment that the plaintiff visits is a cognizable injury capable of supporting Article III standing. As the Supreme Court has explained, "the desire to … observe" a particular environment, "even for purely esthetic purposes, is undeniably a cognizable interest for purpose[s] of standing." *Lujan*, 504 U.S. at 562–63. Subsequent cases have repeatedly reinforced that principle. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972))); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 146 F.4th 1144, 1157–58 (D.C. Cir. 2025) (finding standing based on aesthetic injury); *Nat'l Trust for Historic Pres. in the U.S. v. NPS*, — F. Supp. 3d —, 2026 WL 533420, at *4 (D.D.C. Feb. 26, 2026) (holding that a "longtime D.C. resident and scholar of history and historic preservation" who regularly visits the

10

White House had standing to challenge construction that would "undermin[e] her enjoyment and appreciation of the grounds"), *appeal pending*, D.C. Cir. Nos. 26-5123, 26-5134.

By "expressly articulat[ing] [their] particularized connection to the land" around Memorial Circle, "describ[ing] how [they] derive[] aesthetic value" from the area as it currently stands, and "explain[ing] that [their] future uses[] … and aesthetic enjoyment[] would be diminished by the President's" arch, *Nat'l Trust*, 2026 WL 533420, at *5 (quoting *Env't Def. Fund v. FERC*, 2 F.4th 953, 969–70 (D.C. Cir. 2021)) (internal quotation marks omitted), Plaintiffs have established precisely the sort of aesthetic injury that courts have recognized as sufficiently concrete and personalized to support standing. *See, e.g.*, *Friends of Gateway v. Slater*, 257 F.3d 74, 78 (2d Cir. 2001) (holding that plaintiffs had standing to challenge the construction of an "eyesore" in a park that they "frequently and regularly use[d]").

Further, Plaintiffs have demonstrated a substantial risk that the threatened harms will soon come to pass: Defendants have announced their plans to begin building the arch this year—and potentially within the next few months. *See* PSOMF ¶ 13 & Sansone Decl. Exh. D (White House statement that the arch will "coincide with the 250th anniversary" of the United States on July 4, 2026); PSOMF ¶ 18 (statement of White House press secretary that beginning construction this year will be "a fitting way to commemorate the 250th anniversary of American independence").[3] And Defendants have taken concrete steps toward the arch's construction, seeking and securing approval from the Commission of Fine Arts, PSOMF ¶¶ 6–9; Sansone Decl. Exhs. H, I, seeking approval from the National Capital Planning Commission, PSOMF ¶ 12; Sansone Decl. Exhs. K,

---

[3] Because statements made by or on behalf of an opposing party are not hearsay, *see* Fed. R. Evid. 801(d)(2), this Court can consider these statements for the truth of the matter asserted. In addition, even hearsay statements are admissible for the truth of the matter asserted where they reflect the declarant's "intent" or "plan." Fed. R. Evid. 803(3).

L, requesting an aeronautical study from the Federal Aviation Administration, PSOMF ¶ 11; Sansone Decl. Exh. J, and conducting on-the-ground surveying and testing in Memorial Circle, PSOMF ¶ 10; Bowron Decl. ¶¶ 5–7.

Because the concrete aesthetic injury that Plaintiffs will face if the arch project continues to move forward is directly traceable to Defendants' challenged actions and is redressable by the declaratory and injunctive relief that Plaintiffs seek, Plaintiffs have standing to sue.

## II.    Plaintiffs are entitled to summary judgment on their ultra vires claim.

**A.** The Supreme Court has long recognized that "the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law," is subject to ultra vires review, even absent a statutory cause of action. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (citing *McAnnulty*). Although a plaintiff may not use an ultra vires claim to make an "end-run around the limitations of … judicial-review statutes," *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025), ultra vires review remains available to challenge executive actions that are "in excess of powers granted … by Congress" where Congress has not foreclosed review and where no alternative statutory review scheme is applicable. *Harmon v. Brucker*, 355 U.S. 579, 581 (1958) (per curiam); *see Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("If a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action."); *see also Global Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025) (recognizing the availability of an ultra vires claim where a federal defendant departs from the law in a way that is sufficiently extreme).

