**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MICHAEL LEMMON, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 26-cv-544 (TSC) |
| v. | ) ) ) | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY SUMMARY JUDGMENT BRIEFING OR,** |
| DONALD J. TRUMP, et al., | ) ) ) | **ALTERNATIVELY, TO EXTEND THEIR RESPONSE DEADLINE** |
| Defendants. | ) ) ) | |

## I.    The Court Should Grant The Requested Stay.

Plaintiffs do not disagree with any caselaw in Defendants' stay motion. *See generally* Dkt. 39, Opp'n. They concede that courts in this District routinely stay briefing on summary judgment motions pending resolution of a threshold motion to dismiss. *See* Dkt. 37, Mot. 2–5. And they never dispute that challenging ongoing planning "would wreak havoc with the normal operations of agencies and the executive branch." Mot. 5 (quoting *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20–21 (D.C. Cir. 2006)).

Having no caselaw on their side, Plaintiffs also lack any equitable reason for denying the stay. They concede that they will suffer no injury from the stay—save for potentially filing another motion—as construction will not proceed unless and until the National Park Service (NPS) issues a final decision. *Compare* Mot. 5 (citing Dkt. 26), *with* Opp'n 3. Plaintiffs' focus on overlapping legal questions between the two motions, *see* Opp'n 3–4, demonstrates no injury as Plaintiffs have no right to file a sur-reply to Defendants' motion to dismiss.

Plaintiffs wrongly suggest that judicial economy favors the Parties briefing (and the Court deciding) their summary judgment motion now—before they have suffered any injury and Defendants have been afforded any discovery—to *potentially* forestall future motion practice. *See* Opp'n 3–4. Not so. The most efficient course is the one typically followed by courts in this District: resolving threshold jurisdictional disputes before briefing the merits. And should NPS authorize arch construction in a future decision, Plaintiffs do not dispute that they would need to file another motion, as agency actions must be reviewed on their stated basis, not a record established for the first time in a reviewing court, much less a judicial record established before the agency even acted. *See* Mot. 5.

Plaintiffs' desire to hurry up Defendants' decision-making process demonstrates the very harm that denying a stay would impose on Defendants. In pushing for summary judgment based

1

on "the only statutory authorization that Defendants have invoked" to date, Opp'n 3, they seek to force Defendants to make legal decisions on Plaintiffs' arbitrary briefing timeline. And they attempt to force NPS to disclose how it intends to act in the future before it has made a final decision. *See* Dkt. 26-2 ¶ 28 (proposing that Defendants respond to allegedly undisputed fact that "Defendants do not intend to await further action from Congress before constructing the arch"). Forcing such disclosures of internal deliberations—before NPS has concluded its decision-making process—would "wreak havoc" on the Executive Branch. *Fund for Animals*, 460 F.3d at 20–21. Just as the Executive Branch does not seek disclosure of preliminary drafts of judicial opinions, the Judicial Branch should afford its co-equal branch the respect of protecting the confidentiality of pre-decisional Executive Branch deliberations.

Additionally, Plaintiffs concede that briefing summary judgment now would deprive Defendants of their right to depose Plaintiffs to evaluate their alleged standing to bring this case. *See* Mot. 5–6. And Defendants cannot know whether "the case may turn on factual disputes" before they have been afforded the opportunity to take discovery. *Contra* Opp'n 4. Plaintiffs never explain how briefing now accords with Federal Rule of Civil Procedure 56(d), much less avoids harm to Defendants by foreclosing such discovery into standing.

Despite these substantial harms to Defendants, Plaintiffs oppose a stay because "Defendants have moved rapidly to advance the arch toward construction" by submitting planning proposals to third-party agencies like the Federal Aviation Administration, Commission of Fine Arts, and the National Capital Planning Commission. Opp'n 2. Although Plaintiffs now claim these planning actions demonstrate that "Defendants are *currently* engaged in ultra vires action," *id.* at 4, their Complaint alleges the opposite—that these planning processes are legally required, *e.g.*, Dkt. 1, Compl. ¶ 27 ("other statutory provisions subject plans to construct monuments in the

District of Columbia to consultation and review by the National Capital Planning Commission and the Commission of Fine Arts"); *id.* ¶ 45 (claiming that the height of the proposed arch "requir[es] notice to the Federal Aviation Administration"). Accepting Plaintiffs' theory risks creating a perverse incentive that would encourage plaintiffs to challenge non-final agency actions. The agencies' attempts to follow compliance processes that pre-date final agency action would then be used against them as plaintiffs urge the courts to issue premature decisions. This theory, and the incentive it would create, is fundamentally at odds with judicial review of Executive Branch action. Regardless of Plaintiffs' sudden about-face, our point remains: these *planning* processes inflict no harm on Plaintiffs, who allege harm only from arch *construction*, which indisputably will not occur before NPS issues a final agency action authorizing construction.

In sum, the Court should follow the typical approach in this District and stay summary judgment briefing pending resolution of Defendants' motion to dismiss, as that stay would inflict no harm on Plaintiffs and avoid substantial prejudice to Defendants.

## II.    Alternatively, The Court Should Grant The Requested Extension.

Should the Court deny the stay, Defendants respectfully request that the Court extend their deadline by 21 days from the Court's ruling on their stay request. Although Plaintiffs' proffered one-week extension to June 17 is slightly better than no extension at all, it would not avoid the harm to Defendants of requiring them to expend scarce resources opposing Plaintiffs' summary judgment motion while the Court considers Defendants' motion to stay. Plaintiffs' claim that one more week should suffice "given the near-total overlap between the issues presented by" both motions, Opp'n 5, wrongly assumes that Plaintiffs already know the bases on which Defendants will oppose their summary judgment motion. But Defendants anticipate briefing substantial new questions of law, such as the availability of Plaintiffs' requested remedies as well as Defendants' sovereign immunity, in response to Plaintiffs' summary judgment motion. And the proffered one-

week extension would stymy coordination within the Executive Branch on an opposition to a motion requesting the truly extraordinary remedy of a permanent injunction against the Executive Office of the President. Given the serious nature of Plaintiffs' requested remedy and the lack of any current injury to Plaintiffs, Defendants respectfully submit that their requested extension is more appropriate.

DATE: June 3, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General

 */s/ Michael S. Sawyer*
MICHAEL S. SAWYER, Senior Attorney
DANIEL LUECKE, Trial Attorney
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-353-5134
E-mail: michael.sawyer@usdoj.gov
        daniel.luecke@usdoj.gov

*Counsel for Defendants*

4