# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL LEMMON, et al.,

   *Plaintiffs*,

  v.

DONALD J. TRUMP, et al.,

   *Defendants*.

Civil Action No. 26-CV-00544-TSC

**BRIEF OF THE DISTRICT OF COLUMBIA, THE COMMONWEALTH OF VIRGINIA, THE STATES OF ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MINNESOTA, NEVADA, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON, AND THE COMMONWEALTH OF MASSACHUSETTS AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

JAY JONES
Attorney General of Virginia

MEGAN C. KEENAN [1672508]
Deputy Solicitor General
202 North Ninth Street
Richmond, VA 23219
Phone: (804) 997-5222
Email: MKeenan@oag.state.va.us

BRIAN L. SCHWALB
Attorney General for the District of Columbia

MITCHELL P. REICH [1044671]
ELIZA H. SIMON [90035651]
Senior Counsels to the Attorney General
KARTHIK P. REDDY [1048848]
Special Assistant Attorney General
NICOLE HILL [888324938]
REBECCA BARNES [988432]
Assistant Attorneys General
400 6th Street NW
Washington, DC 20001
Phone: (202) 727-3400
Email: Karthik.Reddy@dc.gov

(Additional Counsel Listed on Signature Page)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

STATEMENT OF INTEREST OF AMICI CURIAE ...................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.     The District of Columbia Is a Capital for All Americans ........................................ 2

    II.    Congressional Approval of Monuments Safeguards the Capital's National
        Character .................................................................................................................. 5

    III.   The Planned Arch Raises Substantial Concerns that the Statutory Process
        Would Address .......................................................................................................... 8

CONCLUSION.................................................................................................................. 11

i

**TABLE OF AUTHORITIES**

*Constitutional Provisions*

U.S. Const. art. I, § 8............................................................................................1, 5

*Statutes*

40 U.S.C. § 8106............................................................................................ 7

40 U.S.C. § 8901............................................................................................ 6, 7

40 U.S.C. § 8903............................................................................................ 1, 6

40 U.S.C. § 8904............................................................................................ 7

40 U.S.C. § 8905............................................................................................ 7

40 U.S.C. § 8906............................................................................................ 7

40 U.S.C. § 8908............................................................................................ 7

Res. of Aug. 7, 1783, 24 J. Cont. Cong. 492..................................................5

Act of July 14, 1832, ch. 222, 4 Stat. 580 ......................................................3

J. Res. of Jan. 31, 1848, Res. No. 1, 9 Stat. 333 .............................................3

J. Res. of Aug. 11, 1848, Res. No. 25, 9 Stat. 340...........................................3

Act of Jan. 25, 1853, ch. 30, 10 Stat. 153 .......................................................5

Sundry Civil Appropriations Act of June 23, 1874, ch. 455, 18 Stat. 204 .......................................3

Sundry Civil Appropriations Act of July 31, 1876, ch. 246, 19 Stat. 102........................................3

Act of Aug. 2, 1876, ch. 250, 19 Stat. 123 .......................................................3

J. Res. of May 3, 1902, Pub. Res. No. 19, 32 Stat. 740 ....................................4

Height of Buildings Act of 1910, Pub. L. No. 196, 36 Stat. 452 .......................................9

Act of Feb. 9, 1911, Pub. L. No. 346, 36 Stat. 898...........................................4

Sundry Civil Appropriations Act of Aug. 24, 1912, Pub. L. No. 62-302, 37 Stat. 417 ..................6

H.R.J. Res. 154, Pub. Res. No. 26, 40 Stat. 500 (1918) ...................................4

Act of Feb. 24, 1925, Pub. L. No. 66-463, 43 Stat. 974 ................................................................ 8

H.R.J. Res. 502, Pub. L. No. 86-484, 74 Stat. 154 (1960).................................................. 4

H.R.J. Res. 712, Pub. L. No. 87-842, 76 Stat. 1079 (1962).............................................. 7–8

H.R.J. Res. 858, Pub. Law No. 93-211, 87 Stat. 909 (1973) ............................................ 5

Act of Apr. 17, 1978, Pub. L. No. 95-260, 92 Stat. 197.................................................... 5

S.J. Res. 119, Pub. L. No. 96-297, 94 Stat. 827 (1980) ................................................... 4

S.J. Res. 95, Pub. L. No. 97-224, 96 Stat. 243 (1982) ..................................................... 5

