**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **)** | |
| **)** | |
| MICHAEL LEMMON, et al.,    **)** | |
| **)** | |
| Plaintiffs,    **)** | |
| **)** | |
| v.    **)** | Civil Action No. 26-cv-544 (TSC) |
| **)** | |
| DONALD J. TRUMP, et al.,    **)** | |
| **)** | |
| Defendants.    **)** | |
| **)** | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 7(H)(1)**
**STATEMENT OF UNDISPUTED MATERIAL FACTS AND**
**DEFENDANTS' FURTHER STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h)(1), Defendants

Respond to Plaintiffs' Statement of Undisputed Material Facts, Dkt. 36-2, and provide their own

Statement of Material Facts. Defendants object to the applicability of Local Rule 7(h)(1) to this

case, as courts generally do not act as fact finders when reviewing executive action. *See* Comment

to LCvR 7(h) ("This provision recognizes that in cases where review is based on an administrative

record the Court is not called upon to determine whether there is a genuine issue of material fact,

but rather to test the agency action against the administrative record. As a result, the normal

summary judgment procedures requiring the filing of a statement of undisputed material facts is

not applicable."). Plaintiffs attempt to circumvent this requirement by bringing an *ultra vires* claim

before the agency has acted, but their premature claim cannot empower the Court to act as a fact

finder without swallowing the Administrative Procedure Act (APA). *Am. Bioscience, Inc. v.*

*Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("As we have repeatedly recognized, however,

when a party seeks review of agency action under the APA, the district judge sits as an appellate

tribunal. The entire case on review is a question of law." (citation modified)). Plaintiffs' tactic is

1

particularly prejudicial where they challenge unimplemented Presidential desire, as district courts must afford "Presidential confidentiality the greatest protection consistent with the fair administration of justice, and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 382 (2004) (citation modified); *see also In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005) (en banc) (issuing a writ of mandamus directing the district court to dismiss the complaint, rather than oversee civil discovery against the Vice President).

## RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

### Plaintiffs Challenge Discussions About Building An Arch In Memorial Circle.

1.      Memorial Circle is a traffic circle located in Lady Bird Johnson Park in Washington, DC, at the southwest end of Arlington Memorial Bridge, between the Lincoln Memorial and Arlington National Cemetery. (Nat'l Park Serv., *Lady Bird Johnson Park Cultural Landscape* (last updated Oct. 8, 2021) (Sansone Decl. Exh. A).)

**Response:**

Defendants admit this statement.

2.      Memorial Circle is administered by Defendant National Park Service. (Fisher Decl., ECF 24-1, ¶ 2.)

**Response:**

Defendants admit this statement.

3.      Memorial Circle is located within "Area I" of Washington, DC, as defined by the Commemorative Works Act, 40 U.S.C. § 8902(a)(2). (Jacob R. Straus, Cong. Research Serv., *Commemorative Works in the District of Columbia: Background and Practice* at 30 (updated May 8, 2023) (Sansone Decl. Exh. B).)

**Response:**

Defendants admit this statement.

4.      Defendant President Donald J. Trump has stated that he plans to build a monumental arch in Memorial Circle. (*See, e.g.*, Callum Sutherland, *The "Arc de Trump": President Shows Off Plans for His Latest Grandiose D.C. Construction Project*, Time (Oct. 16, 2025) (Sansone Decl. Exh. C); White House, *Fact Sheet: President Donald J. Trump Celebrates American Greatness with the Freedom 250 Grand Prix of Washington, D.C.* (Jan. 30, 2026) (Sansone Decl. Exh. D); Donald J. Trump (@realdonaldtrump), Instagram (Apr. 15, 2026) (Sansone Decl. Exh. E); Rhian Lubin, *Trump Says He Doesn't Need Congress to OK His 250-Foot Arch as Team Says They Authorized It 100 Years Ago*, The Independent (May 21, 2026) (Sansone Decl. Exh. F); *see also* Letter from Dep't of Interior, ECF 31-1.)

**Response:**

Defendants object to the phrase "he plans to build a monumental arch" as being vague and subject to varying interpretations. Defendants further object that Plaintiffs' Exhibits C and F are inadmissible hearsay.[1] And Defendants object that this fact is not material, thus demonstrating the impropriety of using the Local Rule 7(h)(1) process to obtain discovery from the highest levels of the Executive Branch. While Plaintiffs' Exhibit D states that the President had "announced plans" for an arch, the Letter from the Department of Interior confirms, months later, that "the concepts are exploratory," Dkt. 31-1. Further, Memorial Circle is under National Park Service (NPS) jurisdiction and thus arch construction "will

---

[1] "'[N]ewspaper articles clearly fall within the definition of hearsay, and, thus, are inadmissible.'" *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 123 (D.D.C. 2002) (quoting *Eisenstadt v. Allen*, 113 F.3d 1240, 1997 WL 211313 (9th Cir. 1997)) (alteration omitted); *see also Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a New York Times article is admissible evidence of the truthfulness of its contents.").

not begin unless and until NPS follows all applicable legal requirements and issues a final agency action authorizing arch construction to proceed." (Fisher Decl., Dkt. 24-1 ¶¶ 2, 4.)

