**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 26-cv-544 (TSC) |
| | ) |
| DONALD J. TRUMP, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth file this notice to bring this Court's attention to the D.C. Circuit's recent opinion in *National Trust for Historic Preservation in the United States v. National Park Service*, — F.4th —, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026). In that opinion, the D.C. Circuit affirmed the entry of a preliminary injunction barring the construction of an unauthorized ballroom on the White House grounds. *Id.* at *2. Several aspects of the court's analysis support arguments made by Plaintiffs here in support of their motion for summary judgment, ECF 36, and in their oppositions to Defendants' motion to dismiss, ECF 33, and cross-motion for summary judgment, ECF 49, and refute arguments made by Defendants in their opposition to Plaintiffs' motion for summary judgment, ECF 45, and in support of their motion to dismiss, ECF 31, and cross-motion for summary judgment, ECF 44.

*First*, the court in *National Trust* held that the plaintiff, a membership organization, has standing to sue based on injury to the aesthetic interests of its members. *Nat'l Trust*, 2026 WL 2276494, at *12–13. The plaintiff had submitted a sworn declaration from one of its members who uses and enjoys the area around the White House regularly, holds an aesthetic interest in the "architectural simplicity and historical significance" of the area, and "stud[ies] and relies on the

1

architectural design of the White House" in her academic work. *Id.* at *13–14. The member further attested that the planned ballroom would impair her "aesthetic, cultural, and historic interests" because the ballroom would "overshadow" the White House and "diminish [its] primacy." *Id.* at *14 (citations omitted); *see id.* (explaining that the ballroom would permanently disrupt "the historical and architectural coherence" of an area that the member "routinely enjoys studying, viewing, and spending time with"). As the court explained, "[n]umerous cases from the Supreme Court and [D.C. Circuit] have recognized Article III injuries in similar circumstances." *Id.* at *15. And because the member stated that she planned to continue regularly visiting the affected area, the court held that her injury was concrete and imminent for Article III purposes. *Id.* at *15 n.5.

Here, Plaintiffs have each submitted sworn declarations explaining that they regularly use and enjoy the area around Memorial Circle; that they plan to continue doing so; and that Defendants' construction of a massive arch there will permanently degrade their aesthetic (and, in the case of Plaintiff Calder Loth, professional) interest in the area. *See* Lemmon Decl., ECF 7-2, ¶¶ 6–9; Byrnes Decl., ECF 7-3, ¶¶ 8–13; Gundersen Decl., ECF 7-4, ¶¶ 6–9; Loth Decl., ECF 7-5, ¶¶ 5–10. As in *National Trust*, this evidence distinguishes Plaintiffs' injuries from the sort of "passing distaste" for an eyesore that the D.C. Circuit held insufficient to establish standing in *Environmental Defense Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021). *Nat'l Trust*, 2026 WL 2276494, at *18; *see* Defs. Memo. in Opp. to Pls. Mot. for Summ. J. and in Support of Defs. Cross-Mot. for Summ. J., ECF 45, at 19–21 (relying on *Environmental Defense Fund*). And as in *National Trust*, "Defendants' own admission of the extensive and permanent architectural, historical-preservation, and other aesthetic harms that … construction will cause underscores the concreteness, imminence, and substantiality" of Plaintiffs' threatened injuries. *Nat'l Trust*, 2026 WL 2276494, at *16; *see* Nat'l Park Service, *Triumphal Arch—Section 106 Assessment of Effect*

2

*and Draft Programmatic Agreement*, Appendix D, *Historic Properties and Assessment of Adverse Effects Tables* at 17–25 (June 2026) (describing "adverse effects" that the arch will have on dozens of historic properties, including by obstructing the views to and from Arlington National Cemetery, Arlington House, and the Lincoln Memorial).[1] Here too, then, Plaintiffs have standing, and Defendants' contrary arguments "simply brush[] off the signification, emotion, meaning, and particularized value to individuals of witnessing certain places where their history happened, looking upon architectural marvels, reveling in sweeping landscapes, and viewing buildings, memorials, and monuments that tell the American story." *Nat'l Trust*, 2026 WL 2276494, at \*18.

