**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL LEMMON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-cv-544 (TSC) |
| DONALD J. TRUMP, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' NOTICE OF**
**SUPPLEMENTAL AUTHORITY**

Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth file this notice to bring this Court's attention to the Supreme Court's recent opinion in *National Park Service v. National Trust for Historic Preservation in the United States*, — S. Ct. —, 2026 WL 2564318 (U.S. Aug. 31, 2026) (per curiam).

In *National Park Service*, a five-Justice majority voted in an emergency posture to stay a preliminary injunction barring the construction of a ballroom on the White House grounds. The Court left undisturbed the D.C. Circuit's holding that the construction was likely ultra vires and in violation of 40 U.S.C. § 8106, which prohibits erecting any "building or structure … on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." *See Nat'l Park Serv.*, 2026 WL 2564318, at *4 (five-Justice majority declining to "pass upon the legality of the government's … project"); *id.* (Roberts, C.J., dissenting) (opining on behalf of four Justices that the "construction is likely unlawful" and in violation of 40 U.S.C. § 8106). But the majority held that the plaintiff in that case—a membership organization that had submitted an affidavit from a member who found the ballroom's design

"distasteful"—likely lacked Article III standing. *Id.* at *2 (majority opinion). In addition, relying on declarations from high-ranking government officials "attesting to national security and other harms that would likely arise from enjoining … [the] project," the majority held that the government had "established that it will likely suffer irreparable harm from the … injunction and that the balance of the equities tips in its favor." *Id.* at *3.

The Supreme Court has been clear that, although its interim orders "inform how a court should exercise its equitable discretion in like cases," they "are not conclusive as to the merits." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Accordingly, the majority's predictive judgment—issued "on a short fuse without benefit of full briefing and oral argument"—about how it might resolve the issues in *National Park Service* does not bind this Court in resolving the parties' fully briefed cross-motions for summary judgment. *Does 1–3 v. Mills*, 142 S. Ct. 17, 18 (2021) (Barrett, J., concurring in the denial of application for injunctive relief); *see Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring in grant of stay applications) (cautioning that "[a] stay order is not a ruling on the merits"). Nonetheless, the Court's per curiam opinion provides useful guidance that underscores Plaintiffs' entitlement to prevail on their motion for summary judgment.

**1.** To start, the Court's discussion of standing in the context of the challenge to the White House ballroom in *National Park Service* is fully consistent with Plaintiffs' standing arguments in this case. The *National Park Service* majority reaffirmed the Supreme Court's long line of precedent establishing that the desire to observe a given phenomenon, "'even for purely esthetic purposes,' can constitute 'a cognizable interest for purpose of standing.'" 2026 WL 2564318, at *3 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992)). As Plaintiffs here have explained, this precedent supports Plaintiffs' standing to challenge the construction of a monumental arch that will radically transform an existing symbolic viewshed that each Plaintiff

regularly visits and admires and plans to continue visiting and admiring. *See* Pls. Memo. in Support of Pls. Mot. for Summ. J., ECF 36-1, at 10–11 (citing *Lujan* and other cases).

The Court in *National Park Service* underscored that "a plaintiff must also show that its claimed [aesthetic] injury is 'concrete and particularized.'" 2026 WL 2564318, at *3 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs have made this showing as well: Each has explained his profound personal relationship to the iconic vista that he regularly views and appreciates during visits to Arlington Memorial Cemetery, and when driving across Memorial Bridge—a vista that Defendants' arch will irreparably obstruct. *See, e.g.*, Lemmon Decl., ECF 7-2, ¶ 6 (explaining that the visual link between Arlington National Cemetery and the Lincoln Memorial "holds deep personal significance to me, embodying the reunification of our country after a bloody civil war and the commitment to bind up its wounds and to honor those who died in its defense"); Byrnes Decl., ECF 7-3, ¶ 9 (explaining that the "beautiful and uninterrupted view of the Lincoln Memorial" from the cemetery "symbolizes the restoration of the Union after the bloody Civil War, in which several of my ancestors fought"); Gundersen Decl., ECF 7-4, ¶ 6 (explaining that "the inspiring view of the Lincoln Memorial" from the cemetery "reminds me of the ideals for which I fought and fills me with pride for my many years of service"); Loth Decl., ECF 7-5, ¶ 6 (explaining that the "axial vista [that] visually connects the Lincoln Memorial to Arlington House[ ] … creates a symbolic link between the North and the South" that "I revere" as "a native Virginian and descendent of Confederate veterans"). Indeed, Defendants have not disputed that "[t]he reciprocal view between the Lincoln Memorial and Arlington House, the Robert E. Lee Memorial in Arlington National Cemetery, has long remained unobstructed as a visual symbol of the reunification of the Nation following the Civil War," that "[a] 250-foot arch in Memorial Circle would obstruct the views between the Lincoln Memorial and Arlington National Cemetery," and

that the obstruction will "diminish [Plaintiffs'] experience" during future visits to the cemetery. Pls. Statement of Undisputed Material Facts, ECF 36-2, ¶¶ 29–30, 33, 35.

