**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | **NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Civil Action No. 26-cv-544 (TSC) |

Defendants respectfully submit this notice of supplemental authority concerning a new Supreme Court decision. *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*, 609 U.S. ___, No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) (*per curiam*). The Court granted the government's application to stay an injunction prohibiting construction of the East Wing of the White House, *id.* at *1, holding that aesthetic interests in viewing the White House likely did not suffice to establish Article III standing, *id.* at *2–3.

The National Trust for Historic Preservation in the United States (Trust) asserted standing based on its member's "desire to view" the East Wing in "stately simplicity." *Id.* at *3 (citation omitted). She claimed that "having to view the finished ballroom the government is constructing would cause her to suffer injuries to her aesthetic, cultural, and historical interests because she finds the scale, height, and massing of the government's design distasteful." *Id.* at *2 (citation omitted). But the Supreme Court found her asserted injuries insufficient to establish standing because "mere offense, disagreement, or distaste does not qualify as a concrete and particularized injury under Article III." *Id.*

The Court rejected the member's attempt to ground her injury in a viewshed interest. *Id.* at *3 ("[T]he Trust reasons that, if the desire to view a 'particular crocodile' qualifies as a cognizable interest for purposes of Article III standing, [the member's] desire to view a new East Wing characterized by more 'stately simplicity' than the government proposes must as well."). The Court explained, "*Lujan*'s statement that the 'desire to . . . observe an animal species, even for purely esthetic purposes,' can constitute 'a cognizable interest for purpose of standing,'" did not describe a "sufficient" showing of standing. *Id.* at *3 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992)). Because "Article III 'requires more than an injury to a cognizable interest,'" a plaintiff must also demonstrate "that its claimed injury is 'concrete and particularized.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, 563).

Unlike the court of appeals, the Supreme Court held that the Trust's member failed to establish a concrete and particularized injury. *Id.* The D.C. Circuit found likely standing based on the member's lost "opportunity to view Lafayette Square with the intentional architectural symmetry of the 235-year-old L'Enfant Plan" while recreating. *Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, No. 26-5123, 2026 WL 2276494, at *17 (D.C. Cir. Aug. 7, 2026). The Supreme Court, by contrast, held that her "desire to view" a symmetric White House demonstrated nothing beyond "'the psychological consequence presumably produced by observation of conduct with which one disagrees,'" *Nat'l Park Serv.*, 2026 WL 2564318, at *2–3 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 485 (1982)). And the member could not transmute that psychological effect into an Article III injury by invoking her "expertise in historic architecture," as the Supreme Court's standing cases "contain no such special carveout." *Id.* at *3.

It was thus irrelevant that the Trust's member used the affected area and would derive less aesthetic and recreational value because of the East Wing. Whereas the D.C. Circuit found the member "'adequately alleged' an injury in fact" by "'aver[ring] that she uses the affected area' and is an individual 'for whom the aesthetic and recreational values of the area will be lessened,'"[1] the Supreme Court rejected the Trust's use-by-viewing theory of standing, *Nat'l Park Serv.*, 2026 WL 2564318, at *2–3 ("standing is unavailable where, as here, the only injury a plaintiff asserts stems from offense, disagreement, or distaste"). Thus, as the Chief Justice succinctly explained the majority's holding, "'I want to look at the White House' cannot" sufficiently "answer the ever critical 'what's it to you?' question of Article III standing," "no matter how distinctive the particular viewer's interest in looking at it may be." *Id.* at *6 (Roberts, C.J., dissenting).

Similarly here, Plaintiffs' asserted viewshed standing fails. Just as the Trust could not establish standing based on a "desire to view" the White House, *id.* at *3 (majority op.), Plaintiffs cannot establish standing based on desires to view Arlington House or the Lincoln Memorial, *contra* Dkt. 54, at 4–5. Plaintiffs cannot distinguish their injury as being about "the *destruction* of a landscape," *contra* Dkt. 54, at 4–5, as the Trust's member made indistinguishable allegations about "the permanent visual destruction" of a planned landscape, *Nat'l Tr.*, 2026 WL 2276494, at *17. Nor does Plaintiffs' theory of view "interference"[2] create injury in fact. *Compare* Dkt. 54, at

---

[1] *Nat'l Tr.*, 2026 WL 2276494, at *15 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000), citation modified).

