**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL LEMMON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-cv-544 (TSC) |
| DONALD J. TRUMP, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

September 4, 2026

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 3

Statutory Background ................................................................................................ 3

Factual and Procedural Background .......................................................................... 5

LEGAL STANDARD ................................................................................................... 7

ARGUMENT ............................................................................................................... 8

I. Plaintiffs are likely to succeed on the merits. ........................................................ 8

II. Plaintiffs will suffer irreparable injury absent a temporary restraining order. .................... 10

III. The balance of equities and public interest favor Plaintiffs. ........................................ 11

CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*American School of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ........ 8

*Amoco Production Co. v. Village of Gambell*,
480 U.S. 531 (1987) ........ 11

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ........ 8

*Federal Express Corp. v. United States Department of Commerce*,
39 F.4th 756 (D.C. Cir. 2022) ........ 8

*Hall v. Johnson*,
599 F. Supp. 2d 1 (D.D.C. 2009) ........ 8

*National Park Service v. National Trust for Historic Preservation in the United States*,
— S. Ct. —, 2026 WL 2564318 (U.S. Aug. 31, 2026) ........ 2, 11

*National Trust for Historic Preservation in the United States v. National Park Service*,
2026 WL 2276494 (D.C. Cir. Aug. 7, 2026) ........ 11

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........ 10

**Statutes**

40 U.S.C. § 68 (1912) ........ 3

40 U.S.C. § 8711 ........ 4

40 U.S.C. § 8711(a) ........ 5

40 U.S.C. § 8722(b)(1) ........ 2, 5, 10

40 U.S.C. § 8901 ........ 2

40 U.S.C. § 8901(1) ........ 4

40 U.S.C. § 8901(4) ........ 4

40 U.S.C. § 8902(a)(1) ........ 4, 9

40 U.S.C. § 8902(a)(2) ........ 4

40 U.S.C. § 8902(a)(4) ........ 4

40 U.S.C. § 8903(d) ........ 4

40 U.S.C. § 8904 ........ 4

40 U.S.C. § 8905(a) ........ 4, 9

40 U.S.C. § 8906(a)(2) ........ 5

40 U.S.C. § 9101 ........ 4

Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 ..................................................... 7, 9

Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986)....................... 3

**Other Authorities**

Jacob R. Straus, Congressional Research Service, *Commemorative Works in the District of Columbia: Background and Practice* (updated May 8, 2023)................................................... 3

National Park Service, *Triumphal Arch—Section 106 Assessment of Effect (FINAL)* (Aug. 28, 2026) ........................................................................................................................... 5

## INTRODUCTION

In February, Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth filed this lawsuit against Defendants Donald J. Trump, Vince Haley, Executive Office of the President, and National Park Service (NPS) to halt construction of a monumental arch in Memorial Circle absent congressional authorization. Shortly thereafter, Plaintiffs moved for a preliminary injunction to bar Defendants from taking steps toward construction pending resolution of Plaintiffs' legal claims. In a consent order entered by this Court on April 8, 2026, Plaintiffs agreed to dismiss their motion in exchange for Defendants' assurances that "Defendant NPS shall not authorize construction of an arch on Memorial Circle to begin before NPS has published a notice stating its authorization on its Planning, Environment and Public Comment website (https://parkplanning.nps.gov/)" and that "Defendant NPS shall provide at least fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case." ECF 26 at 1.

Yesterday, Secretary of the Interior Doug Burgum announced that "we are preparing to start, over the next two-week period, the excavation work necessary for the Great Triumphal Arch … at Memorial Circle." Sec'y Doug Burgum (@SecretaryBurgum), X (Sept. 3, 2026, 3:01 PM).[1] The imminent course of action that Secretary Burgum has announced to the American people is unlawful many times over. Construction of the arch absent congressional authorization is ultra vires and unconstitutional for the reasons that Plaintiffs have explained in several filings in this case. *See* Pls. Memo. in Support of Pls. Mot. for Prelim. Inj., ECF 7-1; Pls. Reply in Support of Pls. Mot. for Prelim. Inj., ECF 13; Pls. Opp. to Defs. Mot. to Dismiss, ECF 33; Pls. Memo. in Support of Pls. Mot. for Summ. J., ECF 36-1; Pls. Reply in Support of Pls. Mot. for Summ. J. and

[1] https://x.com/SecretaryBurgum/status/2095587973907755133.

