**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Civil Action No. 26-cv-544 (TSC) |

**MOTION TO DISSOLVE OR CLARIFY MINUTE ORDER**

## TABLE OF CONTENTS

BACKGROUND ....... 2

LEGAL STANDARD ....... 7

ARGUMENT ....... 7

CONCLUSION ....... 12

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Addi*,
No. 20-CV-01650 (TSC), 2021 WL 5911175 (D.D.C. Nov. 23, 2021) ............................10, 12

*Armstrong v. Manzo*,
380 U.S. 545 (1965)..........................................................................................................12

*Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*,
609 U.S. ---, No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026).......................................8

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)..........................................................................................................2, 7

*Trump v. California*,
609 U.S. ---, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026).................................8, 10

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)........................................................................................................9, 10

*Trump v. New York*,
592 U.S. 125 (2020)............................................................................................................8

*United States v. All Assets Held at Bank Julius*,
502 F. Supp. 3d 91 (D.D.C. 2020).........................................................................................6

*Wannall v. Honeywell Int'l Inc.*,
292 F.R.D. 26 (D.D.C. 2013) ..............................................................................................7

**Rules**

Federal Rule of Civil Procedure 54(b).........................................................................................7

Federal Rule of Civil Procedure 65(b).......................................................................................12

Defendants respectfully move the Court to dissolve its September 4, 2026, Minute Order or, alternatively, to clarify that it does not impose any obligations beyond those ordered in Dkt. 26. Before filing this motion, Defendants conferred with Plaintiffs, who indicated that they oppose the relief requested in this motion.

The Court issued that order seven hours after Plaintiffs sought a temporary restraining order (TRO) and before Defendants could file an opposition. In requiring Defendants to "provide the court with 48 hours' notice before engaging in any activity on Memorial Circle other than on-site information gathering 'regarding any archaeological resources,[']" the Minute Order has already interfered with public safety and park maintenance. The Court should dissolve its unlawful and unwarranted 48-hour hold on routine agency actions that cause no harm to Plaintiffs and in the meanwhile disturbs the Executive Branch's prerogatives to maintain property under its jurisdiction and control.

Consider the car accident on September 7, 2026, when a sedan jumped a curb onto Memorial Circle. First responders, including the United States Park Police, rushed to the scene, where they needed to immediately enter Memorial Circle, under theoretical threat of contempt for failing to provide the Court 48 hours' notice of their emergency response activity. Public safety officers cannot fulfill their duties under a Damoclean sword of contempt. Nor should routine remedial responses to such accidents be unduly delayed. But vehicle debris, spilled oil, and disturbed ground all remain, as the National Park Service (NPS) must labor under the Court's Minute Order.

The Court issued that Minute Order after Plaintiffs manufactured a false emergency based on a misconstrued social media post. That post simply summarized what had long been publicly disclosed on the NPS planning website: that NPS will undertake Phase IB archaeological

excavation required to comply with its legal obligations under statutes like the National Historic Preservation Act (NPHA) *prior to the start of any construction activities*. Because that excavation was disclosed by NPS in June and confirmed in August, Plaintiffs lacked any non-frivolous basis for their emergency motion. And the Court's response to Plaintiffs' false emergency is actively interfering with NPS' responsibility to respond to actual emergencies.

Any additional notice requirement is wholly inappropriate, as NPS has already agreed to "provide at least fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case." Consent Order, Dkt. 26. Extending notice to non-construction activities is unnecessary to provide any relief to Plaintiffs, who assert only viewshed interests in the surrounding area rather than any interest in Memorial Circle itself. And requiring NPS to provide notice of such non-construction activity improperly "inject[s] the judge into day-to-day agency management" beyond the bounds of this case. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004). Such ongoing judicial supervision of an agency is unlawful, particularly where Plaintiffs lack standing for numerous reasons. The Court should thus dissolve the Minute Order.

