**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL LEMMON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | ) | Civil Action No. 26-cv-544 (TSC) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE OR CLARIFY MINUTE ORDER**

Late last week, Secretary of the Interior Doug Burgum issued a series of public announcements representing that work was imminently about to begin on the construction of a triumphal arch in Memorial Circle. Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth—who have challenged as unlawful Defendants' plan to construct the arch without congressional authorization—promptly filed an application for emergency relief. ECF 56. Defendants then filed a "notice of activity," ECF 57, and a declaration, ECF 57-1. Upon consideration of Plaintiffs' motion, Defendants' filings, and the entire record in this case, this Court entered a minute order directing Defendants to provide 48 hours' notice prior to undertaking any activity in Memorial Circle.

Defendants now seek to avoid the consequences of Secretary Burgum's announcements and the transparency required by this Court's minute order. Contending that the exigent situation that prompted this Court's intervention was manufactured by *Plaintiffs*, Defendants ask this Court to dissolve the order's 48-hour notice requirement or to "clarify" it in a way that would leave it without force. Defendants' arguments are meritless, and this Court should deny their motion.

## BACKGROUND

On September 3, Secretary Burgum made a series of public announcements from his official government account. Accompanied by large artistic renderings of a triumphal arch towering over Arlington National Cemetery, his first announcement read:

> We are pleased to announce that after a very long wait (over 125 years!), we are preparing to start, over the next two-week period, the excavation work necessary for the Great Triumphal Arch and Military Observation Deck, at Memorial Circle on Columbia Island between the Lincoln Memorial and Arlington National Cemetery. This will be one of the Great Pieces of American Architecture, honoring the history and significance of Arlington Cemetery and befitting the most powerful Capital in the World.

Following a series of announcements describing the history of the area around Memorial Circle, Secretary Burgum concluded:

> Now after 125 years of waiting, the most powerful capital in the world will be home of the most spectacular and beautiful arch of them all!

Sec'y Doug Burgum (@SecretaryBurgum), X (Sept. 3, 2026, 3:01 PM).[1]

Read naturally, the Secretary's statements bespoke a clear intention to break ground on the arch over the next two weeks. By the next day however, despite a consent order entered by this Court on April 8 that requires Defendant National Park Service (NPS) to "provide at least fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case," ECF 26, NPS had filed nothing on this Court's docket about its planned work.

Based on the Secretary's statements, Plaintiffs were reasonably concerned that NPS was planning imminently to begin construction of the arch. They therefore applied for a temporary restraining order, ECF 56, pursuant to the procedures set forth in Federal Rule of Civil Procedure

---

[1] https://x.com/SecretaryBurgum/status/2095587973907755133.

65(b), to freeze the status quo for fourteen days while this Court adjudicated pending cross-motions for summary judgment or a motion for a preliminary injunction that Plaintiffs proposed to file.

In response, Defendants quickly backtracked on Secretary Burgum's bombastic public announcements. The announced excavation, they explained in a declaration, was only "on-site information gathering," Nersesian Decl., ECF 57-1, ¶ 6, and even this excavation had not yet been authorized by NPS, *id.* ¶ 9. NPS, they maintained, had not in fact "commit[ted] … to future construction of an arch, or any structure, in Memorial Circle," *id.* ¶ 10, and "[n]o final decision ha[d] been made to construct, or to demolish in preparation of constructing, the triumphal arch, or any structure, in Memorial Circle," *id.* ¶ 12.

In consideration of the parties' filings, this Court entered an order on September 4 reminding Defendants of their notice obligations under the April 8 consent order and adding an additional notice requirement: that Defendants must provide "48 hours' notice before engaging in any activity on Memorial Circle other than [the] on-site information gathering" described in Defendants' declaration. 9/4/2026 Minute Order.

## ARGUMENT

The Court's order reasonably avoids the need for future emergency motions by ensuring that Defendants provide timely and accurate information about their steps to implement a massive and irreversible construction project that Plaintiffs contend has no legal foundation and that is rapidly progressing in the face of an active legal challenge.

**1.** Defendants' primary argument for dissolving or "clarifying" the Court's minute order, and eliminating the 48-hour notice requirement, is that the order could be read to require two days' notice before Defendants can engage in "emergency response and park maintenance" activities. Defs. Mot. to Dissolve or Clarify (Defs. Mot.), ECF 59, at 7. Tellingly, though, Defendants

themselves have not adopted this implausible reading of the Court's order. Indeed, they represent that NPS personnel *have* "entered onto Memorial Circle" since the entry of this Court's minute order to respond to an emergency situation without providing the 48-hour notice required by the order. *Id.* at 5. Defendants thus reasonably read the order to allow such activity. This Court's notice requirement for "any activity" on Memorial Circle must be read in the context in which it was made: a challenge to activities related to the construction of the arch. Accordingly, although Plaintiffs do not believe that clarification is needed, Plaintiffs do not object to an order clarifying that the 48-hour notice requirement does not apply to emergency response activities, lawnmowing, or other routine NPS park-maintenance activities unrelated to the planned arch.

