**National Park Service**
**U.S. Department of the Interior**

**George Washington Memorial Parkway**

# Categorical Exclusion Documentation Form (CE Form)

**Project:** Triumphal Arch - Geoarchaeological Investigation

**PEPC Project Number:** 138718

**Description of Action (Project Description):** The National Park Service proposes to issue a permit authorizing a limited geoarchaeological investigation within Memorial Circle on the George Washington Memorial Parkway in Washington, D.C. The investigation is being undertaken in support of ongoing cultural-resource evaluation for the proposed Triumphal Arch Project. The work would consist of nine geoarchaeological borings distributed within the interior of Memorial Circle, generally within the approximate limits of the proposed monument foundation/mat slab area shown on the investigation plan (attached).

The purpose of the investigation is to obtain more detailed information about the subsurface stratigraphy beneath Memorial Circle, including the depth and character of artificial fill, the location and configuration of potentially buried historic ground surfaces, and the potential for intact archaeological deposits to remain beneath later fill. Previous research indicates that the project area developed from former Potomac River bottom, tidal flats, and marshland and was subsequently modified through sedimentation, dredging, land reclamation, and filling associated with the creation of Columbia Island, now Lady Bird Johnson Park. The cut-and-fill analysis indicates that portions of the area were filled rather than extensively dredged and that archaeological deposits beneath the later fill may therefore have been preserved.

The borings have been spaced across the proposed development footprint to provide information on the configuration of buried land surfaces and to help determine whether evidence of a historically documented nineteenth-century channel extends beneath Memorial Circle. The investigation would also refine estimates of the depth of artificial fill and evaluate the archaeological potential of underlying soils. Previous geotechnical borings encountered the bottom of fill at approximately 10 feet below ground surface and identified underlying strata between approximately 10 and 19.5 feet below ground surface that may represent buried pre-1915 surfaces capable of containing intact archaeological deposits.

The authorized activity would be limited to the temporary subsurface investigation and associated access necessary to complete the borings. No construction of the proposed Monumental Arch or permanent foundation system would be authorized under this permit or CE. Upon completion of the investigation, boring locations would be closed and the affected surface areas restored to their pre-investigation condition. The resulting geoarchaeological information would be used to inform subsequent archaeological evaluation, project planning, and measures for the avoidance or protection of potentially buried cultural resources.

**Project Location:**

**County, State:** District of Columbia, DC

**Mitigation(s):**

- Should any human remains be encountered, the permittee shall stop all excavations and immediately notify the Park Superintendent, the Park Cultural Resource Program Manager, and the Regional Archeologist. The Park Superintendent, in consultation with the Park Cultural Resource Program Manager and Joshua Torres, Regional Archeologist, NCR (202-713-7091), shall determine the appropriate course of action, following the Department of the Interior's guidelines on human remains and any applicable project agreement specific stipulations.

- Permit Holder shall backfill all subsurface test exposures and excavation units as soon as possible after recording the results and shall restore them as closely as reasonable to the original contour.
- Permit Holder shall allow the approving official and bureau field officials, or their representatives, full access to the work area specified in this permit at any time Permit Holder is in the field, for purposes of examining the work area and any recovered materials and related records.
- Permit Holder shall submit a report to the regional archeologist and park archeologist for review following completion of fieldwork. This report will contain descriptions of all data collected, details of project accomplishments, and results, including maps, geospatial data, and soil data.
- Permit Holder must comply with provisions of NAGPRA regulations concerning discovery of Native American human remains and cultural items (43 CFR 10.5).
- Archeological fieldwork must be overseen by an individual who meets the Secretary of the Interior's Standards for Archeology and Historic Preservation.
- Any archeological remains retained from the archeological investigations done under the terms of this permit shall be processed and cataloged in accordance with the revised National Park Service (NPS) Museum Handbook on Accessioning and Cataloging Museum Objects.
- The areas of archeological monitoring and/or units selected for archeological survey/excavation (transects, squares, etc.) shall be mapped by the permittee and redefinable in nature so that subsequent workers can accurately determine the areas that were monitored, surveyed, and/or excavated.
- All artifacts and original copies of field notes, data recording forms, maps, drawings, photographs, slides, and any other form of documentation resulting from the archeological investigations done under the terms of this permit are the property of the NPS, National Capital Region (NCR) and the permittee shall deliver all materials for final curatorial storage to the Museum Resources Center (MRCE).
- Equipment used at the site shall be pressure cleaned and free of weeds, seed, debris, and mud to prevent the introduction and/or spread of exotic, invasive plants.
- Equipment must be free of any fluid leaks (fuel, oil, hydraulic fluid, etc.) upon arrival to the work site and will be inspected at the beginning of each shift for leaks. Leaking equipment will be removed off site for necessary repairs before the commencement of work.
- Spill containment kits and fire extinguishers shall be available on site at all times.
- All spills shall be immediately contained. Immediate notification of the spills shall be made to the Environmental Protection Specialist, including type and amount of product spilled, location, proximity to water, and actions taken to contain the spill. Additional notifications shall be made by the project lead, as appropriate.

