**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL LEMMON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-cv-544 (TSC) |
| DONALD J. TRUMP, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Wendy Liu (DC Bar No. 1600942)
Nicolas A. Sansone (DC Bar No. 1686810)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

October 22, 2026

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

Statutory Background ..... 2

Procedural Background ..... 4

Later Factual Developments ..... 6

LEGAL STANDARD ..... 8

ARGUMENT ..... 8

I. Plaintiffs are likely to succeed on the merits. ..... 8

II. Plaintiffs are at imminent risk of irreparable injury ..... 10

III. The balance of equities and public interest favor Plaintiffs. ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Cases** **Pages**

*American School of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ........ 8

*Center for Taxpayer Rights v. IRS*,
– F.4th –, 2026 WL 2635380 (D.C. Cir. Sept. 8, 2026) ........ 11

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........ 8, 10

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ........ 8

*DC Preservation League v. Department of Interior*,
No. 26-cv-477, 2026 WL 3067893 (D.D.C. Oct. 13, 2026) ........ 11

*Federal Express Corp. v. U.S. Department of Commerce*,
39 F.4th 756 (D.C. Cir. 2022) ........ 9

*Jones v. District of Columbia*,
177 F. Supp. 3d 542 (D.D.C. 2016) ........ 11

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........ 10

*National Council of Nonprofits v. OMB*,
763 F. Supp. 3d 13 (D.D.C. 2025) ........ 8

*National Park Service v. National Trust for Historic Preservation*,
No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) ........ 12

*National Trust for Historic Preservation v. National Park Service*,
No. 26-5123, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026) ........ 12

*Pursuing America's Greatness v. FEC*,
831 F.3d 500 (D.C. Cir. 2016) ........ 8

*Winter v. NRDC*,
555 U.S. 7 (2008) ........ 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........ 10

**Statutes**

40 U.S.C. § 68 (1912) ........ 2

40 U.S.C. § 8711 ........ 3

40 U.S.C. § 8711(a) ........ 4

40 U.S.C. § 8722(b)(1) ........ 4

40 U.S.C. § 8901(1) ........ 2

40 U.S.C. § 8901(4) ........ 3

40 U.S.C. § 8902(a)(1) ........ 3, 9

40 U.S.C. § 8902(a)(2) ........ 3

40 U.S.C. § 8902(a)(4) ........ 3

40 U.S.C. § 8903(d) ........ 3

40 U.S.C. § 8904 ........ 3

40 U.S.C. § 8905(a) ........ 3, 9

40 U.S.C. § 8906(a)(2) ........ 3

40 U.S.C. § 9101 ........ 3

Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 ........ 6

Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986) ........ 2

**Other Authorities**

National Park Service, *Triumphal Arch—Section 106 Assessment of Effect (FINAL)* (Aug. 28, 2026), available at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID =136973&documentID=153235. ........ 4

Mark Paoletta, *Trump's Triumphal Arch Completes A Longstanding National Aspiration*, The Federalist (Oct. 5, 2026), https://thefederalist.com/2026/10/05/trumps-triumphal-arch-completes-a-longstanding-national-aspiration/ ........ 12

Jacob R. Straus, Congressional Research Service, *Commemorative Works in the District of Columbia: Background and Practice* (updated May 8, 2023), https://www.congress.gov/crs_external_products/R/PDF/R41658/R41658.12.pdf. ...........2

11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* (2d ed. 1995) ........................................................................................................11

## INTRODUCTION

Last fall, President Trump announced plans to construct a commemorative arch at Memorial Circle. Congress had not, and has not, authorized the project.

In February, Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth filed this lawsuit against Defendants Donald Trump, Vince Haley, Executive Office of the President, and National Park Service (NPS), seeking to halt construction of the arch absent congressional authorization. In May, Plaintiffs moved for summary judgment, explaining that construction of the arch absent congressional authorization is ultra vires and unconstitutional. Plaintiffs' motion and Defendants' cross-motion remain pending.

Since then, Defendants have barreled ahead, doing site testing, drawing architectural plans, and seeking approvals from commissions populated by friends of the administration. Yet, throughout this time, Defendants have failed to obtain (or even to seek) approval from the one body that, by law, must authorize the project: Congress.

