**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al.<br>Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.<br>Defendants. | No. 1:26-cv-544 |

**BRIEF OF VETERANS' ORGANIZATIONS AS AMICI CURIAE**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## CORPORATE DISCLOSURE STATEMENT

Amici Curiae the Vietnam Veterans of America, Korean War Veterans Association, Chosin Few, Military Order of the Purple Heart, National Vet Court Alliance, and Veterans for America First report that each organization has no parent corporation, and no publicly held corporation owns 10% or more of any organization.

## TABLE OF CONTENTS

Table of Authorities ........ iii

Interest of Amici Curiae ........ 1

Argument ........ 2

I. The profound public interest in honoring our veterans and the ideals for which they fought weighs against a preliminary injunction. ........ 3

II. Plaintiffs have no standing. ........ 6

III. Plaintiffs have no *ultra vires* claim. ........ 7

Conclusion ........ 9

# TABLE OF AUTHORITIES

## Cases

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) .......... 8

*Bufkin v. Collins*,
604 U.S. 369 (2025) .......... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 6, 7

*NRC v. Texas*,
605 U.S. 665 (2025) .......... 7, 8

*Regan v. Tax'n with Representation of Wash.*,
461 U.S. 540 (1983) .......... 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 7

*United States v. Alvarez*,
567 U.S. 709 (2012) .......... 3

*Winter v. NRDC*,
555 U.S. 7 (2008) .......... 2, 3

## Statutes

36 U.S.C. §120101 .......... 1

36 U.S.C. §120112 .......... 1

36 U.S.C. §140501 .......... 2

36 U.S.C. §140511 .......... 2

36 U.S.C. §230501 .......... 1

36 U.S.C. §230502 .......... 1

36 U.S.C. §230513 .......... 1

Pub. L. No. 68-463, 43 Stat. 974 (1925) .......... 8

## Other Authorities

*2026 National Veteran Suicide Prevention Annual Report*, Dep't of Veterans Affairs (Sept. 2026),
perma.cc/QGT3-ZB7W .......... 4

Scalia & Garner, *Reading Law* (2012) .......... 8

*Triumphal Arch at Mem'l Circle*, Nat'l Park Serv., perma.cc/36KP-4H72 (archived Oct. 27, 2026) .... 3, 4

*Triumphal Arch*, Encyclopedia Britannica (Oct. 19, 2026), archive.is/8La3z .......... 5

## INTEREST OF AMICI CURIAE

Amici* represent tens of thousands of veterans of America's armed forces. Based on the feedback they have received from their members, amici support construction of the Triumphal Arch. The arch is a fitting addition to the capital's landscape that honors all the veterans who have defended our nation over the past 250 years. This privately funded endeavor is not political any more than the Washington Monument, the Lincoln Memorial, or the World War II, Korean War, and Vietnam War memorials. It deserves broad national support to show that our country is united in support for our armed forces and against our enemies abroad. The plaintiffs' efforts to politicize the arch do not represent the views of amici or of veterans more broadly.

The Vietnam Veterans of America is the largest organization of Vietnam veterans, with over 90,000 members and 500 local chapters. The organization is congressionally chartered. *See* 36 U.S.C. §§230501-13. It advocates on behalf of issues important to veterans, helps veterans obtain full access to quality healthcare, and works to create a positive public perception of Vietnam veterans.

The Korean War Veterans Association is the largest organization of Korean War veterans, with over 50,000 historical members. The organization is congressionally chartered. *See* 36 U.S.C. §§120101-12. Its purpose is to unite those who served in Korea and continue benevolent work on their behalf.

Chosin Few is an organization for veterans of the Battle of Chosin Reservoir in the Korean War, with over 3,000 members. Outnumbered and encircled by a much larger Chinese force in the brutal winter of 1950, the U.S. forces at Chosin Reservoir successfully fought their way to the coast, allowing them to evacuate and save more than 100,000 Korean civilian refugees. The organization's

---

* No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than the amici curiae, their members, and their counsel—contributed money that was intended to fund preparing or submitting this brief.

mission is to remember, educate, and inspire future generations about the sacrifices of the soldiers at Chosin and the importance of their story.

The Military Order of the Purple Heart is an organization of veterans who have received the Purple Heart Medal for wounds suffered in combat or by acts of international terrorism. The organization has over 45,000 members and is congressionally chartered. *See* 36 U.S.C. §§140501-11. Its mission is to foster an environment of goodwill and camaraderie among combat-wounded veterans, promote patriotism, support necessary legislative initiatives, and most importantly, provide service to all veterans and their families.