Here, "there is no express statutory preclusion of all judicial review" of the steps Defendants are taking toward building an arch in Memorial Circle. *Fed. Express Corp. v. U.S.*

*Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022). Nor is an alternative statutory review procedure available to Plaintiffs. Although Defendants have suggested that Plaintiffs might later have a claim against NPS under the Administrative Procedure Act (APA) based on actions that Defendants might take in the future, Defendants have conceded that Plaintiffs have no APA claim to challenge Defendants' *current* unlawful actions. ECF 31 at 21–23. And D.C. Circuit precedent establishes that the hypothetical possibility that future developments might give rise to an APA claim does not foreclose Plaintiffs from raising a non-statutory claim against ultra vires executive action now. *See Chamber of Commerce*, 74 F.3d at 1326–28 (holding that plaintiffs could challenge an unlawful Executive Order as ultra vires even though an APA claim later materialized after the Secretary of Labor promulgated regulations to implement the Order).

**B.** Defendants' arch is "unauthorized by any law." *McAnnulty*, 187 U.S. at 110. Defendants have not asserted inherent constitutional authority to build the arch, and any such assertion would be meritless. Congress, not the executive, holds constitutional "primacy over federal property, spending, and the District of Columbia." *Nat'l Trust for Historic Pres. in the U.S. v. NPS*, — F. Supp. 3d —, 2026 WL 877779, at \*5 (D.D.C. Mar. 31, 2026). And, in contrast to the forty-eight instances in which Congress has authorized the construction of a commemorative work on federal land in Washington, DC, since 1986, *see supra* p. 6, Congress has not passed a statute delegating authority to the Executive Branch to build the arch.

The only source of statutory authority that Defendants have invoked in support of their claimed power to pursue construction of the arch is the 1925 Act, which authorized construction of Arlington Memorial Bridge. PSOMF ¶ 23. That statute cannot reasonably be read to authorize a massive monumental arch to commemorate a national anniversary that, at the time of the statute's enactment, lay more than a century in the future. Rather, the 1925 Act authorized the Arlington

13

Memorial Bridge Commission—not Defendants—to "proceed at once" to construct Arlington Memorial Bridge according to the Commission's design. 1925 Act, § 1, 43 Stat. 974. The statute directed the project, "as speedily as practicable," to be "prosecuted to completion … in a total sum not to exceed $14,750,000," *id.* § 2, 43 Stat. at 974, pursuant to a "ten-year program of expenditures and construction," *id.* § 6, 43 Stat. at 975. At the "completion of the project," the statute authorized the Commission to transfer the land associated with the project "to the park system." *Id.* § 4, 43 Stat. at 975. Although the statute allowed the Commission to modify the design that it initially submitted to Congress in 1924 "without increasing the total cost of the project," *id.* § 1, 43 Stat. at 974, the Commission's design neither initially nor in its final form included a monumental arch. PSOMF ¶ 26; Sansone Decl. Exhs. Q, R.

The project that Congress authorized in the 1925 Act was completed over ninety years ago. Arlington Memorial Bridge opened for use on January 18, 1932, within the ten-year timeframe set by Congress, PSOMF ¶ 25; Sansone Decl. Exh. P, and the Arlington Memorial Bridge Commission was accordingly abolished the following year, *see* Exec. Order No. 6166, § 2 (June 10, 1933). The project nearly reached the expenditure cap set by Congress, coming in at a total cost of $12.2 million. PSOMF ¶ 25; Sansone Decl. Exh. P. And, following the project's completion, the land around Arlington Memorial Bridge reverted to the park system as planned. *See* PSOMF ¶ 2; ECF 24-1 (Fisher Decl.) ¶ 2.

Defendants' assertion that the 1925 Act authorizes the Executive Branch to build *new* structures in the vicinity of Arlington Memorial Bridge—indefinitely into the future, and at whatever cost—has no basis in the statute. Defendants are therefore "plainly act[ing] in excess of [their] delegated powers" by working toward construction of a monumental arch that Congress has not authorized. *Fed. Express Corp.*, 39 F.4th at 763 (quoting *Nyunt v. Chairman, Broad. Bd. of*

14

*Govs.*, 589 F.3d 445, 449 (D.C. Cir. 2009)). In the absence of a statutory basis to build the arch, Defendants' actions lack legal authority. This Court should therefore grant summary judgment in favor of Plaintiffs on their ultra vires claim. *Nat'l Trust*, 2026 WL 877779, at *10 (holding that, in the absence of "*some* statutory basis" for the President to initiate a construction project, a court "could find the President's actions" to direct construction "*ultra vires* on that basis alone"); *see McAnnulty*, 187 U.S. at 108 (observing that "[t]he acts of all [federal] officers must be justified by some law").