H.R.J. Res. 482, Pub. L. No. 98-534, 98 Stat. 2712 (1984)............................................. 4

Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (1986) ................................. 6–8

H.R.J. Res. 320, Pub. L. No. 102-412, 106 Stat. 2104 (1992)......................................... 4

Act of May 25, 1993, Pub. L. No. 103-32, 107 Stat. 90 ................................................. 4

Native American Veterans' Memorial Establishment Act of 1994, Pub. L. No.
    103-384, 108 Stat. 4067 ........................................................................................... 4

Omnibus Parks & Public Lands Management Act of 1996, Pub. L. No.
    104-33, 110 Stat. 4093 ............................................................................................. 4

Act of Oct. 24, 2000, Pub. L. No. 106-348, 114 Stat. 1358............................................ 4

Consolidated Appropriations Act for 2023, Pub. L. No. 117-328, 133 Stat. 4459 (2022).............. 5

*Rules*

LCvR 7.............................................................................................................................1

*Legislative History*

S. Rep. No. 57-166 (1902) ............................................................................................ 6

S. Doc. No. 68-95 (1924) .............................................................................................. 8–9

S. Rep. No. 99-421 (1986)............................................................................................. 5

Hr'g on H.R. 4378 Before the S. Subcomm. on Pub. Lands, Rsrv'd Water & Res.
    Cons. of the Comm. on Energy & Nat. Res., 99th Cong. (1986) ............................................ 7

132 Cong. Rec. 9432 (1986)........................................................................................... 6

132 Cong. Rec. 12777 (1986)......................................................................................... 6

148 Cong. Reg. 23520 (2002).......................................................................................... 8

### Other Authorities

Carl Abbott, *The Future of the Ceremonial City*, 68 J. Am. Plann. Ass'n 125 (2002) ................... 2

Luke Broadwater, *Arts Panel Packed with Trump Allies Approves White House
    Ballroom Project*, N.Y. Times, Feb. 19, 2026........................................................... 9

Glenn Brown, *The Plan of L'Enfant for the City of Washington*,
    12 Rec. Colum. Hist. Soc'y 1 (1909)...................................................................... 6

Dan Diamond, *An Aggressive Timeline Pitched for Arch Project*,
    Wash. Post., June 11, 2026................................................................................... 10

Matthew Goetz, *First Memorial: The Complex Story of Washington, DC's Tripoli
    Monument*, 37:2 Wash. Hist. 32 (2025) ................................................................. 3

Roger C. Hartley, Monumental Harm (2021) .................................................................. 8

Pres. Lyndon B. Johnson, Special Message to Congress on the Needs of the Nation's
    Capital (Feb. 15, 1965), *in* 1965 Pub. Papers 186 (1966)........................................ 2

Pierre Charles L'Enfant, Observations Explanatory, the Plan of the City Intended for the
    Permanent Seat of the Government of the United States (1791)....................................... 3, 11

Nat'l Cap. Mem. Adv. Comm'n, Transcript of Meeting (May 12, 2025)................................... 9

Nat'l Cap. Mem. Adv. Comm'n, Meeting Agenda (July 23, 2025)........................................... 9

Nat'l Cap. Mem. Adv. Comm'n, Transcript of Meeting (Mar. 16, 2026)................................... 9

Nat'l Cap. Planning Comm'n, Public Comments for New Monumental
    Arch (May 29, 2026)............................................................................................ 9–10

Pres. Richard M. Nixon, Special Message to Congress on the District of Columbia
    (Apr. 28, 1969), *in* 1969 Pub. Papers 326 (1971) ................................................. 3

Pres. Franklin D. Roosevelt, Address at the Cornerstone Laying of the Jefferson
Memorial (Nov. 15, 1939), *in* 1939 Pub. Papers & Addresses of Franklin D.
Roosevelt 577 (1941) ............................................................................................... 4

Jacob R. Straus, Cong. Res. Serv., Commemorative Works in the District of
Columbia (2023) ...................................................................................................... 5

## STATEMENT OF INTEREST OF AMICI CURIAE

Washington, D.C., is a capital for all Americans. Its monuments and memorials echo, honor, and celebrate the history of the entire nation, Amici States included. For centuries, Americans from our States and the District of Columbia have defended, shaped, and enriched our nation. Residents of our States have fought in uniform, educated our future leaders, responded to emergencies, and cared for the sick. As States, we share a strong interest in ensuring that our national capital continues to reflect the diverse contributions and experiences of *all* Americans.