5.    President Trump has identified Defendant Vince Haley, Director of the White House Domestic Policy Council, as being "in charge of the triumphal arc[h]." (Robert Mackey, *Trump Says Building DC Arch Is Domestic Policy Chief's "Primary Thing,"* The Guardian  (Dec. 14, 2025) (Sansone Decl. Exh. G).)

**Response:**

Defendants object to the phrase "in charge of" as being vague and subject to varying interpretations. Defendants object that Plaintiffs' Exhibit G is inadmissible hearsay. *Supra* n.1. And Defendants object that this fact is not material, thus demonstrating the impropriety of using the Local Rule 7(h)(1) process to obtain discovery from the highest levels of the Executive Branch. Further, Memorial Circle is under NPS) jurisdiction and thus arch construction "will not begin unless and until NPS follows all applicable legal requirements and issues a final agency action authorizing arch construction to proceed." (Fisher Decl., Dkt. 24-1 ¶¶ 2, 4.) NPS is overseen by the United States Secretary of the Interior.

6.    Defendants submitted plans for a 250-foot arch in Memorial Circle to the Commission of Fine Arts for consideration at the April 16, 2026, Commission meeting. (Letter from Dep't of Interior, ECF 31-1; *see* Comm'n of Fine Arts, *Arch Presentation* (Apr. 16, 2026) (Sansone Decl. Exh. H).)

**Response:**

Defendants object to the terms "plans" and "250-foot arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. The Deputy Chief of Staff – Policy for the United States Department of the Interior submitted "a set of conceptual design options" for an arch to the third-party

Commission of Fine Arts for consideration at its April 16, 2026 meeting.  Dkt. 31-1. Those "conceptual design options" were not for a 250-foot-tall arch, but for a 166-foot tall arch surmounted by statues bringing the entire height of the arch and statues to 250 feet. (Sansone Decl. Exh. H, Dkt. 36-11, at ECF p.5.)

7.      At its April 16 meeting, the Commission of Fine Arts approved the concept of building a large monumental arch in Memorial Circle. (Comm'n of Fine Arts, *CFA Meeting—16 April 2026* (linked "Meeting Recording" at 1:41:24–1:41:50), https://www.cfa.gov/records-research/record-cfa-actions/2026/04/cfa-meeting (hereafter, April 16 CFA Meeting Recording); *see* Bowron Decl., ECF 32-1, ¶ 4.)

**Response:**

Defendants object to the phrase "approved the concept of building" and "large monumental arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. At its April 16, 2026 meeting, the third-party Commission of Fine Arts provided "concept approval" for the submitted "conceptual design options" with "comments," (April 16 CFA Meeting Recording, at 1:41:24–1:41:50), and "requested that the project be reviewed next as a revised concept submission that responds to these comments," (Stidham Decl. Ex. F, https://www.cfa.gov/records-research/project-search/cfa-16-apr-26-1).  "Concept approval does not authorize construction or demolition in preparation for construction of an arch." (Bowron Decl., Dkt. 32-1 ¶ 4.)

8.      Defendants submitted revised plans for a 250-foot arch in Memorial Circle to the Commission of Fine Arts for consideration at the May 21, 2026, Commission meeting. (Comm'n of Fine Arts, *Arch Presentation* (May 14, 2026) (Sansone Decl. Exh. I).)

**Response:**

Defendants object to the terms "plans" and "250-foot arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. The Secretary of the Interior submitted "a revised concept design proposal for a new monumental arch" to the third-party Commission of Fine Arts for consideration at its May 21, 2026 meeting.    (Sawyer Decl. Ex. N, https://www.cfa.gov/records-research/project-search/cfa-21-may-26-1.) That concept design proposal was for a 166-foot tall arch surmounted by statues. (Sansone Decl. Exh. I, Dkt. 36-12, at ECF pp.7–8.) The submission included significant changes from the April 2026 submission, including changes to pedestrian access and to the program of sculptures. (*Id.* at ECF pp.3–4.)

9.      On May 21, 2026, the Commission of Fine Arts voted to approve construction of a 250-foot arch in Memorial Circle. (Comm'n of Fine Arts, *CFA Meeting—21 May 2026* (linked "Meeting Recording" at 2:13:23–2:13:51), https://cfa.gov/records-research/record-cfa-actions/2026/05/cfa-meeting (hereafter, May 21 CFA Meeting Recording).)