*Second*, the D.C. Circuit in *National Trust* held that the plaintiffs were likely to succeed on the merits of their ultra vires claim challenging ballroom construction. As the court explained, "the Constitution gives Congress exclusive authority to regulate federal property and the District of Columbia." *Id.* at \*22. Although the defendants had invoked 3 U.S.C. § 105(d), a statute that they claimed authorized construction, the court held that the defendants "acted *ultra vires* by relying on a patent misconstruction of that statute." *Id.* at \*23. And the court concluded that "[t]he plain text" of 40 U.S.C. § 8106, which the court described as a "statutory exclamation point on [Congress's] exclusive powers" over federal lands and the District of Columbia, *id.* at \*3, "unambiguously bars … construction, absent another statute providing the National Park Service with 'express authority' to construct buildings in federal parks in the District of Columbia." *Id.* at \*23. In reaching this holding, the court rejected, as contrary to "the clear statutory text" of section 8106, the defendants' argument that section 8106 does not apply to the National Park Service's own projects. *Id.*

---

[1] Available at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151576.

Defendants here similarly lack constitutional authority to build a massive new structure on federal parkland in the District of Columbia. And Defendants' contention that they have statutory authority to proceed—in this case, purportedly deriving from a 1925 law that authorized the construction of Arlington Memorial Bridge—is "based on an 'utterly unreasonable' statutory interpretation." *Id.* at \*25 (quoting *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022)). Meanwhile, as in *National Trust*, section 8106 "is a 'clear and mandatory' provision that leaves no discretion and thus can support *ultra vires* review" in this case. *Id.* at \*26 (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022)). Furthermore, "even if Section 8106" (and, in this case, the Commemorative Works Act) "did *not* apply … Defendants would still need to identify affirmative authority for their transformative … construction." *Id.* As in *National Trust*, Defendants have failed to do so. Plaintiffs are accordingly entitled to summary judgment on their ultra vires claim.

*Third*, the court in *National Trust* held that the remainder of the preliminary injunction factors support the injunction that the district court ordered there. The D.C. Circuit observed that "[c]oncrete and extensive architectural, historic-preservation, professional, and visual injuries" constitute irreparable harm that justify injunctive relief. *Id.* at \*36. Although the defendants claimed that enjoining ballroom construction would harm important national security interests, the court observed that "[a] district court's exercise of equitable judgment" to enter an injunction "falls more firmly within the scope of its discretion when the Defendants claim no Article II power for their action and likely lack any statutory basis for it too." *Id.* at \*39. And the court recognized that an injunction would serve "the weighty public interest in the preservation and conservation of historic sites on federal property," which "Congress has inscribed into law." *Id.* at \*42; *see id.* at \*44 ("Executive actions that take control of [federal] property out of the hands of the people's

4

representatives while irreparably harming the historical and visual architecture of perhaps the most prominent public [spaces] in the United States seriously intrude on the public interest.").

Similar considerations support the entry of a permanent injunction in this case. As explained above, *see supra* pp. 2–3, Defendant National Park Service itself has concluded that the arch will have an irreparable adverse aesthetic impact on the historic core of Washington, DC. Defendants have identified no harm they will suffer if they are enjoined from carrying out an unauthorized construction project. And enjoining such a project will further the public interest in preserving Congress's role in directing the development of the capital city's public spaces, where our national story is told.

Dated: August 11, 2026                         Respectfully submitted,

                                               /s/ Nicolas A. Sansone
                                               Nicolas A. Sansone (DC Bar No. 1686810)
                                               Wendy Liu (DC Bar No. 1600942)
                                               Allison M. Zieve (DC Bar No. 424786)
                                               Public Citizen Litigation Group
                                               1600 20th Street NW
                                               Washington, DC 20009
                                               (202) 588-1000

                                               *Counsel for Plaintiffs*