In *National Park Service*, the Court held that the plaintiff had not established standing because the Court understood the plaintiff's affiant to have asserted injury based on "mere offense, disagreement, or distaste" for the government's actions. *Nat'l Park Serv.*, 2026 WL 2564318, at *2; *see id.* (rejecting the idea that "offense alone suffices to establish a concrete and particularized injury" but reaffirming that aesthetic "injuries involv[ing] *more* than mere offense" can establish standing). Here, far from attempting to ground standing on their belief that "the government's design" for the arch is "distasteful," *id.*, Plaintiffs have been clear that their "aesthetic injury[] … derives not from the specifics of the [arch's] design but from the interference that *any* sizable arch in Memorial Circle will work on the existing landscape." Pls. Opp. to Defs. Mot. to Dismiss, ECF 33, at 15. Unlike in *National Park Service*, in other words, Plaintiffs' injury is not based on the construction of something that gives them offense but rather on the *destruction* of a landscape that they regularly visit and that holds profound personal significance for each of them in its present state. *See* Lemmon Decl. ¶ 9 (explaining how "the disruption that the arch will cause to the unobstructed sight line" between Arlington House and the Lincoln Memorial, "a symbol of national unity," will cause injury by degrading the personal experience of the area); Byrnes Decl. ¶ 10 (asserting injury based on the fact that "the arch that President Donald J. Trump plans to build in Memorial Circle will obstruct the clear line-of-sight view of the Lincoln Memorial and other monuments on the National Mall from the cemetery"); Gundersen Decl. ¶ 6 (explaining that the arch will interfere with "the inspiring view" of the Lincoln Memorial); Loth Decl. ¶ 8 (expressing concern that, "if the arch is built, Arlington House will no longer be visible from Washington, DC, destroying a view that has existed for more than two hundred years"); *cf. Nat'l Park Serv.*, 2026

WL 2564318, at *1 (emphasizing that the injunction stayed by the majority "focused not on the already-completed demolition of the [White House's] old East Wing but on halting the ongoing construction of a new one"). The disruption that the arch will work to the landscape in and around Arlington National Cemetery, moreover, will degrade the personal experience of Plaintiffs when they visit the gravesites of their ancestors or of the comrades-in-arms with whom they served, and the land on which two of them hope to be interred. *See* Lemmon Decl. ¶¶ 7–9 (attesting to the spirit of "contemplati[on]" engendered by the landscape as it now stands); Byrnes Decl. ¶¶ 8–9 (attesting to the "aura of peace" created by the cemetery's present "tranquility"); Gundersen Decl. ¶¶ 6–7 (attesting to how the cemetery's current state enables "reflecti[on] on this Nation's commitment to democracy, liberty, and unity"); Loth Decl. ¶¶ 5–6, 9 (attesting to how the cemetery's "reverently tended" landscape is "uniquely and deeply enthralling").

Plaintiffs have accordingly established that they "are persons 'for whom the aesthetic and recreational values of the [affected] area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Under binding Supreme Court precedent that *National Park Service* did nothing to disturb, they have established their standing to challenge Defendants' actions in building a massive, disruptive monument that Congress has not authorized.

**2.** Likewise, the Supreme Court's discussion of the equities in the context of the challenge to the White House ballroom in *National Park Service* underscores that the equities in this case favor the entry of permanent injunctive relief in Plaintiffs' favor. In *National Park Service*, "the Director of National Intelligence, the Director of the Central Intelligence Agency, the Director of the Federal Bureau of Investigation, the Director of the United States Secret Service, and the Secretary of State, the Secretary of Homeland Security, and the Secretary of the Army, among

others," all submitted declarations attesting that the challenged construction served important national security interests. *Nat'l Park Serv.*, 2026 WL 2564318, at *3. Here, Defendants have not represented (and could not truthfully represent) that the arch is needed to further national security. Instead, as the National Park Service recently confirmed, the arch is a "commemorative feature" that "celebrates 250 years of American independence." Nat'l Park Serv., *Triumphal Arch—Section 106 Assessment of Effect (FINAL)*, at 11 (Aug. 28, 2026).[1] And Defendants have introduced *no* declarations or other evidence that enjoining construction of the arch, unless and until it is authorized by Congress, will cause *any* cognizable harm to Defendants or to the public interest.

In addition, the *National Park Service* majority expressed concern that the preliminary injunction entered in that case, if not stayed, would result in "significant" practical problems because construction had already begun and a "partially completed superstructure" was already in place. *Nat'l Park Serv.*, 2026 WL 2564318, at *3. Here, by contrast, construction has not yet begun, and it is *Plaintiffs* who stand at risk of irreparable harm if an injunction does not issue. As Plaintiffs have explained—and as Defendants have recognized in other cases, including in *National Park Service*—"construction will be difficult to reverse once it has begun." Pls. Reply in Support of Pls. Mot. for Summ. J., ECF 48, at 3 (citing government filings).

The Court's analysis of the equities in *National Park Service*, then, reinforces that Plaintiffs acted properly in bringing suit promptly following Defendants' announcement of their plan to build an unauthorized monument, *see id.* at 20–23 (addressing ripeness), and that entry of an injunction that stops Defendants' unlawful project before they break ground is the appropriate form of relief.

---

[1] Available for download at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=153235.

Dated: September 2, 2026

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*