[2] Plaintiffs incorrectly claim that "Defendants have not disputed" that the long-unobstructed nature of these views would be diminished by the arch. Dkt. 54, at 3–4 (citing Pls. Statement of Undisputed Material Facts, Dkt. 36-2 ¶¶ 29–30, 33, 35). To the contrary, Defendants specifically objected to that statement as being unsupported by "valid evidence," Dkt. 44-2 ¶ 29, as allowed by Fed. R. Civ. P. 56(c)(1)(B), and provided undisputed evidence that the asserted views either do not exist, *e.g.*, Dkt. 44-2 ¶ 30, would not be obstructed, *id.*, or were recently obstructed from 2018–2020, *id.* ¶ 29.

4, *with Nat'l Park Serv.*, 2026 WL 2564318, at *5 (Roberts, C.J., dissenting) (noting the member's concern that the East Wing would "overshadow[] the traditional White House").[3]

For similar reasons, Plaintiffs' distaste for the perceived symbolism of the proposed arch does not establish a concrete and particularized injury. *See Nat'l Park Serv.*, 2026 WL 2564318, at *2–3; *see also id.* at *5 (Roberts, C.J., dissenting). Nor does their preference for what the existing landscape "symbolizes" suffice. *Contra* Dkt. 54, at 3 (citing Byrnes Decl. ECF 7-3, ¶ 9). The Trust similarly sought standing based on its member's preference for the "republican simplicity" of the prior East Wing, *Nat'l Tr.*, 2026 WL 2276494, at *14, but the Supreme Court held "none of this helps the Trust," *Nat'l Park Serv.*, 2026 WL 2564318, at *3.

And Plaintiffs cannot establish concrete or particularized injuries based on a "profound personal relationship to the iconic vista." *Contra* Dkt. 54, at 3. Such allegations are indistinguishable from the Trust member's averments that "she greatly values" "view[ing] Lafayette Square" and "the architectural significance it embodies." *Nat'l Tr.*, 2026 WL 2276494, at *17–18. But the Supreme Court rejected her attempts to inflate her viewing interests: "Article III standing, we have consistently held, is not measured by the intensity of the litigant's interest, or by a litigant's special interest in the subject." *Nat'l Park Serv.*, 2026 WL 2564318, at *3 (citation modified). Thus, Plaintiffs' personal and professional experiences cannot transform distaste for the arch and its proposed placement into concrete and particularized injuries required for Article III standing. *See id.*

---

[3] *See also Nat'l Tr.*, 2026 WL 2276494, at *14 ("[The member] further attests that building the 90,000 square-foot ballroom 'would cause permanent and irreparable harm to the White House and President's Park' because it would 'overshadow the White House, exceeding it in height and massing, and would diminish the primacy of the White House.'" (citation modified)).

Finally, Plaintiffs wrongly suggest that this on-point Supreme Court decision is not controlling. *See* Dkt. 54, at 2. To the contrary, this case is "squarely controlled" by *National Park Service*, which addressed a "similar" question of standing and "does not otherwise differ from [this case] in any pertinent respect." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (finding an interim order controlling). "Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them." *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring in part and dissenting in part). "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (*per curiam*).

For all these reasons, *National Park Service* mandates that the Court grant Defendants' Motion to Dismiss, Dkt. 31, and deny Plaintiffs' Motion for Summary Judgment, Dkt. 36.

DATE: September 3, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General

*/s/ Michael S. Sawyer*
MICHAEL S. SAWYER, Senior Attorney
DANIEL LUECKE, Trial Attorney
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-353-5134
E-mail: michael.sawyer@usdoj.gov
daniel.luecke@usdoj.gov

*Counsel for Defendants*