Opp. to Defs. Cross-Mot. for Summ. J., ECF 48–49. In addition, proceeding with "excavation work necessary for the Great Triumphal Arch" within the next two weeks without notice on the docket in this lawsuit violates the clear terms of this Court's April 8 order.[2]

This Court should grant a temporary restraining order barring Defendants from conducting excavation work at Memorial Circle pending further order of the Court and either (1) set a briefing schedule and hearing date for a preliminary injunction motion or (2) rule on the parties' pending cross-motions for summary judgment on an expedited basis. As explained below and at greater length in Plaintiffs' summary judgment filings, Defendants have no legal basis for the construction work that they intend imminently to perform in Memorial Circle, and their plan violates the Commemorative Works Act, 40 U.S.C. § 8901 *et seq.*; 40 U.S.C. § 8106; and the U.S. Constitution. Meanwhile, beginning work on the arch will inflict irreparable injury on Plaintiffs. As the Supreme Court's recent decision in *National Park Service v. National Trust for Historic Preservation in the United States*, — S. Ct. —, 2026 WL 2564318 (U.S. Aug. 31, 2026) (per curiam), makes clear, once a building project has begun, a later order to reverse course raises "significant" practical problems. *Id.* at *3. And Defendants have offered no evidence that beginning construction of a commemorative arch is a matter of such exigency that blocking construction until this Court has had the opportunity to rule on the project's legality will irreparably harm Defendants or the public interest.

This Court should enter a temporary restraining order blocking Defendants' efforts to blaze ahead with an unlawful course of conduct in the hope that they can render the arch a fait accompli

[2] Even under Defendants' theory that a 1925 statute that authorized a now-defunct commission to design and build Arlington Memorial Bridge—a project that was completed more than ninety years ago—satisfies the requirement of congressional authorization for construction of the arch, Defendants have not yet satisfied the legal prerequisite of receiving a final report from the National Capital Planning Commission (NCPC) regarding the arch. *See* 40 U.S.C. § 8722(b)(1).

before this Court has had the chance to reach a final determination as to whether Defendants' project is authorized by law.

## STATEMENT OF FACTS

### Statutory Background

Since the founding of Washington, DC, in the late eighteenth century, the configuration of structures and monuments within the city has been subject to careful and deliberate planning. *See* Jacob R. Straus, Cong. Research Serv., *Commemorative Works in the District of Columbia: Background and Practice*, Summary (updated May 8, 2023) (hereafter, Straus, *Commemorative Works*).[3] As the legislative body that speaks on behalf of the American public, Congress has long been responsible for authorizing the monuments and structures that appear on federally administered land within the national capital to tell the story of our country. *See id.*

In 1912, Congress took a substantial step toward formalizing its oversight of construction on public federal land in Washington, DC, by passing a statute prohibiting "any building or structure" from being built on such lands "without express authority of Congress." 40 U.S.C. § 68 (1912). The statute, which has seen only minor, non-substantive amendments in the 110-plus years since its enactment, is now codified at 40 U.S.C. § 8106. Section 8106 speaks categorically: "A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

Nonetheless, even after 1912, "the process for approving site locations, memorial design plans, and funding" for monuments remained "haphazard." Straus, *Commemorative Works*, at Summary. Congress responded in 1986 by passing the Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986). Among the Act's purposes are to "preserve the

---

[3] https://www.congress.gov/crs_external_products/R/PDF/R41658/R41658.12.pdf.

integrity of the comprehensive design of … the Nation's Capital," 40 U.S.C. § 8901(1), and to ensure that commemorative works on federally administered land in Washington, DC, and its environs "are appropriately designed, constructed, and located," and that they "reflect a consensus of the lasting national significance of the subjects involved," *id.* § 8901(4).

The Commemorative Works Act sets out a detailed process for approving commemorative works—defined to include "any statue, monument, sculpture, … or other structure or landscape feature[] … designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history," *id.* § 8902(a)(1)—in areas in and around Washington, DC, that are administered by NPS or the General Services Administration, *see id.* § 8902(a)(2). To begin, the Act requires that any such work be "specifically authorized by law." *Id.* § 8903(a)(1). And "[i]n considering legislation authorizing commemorative works in the District of Columbia and its environs," Congress must "solicit the views of the National Capital Memorial Advisory Commission." *Id.* § 8903(d); *see id.* § 8904 (establishing the Commission).