## **BACKGROUND**

Plaintiffs' first manufactured emergency arose from their unsupported allegation that "construction of a monumental arch in Memorial Circle [would] begin imminently so that the arch can be completed by July 4 of this year," Pls.' Mot. for Prelim. Inj. 1, Dkt. 7, without complying with legal requirements like the NHPA, Compl. ¶¶ 55–56, 64, Dkt. 1. After NPS provided testimonial evidence that the arch project was still in a "conceptual phase" and that it would comply with applicable laws, including the NHPA, "prior to initiating construction of an Arch," Lands Decl. ¶¶ 6–7, Dkt. 12-1, Plaintiffs nonetheless complained that Defendants had not provided evidence from the Executive Office of the President, Dkt. 19, Tr. 27:5–23. Defendants thus took

the unusual step of providing a declaration from an Assistant to the President, explaining that "[c]onstruction for the [Arch] Project will not begin unless and until NPS follows all applicable legal requirements and issues a final agency action authorizing arch construction to proceed." Fisher Decl. ¶ 4, Dkt. 24-1. The Parties thus agreed that Plaintiffs' first emergency motion would be denied in exchange for NPS providing fourteen days' notice on the docket "prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle." Consent Order, Dkt. 26.

Having addressed Plaintiffs' first artificial crisis, NPS proceeded to undertake the very compliance work that Plaintiffs alleged—incorrectly—would not occur. In June, NPS published a draft Assessment of Effects Report as part of its compliance with Section 106 of the NHPA. That June report explained that a "subsurface investigation of Memorial Circle may be necessary to determine the presence or absence of deeply buried resources" in "Phase 1B Geoarcheological Investigations" because the initial archaeological assessment "did not include subsurface archeological excavation."[1] A subsequent August report confirmed that NPS "will conduct a Phase 1B assessment *prior to the start of any construction activities*."[2] In accord with the August report, the Secretary of the Interior announced, via social media post, that his department was "preparing to start, over the next two-week period, the excavation work necessary for the" arch.[3]

---

[1] Ex. A, Triumphal Arch at Memorial Circle, Assessment of Effects Report, at 20–23 (June 5, 2026), available for download at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151576.

[2] Ex. B, Triumphal Arch – Section 106 Assessment of Effect (Revised), at 38–39 (Aug. 28, 2026) (emphasis added), available for download at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=153235.

[3] https://x.com/SecretaryBurgum/status/2095587973907755133.

Plaintiffs misconstrued that announcement as referring to construction excavation rather than archaeological excavation. Pls.' TRO Br. 1, Dkt. 56-1. And they chose to bring another emergency motion seeking a TRO largely duplicative of the Consent Order; the only new requested relief was (1) a fourteen-day halt to non-construction planning and compliance activity and (2) a briefing schedule for a third emergency motion. *Compare* Consent Order, Dkt. 26, *with* Proposed TRO Order, Dkt. 56-2.

Plaintiffs filed that motion before making a single attempt to confer with Defendants, in violation of Local Civil Rule 7(m). At 1:50 PM on Friday, September 4, 2026, Plaintiffs initiated their first communication about their TRO motion; they emailed a PDF of the motion they would be "filing imminently." Sawyer Decl. ¶ 2, Dkt. 58-1. Upon receiving that email, counsel for Defendants promptly called counsel for Plaintiffs at 1:53 PM to confer about the imminent motion. *Id.* ¶ 3. While on the phone, Defendants received an ECF notification that Plaintiffs had already filed their motion. *Id.* Had Plaintiffs attempted to confer with Defendants, Defendants would at least have been afforded a "good-faith" opportunity "to narrow the areas of disagreement" or misunderstanding. LCvR 7(m).

Having no conferral opportunity, Defendants instead filed a notice regarding the TRO motion at 4:18 PM to correct Plaintiffs' misconstruction of the Secretary's announcement. Dkt. 57. With that notice, Defendants submitted the Declaration of Jennifer Nersesian, Regional Director for the National Park Service, National Capital Region, to clarify the archaeological nature of excavation "expected to begin no earlier than September 21, 2026." Dkt. 57-1 ¶ 9.