**2.** Defendants next suggest that this Court lacked jurisdiction to enter the minute order, contending that Plaintiffs lack Article III standing, Defs. Mot. 7–9, and that the order exceeds this Court's equitable authority to afford relief, *id.* at 9–10. These arguments are non sequiturs.[2] Irrespective of Plaintiffs' standing or the scope of the final relief that this Court may grant, the Court has ancillary jurisdiction to enter orders that "enable [the] court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). This Court's minute order imposed a reasonable notice requirement to prevent the Court and the parties from being thrust into repeated emergency proceedings during the pendency of this lawsuit. Given Secretary Burgum's statements—which appeared to announce imminent commencement of work to construct the arch, without congressional authorization—this Court acted well within its authority to place added

[2] Although irrelevant for purposes of Defendants' motion, Plaintiffs have Article III standing, as they have explained in multiple prior filings. *See, e.g.*, Pls. Memo. in Support of Pls. Mot. for Summ. J., ECF 36-1, at 9–12; Pls. Opp. to Defs. Cross-Mot. for Summ. J., ECF 49, at 9–19; Pls. Notice of Supp. Auth., ECF 54, at 2–5.

measures on Defendants to ensure that Defendants' construction does not begin without adequate advance notice, and that the Court's April 8 consent order is honored.

Plaintiffs further note that, in May, Defendants filed advance notice of "on-site information gathering" that NPS was conducting on Memorial Circle, thereby demonstrating their compliance with the consent order and avoiding the need for an emergency motion. Bowron Decl., ECF 32-1, ¶ 5. No emergency proceedings ensued, and none were needed. This Court's minute order requires nothing more of Defendants than the transparency that they provided in that instance.

**3.** Defendants next maintain that the minute order issued "before Defendants received an opportunity to respond" to Plaintiffs' motion. Defs. Mot. at 11. Of course, Defendants *did* respond to Plaintiffs' motion prior to entry of this Court's minute order, *see* Notice of Activity, ECF 57, and this Court expressly referenced that response in the minute order. Thus, after considering Defendants' notice that they believed that Plaintiffs had "misconstrued" Secretary Burgum's announcements and that those announcements referred only to "archaeological excavation required to comply with [Defendants'] legal obligations," Defs. Mot. at 1–2, the Court viewed entry of an additional notice requirement as necessary to ensure transparency from Defendants and orderly proceedings in this litigation.[3]

Defendants' contention that Local Rule 7(m) requires advance conferral prior to filing an application for a temporary restraining order is likewise meritless. Federal Rule of Civil Procedure 65, which governs such relief, requires only "notice" to the adverse party—and permits an order to issue under certain circumstances even absent notice. *See* Fed. R. Civ. P. 65(b). After all, a temporary restraining order is an "even more provisional" form of relief than a preliminary

[3] That multiple major news outlets reached out to undersigned counsel for comment immediately in the wake of Secretary Burgum's announcements, *see* Defs. Memo. 11, is further indication that the announcements are not plausibly read to refer to routine information-gathering.

injunction and is designed to "preserve the status quo" in an emergency situation "until there is an opportunity" for further proceedings. *J.G.G. v. Trump*, 2025 WL 914682, at *3 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring) (citation omitted). Defendants concede that they had notice of Plaintiffs' emergency application, Sawyer Decl., ECF 58-1, ¶¶ 2–3, and indeed they promptly responded, *see* Notice of Activity, ECF 57. Accordingly, Defendants' observation that Federal Rule of Civil Procedure 65(b) requires that orders issued "without notice to the adverse party" must "expire within 14 days," Defs. Memo. 12, is beside the point.

Nor would the conferral that Defendants contend was required have changed the course of events in any meaningful way. Faced with a series of announcements by the Secretary of the Interior appearing to announce the imminent commencement of construction work, Plaintiffs would have been foolhardy to accept informal representations from Defendants' counsel that such a violation was not forthcoming, rather than demanding formal, sworn assurances promptly filed on the Court's docket. *Cf. Nat'l Tr. for Historic Preservation in the U.S. v. NPS*, 821 F. Supp. 3d 62, 66 (D.D.C. 2026) (describing how a single day elapsed between President Trump's announcement on social media that ground was being broken on the White House ballroom and reports of "heavy machinery … tearing down the East Wing"), *appeal pending* (D.C. Cir. Nos. 26-5123, 26-5134). Such assurances are precisely what Defendants had an opportunity to provide and precisely what this Court had before it when it determined that the 48-hour notice requirement imposed by the minute order was necessary to prevent future exigencies from arising.

## CONCLUSION

This Court should deny Defendants' motion to dissolve or clarify the September 4, 2026, minute order.

Respectfully submitted,

/s/ Nicolas A. Sansone

Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*