**CE Citation:** DOI NEPA Handbook, Appendix 2, 12.5, E(1), (Feb. 2026). Archeological surveys and permits involving only surface collection or smallscale test excavations.

**CE Justification:** The proposed action qualifies for categorical exclusion under DOI NEPA Handbook, Appendix 2, § 12.5(E)(1), Archeological surveys and permits involving only surface collection or small-scale test excavations. The NPS would issue a permit authorizing nine discrete geoarchaeological borings within Memorial Circle to characterize subsurface stratigraphy, determine the depth of artificial fill and buried land surfaces, and assess the potential for intact archeological deposits. The work constitutes a small-scale archeological test investigation; it would not authorize work outside of the proposed project scope, construction of the proposed Monumental Arch or other permanent development. Following completion of the excavation, the boring locations would be closed and affected surface areas restored to existing condition.

**Extraordinary Circumstances:**

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| **A.** Have significant impacts on public health or safety? | No | The proposed action would not have significant impacts on public health or safety. The permitted work would consist of a small-scale, temporary geoarchaeological investigation involving discrete borings within Memorial Circle. Potential safety hazards associated with drilling equipment and temporary work areas would be limited in duration and controlled through standard construction and occupational safety practices, including appropriate work-zone controls |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| | | and restrictions on public access to active boring locations. Upon completion of the investigation, the borings would be closed and affected surface areas restored. The action would not result in any long-term change to public access, transportation, emergency response, or other conditions affecting public health or safety. |
| **B.** Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands; floodplains; national monuments; migratory birds; and other ecologically significant or critical areas? | No | Although the project area contains important historic and cultural resources and is located within NPS-administered parkland, the proposed action is limited to a temporary, small-scale geoarchaeological investigation involving discrete borings. The investigation is specifically intended to identify and characterize potentially buried archaeological deposits and to inform their protection. Disturbance would be localized and temporary, and affected surface areas would be restored following completion. The action would not permanently alter park or recreational lands and is not expected to significantly affect wetlands, floodplains, migratory birds, or other natural or ecologically significant resources. |
| **C.** Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks? | No | The proposed action would not have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks. The work consists of routine, small-scale geoarchaeological borings undertaken specifically to reduce uncertainty regarding subsurface stratigraphy, artificial fill, buried land surfaces, and archaeological potential beneath Memorial Circle. Although the precise nature and location of buried deposits are not yet known, that uncertainty is the subject of the investigation and does not represent an unusual or potentially significant environmental risk. The work would be temporary and localized, and any unexpected archaeological materials encountered would be addressed in accordance with applicable archaeological procedures and permit conditions. |
| **D.** Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects? | No | The proposed action would not establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects. The permit would authorize only a limited, temporary geoarchaeological investigation consisting of discrete borings within Memorial Circle. Its purpose is to obtain additional information about subsurface stratigraphy, artificial fill, buried land surfaces, and archaeological potential. The testing is specifically intended to inform future planning and resource protection by reducing uncertainty about conditions beneath the site.<br><br>Issuance of the permit would not authorize construction of the proposed Monumental Arch, approve a foundation system, select a final design, or otherwise commit NPS to implementation of the larger project. The results of the investigation may inform subsequent design, archaeological evaluation, and environmental compliance, but any future |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| | | construction or development proposal would remain subject to separate review and decision-making. Accordingly, the permit does not create a precedent for similar future actions and does not constitute an irreversible or irretrievable commitment to a future action that could have potentially significant environmental effects. |