Yesterday, NPS filed a notice in this Court that construction may start as soon as two weeks from today—on November 5. The Notice makes clear that Defendants have no intention of awaiting this Court's decision on the cross-motions for summary judgment and have every intention of imminently beginning construction of the arch on Memorial Circle—construction that will have an immediate harmful impact on Plaintiffs and the public.

Defendants' plans are unlawful; the threatened harm is imminent; and the public interest leans heavily against allowing Defendants to blaze ahead. This Court should enter a preliminary injunction blocking Defendants from beginning construction on Memorial Circle in the hope that they can render the arch a fait accompli before this Court has made a final determination whether Defendants' project is unlawful. Plaintiffs respectfully request a ruling by November 4.

## BACKGROUND

**Statutory Background**

Since the founding of Washington, DC, in the late eighteenth century, the configuration of structures and monuments within the city has been subject to careful and deliberate planning. *See* Jacob R. Straus, Cong. Research Serv., *Commemorative Works in the District of Columbia: Background and Practice*, Summary (updated May 8, 2023) (hereafter, Straus, *Commemorative Works*).[1] As the legislative body that speaks on behalf of the American public, Congress has long been responsible for authorizing the monuments and structures that appear on federally administered land within the national capital to tell the story of our country. *See id.*

In 1912, Congress took a substantial step toward formalizing its oversight of construction on public federal land in Washington, DC, by passing a statute prohibiting "any building or structure" from being built on such lands "without express authority of Congress." 40 U.S.C. § 68 (1912). The statute, which has seen only minor, non-substantive amendments in the 110-plus years since its enactment, is now codified at 40 U.S.C. § 8106. Section 8106 speaks categorically: "A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

Nonetheless, even after 1912, "the process for approving site locations, memorial design plans, and funding" for monuments remained "haphazard." Straus, *Commemorative Works*, at Summary. Congress responded in 1986 by passing the Commemorative Works Act, Pub. L. No. 99-652, 100 Stat. 3650 (Nov. 14, 1986). Among the Act's purposes are to "preserve the integrity of the comprehensive design of … the Nation's Capital," 40 U.S.C. § 8901(1), and to ensure that commemorative works on federally administered land in Washington, DC, and its

---

[1] https://www.congress.gov/crs_external_products/R/PDF/R41658/R41658.12.pdf.

environs "are appropriately designed, constructed, and located," and that they "reflect a consensus of the lasting national significance of the subjects involved," *id.* § 8901(4).

The Commemorative Works Act sets out a detailed process for approving commemorative works—defined to include "any statue, monument, sculpture, … or other structure or landscape feature[] … designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history," *id.* § 8902(a)(1)—in areas in and around Washington, DC, that are administered by NPS or the General Services Administration, *see id.* § 8902(a)(2). To begin, the Act requires that any such work be "specifically authorized by law." *Id.* § 8903(a)(1). And "[i]n considering legislation authorizing commemorative works in the District of Columbia and its environs," Congress must "solicit the views of the National Capital Memorial Advisory Commission." *Id.* § 8903(d); *see id.* § 8904 (establishing the Commission).

Upon authorizing a commemorative work, Congress designates a sponsor to develop the project. *See id.* § 8902(a)(4). The sponsor then must consult with the National Capital Memorial Advisory Commission "regarding the selection of alternative sites and design concepts for the commemorative work" and must have the Secretary of the Interior or the Administrator of General Services submit "site and design proposals" for the approval of the Commission of Fine Arts and the National Capital Planning Commission (NCPC). *Id.* § 8905(a); *see id.* § 9101 (establishing the Commission of Fine Arts); *id.* § 8711 (establishing the NCPC). Once the consultation and approval requirements have been met, the sponsor may apply to the Secretary of the Interior or the Administrator of General Services for a construction permit. *See id.* § 8905(a). A permit may issue if, among other things, "knowledgeable individuals qualified in the field of preservation and maintenance have been consulted … to ensure that the commemorative work meets high professional standards." *Id.* § 8906(a)(2).