National Vet Court Alliance is a nonprofit organization dedicated to preventing the thousands of veteran suicides that occur each year. The Alliance works to establish specialized veteran dockets in the courts of all U.S. federal, state, and tribal jurisdictions, so that veterans struggling with substance abuse and cognitive impairments can obtain the help they need and avoid unnecessary incarceration.

Veterans for America First is a volunteer organization of veterans and first responders who support the America First Agenda, who honor their oath to defend America from enemies foreign and domestic, and who stand with President Trump to preserve our constitutional republic. It has over 37,000 members and nine state chapters.

## ARGUMENT

To get a preliminary injunction, Plaintiffs must show that they are "likely to succeed on the merits," that they are "likely to suffer irreparable harm in the absence of preliminary relief" and that "an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). They cannot make any of these showings. The Triumphal Arch furthers the public's profound interest in honoring our veterans and the ideals for which they fought. Plaintiffs are not likely to succeed on the merits, and have suffered no irreparable harm, because they have no standing. And they have not made the clearcut showing of illegality needed to prevail on an *ultra vires* claim. This Court should deny their motion for extraordinary relief, thus refusing to block construction of a privately-funded memorial that a few

individuals and rogue chapters oppose but that the overwhelming majority of veterans find honoring and therapeutic.

## I. The profound public interest in honoring our veterans and the ideals for which they fought weighs against a preliminary injunction.

The Triumphal Arch furthers the public's profound interest in honoring our veterans and the ideals for which they fought. The "balance of equities" thus cannot favor injunctive relief. *Winter*, 555 U.S. at 20.

For 250 years, our nation has acknowledged "the important public function of recognizing and expressing gratitude for acts of heroism and sacrifice in military service." *United States v. Alvarez*, 567 U.S. 709, 724 (2012) (plurality). "Veterans have been obliged to drop their own affairs and take up the burdens of the nation, subjecting themselves to the mental and physical hazards as well as the economic and family detriments which are peculiar to military service and which do not exist in normal civil life." *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 550-51 (1983) (cleaned up). Hence, it has "'always been deemed to be legitimate'" for the government to take special steps to honor "veterans for their past contributions." *Id.* at 551. These steps both express appropriate gratitude on behalf of the nation and encourage our current soldiers to perform the dangerous work of keeping this country free. "In periods of war and peace alike public recognition of valor and noble sacrifice by men and women in uniform reinforces the pride and national resolve that the military relies upon to fulfill its mission." *Alvarez*, 567 U.S. at 724 (plurality).

The Triumphal Arch fittingly commemorates the sacrifices of veterans and fallen soldiers. The arch will transform what is currently an empty traffic circle into a monument designed "to celebrate 250 years of American independence." *Triumphal Arch at Memorial Circle*, Nat'l Park Serv., perma.cc/36KP-4H72 (archived Oct. 27, 2026). The arch will sit at the "ceremonial entrance to Washington, D.C.," "physically and symbolically uniting" Arlington National Cemetery and the National Mall. *Id.* Sitting between the nation's most sacred military burial site and the great monuments of our

capital, the arch will communicate that the accomplishments and blessings of two-and-a-half centuries of American success are the fruit of the valor and sacrifices of our nation's fighting men and women.

Amici fully support and endorse this effort. The message of the Triumphal Arch is not political. Its message is a unifying one of pride in the accomplishments of our nation and gratitude for the veterans and fallen soldiers who have made those accomplishments possible. It is no more partisan than the Washington Monument, Lincoln Memorial, Jefferson Memorial, World War I Memorial, World War II Memorial, Korean War Memorial, Vietnam Memorial, or countless other monuments throughout the capital. In a time of increased political division, it is even more important to recognize the great common heritage of all Americans and the sacrifices that have made that heritage a reality.

The Triumphal Arch has special significance to veterans. It is sadly all too common for veterans to face difficulty adjusting to civilian life on their return from duty. On average, more than 17 veterans commit suicide every day. *2026 National Veteran Suicide Prevention Annual Report* 6, Dep't of Veterans Affairs (Sept. 2026), perma.cc/QGT3-ZB7W. Tangible expressions of public gratitude like the Triumphal Arch communicate to veterans that the trials they have endured served a worthwhile purpose, and that their fellow citizens in civilian life recognize their sacrifices and have not forgotten them. Veterans should be proud of the service they have rendered to the nation, and the Triumphal Arch reinforces that honorable pride.