**C.** In addition, Plaintiffs are entitled to summary judgment on their ultra vires claim because Defendants' actions to construct the arch are "contrary to … specific [statutory] prohibition[s] … that [are] clear and mandatory." *Fed. Express Corp.*, 39 F.4th at 763 (quoting *Nyunt*, 589 F.3d at 449); *see Nuclear Regulatory Comm'n*, 605 U.S. at 681 (reaffirming that an ultra vires claim is available under such circumstances). In particular, the arch violates specific prohibitions in both the Commemorative Works Act and 40 U.S.C. § 8106.

The Commemorative Works Act sets forth a mandatory process for establishing a commemorative work on land administered by NPS in certain areas in and around Washington, DC, including land located in a region that has been designated as "Area I." 40 U.S.C. § 8903(a); *see id.* §§ 8901(4), 8902(a)(2). Any such work must be "specifically authorized by law," *id.* § 8903(a)(1), and assigned a congressionally designated sponsor responsible for fulfilling the Act's procedural steps, *see, e.g.*, *id.* § 8905(a) (describing requirements that "[a] sponsor authorized by law to establish a commemorative work in the District of Columbia and its environs" must meet before "request[ing] a permit for construction of the commemorative work"); *id.* § 8902(a)(4) (making clear that a sponsor must be "authorized by Congress"). And for works that will be sited in Area I specifically, additional congressional authorization is required. *See id.* § 8908(b)(1)

15

(explaining that a commemorative work may be sited in Area I only if the Secretary of the Interior or the Administrator of General Services so recommends and Congress approves the recommendation "by law not later than 150 calendar days" after receiving it).

Defendants' arch violates these statutory requirements. The arch is intended as a commemorative work within the meaning of the Act because it will be a "monument[] … or other structure or landscape feature[] … designed to perpetuate in a permanent manner the memory of an … event or other significant element of American history"—namely, the Nation's 250th anniversary. *Id.* § 8902(a)(1); *see, e.g.*, PSOMF ¶ 13 & Sansone Decl. Exh. D (citing a White House fact sheet stating that the arch is intended to "coincide with the 250th anniversary"); PSOMF ¶ 15 & Sansone Decl. Exh. N (reporting on a White House email stating that the height of the 250-foot arch is meant to serve as a "recognition of America's 250th birthday"); PSOMF ¶ 16 & Sansone Decl. Exh. E (citing a social media post by the President with a picture of the arch and a caption reading "Celebrating 250 Years of America!"); PSOMF ¶ 17 (citing statements from the White House press secretary that the arch is "in honor of 250 years" and is "a monument for every American to celebrate 250 years of our nation's proud history"); PSOMF ¶ 19 (citing a statement from an official at the Department of the Interior that "[t]he intent of the arch is a celebration in America of 250 years of greatness, freedom, and posterity").[4] And because the Memorial Circle is NPS-administered land that falls within Area I, *see* PSOMF ¶¶ 2–3, the arch cannot lawfully be built there unless Congress has "specifically authorized [it] by law," 40 U.S.C. § 8903(a)(1), designated a sponsor, and approved a recommendation that the arch be sited in

---

[4] As with Defendants' statements regarding their plan to build an arch in Memorial Circle, *see supra* p. 11 n.3, this Court can consider Defendants' statements regarding the arch's commemorative purpose, both because they are statements of a party opponent, *see* Fed. R. Evid. 801(d)(2), and because they convey the intent of the declarant, *see* Fed. R. Evid. 803(3).