Amici curiae the District of Columbia, the Commonwealth of Virginia, the States of Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Minnesota, Nevada, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington, and the Commonwealth of Massachusetts submit this brief under Local Civil Rule 7(o)(1) because, in a break from a long line of precedent, President Trump is moving forward with constructing a major monument in the heart of the capital without congressional authorization. By doing so, the President is disregarding a statute—which Congress enacted in the exercise of its "exclusive" jurisdiction over the District, U.S. Const. art. I, § 8, cl. 17—that requires consultation with District officials and congressional approval before the construction of any new commemorative works in the capital. *See* 40 U.S.C. § 8903(a). This process serves as a crucial safeguard to ensure that new monuments reflect the views of a majority of Americans and do not elevate the interests of one narrow faction over those of the nation. By ignoring that process, the President risks politicizing federal land that should serve as place of national unity. We respectfully request that the Court protect the right of all Americans to participate in the selection of monuments in our nation's capital by granting Plaintiffs' motion for summary judgment.

1

**ARGUMENT**

The Founders envisioned a federal capital that would inspire residents and visitors alike through works that commemorate the contributions of Americans from across the nation.  Over the years, Washington, D.C., has realized that vision with monuments and memorials that honor veterans, civil-rights leaders, innovators, presidents, and law-enforcement officers.  The District today is a place where visitors from every State gather to learn about our history, mourn our losses, reflect on our sacrifices, and celebrate our successes.

Congressional approval of new commemorative works ensures that federal land in the capital will continue to be used to honor our common past, not to rewrite it for the benefit of narrow factions.  The undersigned States are concerned that allowing a President to build a 250-foot monumental arch without approval from Congress will irreversibly undermine the capital's role as a place of national unity.  If Presidents can build whatever monuments and memorials they wish without securing the approval of the representatives of the people and their States, federal land in Washington, D.C., will become yet another partisan frontline.  The result will be a capital that reflects our differences rather than our commonalities, showing the world our divisions rather than our strengths.  Before this arch or any other monument is built in the capital, Americans from every State have a right to weigh in through their elected officials.

I.    **The District of Columbia Is a Capital for All Americans.**

"Our founding fathers not only planned a great nation but a great capital city for that nation." Pres. Lyndon B. Johnson, Special Message to Congress on the Needs of the Nation's Capital (Feb. 15, 1965), *in* 1965 Pub. Papers 186, 186 (1966).  Situated between North and South, facing west, and crisscrossed by intersecting avenues bearing each State's name, Washington, D.C., was designed to unify the nation.  *See* Carl Abbott, *The Future of the Ceremonial City*, 68 J. Am. Plann. Ass'n 125, 125 (2002).  The original L'Enfant Plan envisioned that each State would

2

be represented in public squares "admit[ting] of Statues, Columns, Obelisks, or . . . other monuments" to "perpetuate . . . the memory of such individuals, whose Counsels, or military achievements, were conspicuous in giving liberty and independence to this Country" and honoring others "worthy of general imitation," to inspire "the youth of succeeding generations." Pierre Charles L'Enfant, Observations Explanatory, the Plan of the City Intended for the Permanent Seat of the Government of the United States (1791).

This vision of a unifying capital took shape in the decades that followed. In 1832, Congress sited a monument on the Capitol grounds to remember sailors lost in the Tripolitan War. Matthew Goetz, *First Memorial: The Complex Story of Washington, DC's Tripoli Monument*, 37:2 Wash. Hist. 32, 36 (2025). The structure, the District's first tribute to our nation's military heroes, *id*., was soon followed by the Washington Monument, an equestrian statue honoring President Jackson, the Emancipation Memorial, and a monument commemorating the nation's Civil War losses. Collectively, these structures honored the struggles and sacrifices of early Americans from different backgrounds and corners of the country, and each work received Congress's approval. *See* Act of July 14, 1832, ch. 222, 4 Stat. 580; J. Res. of Jan. 31, 1848, Res. No. 1, 9 Stat. 333; J. Res. of Aug. 11, 1848, Res. No. 25, 9 Stat. 340; Sundry Civil Appropriations Act of June 23, 1874, ch. 455, 18 Stat. 204, 225; Sundry Civil Appropriations Act of July 31, 1876, ch. 246, 19 Stat. 102, 114; Act of Aug. 2, 1876, ch. 250, 19 Stat. 123.