**Response:**

Defendants object to the terms "voted to approve construction" and "250-foot arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. At its May 21, 2026, meeting, the third-party Commission of Fine Arts "resolved to approve this revised concept submission as a final design, with the exception of the sculpture, bas-relief panels, and statuary in the arched niches, which should be submitted when these elements have been designed." (Sawyer Decl. Ex. N, https://www.cfa.gov/records-research/project-search/cfa-21-may-26-1.) The Commission further "[n]ot[ed] the spare character of [the] arch's inner surfaces," and "suggested adding articulation, such as panels, surface relief, or inscriptions to complete the development of the design." (*Id.*) The submitted concept was not for a 250-foot-tall arch, but for a 166-foot

6

tall arch surmounted by statues. (Sansone Decl. Exh. I, Dkt. 36-12, at ECF pp.7–8.)

10.    Defendants have begun performing on-the-ground surveying and testing at Memorial Circle in preparation for construction of the arch. (Bowron Decl., ECF 32-1, ¶¶ 5–7.)

**<u>Response:</u>**

Defendants object to the terms "begun performing," "on-the-ground surveying and testing," and "in preparation for construction of the arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. On May 9, 2026, Defendant NPS issued a special use permit to third party Langan Engineering and Environmental Services LLC (Langan) to conduct a topographic, utility, and tree survey within Memorial Circle and an area immediately south of the circle. (Stidham Decl. Ex. G, Special Use Permit.) The permit also authorized Langan to perform a geotechnical exploration that consisted of drilling two borings to depths ranging from 80 to 90 feet below grade and geophysical testing that consisted of multi-channel analysis of surface wave (MASW) surveys and seismic refraction surveys. (*Id.*) Third party Langan conducted these activities between May 12 and May 15, 2026. While these activities are "related to conceptual planning for a potential future project to construct an Arch, these activities are also useful to the NPS with respect to any future projects at Memorial Circle as a preliminary data-collection effort regarding conditions at Memorial Circle" and "do[] not commit the NPS to future construction of an Arch, or any structure, in Memorial Circle." (Bowron Decl., ECF 32-1, ¶ 6.)

11.    Defendants have requested a formal aeronautical study from the Federal Aviation Administration to assess the impact that a 250-foot arch in Memorial Circle will have on air traffic. (Sunlen Serfaty, *The FAA Is Evaluating Risks to Flights from Trump's "Triumphal Arch,"* CNN (May 12, 2026) (Sansone Decl. Exh. J).)

7

**Response:**

Defendants object to the terms "formal aeronautical study" and "250-foot arch" as being vague and subject to varying interpretations. Defendants further object that Plaintiffs' Exhibit J is inadmissible hearsay. *Supra* n.1. Defendants further object that these post-filing facts are immaterial. Defendant NPS admits that on May 5, 2026, it requested a limited aeronautical review of a proposed building with a height of 250' located within Latitude/Longitude coordinates corresponding to Memorial Circle. (Stidham Decl. Exs. H, I.)

12.     Defendants have submitted plans for a 250-foot arch in Memorial Circle to the National Capital Planning Commission for consideration at the Commission's June 4, 2026, meeting. (Nat'l Capital Planning Comm'n, *Tentative Agenda for June 4 Meeting* (May 15, 2026) (Sansone Decl. Exh. K); Nat'l Capital Planning Comm'n, *Submission Materials* (May 7, 2026) (Sansone Decl. Exh. L).)

**Response:**

Defendants object to the terms "plans" and "250-foot arch" as being vague and subject to varying interpretations. Defendants further object that these post-filing facts are immaterial. The Department of the Interior "submitted concept plans for a new monumental arch" to the third-party National Capital Planning Commission, to provide that "Commission with an early opportunity to provide comments to the applicant, both to help guide the project's planning and development, and to also request additional information the Commission will need for future comment review" for concept-level review and comment only at the Commission's June 4 meeting. (Sawyer Decl. Ex. O, https://www.ncpc.gov/docs/actions/2026June/8778_New_Monumental_Arch_Staff_Repo rt_Jun2026.pdf.)

**Various Arch Subjects Have Been Discussed.**

13.    On January 30, 2026, the White House released a fact sheet stating that the President planned "for a new Independence Arch in Washington, D.C. to coincide with the 250th anniversary" of the United States. (White House, *Fact Sheet: President Donald J. Trump Celebrates American Greatness with the Freedom 250 Grand Prix of Washington, D.C.* (Jan. 30, 2026) (Sansone Decl. Exh. D).)