Upon authorizing a commemorative work, Congress designates a sponsor to develop the project. *See id.* § 8902(a)(4). The sponsor then must consult with the National Capital Memorial Advisory Commission "regarding the selection of alternative sites and design concepts for the commemorative work" and must have the Secretary of the Interior or the Administrator of General Services submit "site and design proposals" for the approval of the Commission of Fine Arts and the NCPC. *Id.* § 8905(a); *see id.* § 9101 (establishing the Commission of Fine Arts); *id.* § 8711 (establishing the NCPC). Once the consultation and approval requirements have been met, the sponsor may apply to the Secretary of the Interior or the Administrator of General Services for a construction permit. *See id.* § 8905(a). A permit may issue if, among other things, "knowledgeable

individuals qualified in the field of preservation and maintenance have been consulted … to ensure that the commemorative work meets high professional standards." *Id.* § 8906(a)(2).

Even where the Commemorative Works Act does not apply, the NCPC serves a critical role as "the central federal planning agency for the Federal Government in the National Capital." *Id.* § 8711(a). When a federal agency "prepar[es] construction plans … for proposed developments and projects" in the District of Columbia, it must "consult with" the NCPC. *Id.* § 8722(b)(1). Only after the NCPC has issued a "final report" expressing its views on the proposed construction, and the agency has considered those views, may the agency "proceed to take action." *Id.*

**Factual and Procedural Background**

In October 2025, President Trump announced plans to build a monumental arch in Memorial Circle, an area of NPS land that lies between the Lincoln Memorial and Arlington National Cemetery. *See* Pls. Statement of Undisputed Material Facts (PSOMF), ECF 36-2, ¶¶ 1–2, 4. The purpose of the arch, as Defendants have repeatedly confirmed, is to commemorate the Nation's 250th anniversary. *See id.* ¶¶ 13–19; *see also* NPS, *Triumphal Arch—Section 106 Assessment of Effect (FINAL)*, at 11 (Aug. 28, 2026) (describing the arch as a "commemorative feature").[4]

Plaintiffs here—three Vietnam War veterans and an architectural historian—hold deep personal connections to Arlington National Cemetery and regularly visit the area to admire the reciprocal views between the cemetery and the Lincoln Memorial. *See* PSOMF ¶¶ 31, 34. Construction of the arch will destroy this unobstructed view and the symbolic connection between

[4] Available for download at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=153235.

the Lincoln Memorial and Arlington House that holds deep meaning to them, thereby degrading Plaintiffs' future visits. *Id.* ¶¶ 33, 35.

In February 2026, Plaintiffs filed this lawsuit seeking a declaration that the arch is unlawful and an injunction barring Defendants Haley, Executive Office of the President, and NPS from constructing the arch unless and until all legal prerequisites, including congressional authorization, have been satisfied. *See* Compl., ECF 1. Plaintiffs alleged that constructing the unauthorized arch is ultra vires and in excess of Defendants' lawful authority. *Id.* ¶¶ 52–59. In addition, Plaintiffs alleged that constructing the unauthorized arch violates President Trump's constitutional duty to take care that Congress's laws be faithfully executed. *Id.* ¶¶ 60–64.

Shortly after filing suit, Plaintiffs moved for a preliminary injunction to block Defendants Haley, Executive Office of the President, and NPS from taking steps to construct or to direct or facilitate construction of the arch, absent congressional authorization and satisfaction of all other legal prerequisites. *See* Pls. Mot. for Prelim. Inj., ECF 7. After a hearing, Plaintiffs agreed to the dismissal of their motion in exchange for Defendants' assurances that "Defendant NPS shall not authorize construction of an arch on Memorial Circle to begin before NPS has published a notice stating its authorization on its Planning, Environment and Public Comment website (https://parkplanning.nps.gov/)" and that "Defendant NPS shall provide at least fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case." ECF 26 at 1. On April 8, this Court entered a consent order binding the parties to the terms of their agreement. *Id.*

Thereafter, Defendants filed a motion to dismiss*, see* ECF 31, 33, 35, and the parties filed cross-motions for summary judgment, *see* ECF 36, 44–45, 48–49, 51. Defendants' briefing reflects that the sole source of legal authority that Defendants claim for construction of the arch is the Act

of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 (1925 Act). That Act authorized the now-defunct Arlington Memorial Bridge Commission to design and construct Arlington Memorial Bridge for a sum not to exceed $14.75 million, pursuant to a "ten-year program of expenditures and construction" that the Commission had set forth in a report to Congress the preceding year. *Id.* §§ 2, 6, 43 Stat. at 974–75. Defendants' motion to dismiss and the parties' cross-motions for summary judgment are now fully briefed and pending before the Court.