Although that notice was not Defendants' opposition to Plaintiffs' TRO Motion, Dkt. 57, the Court issued a Minute Order at 9:04 PM upon consideration of the TRO motion, Defendants' notice, and the full record in this case. That Minute Order directed Defendants to "provide the

court with 48 hours' notice before engaging in any activity on Memorial Circle other than on-site information gathering 'regarding any archaeological resources that may be present at the site, below the level of the fill materials that make up the present-day surface of Columbia Island,[']  Nersesian Decl. at 6, necessary to comply with the National Historic Preservation Act and other applicable statutes."

Three days after the Court issued the Minute Order, a motor vehicle crash occurred at Memorial Circle. Decl. of Jennifer Madello, NPS Superintendent, George Washington Memorial Parkway ¶ 6. A photo of this crash is included below:




Madello Decl. Ex. 1. As part of the immediate response to that crash, United States Park Police entered onto Memorial Circle. Madello Decl. ¶ 7. After the car was removed by a towing company, damage remained "including spilled oil, rutted grass, scattered debris, and possible damage to curbstones." *Id.* ¶ 8. This damage is visible in the photographs below:





Madello Decl. Exs. 2–3. NPS would normally "address damage of this kind as quickly as possible, including by cleaning the spilled oil, reseeding the grass, removing the debris, and making any needed repairs to the curbs and the roadway," "to protect Parkway resources, public safety, and the environment." *Id.* ¶ 9. But the Minute Order has interfered with NPS' routine responsibilities, imposing a blanket 48-hour hold on "any activity" on Memorial Circle.

The unwarranted hold on NPS activity is not limited to accident-response activities. Other unplanned events, such as weather, frequently require NPS to undertake clean-up activities, drainage repairs, etc. *Id.* ¶ 10. The "NPS also conducts a variety of frequent, recurring maintenance activities in Memorial Circle," or adjacent areas, including routine mowing, inspections, litter removal, curb cleaning, sign maintenance, road maintenance, and vegetation maintenance. *Id.* ¶¶ 11–12. NPS must also occasionally enter Memorial Circle for projects on other sites, such as when survey teams need to enter the Circle to gather control points. *Id.* ¶ 14.

## LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not specifically address motions for reconsideration, such determinations are within the trial court's broad discretion. *United States v. All Assets Held at Bank Julius*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020) (citations omitted); *see also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The court has the inherent authority to reconsider interlocutory orders "as justice requires." *Id.* (citing *Wannall v. Honeywell Int'l Inc.*, 292 F.R.D. 26, 30-31 (D.D.C. 2013), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014)). Courts determine justice requires reconsideration of an interlocutory order when the movant demonstrates "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Id.* (citation omitted).

## ARGUMENT

As the Supreme Court has explained, federal courts cannot issue orders "injecting [themselves] into day-to-day agency management." *Norton*, 542 U.S. at 67. But the Minute Order requires Defendants to provide 48 hours' notice of *any activity* on Memorial Circle, including numerous routine activities like emergency response and park maintenance. Congress has not authorized such "pervasive oversight by federal courts over the manner and pace of agency compliance" with their statutory responsibilities. *Id.* The Minute Order should thus be dissolved or clarified to be limited to activities within the scope of the Consent Order for several reasons.

1. Plaintiffs' lack of standing mandates dissolution of the Minute Order. As Defendants have explained in numerous filings, *see* Dkts. 31, 35, 44, 51, Plaintiffs have failed to carry their

burden to establish imminent, concrete and particularized injuries. And two recent Supreme Court decisions confirm Plaintiffs' lack of standing.

Plaintiffs' desire to view the Lincoln Memorial or Arlington House fail to establish concrete and particularized injuries as explained in the Defendants' Notice of Supplemental Authority, Dkt. 55 (discussing *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*, 609 U.S. ---, No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) (*per curiam*)).

And in suing before any final agency action issued, Plaintiffs have failed to establish an imminent, non-speculative injury under *Trump v. California*, 609 U.S. ---, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026). There, the plaintiffs sought to enjoin an Executive Order "from the President to his subordinates mandating that certain agencies pursue certain policies," without requiring "that any proposed" policy be adopted in final agency action. *Id.* at *1. The Supreme Court held that a directive to promulgate a rule in the *future* did not injure plaintiffs as there was not yet "a proposed rule, let alone a final rule" that could affect them. *Id.* at 4. Finding an injury "[a]t the time the suit was filed—the time when standing is measured—" would therefore have required a "string of speculations," including about "how the agency would weigh the comments it received," "whether the agency would issue a final rule," and "what the final rule would say." *Id.* Plaintiffs' alleged standing was thus impermissibly "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Trump v. New York*, 592 U.S. at 131) (quotation modified).