| **E.** Have a direct relationship to other actions that implicate potentially significant environmental effects? | No | Although the proposed geoarchaeological investigation is being undertaken in support of the larger DC Monumental Arch Project, it would not have a direct relationship to another action in a manner that would cause the investigative work itself to implicate potentially significant environmental effects. The permitted action is limited to discrete subsurface borings intended to obtain information about artificial fill, buried land surfaces, and archaeological potential beneath Memorial Circle. The investigation was specifically recommended to reduce uncertainty regarding buried resources and to inform subsequent archaeological evaluation and resource protection.<br><br>The investigation has independent utility as an information-gathering and resource-identification action and would not authorize, commit NPS to, or predetermine implementation of the Monumental Arch or any particular foundation or design alternative. The results may inform future design, Section 106 consultation, and environmental review, but the larger project would remain subject to separate decision-making and applicable environmental compliance. Accordingly, the limited investigation would not itself cause or enable potentially significant environmental effects associated with a future construction action. |
| **F.** Have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by the bureau? | No | The proposed action would not have significant impacts on properties listed in or eligible for listing in the National Register of Historic Places. Although the investigation would occur within a historically significant area and may encounter potentially intact archaeological deposits, the work is limited to small-scale, controlled geoarchaeological borings intended to identify and characterize those resources. The investigation would be conducted in accordance with applicable archaeological methods, Section 106 requirements, and permit conditions. Any resources encountered would be appropriately documented and evaluated, and the work would not authorize construction of the proposed Monumental Arch. Accordingly, the investigation itself is not expected to result in significant effects to historic properties. |
| **G.** Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have significant impacts on designated Critical Habitat for these species? | No | The proposed action would not have significant impacts on federally listed or proposed threatened or endangered species or designated critical habitat. The action is limited to temporary, localized geoarchaeological borings within Memorial Circle and would not authorize permanent construction or development. The project materials do not |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| | | identify impacts to listed species, proposed species, or designated critical habitat. |
| **H.** Significantly limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites? | No | The proposed action would not significantly limit access to or ceremonial use of Indian sacred sites on Federal lands or significantly adversely affect the physical integrity of such sites. The work is limited to temporary, localized geoarchaeological borings within Memorial Circle, and the project materials do not identify any known Indian sacred sites or ceremonial use areas within the boring locations. If Tribal consultation identifies a sacred or culturally sensitive site that could be affected, NPS would coordinate with the associated Tribe(s) and implement appropriate avoidance or protection measures prior to conducting the work. |
| **I.** Contribute to potentially significant effects resulting from the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or from other actions that promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act)? | No | The proposed action would not contribute to potentially significant effects from the introduction, continued existence, or spread of noxious weeds or non-native invasive species. The work is limited to temporary, localized geoarchaeological borings and would not involve extensive vegetation removal or soil disturbance. Disturbed areas would be restored following completion, and standard best management practices and site restoration would minimize the potential for transport or establishment of invasive species. The project materials do not identify any project-specific invasive species concerns. |

**Decision: I find that the action fits within the categorical exclusion(s) above. Therefore, I am categorically excluding the described project from further NEPA analysis. No extraordinary circumstances apply.**

**Superintendent Signature:** JENNIFER MADELLO Digitally signed by JENNIFER MADELLO Date: 2026.09.16 18:51:59 -04'00' **Date:** ____________________