Even where the Commemorative Works Act does not apply, the NCPC serves a critical role as "the central federal planning agency for the Federal Government in the National Capital." *Id.* § 8711(a). When a federal agency "prepar[es] construction plans … for proposed developments and projects" in the District of Columbia, it must "consult with" the NCPC. *Id.* § 8722(b)(1). Only after the NCPC has issued a "final report" expressing its views on the proposed construction, and the agency has considered those views, may the agency "proceed to take action." *Id.*

**Procedural Background**

In October 2025, President Trump announced plans to build a monumental arch in Memorial Circle, an area of NPS land that lies between the Lincoln Memorial and Arlington National Cemetery. The purpose of the arch, as Defendants have repeatedly confirmed, is to commemorate the Nation's 250th anniversary. *See* Pls. Statement of Undisputed Material Facts, ECF 36-2, ¶¶ 13–19; *see also* NPS, *Triumphal Arch—Section 106 Assessment of Effect (FINAL)*, at 11 (Aug. 28, 2026) (describing the arch as a "commemorative feature").[2]

Plaintiffs here hold deep personal connections to Arlington National Cemetery. Plaintiffs Michael Lemmon, Shaun Byrnes, and Jon Gundersen are Vietnam War veterans who regularly visit Arlington National Cemetery to pay their respects to their fallen comrades and to contemplate the national ideals for which they have fought and served, including by admiring and experiencing the solemnity of the reciprocal views between the Cemetery and the Lincoln Memorial. *See* Lemmon Decl., ECF 7-2, ¶¶ 2, 6–7; Byrnes Decl., ECF 7-3, ¶¶ 2, 8–9; Gundersen Decl., ECF 7-4, ¶¶ 2–3, 6–7. Plaintiff Calder Loth is an architectural historian who regularly visits, and intends to continue visiting, Arlington National Cemetery and its surroundings for his personal enjoyment

[2] Available at https://parkplanning.nps.gov/document.cfm?parkID=186&projectID =136973&documentID=153235.

and to take photographs for use in his historical lectures. Loth Decl., ECF 7-5, ¶¶ 2, 4–7. Construction of the arch will destroy the unobstructed view and symbolic connection between the Lincoln Memorial and Arlington House that holds deep meaning to Plaintiffs, thereby diminishing their experience of Arlington National Cemetery and degrading Plaintiffs' future visits. Lemmon Decl. ¶¶ 7–9; Byrnes Decl. ¶¶ 10–13; Gundersen Decl. ¶¶ 8–9; Loth Decl. ¶¶ 8–10.

In February 2026, Plaintiffs filed this lawsuit seeking a declaration that the arch is unlawful and an injunction barring Defendants Haley, Executive Office of the President, and NPS from constructing the arch unless and until all legal prerequisites, including congressional authorization, have been satisfied. *See* Compl., ECF 1. Plaintiffs alleged that constructing the unauthorized arch is ultra vires and in excess of Defendants' lawful authority. *Id.* ¶¶ 52–59. In addition, Plaintiffs alleged that constructing the unauthorized arch violates President Trump's constitutional duty to take care that Congress's laws be faithfully executed. *Id.* ¶¶ 60–64.

Shortly after filing suit, Plaintiffs moved for a preliminary injunction to block Defendants Haley, Executive Office of the President, and NPS from taking steps to construct or to direct or facilitate construction of the arch absent congressional authorization and satisfaction of all other legal prerequisites. *See* Pls. Mot. for Prelim. Inj., ECF 7. After a hearing, the parties agreed to a consent order that "Defendant NPS shall provide at least fourteen days' notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case," and that "Defendant NPS shall not authorize construction of an arch on Memorial Circle to begin before NPS has published a notice stating its authorization on its Planning, Environment and Public Comment website (https://parkplanning.nps.gov/)." Order dated Apr. 8, 2026, ECF 26. Plaintiffs dismissed their motion for a preliminary injunction in light of that order.

Thereafter, Defendants filed a motion to dismiss*, see* ECF 31, 33, 35, and the parties filed cross-motions for summary judgment, *see* ECF 36, 44–45, 48–49, 51. Defendants' briefing reflects that the sole source of legal authority that Defendants claim for construction of the arch is the Act of February 24, 1925, Pub. L. No. 68-463, 43 Stat. 974 (1925 Act). That Act authorized the now-defunct Arlington Memorial Bridge Commission to design and construct Arlington Memorial Bridge for a sum not to exceed $14.75 million, pursuant to a "ten-year program of expenditures and construction" that the Commission had set forth in a report to Congress the preceding year. *Id.* §§ 2, 6, 43 Stat. at 974–75. Defendants' motion to dismiss and the parties' cross-motions for summary judgment are now fully briefed and pending before the Court.