Although some of the plaintiffs highlight their veteran status, they do not speak for veterans as a whole. Amici represent tens of thousands of veterans and steadfastly support the construction of the Triumphal Arch. The vast majority of amici's feedback on the arch from their veteran members has been supportive. Those who oppose it are isolated, often speak only for a small minority, and sadly seek to politicize something that should be supported regardless of political party.

Plaintiffs' criticisms of the arch's design and purpose are wholly misplaced. Plaintiffs condemn the arch as a "vainglorious monument" to President Trump's "ego," Gundersen-Decl. (Doc.7-4) ¶8,

even comparing it to "the Soviet government's" efforts "to exercise ideological and political control over the population," Lemmon-Decl. (Doc.7-2) ¶3. But Plaintiffs do not identify any features of the arch's design that would justify this hyperbolic rhetoric. Nor could they. As a form of monumental architecture, the triumphal arch dates back to the Roman Republic, a historical period that greatly influenced the founding generation and inspired many of Washington's iconic landmarks, including the Jefferson Memorial, the Capitol, and the Supreme Court building. *Triumphal Arch*, Encyclopedia Britannica (Oct. 19, 2026), archive.is/8La3z. Triumphal arches are a common feature of modern Western democracies, from the Arc de Triomphe in Paris, to the Wellington Arch in London, to the Washington Square Arch in New York City (built to commemorate the centennial of our first president's inauguration). And the proposed details of this arch—from the mottos "one nation under God" and "liberty and justice for all" to the statue of Lady Liberty at the top—evoke classic American themes. They have nothing to do with celebrating President Trump as an individual, let alone (as if this needed to be said) Soviet totalitarianism.

Any delay in construction of the arch will irreparably harm the public interest. The year 2026 will soon come to a close. The more construction drags on into future years, the more attenuated the connection between the arch and the 250th anniversary the arch is meant to commemorate. If a preliminary injunction is in place until this Court reaches a final judgment and all appeals are resolved, it could be years before the government could even *start* construction on the arch. And yearslong delay in the arch's completion will communicate the shameful message that our nation's veterans and fallen soldiers are an afterthought to this momentous anniversary of our independence, not at the forefront where they belong.

## II. Plaintiffs have no standing.

While the public has a profound interest in constructing the Triumphal Arch, Plaintiffs have no cognizable interest in thwarting its construction. They accordingly cannot show that they are likely to succeed, that they will be irreparably harmed, or that the balance of the equities favors an injunction.

To prove standing to sue in federal court, Plaintiffs must establish that they have suffered an "injury in fact"—that is, the "invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). An "injury in fact" must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Supreme Court's recent decision in *National Park Service v. National Trust for Historic Preservation* forecloses Plaintiffs' theory of injury. 2026 WL 2564318 (U.S. Aug. 31). To establish standing, Plaintiffs rely entirely on their summary-judgment briefing. PI-Mot. (Doc.64-1) 11. There, they argue that they are injured because "the construction of an arch in Memorial Circle" will interfere with their "aesthetic and symbolic enjoyment" of the existing monuments in the area. MSJ (Doc.36-1) 10. This is precisely the injury that *National Park Service* found non-cognizable.

The plaintiff in *National Park Service* claimed that the construction of a new East Wing of the White House caused its member "to suffer 'injuries' to her 'aesthetic, cultural, and historical interests' because she finds the 'scale,' 'height,' and 'massing' of the government's design distasteful." 2026 WL 2564318, at *2. The member claimed to have a special connection to the site because she is a Capitol Hill resident who regularly "visit[s] the neighborhood around the White House," *id.*, as well as "a professor of history and historic preservation" who regularly performs "volunteer work providing presentations on the District of Columbia's historic architecture," *id.* at *5 (Roberts, C.J., dissenting). Yet the Court determined that these facts amounted to no more than "distress at or disagreement with the activities of others," which "is not a basis" for standing "under Article III." *Id.* at *2 (majority). A mere "desire to view" a particular historic building is not a "concrete and particularized" injury. *Id.* at

*3; *see id.* at *6 (Roberts, C.J., dissenting) (recognizing that, under the majority's holding, "'I want to look at the White House' cannot" establish standing "no matter how distinctive the particular viewer's interest in looking at it may be").