16

Area I, *see id.* § 8908(b)(1). Defendants, however, are moving steadily toward construction of the arch, *see* PSOMF ¶¶ 6–12, even though Congress has not authorized it, *id.* ¶ 20; *see supra* pp. 13–15, has not appointed a sponsor, PSOMF ¶ 21, and has not approved construction in Area I, *id.* ¶ 22. And Defendants have made clear that they intend to proceed without complying with these requirements. Indeed, just last week, President Trump stated that "[w]e don't need anything from Congress" before building the arch. *Id.* ¶¶ 27–28; Sansone Decl. Exh. F.

Defendants' actions also violate 40 U.S.C. § 8106, which provides that "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." The arch is a "structure" that Defendants plan to "erect[]" on Memorial Circle, which is a "park[] or public grounds of the Federal Government in the District of Columbia." *Id.*; *see* PSOMF ¶¶ 1–4; Sansone Decl. Exhs. A, B. Again, Defendants have not received, and do not intend to seek, congressional authorization for the project. *See supra* pp. 13–15; PSOMF ¶¶ 20–22, 27–28.

Defendants' failure to comply with the statutory requirements of both the Commemorative Works Act and 40 U.S.C. § 8106 provides an alternative and independent basis for concluding that Defendants' actions are ultra vires and that Plaintiffs are entitled to judgment.

## III. Plaintiffs are entitled to summary judgment on their constitutional claim.

By flouting the statutory prohibitions in the Commemorative Works Act and 40 U.S.C. § 8106, President Trump is also violating his "constitutionally appointed duty to 'take care that the laws be faithfully executed.'" *Morrison v. Olson*, 487 U.S. 654, 690 (1988) (quoting U.S. Const. art. II, § 3). Because "Congress has … exclusive constitutional authority to make laws necessary and proper to carry out the powers vested by the Constitution" in the federal government, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588–89 (1952), the President's role as the

17

head of the Executive Branch is to give effect to Congress's legislative choices by implementing them according to their terms. *See* David M. Driesen, *Judicial Review of Executive Orders' Rationality*, 98 Bos. Univ. L. Rev. 1013, 1044 (2018) (observing that "[f]aithful law execution requires reasonable decisions conforming to a statute" and "connotes service to something beyond one's own preferences," namely, "the policy decisions of previous lawmakers").

Where the President disregards Congress's laws in favor of his own policy objectives, in contrast, he breaches the duty that he owes to the American people to execute congressional will in good faith. *See, e.g.*, *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 612–13 (1838) (rejecting the idea that a presidential assertion of "power entirely to control the legislation of [C]ongress" is consistent with "the obligation imposed on the President to see the laws faithfully executed"); *Youngstown*, 343 U.S. at 587 ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker."); *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014) (stating that it would "deal a severe blow to the Constitution's separation of powers" to let the President reject "clear statutory terms").

This case presents just such a breach. In the Commemorative Works Act and 40 U.S.C. § 8106, Congress formalized its longstanding oversight role in determining the configuration of monuments and other structures on federal lands in Washington, DC. *See supra* pp. 4–5. The President's constitutional duty, then, is to execute those statutes by guarding against the construction of unauthorized structures on federal land in the capital. Here, the President has done the opposite: He has announced and steadily advanced plans to construct an unauthorized structure of his own. Although the President has broad discretion in deciding how to allocate finite enforcement resources, *cf. Heckler v. Chaney*, 470 U.S. 821, 831 (1985), or how to "interpret[] a statute and direct[] the details of its execution," *J.W. Hampton, Jr. & Co. v. United States*, 276

18

U.S. 394, 406 (1928), he has no authority to openly defy Congress's prohibitions altogether. *See Youngstown*, 343 U.S. at 588 (holding that a presidential order was unconstitutional where it "d[id] not direct that a congressional policy be executed in a manner prescribed by Congress—[but] direct[ed] that a presidential policy be executed in a manner prescribed by the President").

Plaintiffs have an implied right of action under the Constitution to challenge the President's abdication of his constitutional duty under the Take Care Clause. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (recognizing that courts may evaluate "separation-of-powers claim[s]," like other constitutional claims, even absent a statutory cause of action); *cf. United States v. Texas*, 577 U.S. 1101 (2016) (granting certiorari and requesting briefing on whether a challenged presidential policy "violates the Take Care Clause of the Constitution"). Because the undisputed facts establish such an abdication here, Plaintiffs are entitled to summary judgment on their constitutional claim.