Over the decades that followed, Congress authorized dozens of additional works in the capital to perpetuate the memory of Americans across generations who sacrificed for, contributed to, and enriched our nation. Today, Washington, D.C., stands as a "proud physical symbol of our Nation's liberties and its hopes," Pres. Richard M. Nixon, Special Message to Congress on the District of Columbia (Apr. 28, 1969), *in* 1969 Pub. Papers 326, 332 (1971), and represents the

3

"many-sided interests" of a diverse people who span "the whole width of the continent," Pres. Franklin D. Roosevelt, Address at the Cornerstone Laying of the Jefferson Memorial (Nov. 15, 1939), *in* 1939 Pub. Papers & Addresses of Franklin D. Roosevelt 577, 578 (1941).  More than one hundred monuments tell the story of the Civil War, the struggle for civil rights, and Americans' defense of freedom here and abroad.  *See, e.g.*, J. Res. of May 3, 1902, Pub. Res. No. 19, 32 Stat. 740 (Grand Army of the Republic Memorial); H.R.J. Res. 154, Pub. Res. No. 26, 40 Stat. 500 (1918) (Nuns of the Battlefield Memorial); H.R.J. Res. 320, Pub. L. No. 102-412, 106 Stat. 2104 (1992) (African American Civil War Memorial); Act of May 25, 1993, Pub. L. No. 103-32, 107 Stat. 90 (National World War II Memorial); Omnibus Parks & Public Lands Management Act of 1996, Pub. L. No. 104-33, § 508, 110 Stat. 4093, 4157 (Martin Luther King, Jr., Memorial).  These monuments honor servicemembers, educators, presidents, and law-enforcement officers from every part of the nation.  *See, e.g.*, Act of Feb. 9, 1911, Pub. L. No. 346, 36 Stat. 898 (Lincoln Memorial); H.R.J. Res. 502, Pub. L. No. 86-484, 74 Stat. 154 (1960) (Mary McLeod Bethune Memorial); S.J. Res. 119, Pub. L. No. 96-297, 94 Stat. 827 (1980) (Vietnam Veterans Memorial); H.R.J. Res. 482, Pub. L. No. 98-534, 98 Stat. 2712 (1984) (National Law Enforcement Officers Memorial); Native American Veterans' Memorial Establishment Act of 1994, Pub. L. No. 103-384, 108 Stat. 4067; Act of Oct. 24, 2000, Pub. L. No. 106-348, 114 Stat. 1358 (American Veterans Disabled for Life Memorial).  And they have served as the backdrop for our nation's most stirring moments: the Bonus Army camping in the shadows of the Washington Monument, Marian Anderson's performance of "My Country, 'Tis of the Thee" on the steps of the Lincoln Memorial, and Dr. King's "I Have a Dream" speech, among others.

In short, Washington, D.C., represents all Americans.  Every year, more than twenty million Americans from every State and territory gather in the capital to mourn their losses, reflect

4

on common sacrifices, learn about their history, and celebrate their successes.  Washington, D.C., presents the nation's rich heritage to more than 180 diplomatic missions and to millions of foreign visitors who visit the region annually.  It tells the story of all Americans, and the undersigned States share an interest in ensuring that it continues to do so for generations to come.

## II.     Congressional Approval of Monuments Safeguards the Capital's National Character.

Since the founding era, the planning of new public monuments and memorials in Washington, D.C., has been a national project involving the States' elected representatives. Consistent with the Founders' vesting of Congress with "exclusive" authority over the District of Columbia "in all Cases whatsoever," U.S. Const. art. I, § 8, cl. 17, monuments on federal public lands in the city have long been erected with approval from Congress.  Whether subtle or immense, planned in the earliest days of the nation or proposed during this decade, more than one hundred commemorative works in the national capital have received congressional approval.  Jacob R. Straus, Cong. Res. Serv., Commemorative Works in the District of Columbia 1 (2023); S. Rep. No. 99-421, at 4 (1986); *see, e.g.*, Res. of Aug. 7, 1783, 24 J. Cont. Cong. 492, 494 (equestrian statue of George Washington); Act of Jan. 25, 1853, ch. 30, 10 Stat. 153 (same); H.R.J. Res. 858, Pub. Law No. 93-211, 87 Stat. 909 (1973) (Lyndon B. Johnson Memorial Grove); Act of Apr. 17, 1978, Pub. L. No. 95-260, 92 Stat. 197 (Memorial to the Signers of the Declaration of Independence); S.J. Res. 95, Pub. L. No. 97-224, 96 Stat. 243 (1982) (Franklin Delano Roosevelt Memorial); Consolidated Appropriations Act for 2023, Pub. L. No. 117-328, div. DD, tit. VII § 707, 133 Stat. 4459, 5620 (2022) (proposed work to remember victims of the Middle Passage).