**Response:**

Defendants object to the term "planned" as being vague and subject to varying interpretations. The fact sheet states that the President "announced plans." (Sansone Decl. Exh. D)

14.    President Trump has stated that he wants the arch to be 250 feet tall because "250 for 250" makes the most sense. (Dan Diamond et al., *Trump Wants to Build a 250-foot-tall Arch, Dwarfing the Lincoln Memorial*, Wash. Post (Jan. 31, 2026) (Sansone Decl. Exh. M).)

**Response:**

Defendants object to the term "the arch to be 250 feet tall" as being vague and subject to varying interpretations. Defendants object that Plaintiffs' Exhibit M is inadmissible hearsay. *Supra* n.1. Defendants further object that the Chief Executive cannot be required to respond to press reports, particularly those attributed to anonymous sources, as district courts must afford "Presidential confidentiality the greatest protection consistent with the fair administration of justice, and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney*, 542 U.S. at 382  (citation modified); *see also In re Cheney*, 406 F.3d at 731 .

15.     In an email to National Public Radio in April 2026, the White House confirmed that the height of the 250-foot arch is intended to serve as a "recognition of America's 250th birthday." (Chloe Veltman, *Trump Touts Newly Released Plans for D.C. Triumphal Arch*, NPR (Apr. 11, 2026) (Sansone Decl. Exh. N).)

**Response:**

Defendants object that Plaintiffs' Exhibit N is inadmissible hearsay. *Supra* n.1. The White House cannot be required to respond to such press reports in civil litigation. *See Cheney*, 542 U.S. at 382; *Cheney*, 406 F.3d at 731.

16.     On April 15, 2026, President Trump posted a rendering of the arch to his Instagram account with the caption "The United States Triumphal Arch—Celebrating 250 Years of America!" (Donald J. Trump (@realdonaldtrump), Instagram (Apr. 15, 2026) (Sansone Decl. Exh. E).)

**Response:**

Defendants admit that an arch rendering was posted to the President's Instagram account accompanied by the text "The United States Triumphal Arch—Celebrating 250 Years of America!" But Plaintiffs have not provided any evidence that the President personally made that post.

17.     At a White House press briefing on April 15, White House press secretary Karoline Leavitt stated that the planned arch will be "in honor of 250 years" and "a monument for every American to celebrate 250 years of our nation's proud history." (CBS News, *Leavitt Discusses "Arc de Trump" at White House Briefing* (YouTube, Apr. 15, 2026), https://www.youtube.com/watch?v=cdSGqqrCzCo.)

**Response:**

Defendants admit this statement.

10

18.     Secretary Leavitt stated that starting construction on the arch this year will be "a fitting way to commemorate the 250th anniversary of American independence." (*Id.*)

**Response:**

Defendants admit this statement.

19.     At the May 21 meeting of the Commission of Fine Arts, a representative from the Department of the Interior stated that "[t]he intent of the arch is a celebration in America of 250 years of greatness, freedom, and posterity." (May 21 CFA Meeting Recording at 21:34–21:40.)

**Response:**

Defendants object that the cited recording does not clarify whether the quoted speaker stated "celebration in America" or "celebration of America." Defendants admit that Nicholas Charbonneau of Harrison Design made such a statement at the May 21 meeting of the Commission of Fine Arts, but clarify that he further explained that the proposed arch "is not primarily a monument dedicated to the dead, but to the living, to this great country and its perseverance." (May 21 CFA Meeting Recording at 21:34–21:59.) Defendants further deny that Plaintiffs have provided evidence establishing that Mr. Charbonneau is a "representative from the Department of the Interior."

**Congress Has Authorized Building And Redesigning Large Structures In Memorial Circle.**

20.     Congress has not passed a statute expressly authorizing the construction of a monumental arch on federally administered land in Washington, DC, to commemorate the Nation's 250th anniversary. (*See* Sansone Decl. Exh. O (chronological list of Statutes at Large and Public Laws enacted by the 119th Congress).)

**Response:**

Defendants object to this statement, which addresses a question of law, not fact. As

11

explained in Defendants' brief, Congress authorized the construction of large monumental columns on Columbia Island and delegated discretion to change the design of those columns as "may be found to be necessary or advisable." 1925 Act § 1, 43 Stat. 974. When Congress delegated that discretion to change design, it was aware of numerous proposals to erect monumental arches as part of the memorial bridge composition, such as the below proposals:



Fig. 16 George Keller, proposed design for Memorial Bridge, 1900; perspective view from Washington side of the bridge. Library of Congress, General Collections



Fig. 15 Colonel Bingham's March 1900 Plan for the Mall (detail). Collection: Pamela Scott

(Sawyer Decl. Ex. M, U.S. Comm'n of Fine Arts, Designing the Nation's Capital: The 1901 Plan for Washington, D.C. (2006) (Eds., Sue Kohler & Pamela Scott).)