In the meantime, Defendants have moved rapidly toward construction of the arch. They sought and secured final approval for the arch from the Commission of Fine Arts. *See* PSOMF ¶ 9. They completed on-the-ground surveys and testing in Memorial Circle. *Id.* ¶ 10. And, among other things, they submitted plans of the arch for consideration at the NCPC's June 4, 2026, meeting. *Id.* ¶ 12. NCPC, however, has not yet issued a final report on the planned arch.

Yesterday, on September 3, Secretary Burgum announced that "we are preparing to start, over the next two-week period, the excavation work necessary for the Great Triumphal Arch … at Memorial Circle." Sec'y Doug Burgum (@SecretaryBurgum), X (Sept. 3, 2026, 3:01 PM), *supra* n.1. The NPS's website does not note any final action that NPS has taken to authorize the arch. And NPS has not filed a notice with the Court to indicate that "commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle" will begin within fourteen days, as required by this Court's order. ECF 26 at 1.

**LEGAL STANDARD**

To secure a temporary restraining order, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if [an] injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel*

*Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions."). Where relief runs against the government, "the final two … factors—balancing the equities and the public interest—merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

**ARGUMENT**

**I. Plaintiffs are likely to succeed on the merits.**

Plaintiffs have explained at length in their prior filings why they are entitled to declaratory and injunctive relief barring construction of the arch.

*First*, as Plaintiffs have comprehensively explained in connection with their opposition to Defendants' motion to dismiss and in their briefing on the parties' cross-motions for summary judgment, Defendants' arch is ultra vires. *See* Pls. Opp. to Defs. Mot. to Dismiss at 22–34; Pls. Memo. in Support of Pls. Mot. for Summ. J. at 12–17; Pls. Reply in Support of Pls. Mot. for Summ. J. at 30–38. The Supreme Court has recognized that "the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law," is subject to ultra vires review, even absent a statutory cause of action. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902). And here, Defendants' arch is "unauthorized by any law." *McAnnulty*, 187 U.S. at 110. Defendants have not asserted inherent constitutional authority to build the arch, and Congress has not passed a statute authorizing construction of the arch.

If more were needed—and it is not—the arch is "contrary to" at least two "specific [statutory] prohibition[s] … that [are] clear and mandatory." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (citation omitted). For one thing, the Commemorative Works Act requires that any commemorative work on NPS land in Washington, DC, must be

"specifically authorized by law," *id.* § 8903(a)(1), and assigned a congressionally designated sponsor responsible for fulfilling the Act's procedural steps, *see, e.g.*, *id.* § 8905(a). The arch—which is a commemorative work under the Act because it is a "structure … designed to perpetuate in a permanent manner the memory of an … event or other significant element of American history," *i.e.*, the Nation's 250th anniversary, *id.* § 8902(a)(1); *see supra* p. 5—violates the Act because it has received neither congressional approval nor a designated sponsor. For another thing, the arch also violates 40 U.S.C. § 8106, which provides that "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." Again, the arch has not received Congress's authorization.

Although Defendants have invoked the 1925 Act to claim power to build the arch, that statute cannot reasonably be read to authorize a massive monumental arch to commemorate a national anniversary that, at the time of the statute's enactment, lay more than a century in the future. Rather, the 1925 Act authorized the Arlington Memorial Bridge Commission—not Defendants—to "proceed at once" to construct Arlington Memorial Bridge according to the Commission's design. 1925 Act, § 1, 43 Stat. 974. The statute directed the project, "as speedily as practicable," to be "prosecuted to completion … in a total sum not to exceed $14,750,000," *id.* § 2, 43 Stat. at 974, pursuant to a "ten-year program of expenditures and construction," *id.* § 6, 43 Stat. at 975. The bridge was completed over ninety years ago, in accordance with the statutory requirements.