Plaintiffs' basis for standing here demands *even more* speculation than in *California* given that Plaintiffs cannot even point to an executive order directing NPS to authorize the construction of an arch or imposing design requirements on the project. Instead, at the time Plaintiffs filed suit, their complaint relied on social media posts and now-disproven reporting about the President's

arch construction timelines. Compl. ¶¶ 29–42, Dkt. 1. Even were that hearsay admissible, it would show at most "an internal directive from the President to his subordinates" that is insufficient to create standing. *See California*, 2026 WL 2473573, at *1. Plaintiff's theory of standing required substantial speculation, especially at the time its suit was filed, about whether NPS would actually initiate the administrative process necessary to authorize construction of an arch, how NPS and other relevant agencies would weigh public comments, whether NPS and other agencies would ultimately authorize arch construction, and what the arch design would ultimately look like. Dkt. 44-1, at 15, 17. Under *California*, a plaintiff cannot establish standing on such an attenuated basis. And Plaintiffs' lack of standing deprives the Court of jurisdiction to issue the Minute Order.

2. In imposing a universal 48-hour hold on any activity on Memorial Circle, the Minute Order exceeds the Court's equitable authority by affording more relief than necessary to "offer complete relief *to the plaintiffs before the court*." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). Plaintiffs' only asserted interests are grounded in the viewshed *around* Memorial Circle, and the existing Consent Order already ensures that Plaintiffs will receive at least "fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle." Dkt. 26. No additional notice is necessary or appropriate to provide relief to Plaintiffs.

Because Plaintiffs assert no interest in Memorial Circle itself, they need no notice of non-construction activities on Memorial Circle, especially activities having no lasting effect on surrounding viewsheds. In requiring advance notice of activities that do not affect Plaintiffs, the Minute Order violates *CASA* and exceeds the Court's jurisdiction. It also imposes irreparable harm on Defendants, who must choose between fulfilling their statutory responsibilities following

unexpected emergencies and the threat of contempt. Nor should the Chief Executive be required to provide notice of routine park maintenance activities like grass cutting.

For similar reasons, the Minute Order violates *CASA* in requiring notice of interim compliance activities taken before final agency action concerning the proposed arch. Because those interim compliance activities inflict no injury on Plaintiffs—who assert only interests in viewsheds being obstructed by a tall arch—they need no notice of such activities. "Federal courts review final rules, not proposed rules—and certainly not antecedent internal directives," which do not impose non-speculative injuries. *California*, 2026 WL 2473573, at *4. Even were Plaintiffs somehow injured by interim compliance activities like archaeological investigations, they certainly are not entitled to *redundant* notice of activities already disclosed on NPS' planning website. *See* Dkt. 48, at 7 & n.3; Dkt. 54, at 6 & n.1.

Whereas Plaintiffs will suffer no harm from dissolving the Minute Order's notice requirement, Defendants are irreparably harmed by that requirement. As the Supreme Court explained when staying the lower court's injunction in *California*, the government was "likely to suffer irreparable harm without a stay," as the lower court's "breach of Article III interferes with the internal operations of the Executive Branch." 2026 WL 2473573, at *4.

Here, the Minute Order imposes even more harm on the government, as its scope is not limited to a specific internal directive. The Minute Order was instead prompted by Plaintiffs' continuing quest to subject Defendants to judicial micromanagement over online posts, in violation of Article III. Unable to ground its order in a misconstrued social media post, the Court instead issued a universal hold on *any activity* on Memorial Circle. "When a federal court 'improperly intrudes on a coordinate branch' in this way," dissolving that Minute Order "is justified." *Id.* (quoting *CASA*, 606 U.S. at 859).