Jennifer Madello

**National Park Service**
**U.S. Department of the Interior**

**George Washington Memorial Parkway**
**Date: 09/16/2026**

# ASSESSMENT OF ACTIONS HAVING AN EFFECT ON HISTORIC PROPERTIES – GWMP 26-035

## A. DESCRIPTION OF UNDERTAKING

**1. Park:** George Washington Memorial Parkway

**2. Project Description:**

**Project Name:** Triumphal Arch - Geoarchaeological Investigation
**Prepared by:** Tammy Stidham **Date Prepared:** 09/16/2026 **Telephone:** 202-619-7474
**PEPC Project Number:** 138718
**Locations:**
**County, State:** District of Columbia, DC
**Describe project:**
The National Park Service proposes to issue a permit authorizing a limited geoarchaeological investigation within Memorial Circle on the George Washington Memorial Parkway in Washington, D.C. The investigation is being undertaken in support of ongoing cultural-resource evaluation for the proposed Triumphal Arch Project. The work would consist of nine geoarchaeological borings distributed within the interior of Memorial Circle, generally within the approximate limits of the proposed monument foundation/mat slab area shown on the investigation plan (attached).

The purpose of the investigation is to obtain more detailed information about the subsurface stratigraphy beneath Memorial Circle, including the depth and character of artificial fill, the location and configuration of potentially buried historic ground surfaces, and the potential for intact archaeological deposits to remain beneath later fill. Previous research indicates that the project area developed from former Potomac River bottom, tidal flats, and marshland and was subsequently modified through sedimentation, dredging, land reclamation, and filling associated with the creation of Columbia Island, now Lady Bird Johnson Park. The cut-and-fill analysis indicates that portions of the area were filled rather than extensively dredged and that archaeological deposits beneath the later fill may therefore have been preserved.

The borings have been spaced across the proposed development footprint to provide information on the configuration of buried land surfaces and to help determine whether evidence of a historically documented nineteenth-century channel extends beneath Memorial Circle. The investigation would also refine estimates of the depth of artificial fill and evaluate the archaeological potential of underlying soils. Previous geotechnical borings encountered the bottom of fill at approximately 10 feet below ground surface and identified underlying strata between approximately 10 and 19.5 feet below ground surface that may represent buried pre-1915 surfaces capable of containing intact archaeological deposits.

The authorized activity would be limited to the temporary subsurface investigation and associated access necessary to complete the borings. No construction of the proposed Monumental Arch or permanent foundation system would be authorized under this permit or CE. Upon completion of the investigation, boring locations would be closed and the affected surface areas restored to their pre-investigation condition. The resulting geoarchaeological information would be used to inform subsequent archaeological evaluation, project planning, and measures for the avoidance or protection of potentially buried cultural resources.

**Area of potential effects (as defined in 36 CFR 800.16[d])**
The APE consists of the discrete geoarchaeological boring locations within Memorial Circle and the immediately surrounding areas required for equipment access and temporary work activities. Vertically, the APE extends from the existing

ground surface through the full depth of each boring and includes artificial fill and underlying potentially intact archaeological deposits. Because the investigation is temporary, localized, and would not result in permanent aboveground changes, the APE is limited to the areas of direct ground disturbance and does not include a broader visual or indirect-effects area.

**3. Has the area of potential effects been surveyed to identify historic properties?**

____ **No**

__X__ **Yes**

**Source or reference:** Memorial Avenue Corridor Cultural Landscape Report (2024), Memorial Avenue Corridor Cultural Landscape Inventory (2004), George Washington Memorial Parkway NRHP Nomination, 95000605 (1995), Mount Vernon Memorial Highway NRHP Nomination, 81000079 (1981), Mount Vernon Memorial Highway Cultural Landscape Report (1986), Arlington Memorial Bridge and Related Features NRHP Nomination, 80000346 (1980, draft update, 2016)
Lady Bird Johnson Park Cultural Landscape Inventory (2004)
Phase IA Archaeological Assessment DC Monumental Arch Project (Langan 2026)
Phase IA Archeological Overview for the Proposed Rehabilitation of the George Washington Memorial Parkway (South Section) and Mount Vernon Trail (New South Associates 2023)
Archeological Survey Report: An Archeological Investigation of Selected Construction Locales Along the Mount Vernon Memorial Highway