**Later Factual Developments**

In the meantime, Defendants have moved rapidly toward constructing their arch. They completed on-the-ground surveys and testing in Memorial Circle, *see* Bowron Decl., ECF 32-1, ¶¶ 5–7, as well as excavation and archeological testing, *see* Notice, ECF 57. Defendant NPS conducted an environmental assessment pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq.,[3] and performed an assessment of the arch's adverse effects on surrounding historic properties pursuant to Section 106 of the National Historic Preservation Act, 54 U.S.C. §§ 300101 et seq.[4]

[3] NPS, *Triumphal Arch – Environmental Assessment and Finding of No Significant Impact*, https://parkplanning.nps.gov/document.cfm?documentID=151577.

[4] The NPS report and appendix are available at NPS, *Triumphal Arch at Memorial Circle: Assessment of Effects Report* (June 2026), https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151576.

Comments submitted by members of the public and by parties consulting in the Section 106 assessment process overwhelmingly opposed construction of an arch on Memorial Circle. *See* Swapna Venugopal Ramaswamy, *'Stop this madness!': Trump's arch draws deluge of negative comments*, USA Today (June 4, 2026), https://www.usatoday.com/story/news/politics/2026/06/04/trumps-arch-deluged-negative-comments/90407281007/ (stating that "more than 99% of the comments [submitted to the NCPC] were negative").

Defendants' own assessments revealed that the arch will have significant adverse effects on more than 40 historical sites. According to NPS:

> The most substantial effects … would occur to the Memorial Avenue Corridor Cultural Landscape, Arlington Memorial Bridge, Lady Bird Johnson Park Cultural Landscape, Arlington National Cemetery Historic District, Arlington House Historic District, Arlington House (Robert E. Lee Memorial), Arlington House Cultural Landscape, Lincoln Memorial Cultural Landscape, the Lincoln Memorial, National Mall Site, National Mall Historic District, and The Mall Cultural Landscape, all of which derive significance in part from their planned visual, commemorative, and spatial relationships across the Potomac River and through the monumental core.

NPS, *Triumphal Arch at Memorial Circle: Assessment of Effects Report*, *supra* note 4, at 21–22; *see id.* Appendix D, Table 3 (identifying impacted historical properties).

Despite their own findings, Defendants have not faltered in their commitment to build the arch. NPS sought and secured final design approval from the Commission of Fine Arts, *see* Comm'n of Fine Arts, *CFA Meeting—21 May 2026* (linked "Meeting Recording" at 2:13:23–2:13:51),[5] sought and secured preliminary approval from the NCPC,[6] and submitted final building plans for final approval by the NCPC at its upcoming November 5, 2026, meeting.[7]

Yesterday, Defendants filed a notice that construction may begin as soon as two weeks from today. *See* Notice, ECF 63. The Notice states:

> In the event the NCPC approves the Proposal at the November 5 meeting and the Department of Interior thereafter issues a final decision authorizing construction of the Proposal, construction or demolition in preparation for construction of an arch on Memorial Circle could commence immediately upon the National Park Service ("NPS") publishing a notice of that authorization on its Planning, Environment and Public Comment website. NPS may publish such notice as early as November 5, 2026, and construction could commence as early as November 5, 2026.

---

[5] https://cfa.gov/records-research/record-cfa-actions/2026/05/cfa-meeting.

[6] *NCPC Approves New Monumental Arch Preliminary Site and Building Plans* (July 10, 2026), https://www.ncpc.gov/news/item/264/1/.

[7] NCPC, Project Information, *8778: New Monumental Arch,* https://www.ncpc.gov/review/project/8778/.

## LEGAL STANDARD

The purpose of "a preliminary injunction is to preserve the status quo while the court considers the merits of the case." *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16 (D.D.C. 2025). To secure a preliminary injunction, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if [an] injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Where relief runs against the government, "the final two … factors—balancing the equities and the public interest—merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits.