So too here. Because Plaintiffs assert no interest beyond their "desire to view" certain historic buildings, they have no "concrete and particularized" injury. *Id.* at *3 (majority). Without standing, Plaintiffs cannot establish that they are likely to succeed on the merits, *id.*, that they will suffer irreparable harm, or that the balance of equities favors an injunction, *id.* at *4. The Supreme Court's interim decisions control "how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Because Plaintiffs' request for preliminary relief "does not … differ from [*National Park Service*] in any pertinent respect," their motion must be denied. *Id.*

## III. Plaintiffs have no *ultra vires* claim.

Plaintiffs' motion independently fails because they have no viable claim that the National Park Service is acting *ultra vires* in preparing to construct the Triumphal Arch.

Plaintiffs must clear a very high bar to prevail on an *ultra vires* claim. "Because ultra vires review could become an easy end-run around the limitations of … other judicial-review statutes," Supreme Court precedent has "strictly limited nonstatutory ultra vires review." *NRC v. Texas*, 605 U.S. 665, 681 (2025). *Ultra vires* review "does not apply simply because an agency has arguably reached 'a conclusion which does not comport with the law.'" *Id.* "Rather, it applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." *Id.* An *ultra vires* "claim is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 681-82.

Plaintiffs' claim is not the rare Hail Mary pass that succeeds. As the government has explained, Plaintiffs' claim fails for many reasons. Plaintiffs attack the government's announced intentions rather than its actions. Cross-MSJ (Doc.44-1) 24-26. Review will be available under the Administrative

Procedure Act after the National Park Service authorizes construction. Cross-MSJ.26-28. The 1925 Act authorizes construction. Cross-MSJ.28-31 (citing 43 Stat. 974). And no statute prohibits construction. Cross-MSJ.31-36. *Amici* stress two additional points.

First, Plaintiffs misstate the standard for an *ultra vires* claim. Plaintiffs maintain that they can prevail if the arch is merely "unauthorized by any law," rather than expressly prohibited. PI-Mot.8 (quoting *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)). But when Texas invoked the same language from *McAnnulty* to expand the scope of *ultra vires* review in *NRC*, the Supreme Court rejected that same move. *See* 605 U.S. at 680. Instead, the Court emphatically reaffirmed that *ultra vires* review is available only "when an agency has taken action entirely … 'contrary to a *specific prohibition*.'" *Id.* at 681 (quoting *Ry. Clerks v. Ass'n for Benefit of Non-Contract Emps.*, 380 U.S. 650, 660 (1965)). Plaintiffs must do more than show that the 1925 Act fails to authorize the arch (although the Act does authorize the arch, Cross-MSJ.28-31). They must identify a statute specifically prohibiting the construction of the arch, which they cannot do. *See* Cross-MSJ.31-36.

Second, even putting aside Plaintiffs' misconstruction of the standard and the government's other arguments on the 1925 Act, Plaintiffs' approach to the 1925 Act is flawed. Plaintiffs complain that the Act could not have contemplated authorizing a memorial "to commemorate a national anniversary that, at the time of the statute's enactment, lay more than a century in the future." PI-Mot.9. But the Act has no express sunset clause. Cross-MSJ.29. And in the absence of such a clause (particularly on *ultra vires* review), the mere passage of time is irrelevant. "The bright-line rule is that a statute has effect until it is repealed." Scalia & Garner, *Reading Law* 336 (2012). "If 10, 20, 100, or even 200 years pass without any known cases applying the statute, no matter[.]" *Id.* "A statute is not repealed by nonuse or desuetude." *Id.* In many contexts, Congress has recognized that it is never too late to support veterans. *See, e.g.*, *Bufkin v. Collins*, 604 U.S. 369, 373 (2025) ("Congress imposes no statute of limitations on a veteran's claim for benefits"). Here, Congress in 1925 authorized the government to

erect a large monument to honor veterans on the Arlington side of Memorial Bridge. Cross-MSJ.4-5. The government can choose to honor veterans now even if it failed to do so in the past.

**CONCLUSION**

This Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Cameron T. Norris*
Cameron T. Norris
(D.D.C. No. VA083)
Ryan M. Proctor
(D.C. Bar No. 1659619)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com

*Attorneys for Amici Curiae*

*Application to D.D.C. bar pending