## IV.     Plaintiffs are entitled to declaratory and injunctive relief.

Upon granting summary judgment for Plaintiffs, this Court should enter an order declaring that Defendants' actions to construct an unauthorized arch in Memorial Circle are unlawful and enjoining Defendants Haley, Executive Office of the President, and NPS from taking any further steps toward the arch's construction unless and until Congress authorizes the arch.

**A.** As for declaratory relief, this Court has the authority to "declare the rights and other legal relations" of the parties before it. 28 U.S.C. § 2201(a). Although this Court has discretion as to whether to grant such relief, *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), a declaratory judgment "serves important functions," including "clarifying the legal relations" between the parties and ensuring that a defendant does not engage in unlawful conduct in the future, *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1366–67

19

(D.C. Cir. 2023). Entering declaratory judgment in this case will advance those important purposes by clarifying Defendants' legal obligations and ensuring respect for the laws.

**B.** As for injunctive relief, this Court has authority to enjoin Executive Branch officials, even where they are acting pursuant to the President's directives. *See, e.g.*, *Youngstown*, 343 U.S. at 589 (affirming an injunction that barred the Secretary of Commerce from acting pursuant to an Executive Order that violated the separation of powers); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) ("[A]ny conflict between the desire to avoid confronting the elected head of a coequal branch of government and to ensure the rule of law can be successfully bypassed, [where] the injury at issue can be rectified by injunctive relief against subordinate officials."). In deciding whether to grant such relief, this Court should consider whether Plaintiffs have shown that, absent an injunction, they will suffer irreparable injury that cannot be redressed by money damages, that the balance of hardships tips in Plaintiffs' favor, and that an injunction would not disserve the public interest. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Anatol Zukerman*, 64 F.4th at 1364 (noting that, "[w]hen the defendant is the government," the balance-of-hardship and public-interest factors "merge"). Here, the equitable factors squarely favor Plaintiffs.

First, Plaintiffs will suffer irreparable injury absent an injunction. As explained above, *supra* Part I, Defendants' arch will inflict profound aesthetic harm on Plaintiffs by interfering with a symbolic landscape that holds great personal meaning. An aesthetic injury of this sort, like environmental harm, "by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). "If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction." *Id.*; *cf. Nat'l Trust*, 2026 WL 877779, at *15 n.19

(recounting the "cautionary tale" of a case where a court declined to enjoin a construction project and an unlawful structure that was "too costly to remove" was allowed to be built and to remain in place indefinitely as a result).

Second, Defendants will suffer no cognizable harm from a preliminary injunction. After all, "[i]t is well established that the Government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (quoting *Open Cmtys. Alliance v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017)). The requested injunction would not bar the government from building an *authorized* monument to commemorate the Nation's 250th anniversary or from lawfully commemorating the anniversary in other ways.

Third, requiring congressional authorization prior to construction serves the public interest. Preserving Congress's role in authorizing the design and siting of commemorative works and other structures on federal land in our national capital will ensure democratic accountability and a measure of consensus in determining the symbolic configuration of those landmarks and the national narrative that they convey. Defendants' arch has drawn a strong response not only from Plaintiffs but from other interested members of the public too. Of the roughly 1,600 public comments submitted to the Commission of Fine Arts regarding the arch, all but three opposed the project—and only one unequivocally supported it. PSOMF ¶¶ 36–39. To be sure, many Americans doubtless favor Defendants' arch. But requiring Defendants to comply with the requirements of the Commemorative Works Act and 40 U.S.C. § 8106 will ensure that *all* Americans have the opportunity to make their voices heard through their representatives in Congress and will accordingly confer public legitimacy on whatever monument, if any, is ultimately authorized.

21

**CONCLUSION**

This Court should grant Plaintiffs' motion for summary judgment, declare construction of the arch unlawful, and enjoin Defendants Haley, Executive Office of the President, and NPS from constructing or taking any steps toward constructing a monumental arch in Memorial Circle unless and until Congress has expressly authorized the project by statute and all statutory and regulatory requirements have been satisfied.

Dated: May 27, 2026

Respectfully submitted,

/s/ Nicolas Sansone
Nicolas Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

22