Congress has repeatedly reaffirmed its role in ensuring that the capital remains faithful to the Founders' vision of a place for all Americans.  By the turn of the twentieth century, decades of haphazard development left the capital's residents with neglected public spaces, industrial

encroachment, and a train station on the National Mall.  Glenn Brown, *The Plan of L'Enfant for the City of Washington*, 12 Rec. Colum. Hist. Soc'y 1, 9, 18 (1909).  In 1901, the Senate, under the leadership of Senator James McMillan, created the Senate Park Commission to propose reforms to bring the city back into line with the Founders' vision.  *Id.* at 10.  In explaining the resulting McMillan Plan, Senator McMillan emphasized that it was "essential" to the capital's character that "[n]o work should be entered into without the preparation of detailed plans" and without approval "by the highest possible authority."  S. Rep. No. 57-166, at 18 (1902).  A decade later, Congress took up the McMillan Plan's cause and expressly provided in law that no "building or structure" could be "erected on any reservation, park, or public grounds, of the United States within the District of Columbia" without Congress's approval.  Sundry Civil Appropriations Act of Aug. 24, 1912, Pub. L. No. 62-302, 37 Stat. 417, 444 (codified as amended at 40 U.S.C. § 8106).

Congress reiterated its role seventy-four years later.  Seeking to preserve a capital that both "embod[ies] our ideals" and respects the needs of "[l]ocal residents and visitors," 132 Cong. Rec. 9432 (1986) (Rep. Vento); *id.* at 12777 (Sen. Wallop), Congress enacted the Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (1986), which established standards to guide decisions on which memorials should be approved and where they should be sited.  These guidelines "ensure that future commemorative works" in the nation's capital "are appropriately designed, constructed, and located," and that they "reflect a consensus of the lasting national significance of the subjects involved."  40 U.S.C. § 8901(4); 132 Cong. Rec. 12777 (1986) (Sen. Wallop).

To that end, the Act reaffirmed that new commemorative works in the capital's monumental core and parts of northern Virginia must be specifically authorized by Congress.  40 U.S.C. § 8903(a)(1).  It reserved certain areas—Memorial Circle included—for those works that

honor subjects "of preeminent historical and lasting significance to the United States." *Id.* § 8908(b)(1). And it created a formal approval process that requires extensive consultation with several entities, including the Commission of Fine Arts and the National Capital Memorial Advisory Commission, which includes the Mayor of the District of Columbia. *Id.* §§ 8904(a)(6), 8905(a)(1)–(2), 8906(a)(1), 8908(b)(1).

Congress's decision to involve District officials in this approval process was notable. Before Congress enacted the Commemorative Works Act, an "unprecedented" number of proposals for new memorials threatened to disrupt not only the McMillan Plan but also the daily lives of District residents, who rely on the capital's "limited amount of open space" for recreation and the needs of daily life. 40 U.S.C. § 8901(3); Hr'g on H.R. 4378 Before the S. Subcomm. on Pub. Lands, Rsrv'd Water & Res. Cons. of the Comm. on Energy & Nat. Res., 99th Cong. 7, 22 (1986). The city's officials are uniquely capable of assessing whether new monuments will disrupt residents' daily lives and upset the plan for the capital in which they live and work. And local residents and their leaders are attuned to challenges, and able to offer constructive solutions, that executive branch officials unfamiliar with the capital may not otherwise recognize.