(*Id.*; Sawyer Decl. Ex. P, Proposed Memorial Bridge: A Hearing Before the Senate Committee on the District of Columbia 50–51 (Jan. 16, 1901).)



(Sawyer Decl. Ex. Q, Buck Design; Report of the Arlington Memorial Bridge Commission 28, Senate Doc. No. 95, 68th Congress, 1st Session (Washington: U.S. Government Printing Office, 1924) (Bridge Commission Report), available at

13

https://www.govinfo.gov/content/pkg/SERIALSET-08240_00_00-002-0095-

0000/pdf/SERIALSET-08240_00_00-002-0095-0000.pdf.). Had Congress not intended to

authorize such arch construction, it would not have delegated discretion to change column

design.

21.    Congress has not designated a sponsor responsible for constructing a

commemorative arch in Memorial Circle. (*Id.*)

**Response:**

Defendants object to the phrase "designated a sponsor" as being vague and subject to

varying interpretations. Assuming Plaintiffs are referring to a "sponsor" under the

Commemorative Works Act (CWA), 40 U.S.C. § 8902(a)(4), Defendants further object to

this statement as addressing a question of law, not fact. Defendants further respond that the

CWA "does not apply to commemorative works authorized by a law enacted before

January 3, 1985," *id.* § 8902(b).

22.    Congress has not approved a recommendation from the Secretary of the Interior or

the Administrator of General Services that a commemorative arch be sited in the region of

Washington, DC, that is designated "Area I" for purposes of the Commemorative Works Act. (*Id.*)

**Response:**

Defendants object to this statement as addressing a question of law, not fact. Defendants

further respond that the CWA "does not apply to commemorative works authorized by a

law enacted before January 3, 1985." 40 U.S.C. § 8902(b).

23.    To date, the only source of legal authority that Defendants have claimed for

construction of the arch is the Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 (1925

Act). (Defs. Opp. to Pls. Mot. for Prelim. Injunction, ECF 12, at 16–17; Defs. Notice of

Supplemental Authority, ECF 16, at 3; Defs. Mot. to Dismiss, ECF 31, at 24–25.)

**Response:**

Defendants object to this statement as inquiring into pre-decisional deliberative materials. Because Defendants have not yet made a final decision to construct the arch, (Lands Decl., Dkt. 12-1, ¶ 15; Fisher Decl., Dkt. 24-1, ¶¶ 2–4), they have not reached a final determination of the legal authority for such a decision. Defendants further deny this statement as inaccurate based on its public filings in this case. For example, Defendant NPS has also referenced its Organic Act authority. (Defs.' Mot. to Dismiss, Dkt. 31, at 13–14.)

24.    The 1925 Act authorized the Arlington Memorial Bridge Commission to construct a memorial bridge, in accordance with the Commission's design, for a sum not to exceed $14.75 million, pursuant to a "ten-year program of expenditures and construction" that the Commission had set forth in a report to Congress the preceding year. (1925 Act, §§ 2, 6, 43 Stat. at 974–75.)

**Response:**

Defendants object that the interpretation of the 1925 Act is a question of law, not fact. *See supra* n.1. Defendants further deny the statement. The 1925 Act authorized the Commission to "make such changes in design" as "in its discretion may be found to be necessary or advisable." 1925 Act § 1, 43 Stat. 974. And the "ten-year program of expenditures and construction" was mentioned only in the following clause: "the expenditures in any year shall not exceed the amounts for the corresponding year as shown in the ten-year program of expenditures" in the Commission report. *Id.* § 6, 43 Stat. 975. Construction of the project continued beyond the ten-year program, such as when equestrian statues were added in 1952. (Sawyer Decl. Ex. R, NPS, Historic American Engineering Record (HAER), Arlington Memorial Bridge, HAER No. DC-7, at 96–102, available                          at                          https://tile.loc.gov/storage-

15

services/master/pnp/habshaer/dc/dc0600/dc0604/data/dc0604data.pdf.)

25.     Arlington Memorial Bridge was opened for use on January 18, 1932, having been built for a total cost of roughly $12.2 million. (*See* Bradley Akin, U.S. Bur. of Labor Stats., *Arlington Memorial Bridge Spans the Decades as a Study in Long-Term Price Change* (Oct. 13, 2017) (Sansone Decl. Exh. P).)