*Second*, as Plaintiffs have also previously explained, the arch violates President Trump's constitutional duty to take care that the laws be faithfully executed. *See* Pls. Opp. to Defs. Mot. to Dismiss at 34–38; Pls. Memo. in Support of Pls. Mot. for Summ. J. at 17–19; Pls. Reply in Support

of Pls. Mot. for Summ. J. at 38–41. Because "Congress has … exclusive constitutional authority to make laws necessary and proper to carry out the powers vested by the Constitution" in the federal government, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588–89 (1952), the President's role as the head of the Executive Branch is to give effect to Congress's legislative choices by implementing them according to their terms. Here, the President's direction to build the arch directly contradicts Congress's legislative choice, embodied in the Commemorative Works Act and in 40 U.S.C. § 8106, to maintain its longstanding oversight role in determining the configuration of monuments and other structures on federal lands in Washington, DC.

Notably, even under Defendants' meritless theory that the 1925 Act authorizes the arch, Defendants *still* lack authority to move ahead with construction because the NCPC has not issued a "final report" stating its views on the project, and Defendants therefore have necessarily not considered those views, as Congress required. 40 U.S.C. § 8722(b)(1). Because NCPC has yet to offer its definitive views, excavation for the arch is premature even under Defendants' view that the 1925 Act authorizes construction.[5]

Finally, under this Court's April 8 order, construction may not begin unless and until NPS has published a public authorization on its website and given fourteen days' advance notice by filing a notice on the docket in this case. *See* ECF 26. Neither of those preconditions has been satisfied.

## II. Plaintiffs will suffer irreparable injury absent a temporary restraining order.

Defendants' arch will inflict profound harm on Plaintiffs by interfering with a symbolic landscape that holds great personal meaning. *See* Pls. Memo. in Support of Pls. Mot. for Summ. J.

---

[5] The NCPC is scheduled to meet next on October 1, 2026, and it will finalize its agenda by September 25. *See* NCPC, *Meeting Calendar* https://www.ncpc.gov/review/calendar/.

at 9–12 (addressing standing); *id.* at 20–21 (addressing irreparable injury); *see also* Pls. Reply in Support of Pls. Mot. for Summ. J. at 9–19, 43. An injury of this sort, like environmental harm, "by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). "If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction." *Id.* Indeed, the Supreme Court's recent opinion in *National Park Service* provides a cautionary tale. There, the government proceeded with construction on a ballroom on White House grounds even though a federal district court held that construction was unlawful, and the D.C. Circuit affirmed the district court's conclusion. *See Nat'l Trust for Historic Preservation in the U.S. v. NPS*, 2026 WL 2276494, at *3 (D.C. Cir. Aug. 7, 2026). The government sought a stay from the Supreme Court pending Supreme Court review of the D.C. Circuit's ruling, and the Court granted that relief, holding among other things that because "a partially completed superstructure" was already in place, "freezing construction" would raise "significant" practical problems that militated against a stay of construction. *NPS v. Nat'l Trust for Historic Preservation in the U.S.*, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026). Permitting Defendants to proceed with construction on the arch would risk a similar situation in which construction before this Court has issued a final judgment would render the arch a fait accompli before this Court has reached a determination on whether it is authorized by law.

**III. The balance of equities and public interest favor Plaintiffs.**

As against the certain and irreparable injury that Plaintiffs will experience if construction moves forward, the government—and, by extension, the public—will suffer no cognizable harm from a temporary restraining order. Defendants have adduced no evidence that they will suffer any harm from the brief increment of delay necessary for this Court to determine whether the

commemorative project on which they hope to embark is lawful. And, indeed, no such harm will arise. To the contrary, preserving Congress's role in authorizing the design and siting of commemorative works and other structures on federal land in our national capital will ensure democratic accountability and a measure of consensus in determining the symbolic configuration of those landmarks and the national narrative that they convey.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter a temporary restraining order barring Defendants Haley, Executive Office of the President, and NPS from initiating construction of an arch on Memorial Circle without congressional authorization and compliance with statutory prerequisites and that this Court either (1) set a briefing schedule and hearing date for a preliminary injunction motion or (2) rule on the parties' cross-motions for summary judgment on an expedited basis.

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*