3. The Minute Order should also be dissolved as it was prompted by Plaintiffs' violation of Local Civil Rule 7(m). The Court has required other litigants to follow Rule 7(m) precisely so their opponents are "provided with an opportunity to respond." *Allen v. Addi*, No. 20-CV-01650 (TSC), 2021 WL 5911175, at *3 (D.D.C. Nov. 23, 2021). But the Minute Order issued before Defendants received an opportunity to respond to Plaintiffs' latest emergency motion.

The Court regularly screens non-dispositive motions for compliance with Rule 7(m),[4] and has even notified Justice Department leadership when government lawyers failed to meet and confer as required by that rule.[5] But Plaintiffs' lawyers were not held to the same standards.

Plaintiffs cannot claim that an emergency justified violating Rule 7(m). Their lead counsel had time to discuss Plaintiffs' concerns with the Washington Post[6] and the New York Times[7] before filing their emergency motion. If he had time to confer with reporters, he had time to discuss his concerns with counsel of record for Defendants.

Those articles suggest that Plaintiffs' counsel intentionally skipped the conferral required by Rule 7(m) to maintain the pretense that construction was about to begin. In the same article where the Post quoted Plaintiffs' counsel as being "befuddled" by the anticipated excavation, a White House official reportedly clarified that the "planned work at the arch site [was] different

---

[4] *E.g.*, Minute Order, *Hudson v. United States*, No. 1:23-cv-318-TSC (Feb. 9, 2023) (denying motion for failure to comply with Rule 7(m)); Minute Order, *Keats v Sebelius*, No. 1:13-cv-1524-TSC (Oct. 20, 2014) (same).

[5] *E.g.*, Minute Order, *Cox v. Dep't of Treasury*, No. 1:20-cv-631-TSC (Aug. 24, 2020).

[6] Dan Diamond, *Trump officials say work will start on triumphal arch within two weeks*, Washington Post (Sept. 3, 2026), available at https://www.washingtonpost.com/politics/2026/09/03/construction-trump-giant-arch-dc-begin-within-two-weeks/.

[7] Luke Broadwater et al., *Trump to Break Ground on Arch Before Getting Approval*, New York Times (Sept. 3, 2026), available at https://www.nytimes.com/2026/09/03/us/politics/trump-triumphal-arch-plans-approval.html.

from construction."[8] Rather than contact opposing counsel in a "good-faith effort" to seek clarification about how the forthcoming activity differed from construction, LCvR 7(m), Plaintiffs' counsel rushed to file an "emergency" motion despite his befuddlement.

In sum, Plaintiffs' violation of Rule 7(m), whether intentional or not, deprived Defendants of a reasonable "opportunity to respond" to the emergency motion. *Allen*, 2021 WL 5911175, at *3.

4. In acting on that "emergency" motion before Defendants were afforded a reasonable opportunity to be heard, the Minute Order deprived Defendants of fundamental due process requirements. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Although courts have limited authority under Federal Rule of Civil Procedure 65(b) to issue temporary restraining orders without notice to the adverse party, that authority is limited to orders that expire within 14 days. The Minute Order does not set an expiration time. For that reason alone, the Minute Order should be dissolved.

5. Alternatively, Defendants respectfully request that the Court clarify that the Minute Order's obligation to provide notice of "any activity" on Memorial Circle does not extend to activities beyond those specified in the Consent Order, Dkt. 26. Because non-construction activities do not affect Plaintiffs' asserted interests, Defendants ought not be subjected to ongoing notice requirements over such activities.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dissolve its Minute Order. Alternatively, Defendants request that the Court clarify that Minute Order.[9]

---

[8] Diamond, *supra* note 6.

[9] If the Court does not rule on this motion with 48 hours, this filing serves as notice that Defendants will undertake remedial and other activities described in the Madello Declaration beginning as soon as 48 hours after this filing.

Date: September 10, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General

*/s/ Michael S. Sawyer*
MICHAEL S. SAWYER, Senior Attorney
DANIEL LUECKE, Trial Attorney
Energy and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-353-5134
E-mail: michael.sawyer@usdoj.gov
daniel.luecke@usdoj.gov

*Counsel for Defendants*