**4. Potentially Affected Resource(s):**

**Archeological Resources Present:**

**Property Name:** Memorial Avenue, Memorial Circle **LCS:** 006461

**Archeological Resources Notes:** The proposed undertaking consists of conducting nine geoarcheological borings within Memorial Circle. There are no known archeological resources within the APE. Based on the results of the cut-and-fill analysis, there is the potential for deeply buried, intact archeological resources to be present within the APE. The Phase IA survey (Langan 2026) and geoarcheological investigation will help determine the degree of archeological potential, and inform NPS as to whether a Phase IB survey is necessaryl. As the investigation will be completed by SOI-qualified professional archeologists to examine archeological potential, it is unlikely for artifacts or features to be disturbed by this investigation. Generally, geoarcheological sampling has a low potential to impact significant archeological resources.

**Historical Structures/Resources Present:** Yes

**Property Name:** Memorial Avenue, Memorial Circle **LCS:** 006461

**Historical Structures/Resources Notes:** The proposed project takes within Memorial Circle, which a contributing feature of National Register-listed Arlington Memorial Bridge and Related Features. Memorial Circle, which was constructed in 1940, is part of the ceremonial access route between Washington, D.C. and Arlington National Cemetery. The project consists of conducting nine geoarcheological borings in Memorial Circle. This activity will not have an adverse effect on the historic resources within the APE.

**Cultural Landscapes Present:** Yes

**Property Name:** Memorial Avenue, Memorial Circle **LCS:** 006461

**Property Name:** Lady Bird Johnson Park, Cultural Landscape, CLAIMS 600245 **LCS:**
**Location:** GWMP

**Cultural Landscapes Notes:** This project takes place within the Lady Bird Johnson Park Cultural Landscape, which

was documented in a 2005 Cultural Landscape Inventory, and the Memorial Avenue Corridor Cultural Landscape, which has been documented in a Cultural Landscape Inventory (2004) and Cultural Landscape Report (2024). The proposed work will take place on Memorial Circle, which is a contributing feature of the Memorial Avenue Corridor cultural landscape. Nine geotechnical borings will be conducted, which will disturb a small amount of terrain, though the area will be restored following project completion. No vegetation will be removed as part of this project. Therefore there will be no adverse effect to cultural landscapes.

**Ethnographic Resources Present:** No

**5. The proposed action will: (check as many as apply)**

No Destroy, remove, or alter features/elements from a historic structure

No Replace historic features/elements in kind

No Add non-historic features/elements to a historic structure

No Alter or remove features/elements of a historic setting or environment (inc. terrain)

No Add non-historic features/elements (inc. visual, audible, or atmospheric) to a historic setting or cultural landscape

No Disturb, destroy, or make archeological resources inaccessible

No Disturb, destroy, or make ethnographic resources inaccessible>

No Potentially affect presently unidentified cultural resources

No Begin or contribute to deterioration of historic features, terrain, setting, landscape elements, or archeological or ethnographic resources

No Involve a real property transaction (exchange, sale, or lease of land or structures)

___ Other (please specify): ______________________________

**6. Supporting Study Data:**
**(Attach if feasible; if action is in a plan, EA or EIS, give name and project or page number.)**

**B. REVIEWS BY CULTURAL RESOURCE SPECIALISTS**

The park 106 coordinator requested review by the park's cultural resource specialist/advisors as indicated by check-off boxes or as follows:

---

**[** X **] 106 Advisor**
**Name:** Sam Tamburro
**Date:** 09/16/2026
**Comments:** No Adverse Effect, Standard 4-Step Process

The proposed project consists of a Phase IA geoarcheological survey within Memorial Circle to identify potential archeological resources within the APE for the proposed Triumphal Arch. The survey will be minimally intrusive and will include the collection of nine soil bores. Tested areas will be backfilled and restored upon completion of the survey. No vegetation will be removed, and no other landscape characteristics will be impacted. Therefore, the proposed project will have No Adverse Effect on historic properties within GWMP.