As Plaintiffs have comprehensively explained in earlier briefing, Defendants' arch is ultra vires. *See* Pls. Opp. to Defs. Mot. to Dismiss, ECF 33, at 22–34; Pls. Memo. in Support of Pls. Mot. for Summ. J., ECF 36-1, at 12–17; Pls. Reply in Support of Pls. Mot. for Summ. J., ECF 48, at 30–38. The Supreme Court has recognized that "the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law," is subject to ultra vires review, even absent a statutory cause of action. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902). And here, Defendants' arch is "unauthorized by any law." *Id.* Defendants have not asserted inherent constitutional authority to build the arch, and Congress has not passed a statute authorizing construction of the arch.

If more were needed—and it is not—the arch is “contrary to” at least two “specific [statutory] prohibition[s] … that [are] clear and mandatory.” *Fed. Express Corp. v. U.S. Dep’t of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (citation omitted). First, the Commemorative Works Act requires that any commemorative work on NPS land in Washington, DC, must be “specifically authorized by law,” *id.* § 8903(a)(1), and assigned a congressionally designated sponsor responsible for fulfilling the Act’s procedural steps, *see, e.g.*, *id.* § 8905(a). The arch—which is a commemorative work under the Act because it is a “structure … designed to perpetuate in a permanent manner the memory of an … event or other significant element of American history,” *i.e.*, the Nation’s 250th anniversary, *id.* § 8902(a)(1); *see supra* p. 4—violates the Act because it has received neither congressional approval nor a designated sponsor. Second, the arch violates 40 U.S.C. § 8106, which provides that “[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress.” Again, the arch has not received Congress’s authorization.

Although Defendants have invoked the 1925 Act to claim power to build the arch, that statute cannot reasonably be read to authorize a massive monumental arch to commemorate a national anniversary that, at the time of the statute’s enactment, lay more than a century in the future. Rather, the 1925 Act authorized the Arlington Memorial Bridge Commission—not Defendants—to “proceed at once” to construct Arlington Memorial Bridge according to the Commission’s design. 1925 Act, § 1, 43 Stat. 974. The statute directed the project, “as speedily as practicable,” to be “prosecuted to completion … in a total sum not to exceed $14,750,000,” *id.* § 2, 43 Stat. at 974, pursuant to a “ten-year program of expenditures and construction,” *id.* § 6, 43 Stat. at 975. The bridge was completed over ninety years ago, in accordance with the statutory requirements. And while plans from 1924 included two columns (but not an arch), the Commission

that Congress authorized to design the bridge removed them, *see* Sawyer Decl. Exh. R, ECF 44-23, at 92, and the project was completed without them. Defendants' contention that the statute authorizes limitless initiation of new Executive projects, at whatever cost, indefinitely into the future, is entirely untethered from the Act's text.

In addition, the arch project violates President Trump's constitutional duty to take care that the laws be faithfully executed. *See* Pls. Opp. to Defs. Mot. to Dismiss at 34–38; Pls. Memo. in Support of Pls. Mot. for Summ. J. at 17–19; Pls. Reply in Support of Pls. Mot. for Summ. J. at 38–41. Because "Congress has … exclusive constitutional authority to make laws necessary and proper to carry out the powers vested by the Constitution" in the federal government, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588–89 (1952), the President's role as the head of the Executive Branch is to give effect to Congress's legislative choices by implementing them according to their terms. Here, the President's direction to build the arch directly contradicts Congress's legislative choice, embodied in the Commemorative Works Act and in 40 U.S.C. § 8106, to maintain its longstanding oversight role in determining the configuration of monuments and other structures on federal lands in Washington, DC.

## II. Plaintiffs are at imminent risk of irreparable injury.

"A threatened injury is irreparable if it is 'certain and great,' 'actual and not theoretical,' and 'beyond remediation' at a later date." *Ctr. for Taxpayer Rts. v. IRS*, – F.4th –, 2026 WL 2635380, at *13 (D.C. Cir. Sept. 8, 2026) (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016)). The threatened injury must be "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Plaintiffs must show that absent preliminary relief, they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. NRDC*, 555

U.S. 7, 22 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948.1, p. 139 (2d ed.1995)).