Over the years, the Commemorative Works Act and 40 U.S.C. § 8106 have proven to be crucial safeguards ensuring that monuments in the nation's capital reflect the views of every State and its residents. The requirement that the States' representatives in Congress approve monuments and memorials guarantees that new works have the support of the nation, leaving a legacy for future generations that honors our common past. In 1962, for instance, amid concerns that a controversial plan for the Franklin Delano Roosevelt Memorial did not appropriately honor the late President's legacy, Congress directed the sponsors to reconsider the design, paving the way for the respectful sequence of outdoor rooms that flanks the Tidal Basin today. H.R.J. Res. 712,

Pub. L. No. 87-842, 76 Stat. 1079 (1962).  When the sponsors of the World War II Memorial initially proposed to erect fifty pillars honoring veterans from each State, Congress corrected their oversight by adding six pillars to acknowledge veterans from American Samoa, the District of Columbia, Guam, Puerto Rico, the U.S. Virgin Islands, and the Philippines.  *See* 148 Cong. Reg. 23520 (2002) (Del. Underwood).  And in 1924, the House of Representatives put an end to a widely derided bill that would have placed a monument to domestic slavery in the heart of the capital.  Roger C. Hartley, Monumental Harm 79 (2021).  As these examples show, the congressional approval process gives every State and the District a valuable voice in their shared capital.

### III.    The Planned Arch Raises Substantial Concerns that the Statutory Process Would Address.

Consistent with the Commemorative Works Act and Congress's "exclusive" jurisdiction over the capital, U.S. Const. art. I, § 8, cl. 17, the President must comply with the statutory review process and obtain congressional approval before building an arch at Memorial Circle.  Monument sponsors in prior administrations have followed this process and obtained Congress's authorization before adding new commemorative works to the capital.  Doing so here will ensure that the conception and design of the arch reflect input from every State and the District, and that the arch conveys a common message endorsed by the nation.

However, administration officials have reportedly confirmed that the President will not be seeking congressional approval before starting construction on the arch, citing a 101-year-old law that authorized a now-defunct commission to construct Memorial Bridge.  Dkt. 36-9 at 3.  That law—which called for the bridge to be built on a "ten-year program"—does not mention an arch, and the arch is nowhere to be found in the plan that the commission submitted to Congress.  Act of Feb. 24, 1925, Pub. L. No. 66-463, 43 Stat. 974, 975; *see* S. Doc. No. 68-95, at 9, 41 (1924)

8

(Report of the Arlington Memorial Bridge Commission) (noting importance of "not interfering with the view of the Lincoln Memorial from the direction of the Lee Mansion").  Nor is it clear that the administration has consulted with the Memorial Advisory Commission, whose review has become even more valuable in the wake of the summary dismissal of all six members of the Commission of Fine Arts.  *See* Luke Broadwater, *Arts Panel Packed with Trump Allies Approves White House Ballroom Project*, N.Y. Times, Feb. 19, 2026, at A13; *see also* Nat'l Cap. Mem. Adv. Comm'n, Transcript of Meeting (May 12, 2025); Nat'l Cap. Mem. Adv. Comm'n, Meeting Agenda (July 23, 2025); Nat'l Cap. Mem. Adv. Comm'n, Transcript of Meeting (Mar. 16, 2026).

The administration's failure to follow the statutory process has already produced the expected results: Individuals across the country, including residents of Amici States, have raised legitimate concerns that the arch fails to meet the criteria for new monuments in the heart of the capital and that its design does not reflect the interests and views of the nation as a whole.  In submissions to the National Capital Planning Commission, commenters have overwhelmingly opposed the project, expressing worry that the arch will "insult . . . our veterans" by "overwhelming" Arlington National Cemetery.  Nat'l Cap. Planning Comm'n, Public Comments for New Monumental Arch 113, 171 (May 29, 2026).  Several have raised concern that the arch will block the view from the Lincoln Memorial to Arlington House, with one veteran explaining that this line of sight was specifically "designed to represent the post-Civil War reconciliation of the north and south of the United States." *Id.* at 25.  Others have lamented that the arch, which far exceeds the general 130-foot limit set by the Height of Buildings Act of 1910, Pub. L. No. 196, 36 Stat. 452 (codified as amended at D.C. Code § 6-601.05), will tower above other buildings and monuments in the District, overshadowing longstanding structures of deep historical significance. *Id.* at 91.  Still others have questioned the wisdom of spending tens of millions of dollars on an

9

arch at a time when "funding is [being] cut from housing, food, childcare, and health programs." *Id.* at 101.

The public has also expressed concern about disruption to the lives of residents of the District of Columbia, Virginia, and neighboring States. Locals have lamented the loss of their view of the Eternal Flame emanating from Arlington National Cemetery. *Id.* at 10. Many are worried about traffic and the risk of accidents that construction at a major crossing between Washington, D.C., and Virginia would create. *Id.* at 185. Other comments raised safety concerns about building such a tall structure in the vicinity of the flight approach to Reagan National Airport. *Id.* at 88, 135, 159.