**Response:**

Defendants object to Plaintiffs' Exhibit P as containing inadmissible information. The "roughly $12.2 million" figure cited by Plaintiffs is attributed to a book by KressCox Associates, PC, and thus constitutes inadmissible hearsay. *See supra* n.1. Defendants further deny the statement. Although the "Arlington Memorial Bridge was opened to the people of the United States by President Hoover on January 16, 1932," the "works appurtenant thereto remain to be completed" as of 1936 and continued to be the subject of "frequent discussions" between architects and NPS. Report of the Commission of Fine Arts: July 1, 1929 to December 31, 1934, at 21, S. Doc. 74-214 (1936).

26.     At no point did the Arlington Memorial Bridge Commission's design for Arlington Memorial Bridge include a monumental arch. (*See* Report of the Arlington Memorial Bridge Commission, S. Doc. No. 95, 68th Cong., 1st Sess., at 40–41 (Apr. 21, 1924) (Sansone Decl. Exh. Q) (explaining that the Commission's original design provided for a pair of columns—not an arch—on the island where Memorial Circle lies); Nat'l Park Serv., *Historic American Engineering Record: Arlington Memorial Bridge*, HAER No. DC-7, Addendum at 92 (1988) (Sansone Decl. Exh. R) (noting that the Commission deleted even the columns from its final design).)

**Response:**

Defendants object that Plaintiffs have not provided any evidence about the designs that the

Arlington Memorial Bridge Commission considered from its creation by Congress in 1913 to its submitted report in 1924. Because multiple award-winning Arlington Memorial Bridge designs included arches, as seen above in the Defendants' Response to Plaintiffs' Statement of Material Fact No. 20, and were reviewed by the Arlington Memorial Bridge Commission when creating its design, *see* Bridge Commission Report 21–30, Plaintiffs have failed to support this statement with evidence.

27.     During a May 21, 2026, press conference, President Trump stated that "[w]e don't need anything from Congress" before building the arch. (Rhian Lubin, *Trump Says He Doesn't Need Congress to OK His 250-Foot Arch as Team Says They Authorized It 100 Years Ago*, The Independent (May 21, 2026) (Sansone Decl. Exh. F).)

**Response:**

Defendants object to the phrase "'[w]e don't need anything from Congress' before building the arch" as being vague and subject to varying interpretations. Defendants object to Plaintiffs' Exhibit F as containing inadmissible hearsay. And Defendants object to this fact as immaterial.

28.     Defendants do not intend to await further action from Congress before constructing the arch. (*See* 4/2/2026 Hearing Transcript 55:15 (stating that Defendants "think there is current authorization" from Congress to build the arch); Defs. Mot. to Dismiss, ECF 31, at 24–25.)

**Response:**

Defendants object to the terms "await further action from Congress" and "constructing the arch" as being vague and subject to varying interpretations. Defendants object to this statement as inquiring into pre-decisional deliberations. Because Defendants have not yet made a final decision to construct the arch, (Lands Decl., Dkt. 12-1, ¶ 15; Fisher Decl., Dkt. 24-1, ¶¶ 2–4), they have not reached a final determination of whether additional

17

Congressional authorization should be sought. Neither the Parties nor the Court can speculate on how Defendant NPS may make decisions in the future.

**Plaintiffs Will Not Be Injured By Arch Construction.**

29.    The reciprocal view between the Lincoln Memorial and Arlington House, the Robert E. Lee Memorial in Arlington National Cemetery, has long remained unobstructed as a visual symbol of the reunification of the Nation following the Civil War. (Nat'l Park Serv., *Arlington Memorial Bridge & Avenue* (last updated Apr. 5, 2023) (Sansone Decl. Exh. S).)

**Response:**

Defendants object that Plaintiffs' cited source does not provide valid evidence of the statement and thus fails to comply with Federal Rule of Civil Procedure 56(c)(1)(A). In particular, that source does not state "unobstructed," "obstruct," "view," "reciprocal view," or "visual symbol." Defendants further state that this view was obstructed, in part, by construction activity between 2018–2020.  (Stidham Decl. ¶¶ 4–11, Exs. A–E.)

30.    A 250-foot arch in Memorial Circle would obstruct the views between the Lincoln Memorial and Arlington National Cemetery. (*See* Comm'n of Fine Arts, *Arch Presentation* (May 14, 2026) (Sansone Decl. Exh. I) (depicting renderings of the arch).)