***Check if project does not involve ground disturbance* [ ]**
**Assessment of Effect:** ___No Potential to Cause Effect ___No Historic Properties Affected __X__No Adverse Effect ___Adverse Effect
**Recommendations for conditions or stipulations:**

**Doc Method:** Standard 4-Step Process

---

**[ X ] 106 Advisor**
**Name:** Megan Bailey
**Date:** 09/16/2026
**Comments:** The proposed project consists of a Phase IA geoarcheological survey in Memorial Circle to identify potential archeological resources within the APE for the proposed Triumphal Arch. The geoarcheological survey will be minimally intrusive (i.e., the collection of 9 soil bores). Tested areas will be filled in and restored at the end of the survey. No vegetation will be removed or other landscape characteristics impacted as a result of this survey. Therefore, this project will not adversely affect the historic properties within GWMP.

***Check if project does not involve ground disturbance* [ ]**
**Assessment of Effect:** ___No Potential to Cause Effect ___No Historic Properties Affected __X__No Adverse Effect ___Adverse Effect
**Recommendations for conditions or stipulations:**

**Doc Method:** Standard 4-Step Process

---

**[ X ] Archeologist**
**Name:** Megan Bailey
**Date:** 09/16/2026
**Comments:** The proposed project consists of a Phase IA geoarcheological survey to identify potential archeological resources within the APE for the proposed construction of the Triumphal Arch in Memorial Circle. As such, this project is anticipated to result in "No Adverse Effects" to archeological resources.

***Check if project does not involve ground disturbance* [ ]**
**Assessment of Effect:** ___No Potential to Cause Effect ___No Historic Properties Affected __X__No Adverse Effect ___Adverse Effect
**Recommendations for conditions or stipulations:**

**Doc Method:** Standard 4-Step Process

---

**[ X ] Historical Landscape Architect**
**Name:** Timothy Layton
**Date:** 09/16/2026
**Comments:** The permit request for geoarchaeological testing is generally consistent with streamlined review activity #8, however, the diameter and/or excavation area has not been defined in the project statement. Since the testing might exceed the limited area defined in the 2008 Nationwide PA, my opinion is that this permit request should follow a standard 4-step process and that as described, the proposed work will have no adverse effect on the cultural landscape.

***Check if project does not involve ground disturbance* [ ]**
**Assessment of Effect:** ___No Potential to Cause Effect ___No Historic Properties Affected __X__No Adverse Effect ___Adverse Effect
**Recommendations for conditions or stipulations:**

**Doc Method:** Standard 4-Step Process

---

**No Reviews From**: Curator, Historical Architect, Historian, Other Advisor, Anthropologist

---

**C. PARK SECTION 106 COORDINATOR'S REVIEW AND RECOMMENDATIONS**

**1. Assessment of Effect:**

__________ No Potential to Cause Effects
__________ No Historic Properties Affected
____X____ No Adverse Effect
__________ Adverse Effect

**2. Documentation Method:**

[ X ] **Standard 36 CFR Part 800 Consultation**
Further consultation under 36 CFR Part 800 is needed.

**[ ] Streamlined Review Under the 2008 Servicewide Programmatic Agreement (PA)**
The above action meets all conditions for a streamlined review under section III of the 2008 Servicewide PA for Section 106 compliance.

**[ ] Program Comment on Stewardship and Management of National Park Service Mission 66-Era Facilities (1945-1972)**
The above action meets all of the requirements of this Program Comment for Section 106 compliance and required documents have been uploaded.

**[ ] Undertaking Related to Park Specific or Another Agreement**
The proposed undertaking is covered for Section 106 purposes under another document such as a park, region or statewide agreement established in accord with 36 CFR 800.7 or 36 CFR 800.14.