Plaintiffs easily satisfy this standard. Absent an order freezing the status quo, Defendants plan to start construction in two weeks, *see* Notice, ECF 63, sprinting past this Court, and permanently interfering with and degrading Plaintiffs' experience of a symbolic landscape that holds great personal meaning. *See* Pls. Memo. in Support of Pls. Mot. for Summ. J. at 9–12 (addressing standing); *id.* at 20–21 (addressing irreparable injury); *see also* Pls. Reply in Support of Pls. Mot. for Summ. J. at 9–19, 43; *see also DC Pres. League v. Dep't of Interior*, No. 26-cv-477, 2026 WL 3067893, at *6 (D.D.C. Oct. 13, 2026) (granting a temporary restraining order and noting that "Plaintiffs do not allege mere offense at the activities at East Potomac Golf Course: Plaintiffs' declarations detail specific recreational and aesthetic interests, including Plaintiffs' intent to continue playing golf on the Course"). The threatened harm is thus imminent and "concrete and corroborated, not merely speculative." *Jones v. Dist. of Col.*, 177 F. Supp. 3d 542, 547 (D.D.C. 2016). Further, Defendants' use of conditional words—"if" and "could," Notice, ECF 63—should not give the Court pause. Approval by NCPC is not in question; in fact, the Chairman of the NCPC recently posted an article celebrating the arch, regurgitating the administration's talking points, and stating that he "will vote to approve this project." Mark Paoletta, *Trump's Triumphal Arch Completes A Longstanding National Aspiration*, The Federalist (Oct. 5, 2026).[8] NPS approval is likewise not in question: NPS has pushed ahead— even after concluding that the arch will negatively impact dozens of historical properties. *See supra* p.7. And Defendants' Notice

[8] https://thefederalist.com/2026/10/05/trumps-triumphal-arch-completes-a-longstanding-national-aspiration/.

filed yesterday shows that Defendants plan to move forward as quickly as they can—indeed, immediately after the pro forma approval from NCPC and NPS.

The proceedings in *National Trust for Historic Preservation v/ National Park Service* provide a cautionary tale. There, the government proceeded with construction on a ballroom on White House grounds even though a federal district court held that construction was unlawful, and the D.C. Circuit affirmed the district court's conclusion. *See Nat'l Trust for Historic Pres. v. NPS*, No. 26-5123, 2026 WL 2276494, at *3 (D.C. Cir. Aug. 7, 2026). The government sought a stay from the Supreme Court pending Supreme Court review of the D.C. Circuit's ruling, and the Court granted that relief, holding among other things that because "a partially completed superstructure" was already in place, "freezing construction" would raise "significant" practical problems that militated against a stay of construction. *NPS v. Nat'l Trust for Historic Pres.*, No. 26A203, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026). Permitting Defendants to proceed with construction on the arch would risk a similar situation, in which construction before this Court has issued a final judgment would render the arch a fait accompli before this Court has reached a determination on whether it is authorized by law.

**III. The balance of equities and public interest favor Plaintiffs.**

As against the certain and irreparable injury that Plaintiffs will experience if construction moves forward, the government—and, by extension, the public—will suffer no cognizable harm from a temporary restraining order. Defendants have adduced no evidence that they will suffer any harm from the brief increment of delay necessary for this Court to determine whether the commemorative project on which they hope to embark is lawful. And, indeed, no such harm will arise. *Cf. DC Pres. League*, 2026 WL 3067893, at *2 (granting a temporary restraining order where "the balance of the equities favors Plaintiffs given the professed lack of any governmental interest

in proceeding urgently" with respect to cutting trees at East Potomac Park). To the contrary, preserving Congress's role in authorizing the design and siting of commemorative works and other structures on federal land in our Nation's capital will ensure democratic accountability and a measure of consensus in determining the symbolic configuration of those landmarks and the national narrative that they convey.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter a preliminary injunction enjoining Defendants Haley, Executive Office of the President, and NPS from taking any steps to construct or to direct or facilitate construction of any structure in Memorial Circle, absent congressional authorization, during the pendency of this litigation. Because Defendants have stated that they may start construction on November 5, Plaintiffs respectfully request a ruling on this motion by November 4.

Dated: October 22, 2026

Respectfully submitted,

/s/ *Wendy Liu*
Wendy Liu (DC Bar No. 1600942)
Nicolas A. Sansone (DC Bar No. 1686810)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*