These concerns have been echoed by veterans' organizations, architects, aviation experts, and historians from across the nation, but they have gone unaddressed by this administration. Federal officials reportedly plan twenty-hour days of year-round construction, with three-hundred-foot cranes dangerously close to the path of landing planes. Dan Diamond, *An Aggressive Timeline Pitched for Arch Project*, Wash. Post., June 11, 2026, at B16. And reporting suggests that the materials for the project are inconsistent with those used in surrounding monuments. *Id.*

These are serious matters for Amici States that Congress must address. Our residents are pilots and veterans, children on school trips to their capital, tourists, taxpayers, students of history, and commuters trying to get to work. Many have parents, children, and siblings who sacrificed for our country and who are interred and remembered in the National Cemetery. The law requires that representatives of our States, and of all other States in the Union, be allowed an opportunity to consult with their constituents, debate the public's concerns, determine what, if any, changes to make, and ultimately vote on whether to approve the monument. Most importantly, the participation of our elected officials will ensure that any new structure at Memorial Circle is a truly

10

national project that will guide and inspire the "succeeding generations" of Americans who will travel to the capital to learn, live, and remember for centuries to come. Pierre Charles L'Enfant, Observations Explanatory, Plan of the City Intended for the Permanent Seat of the Government of the United States (1791).

## CONCLUSION

For the foregoing reasons, and those in Plaintiffs' brief, the Court should grant the motion for summary judgment.


Dated: June 15, 2026                                      Respectfully submitted,



JAY JONES                                                 BRIAN L. SCHWALB
Attorney General of Virginia                              Attorney General for the District of Columbia

/s/ Megan C. Keenan                                       MITCHELL P. REICH [1044671]
MEGAN C. KEENAN [1672508]                                 ELIZA H. SIMON [90035651]
Deputy Solicitor General                                  Senior Counsels to the Attorney General
202 North Ninth Street
Richmond, VA 23219                                        /s/ Karthik P. Reddy
Phone: (804) 997-5222                                     KARTHIK P. REDDY [1048848]
Email: MKeenan@oag.state.va.us                            Special Assistant Attorney General
                                                          NICOLE HILL [888324938]
                                                          REBECCA BARNES [988432]
                                                          Assistant Attorneys General
                                                          400 6th Street NW
                                                          Washington, DC 20001
                                                          Phone: (202) 727-3400
                                                          Email: Karthik.Reddy@dc.gov



KRIS MAYES                                                ROB BONTA
Attorney General                                          Attorney General
State of Arizona                                          State of California
2005 N. Central Avenue                                    1300 I Street
Phoenix, AZ 85004                                         Sacramento, CA 95814


11

PHILIP J. WEISER
Attorney General
State of Colorado
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General
State of Delaware
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
Attorney General
State of Hawaiʻi
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
Attorney General
State of Illinois
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
Attorney General
State of Maine
6 State House Station
Augusta, ME 04333

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts
One Ashburton Place, 20th Floor
Boston, MA 02108

KEITH ELLISON
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
Attorney General
State of Nevada
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
Attorney General
State of New Mexico
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005

DAN RAYFIELD
Attorney General
State of Oregon
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
Attorney General
State of Vermont
109 State Street
Montpelier, VT 05609

12

NICHOLAS W. BROWN
Attorney General
State of Washington
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7(o), I hereby certify that this brief conforms to the requirements of Local Civil Rule 5.4, complies with the requirements set forth in Federal Rules of Appellate Procedure 29(a)(4), and does not exceed twenty-five pages in length in double-spaced 12-point font.

DATED this the 15th day of June, 2026.

/s/ Karthik P. Reddy
KARTHIK P. REDDY [1048848]
Special Assistant Attorney General
400 6th St. NW
Washington, DC 20001
Phone: (202) 727-3400
Email: Karthik.Reddy@dc.gov

14

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

DATED this the 15th day of June, 2026.

/s/ Karthik P. Reddy
KARTHIK P. REDDY [1048848]
Special Assistant Attorney General
400 6th St. NW
Washington, DC 20001
Phone: (202) 727-3400
Email: Karthik.Reddy@dc.gov