**Response:**

Defendants object to the terms "250-foot arch," and "obstruct the views between the Lincoln Memorial and Arlington National Cemetery" as being vague and subject to varying interpretations. Arlington National Cemetery is a large site that spans "639 acres" comprising "[a] blend of rolling hills, an extensive and diverse collection of ornamental plants, and over 9,000 native and exotic trees." (Sawyer Decl. Ex. S, Arlington National Cemetery Fact Sheet.) Given that topography and plant life, many views between the Lincoln Memorial and much of Arlington National Cemetery are already obstructed. (King

18

Decl. ¶ 4, Exs. J–L.) And of the locations within Arlington National Cemetery from which the Lincoln Memorial can be observed, it is likely that the proposed arch in Memorial Circle, even if constructed, would not obstruct the existing view of the Lincoln Memorial from those locations. (*See* Sansone Decl. Ex. J, Dkt. 36-11, at ECF p.13.) And the Lincoln Memorial would remain visible from both Arlington House and the Arlington Hemicycle should the proposed arch be constructed, as the height of the arch helps to preserve these views. (Sansone Decl. Ex. L, Dkt. 36-15, at ECF pp. 12, 14.) Both Arlington House and the Arlington Hemicycle would likewise remain visible from the Lincoln Memorial should the proposed arch be constructed. (Sansone Decl. Ex. I, Dkt. 36-12, at ECF p.24.) Additionally, the proposed arch, if constructed, would enable further views of both Arlington House and the Lincoln Memorial from its observation deck. (*Id.* at ECF pp.31–32.)

31.     Plaintiffs Michael Lemmon, Shaun Byrnes, and Jon Gundersen are Vietnam veterans who regularly visit Arlington National Cemetery to pay their respects to their fallen comrades and to contemplate the national ideals for which they have fought and served. (Lemmon Decl., ECF 7-2, ¶¶ 2, 6–7; Byrnes Decl., ECF 7-3, ¶¶ 2, 8–9; Gundersen Decl., ECF 7-4, ¶¶ 2–3, 6–7.)

**Response:**

Defendants object to the term "regularly visit" as being vague and subject to varying interpretations. Plaintiffs have provided no evidence to evaluate the frequency or duration of their previous visits to Arlington National Cemetery.

32.     Mr. Lemmon, Mr. Byrnes, and Mr. Gundersen intend to continue visiting Arlington National Cemetery. (Lemmon Decl., ECF 7-2, ¶ 7; Byrnes Decl., ECF 7-3, ¶ 8; Gundersen Decl., ECF 7-4, ¶ 7.)

**Response:**

Defendants object to the term "intend to continue visiting" as being vague and subject to varying interpretations. Plaintiffs have provided no evidence of concrete future plans to visit to Arlington National Cemetery.

33.     If constructed, the arch will diminish the experience of Mr. Lemmon, Mr. Byrnes, and Mr. Gundersen on future visits to Arlington Memorial Cemetery by obstructing the views to and from Arlington National Cemetery and serving as an aesthetically obtrusive symbol of a President imposing his individual aesthetic preferences on a landscape that is meant to serve national unity and the collective memory of ordinary Americans who have risked their lives to serve this country. (Lemmon Decl., ECF 7-2, ¶¶ 7–9; Byrnes Decl., ECF 7-3, ¶¶ 10–13; Gundersen Decl., ECF 7-4, ¶¶ 8–9.)

**Response:**

Defendants object to the terms "diminish the experience," "obstructing the views to and from Arlington National Cemetery," and "aesthetically obtrusive symbol" as being vague and subject to varying interpretations. Defendants deny that Plaintiffs will suffer view obstruction for the reasons stated in Defendants' Response to Plaintiffs' Statement of Material Fact Number 30. And Defendants both object to and deny that Plaintiffs' legal statement about experiencing an "obtrusive symbol" can give rise to cognizable Article III injury.

34.     Plaintiff Calder Loth is an architectural historian who regularly visits, and intends to continue visiting, Arlington National Cemetery and its surroundings for his personal enjoyment and to take photographs for use in his historical lectures. (Loth Decl., ECF 7-5, ¶¶ 2, 4–7.)

**Response:**

Defendants object to the term "regularly visits, and intends to continue visiting" as being

20

vague and subject to varying interpretations. Plaintiff Loth has provided no evidence to evaluate the frequency or duration of his previous visits to Arlington National Cemetery. Nor has he provided evidence of concrete future plans to visit to Arlington National Cemetery.

35.    If constructed, the arch will diminish Mr. Loth's aesthetic experience of Arlington National Cemetery and its surroundings by obstructing the views to and from Arlington National Cemetery and by disrupting the symbolic link between Arlington House and the Lincoln Memorial. (*Id.* ¶¶ 8–10.)

**Response:**

Defendants object to the terms "diminish Mr. Loth's experience," "obstructing the views to and from Arlington National Cemetery," and "disrupting the symbolic link" as being vague and subject to varying interpretations. Defendants further deny that Plaintiff Loth will suffer view obstruction for the reasons stated in Defendants' Response to Plaintiffs' Statement of Material Fact Number 30. Defendants further deny that the arch, if constructed, would disrupt a symbolic link between Arlington House and the Lincoln Memorial, as each would remain visible from the other, and new views of the relationship between the two would become possible from the observation deck of the proposed arch, for reasons stated in Defendants' Response to Plaintiffs' Statement of Material Fact Number 30.