**3. Consultation Information**

**SHPO Required:** Yes
**SHPO Sent:** Aug 24, 2026
**SHPO Received:** Sep 4, 2026

**THPO Required:** No
**THPO Sent:**
**THPO Received:**

**SHPO/THPO Notes:**

**Advisory Council Participating:** No
**Advisory Council Notes:**
**Additional Consulting Parties:** No

**4. Stipulations and Conditions:** Following are listed any stipulations or conditions necessary to ensure that the assessment of effect above is consistent with 36 CFR Part 800 criteria of effect or to avoid or reduce potential adverse effects.

**5. Mitigations/Treatment Measures:** Measures to prevent or minimize loss or impairment of historic/prehistoric properties: (Remember that setting, location, and use may be relevant.)

**Required Mitigations** - For the proposed project actions to be within compliance requirements during construction and/or project implementation, the following mitigations must be adhered to:

- Should any human remains be encountered, the permittee shall stop all excavations and immediately notify the Park Superintendent, the Park Cultural Resource Program Manager, and the Regional

Archeologist. The Park Superintendent, in consultation with the Park Cultural Resource Program Manager and Joshua Torres, Regional Archeologist, NCR (202-713-7091), shall determine the appropriate course of action, following the Department of the Interior's guidelines on human remains and any applicable project agreement specific stipulations.

- Permit Holder shall backfill all subsurface test exposures and excavation units as soon as possible after recording the results and shall restore them as closely as reasonable to the original contour.
- Permit Holder shall allow the approving official and bureau field officials, or their representatives, full access to the work area specified in this permit at any time Permit Holder is in the field, for purposes of examining the work area and any recovered materials and related records.
- Permit Holder shall submit a report to the regional archeologist and park archeologist for review following completion of fieldwork. This report will contain descriptions of all data collected, details of project accomplishments, and results, including maps, geospatial data, and soil data.
- Permit Holder must comply with provisions of NAGPRA regulations concerning discovery of Native American human remains and cultural items (43 CFR 10.5).
- Archeological fieldwork must be overseen by an individual who meets the Secretary of the Interior's Standards for Archeology and Historic Preservation.
- Any archeological remains retained from the archeological investigations done under the terms of this permit shall be processed and cataloged in accordance with the revised National Park Service (NPS) Museum Handbook on Accessioning and Cataloging Museum Objects.
- The areas of archeological monitoring and/or units selected for archeological survey/excavation (transects, squares, etc.) shall be mapped by the permittee and redefinable in nature so that subsequent workers can accurately determine the areas that were monitored, surveyed, and/or excavated.
- All artifacts and original copies of field notes, data recording forms, maps, drawings, photographs, slides, and any other form of documentation resulting from the archeological investigations done under the terms of this permit are the property of the NPS, National Capital Region (NCR) and the permittee shall deliver all materials for final curatorial storage to the Museum Resources Center (MRCE).
- Equipment used at the site shall be pressure cleaned and free of weeds, seed, debris, and mud to prevent the introduction and/or spread of exotic, invasive plants.
- Equipment must be free of any fluid leaks (fuel, oil, hydraulic fluid, etc.) upon arrival to the work site and will be inspected at the beginning of each shift for leaks. Leaking equipment will be removed off site for necessary repairs before the commencement of work.
- Spill containment kits and fire extinguishers shall be available on site at all times.
- All spills shall be immediately contained. Immediate notification of the spills shall be made to the Environmental Protection Specialist, including type and amount of product spilled, location, proximity to water, and actions taken to contain the spill. Additional notifications shall be made by the project lead, as appropriate.

**6. Assessment of Effect Notes:**

**D. RECOMMENDED BY PARK SECTION 106 COORDINATOR:**

**Compliance Specialist:**

**NHPA Specialist**

Megan Bailey ___Megan Bailey___ **Date:** 9/16/2026

**E. SUPERINTENDENT'S APPROVAL**

The proposed work conforms to the NPS *Management Policies* and *Cultural Resource Management Guideline*, and I have reviewed and approve the recommendations, stipulations, or conditions noted in Section C of this form.

**Signature**

**Superintendent:** JENNIFER MADELLO Digitally signed by JENNIFER MADELLO Date: 2026.09.16 18:51:03 -04'00' **Date:** ____________

Jennifer Madello