**Plaintiffs Seek To Introduce Hearsay About Comments Submitted To A Third-Party Agency After They Filed Suit.**

36.    Prior to the April 16, 2026, Commission of Fine Arts meeting, the Commission received approximately 1,000 public comments regarding the arch. (April 16 CFA Meeting Recording at 59:30–59:49.)

**Response:**

Defendants object that this statement is based on inadmissible hearsay made by someone at a hearing for a third-party agency purportedly based on incomplete statistics. Defendants further object that this statement is not relevant to the claims on which Plaintiffs have moved for summary judgment.

37.     Of those roughly 1,000 public comments, 100% of them opposed the arch. (*Id.*)

**Response:**

Defendants object that this statement is based on inadmissible hearsay made by someone at a hearing for a third-party agency purportedly based on incomplete statistics. The cited recording demonstrates that the speaker was reading something—"it's saying"—without identifying what he was reading or how it was compiled. (April 16 CFA Meeting Recording at 59:30–59:49.) Defendants further object that this statement is not relevant to the claims on which Plaintiffs have moved for summary judgment.

38.     Between the April 16 meeting and the May 21 meeting, the Commission of Fine Arts received around 600 additional public comments. (May 21 CFA Meeting Recording at 39:48–40:12.)

**Response:**

Defendants object that this statement is based on inadmissible hearsay made by someone at a hearing for a third-party agency purportedly based on incomplete statistics. Defendants further object that this statement is not relevant to the claims on which Plaintiffs have moved for summary judgment.

39.     Of those roughly 600 comments, all but three of them opposed the arch and only one of them unequivocally supported the proposed arch. (*Id.* at 40:26–40:50)

**Response:**

Defendants object that this statement is based on inadmissible hearsay made by someone at a hearing for a third-party agency purportedly based on incomplete statistics. The cited recording demonstrates that the speaker was reading something—"the numbers say"—without identifying what he was reading or how it was compiled. (May 21 CFA Meeting Recording at 40:25–40:30.) Defendants further object that this statement is not relevant to the claims on which Plaintiffs have moved for summary judgment.

## DEFENDANTS' FURTHER STATEMENT OF MATERIAL FACTS

1.  Plaintiffs failed to provide evidence of any action by Defendant NPS concerning the arch that occurred before Plaintiffs filed suit.

2.  Plaintiffs failed to provide evidence of any action by Defendant Vince Haley, Director of the White House Domestic Policy Council concerning the arch that occurred before Plaintiffs filed suit.

3.  Plaintiffs failed to provide evidence of any action by the Executive Office of the President concerning the arch that occurred before Plaintiffs filed suit.

4.  Plaintiffs failed to provide evidence of any action by President Trump concerning the arch that occurred before Plaintiffs filed suit.

5.  Plaintiffs have failed to identify any "official executive action" concerning arch construction that occurred before Plaintiffs filed suit. (Dkt. 1, Compl. ¶ 52.)

6.  "Defendant National Park Service is an agency within the U.S. Department of the Interior" "responsible for administering and maintaining the land on Memorial Circle." (Dkt. 1, Compl. ¶ 14.)

7.  Construction for the arch will not begin unless and until the National Park Service issues a final agency action authorizing arch construction to proceed. (Fisher Decl., Dkt. 24-1, ¶ 4.)

8.  Plaintiffs have failed to provide evidence of a final agency action authorizing arch

23

construction by Defendant National Park Service.

9.  Plaintiffs have failed to provide evidence that they will suffer view obstruction unless Defendant National Park Service authorizes arch construction.

10. Plaintiffs have failed to provide evidence that they will suffer view obstruction before Defendant National Park Service authorizes arch construction.

11. Plaintiffs have failed to provide evidence that they suffered a certainly impending injury when they filed suit.

DATE: June 17, 2026                    Respectfully submitted,

                                       ADAM R.F. GUSTAFSON
                                       Principal Deputy Assistant Attorney General

                                       BRADLEY CRAIGMYLE
                                       Deputy Assistant Attorney General

                                        */s/ Michael S. Sawyer*
                                       MICHAEL S. SAWYER, Senior Attorney
                                       DANIEL LUECKE, Trial Attorney
                                       Environment and Natural Resources Division
                                       P.O. Box 7611
                                       Washington, D.C. 20044-7611
                                       Telephone: 202-353-5134
                                       E-mail: michael.sawyer@usdoj.gov
                                               daniel.luecke@usdoj.gov

                                       *Counsel for Defendants*