# EXHIBIT A

The following additional pairs were announced:

For the session:

Mr. WANGER with Mr. ADAMSON.

Mr. WOODYARD with Mr. HARDWICK.

Until further notice:

Mr. TAWNEY with Mr. SHERLEY.

Mr. WHEELER with Mr. TAYLOR of Colorado.

Mr. ELVINS with Mr. SAUNDERS.

Mr. THOMAS of Ohio with Mr. WILSON of Pennsylvania.

Mr. SOUTHWICK with Mr. WEBB.

Mr. SMITH of Iowa with Mr. STEPHENS of Texas.

Mr. PRAY with Mr. PUJO.

Mr. MOON of Pennsylvania with Mr. MOORE of Texas.

Mr. MCKINNEY with Mr. LIVINGSTON.

Mr. HUMPHREY of Washington with Mr. LINDSAY.

Mr. GARNER of Pennsylvania with Mr. GILL of Missouri.

Mr. COUDREY with Mr. CRAVENS.

Mr. COOPER of Pennsylvania with Mr. CANTRILL.

For the balance of the day:

Mr. CREAGER with Mr. FERRIS.

Mr. FASSETT with Mr. HOWARD.

Mr. LOWDEN with Mr. MCDERMOTT.

The result of the vote was then announced, as above recorded, and the Doorkeeper was ordered to open the doors.

The SPEAKER pro tempore. The question recurs on the third reading of the Senate bill.

The bill was ordered to be read a third time, was read the third time, and passed.

On motion of Mr. CAMPBELL, a motion to reconsider the last vote was laid on the table.

REGULATING HEIGHT OF BUILDINGS, DISTRICT OF COLUMBIA.

Mr. SMITH of Michigan. Mr. Speaker, I call up the bill (H. R. 19070) to regulate the height of buildings in the District of Columbia, which I send to the desk and ask to have read.

The Clerk read as follows:

*Be it enacted, etc.*, That from and after the date of the approval of this act no combustible or nonfireproof building in the District of Columbia used or occupied or intended to be used or occupied as a dwelling, flat, apartment house, tenement, lodging or boarding house, hospital, dormitory, or for any similar purpose, shall be erected, altered, or raised to a height of more than four stories, or more than 50 feet in height above the sidewalk, and no combustible or nonfireproof building shall be converted to any of the uses aforesaid if it exceeds either of said limits of height.

SEC. 2. That from and after the date of the approval of this act no combustible or nonfireproof building in the District of Columbia used or occupied or intended to be used or occupied for business purposes only shall be erected, altered, or raised to a height of more than 60 feet above the sidewalk, and no combustible or nonfireproof building shall be converted to such use if it exceeds said height.

SEC. 3. That all buildings in the District of Columbia, including buildings of every kind, class, and description whatsoever, excepting churches only, hereafter erected, altered, or raised in any manner as to exceed 60 feet in height shall be fireproof or noncombustible and of such fire-resisting materials, from the foundation up, as are now or at the time of the erecting, altering, or raising may be required by the building regulations of the District of Columbia.

Hotels, apartment houses, and tenement houses hereafter erected, altered, or raised in any manner so as to be three stories in height or over and buildings hereafter converted to such uses shall be of fireproof construction up to and including the main floor, and there shall be no space on any floor of such structure of an area greater than 2,500 square feet that is not completely inclosed by fireproof walls, and all doors through such walls shall be of noncombustible materials.

Every building hereafter erected with a hall or altered so as to have a hall with a seating capacity of more than 300 persons when computed, as provided by the building regulations, and every church hereafter erected or building hereafter converted for use as a church, with such seating capacity, shall be of fireproof construction up to and including the floor of such hall or the auditorium of such church as the case may be.

SEC. 4. That additions to existing combustible or nonfireproof structures hereafter erected, altered, or raised to exceed the height limited by this act for such structures shall be of fireproof construction from the foundation up, and no part of any combustible or nonfireproof building shall be raised above such limit or height unless that part be fireproof from the foundations up.

Towers, spires, or domes, hereafter constructed more than 60 feet above the sidewalk, must be of fireproof material from the foundation up, and must be separated from the roof space, choir loft, or balcony by brick walls without openings, unless such openings are protected by fireproof or metal-covered doors on each face of the wall.

Every theater hereafter erected and every building hereafter converted to use as a theater, and any building or the part or parts thereof under or over the theater so erected or the buildings so converted, shall be of fireproof construction from the foundation up and have fireproof walls between it and other buildings connected therewith, and any theater damaged to one-half its value shall not be rebuilt except with fireproof materials throughout and otherwise in accordance with the building regulations of the District of Columbia.

SEC. 5. That no building shall be erected, altered, or raised in the District of Columbia in any manner so as to exceed in height above the sidewalk the width of the street, avenue, or highway in its front, increased by 20 feet; but where a building or proposed building confronts a public space or reservation formed at the intersection of two or more streets, avenues, or highways, the course of which is not interrupted by said public space or reservation, the limit of height of the building shall be determined from the width of the widest street, avenue, or highway. Where a building is to be erected or removed from all distance at least equal to its proposed height above grade the limits of height for fireproof or noncombustible buildings in residence sections shall control, the measurements to be taken from the natural grades at the buildings as determined by the commissioners.

No building shall be erected, altered, or raised in any manner as to exceed the height of 130 feet on a business street or avenue as the same is now or hereafter may be lawfully designated.

On a residence street, avenue, or highway no building shall be erected, altered, or raised in any manner so as to be over 80 feet in height to the top of the highest ceiling joists or over 85 feet in height at the highest part of the roof or parapet, nor shall the highest part of the roof or parapet exceed in height the width of the street, avenue, or highway upon which it abuts, diminished by 10 feet, except on a street, avenue, or highway 60 to 65 feet wide, where a height of 60 feet may be allowed; and on a street, avenue, or highway 60 feet wide or less, where a height equal to the width of the street may be allowed.

The height of a building on a corner lot will be determined by the width of the wider street.

On streets less than 90 feet wide where building lines have been established and recorded in the office of the surveyor of the District, and so as to prevent the lawful erection of a building in advance of said line, the width of the street, in so far as it controls the height of buildings under this law, shall be held to be the distance between said building lines.

On blocks immediately adjacent to public buildings or to the side of any public building for which plans have been prepared and money appropriated at the time of the application for the permit to construct said building, the maximum height shall be regulated by a schedule adopted by the Commissioners of the District of Columbia.

Buildings hereafter erected to front or abut on the plaza in front of the new Union Station provided for by act of Congress approved February 28, 1903, shall be fireproof and shall not be of a greater height than 80 feet.

Spires, towers, domes, minarets, pinnacles, pent houses over elevator shafts, ventilation shafts, chimneys, smokestacks, and fire sprinkler tanks may be erected to a greater height than any limit prescribed in this act when and as the same may be approved by the Commissioners of the District of Columbia: *Provided, however*, That such structures when above such limit of height shall be fireproof, and no floor or compartment thereof shall be constructed or used for human occupancy above the top story of the building upon which such structures are placed: *And provided*, That pent houses, ventilation shafts, and tanks shall be set back from the exterior walls distances equal to their respective heights above the adjacent roof.

SEC. 6. That no wooden or frame building hereafter erected, altered, or converted for use as a human habitation shall exceed three stories or exceed 40 feet in height to the roof.

SEC. 7. That for the purposes of this act the height of buildings shall be measured from the level of the sidewalk opposite the middle of the front of the building to the highest point of the roof. If the building has more than one front, the height shall be measured from the elevation of the sidewalk oposite the middle of the front that will permit of the greater height. No parapet walls shall extend above the limit of height.

SEC. 8. That buildings erected, altered, or raised or converted in violation of any of the provisions of this act are hereby declared to be common nuisances; and the owner or the person in charge of or maintaining any such buildings, upon conviction on information filed in the police court of the District of Columbia by the corporation counsel or any of his assistants in the name of said District, and which said court is hereby authorized to hear and determine such cases, shall be adjudged guilty of maintaining a common nuisance, and shall be punished by a fine of not less than $10 nor more than $100 per day for each and every day such nuisance shall be permitted to continue, and shall be required by said court to abate such nuisance. The corporation counsel of the District of Columbia may maintain an action in the supreme court of the District of Columbia, in the name of the District of Columbia, to abate and perpetually enjoin such nuisance. The injunction shall be granted at the commencement of the action, and no bond shall be required. Any person violating the terms of any injunction granted in such proceeding shall be punished as for contempt by a fine of not less than $100 nor more than $500, or by imprisonment in the United States jail for not less than thirty days nor more than six months, or by both such fine and imprisonment, in the discretion of the court.

SEC. 9. That Congress reserves the right to alter, amend, or repeal this act. All conflicting laws and the act of Congress approved March 1, 1899, entitled "An act to regulate the height of buildings in the District of Columbia," and the acts of Congress approved February 16, 1904, and March 3, 1903, entitled "An act to amend an act to regulate the height of buildings in the District of Columbia," are hereby repealed.

Mr. SMITH of Michigan. Mr. Speaker, I yield fifteen minutes to the gentleman from Kansas [Mr. CAMPBELL].

Mr. CAMPBELL. Mr. Speaker, I will yield to the gentleman from Pennsylvania [Mr. ROTHERMEL] to offer an amendment.

The SPEAKER pro tempore. The gentleman can not yield except with the consent of the gentleman from Michigan.

Mr. MANN. He can not yield for the purpose of offering an amendment without losing the floor.

Mr. SMITH of Michigan. Mr. Speaker, I reserve the balance of my time.

The SPEAKER pro tempore. Does the Chair understand that the gentleman reserves the balance of his time other than that yielded to the gentleman from Kansas?

Mr. SMITH of Michigan. Yes.

Mr. CAMPBELL. Mr. Speaker, I will offer an amendment, which I send to the Clerk's desk and ask to have read.

Mr. MANN. Of course the gentleman from Michigan did not yield to the gentleman from Kansas to offer an amendment, and if he does, he loses the floor.

The SPEAKER pro tempore. The Chair did not understand the gentleman from Michigan to yield to the gentleman from Kansas for the purpose of offering an amendment. The gentle-

Case 1:26-cv-00544-TSC Document 95-1 Filed 11/03/26 Page 3 of 4



can recognize the gentleman from Kansas in his own right. The gentleman from Kansas offers an amendment which the Clerk will report.

The Clerk read as follows:

After the word "wall," page 3, section 4, in line 17, insert the following:

"That full power and authority is hereby granted to and conferred upon every person whose application was filed in the office of the Commissioners of the District of Columbia prior to the adoption of the present building regulations of said District, and has since been approved by two of the commissioners of said District as in conformity with the building regulations of said District in force at the time when filed, to construct a steel fire-proof dome on any buildings in said District owned by such persons as set forth in the plans and specifications annexed to or forming a part of such applications so approved, any other provision in this act contained to the contrary notwithstanding. And the inspector of buildings of said District shall see only that such dome is constructed as set forth in said plans and specifications."

Mr. CAMPBELL. Mr. Speaker, that amendment is to permit an alteration on a building in the city now occupied by a department store, and to enable conveniences and air spaces to be constructed for the employees in the store. The plans for the improvement had been agreed upon prior to the time this bill was introduced and the work is ready to progress. There are some 300 girls employed in this business establishment, and it is urged in their behalf that this amendment be agreed to in this bill, so as to enable the additional room and additional conveniences and light and air to be obtained that it is proposed to get by the improvement provided for in this amendment.

The SPEAKER pro tempore. The question is on agreeing to the amendment offered by the gentleman from Kansas.

The question was taken, and the amendment was agreed to.

Mr. CAMPBELL. Mr. Speaker, I now offer another amendment, which I send to the desk and ask to have read.

The Clerk read as follows:

Page 8, line 7, strike out all after the word "all" down to and including the word "Columbia," in line 14, and insert in lieu thereof the words "laws in conflict herewith."

The SPEAKER pro tempore. The question is on agreeing to the amendment offered by the gentleman from Kansas.

Mr. MANN. What is the purpose of the amendment?

Mr. CAMPBELL. The act as reported repeals a number of laws outright, and I am proposing to repeal the laws in conflict herewith rather than to repeal these acts.

Mr. MANN. That is much better.

The SPEAKER pro tempore. The question is on agreeing to the amendment.

The amendment was agreed to.

Mr. STAFFORD. Will the gentleman explain the demand for and the purpose of increasing the height of buildings as proposed in the pending bill?

Mr. CAMPBELL. The city of Washington is growing and a great many buildings are being erected here, some of them running up to seven or eight stories, and the purpose of this bill is to require that all such buildings that are built to a certain height are to be built of fireproof material and construction. The regulations now permit buildings to be erected to the height of one story below the provisions of this bill. We are practically raising the limit one story, and providing for fireproof material and construction.

Mr. STAFFORD. What is the demand for that change? I assume that in Washington we are seeking to keep down the height of these structures which so affect the general view of some of our large cities. Now, why should we in Washington, when we are seeking to make it "the city beautiful," raise the height of the buildings still more?

Mr. CAMPBELL. This bill does not permit the increase of height of buildings materially—only one story.

Mr. STAFFORD. What is the demand for that?

Mr. CAMPBELL. The demand for higher buildings in the business portion of the city and the construction of certain other buildings fireproof.

Mr. HINSHAW. It does not raise the height of the building, but merely provides that when they make it above a certain height they shall make it fireproof.

Mr. STAFFORD. It provides in one particular that an additional story may be erected.

Mr. GAINES. Does not the bill give the commissioners the right to pass regulations limiting the height of buildings in the neighborhood of public buildings?

Mr. CAMPBELL. Oh, yes; that is safeguarded. No building may be erected adjacent to any public building without the consent of the commissioners.

Mr. STAFFORD. I am acquainted with that provision, but I am asking now in regard to that part of the bill which provides for increasing the height above that which is now allowed.

Mr. CAMPBELL. I will state to the gentleman from Wisconsin that some buildings have been erected above the height now permitted for nonfireproof buildings under the present law by making the upper or mansard stories of nonfireproof and almost combustible material, and this act is for the purpose of requiring that buildings of a certain height shall be of fireproof material throughout.

Mr. STAFFORD. The more important inquiry, I would like to say to the gentleman, is that providing for fireproof structures for buildings used as theaters.

Mr. SMITH of Michigan. What section, please?

Mr. STAFFORD. Section 4, which provides that buildings hereafter erected and used for theatrical purposes shall be of fireproof character. I would like to inquire whether the committee has given any consideration as to the present structures used for theatrical purposes being of a fireproof character. I have noticed, and we all have, on the Avenue here during the past month, the alteration of the interior of a couple of store buildings that have been changed, not in a form which would indicate that they are fireproof, for moving-picture shows, I suppose.

Mr. CAMPBELL. I will say to the gentleman if these buildings were constructed under this act they would have to be fireproof.

Mr. STAFFORD. Does the present law confer authority on the commissioners sufficient to give them the right to close any buildings that are not properly safeguarded so as to prevent a holocaust similar to that which occurred in the Iroquois Theater fire at Chicago?

Mr. KAHN. If the gentleman will permit——

Mr. CAMPBELL. I yield to the gentleman from California.

Mr. KAHN. I have investigated that matter somewhat and I find the decisions of the courts throughout the country invariably prevent the board of fire commissioners or public buildings commissioners from going back beyond the time when the law was enacted. In other words, if a building is not fireproof prior to the enactment of the law, the law will not allow the commissioners to compel the fireproofing of a building that had been constructed prior to its enactment.

Mr. STAFFORD. I will not question that the gentleman may have ascertained that there are such decisions, but in my city, I will say, under a municipal ordinance, we can require the safeguarding of elevator shafts and structures used for theatrical purposes to safeguard the lives of people, and I must question the validity of those decisions. I think it is within the police powers of this District now, even if they have not been heretofore prescribed, that buildings used for theatrical purposes shall be fireproof, to pass a regulation compelling that they should be.

Mr. KAHN. We did that here.

Mr. STAFFORD. When?

Mr. KAHN. Five years ago.

Mr. STAFFORD. In this bill?

Mr. KAHN. No, not in this bill; but five years ago we required theaters to put in fire escapes and take steps out of the aisles so that they should be on an incline, and also to afford more exits from the theaters.

Mr. STAFFORD. Why should not the committee, as a safety precaution to the lives of those who frequent theaters, provide that all buildings which are now used for theaters within a certain time shall be of fireproof character?

Mr. CAMPBELL. We want to pass a constitutional law, is the answer.

Mr. STAFFORD. I do not think there will be any question but that such a regulation would be included in the police powers of the Congress.

Mr. MANN. If the gentleman will permit a suggestion, in response to the suggestion of my friend from Wisconsin [Mr. STAFFORD], we clearly would not have the power to confiscate a theater building, and we would not have the power to require it to be built over again. We have the power, as has been done in the gentleman's city, to pass a law prohibiting a theater entertainment being carried on except in a building of a certain kind, and that is the way they reach it there; but that has nothing to do with the construction of the building. Here is a proposition requiring buildings to be used for theater purposes to be constructed of fireproof material. When we get some fireproof buildings in town we may pass a law forbidding the use of these old shacks for theaters.

Mr. STAFFORD. And perhaps the present buildings that are now being used for theatrical purposes may be in use for the next twenty years. There may be a holocaust in some of them, and these rather new buildings that are erected under fireproof

Mr. MANN. That may be; but I submit that proposition does not come in connection with the erection of buildings, because where a man has constructed a building under the law Congress can not confiscate it and the State can not confiscate it.

Mr. STAFFORD. I am perfectly aware that we can not confiscate, although we can, as the gentleman has stated, make regulations by law that a building shall not be used for this purpose unless it conforms to certain regulations. I was making a query of the gentleman as to whether the committee in connection with this very important subject had given consideration to the question as to what should be done with the present structures that are so ill arranged as not to protect the lives of those who frequent these temporary shacks on the Avenue which are used for moving-picture shows.

Mr. CAMPBELL. I will state to the gentleman from Wisconsin that we have required fire escapes and additional exits.

Mr. STAFFORD. Fire escapes in these moving-picture-show buildings do not provide the required protection.

Mr. CAMPBELL. I am answering the gentleman's question. We have done that. The gentleman has not introduced a bill prohibiting these buildings being used for theaters. We have no right under the Constitution of the United States to require these people to tear down these buildings or to put up others.

Mr. STAFFORD. But the gentleman from Illinois and others——

Mr. CARLIN. This bill does not touch that question at all?

Mr. CAMPBELL. It does not touch that question at all. It requires buildings erected in the future to be fireproof.

Mr. STAFFORD. The gentleman from Illinois has suggested a way that you can make all buildings used for theatrical purposes fireproof.

Mr. KEIFER. The purpose for which I rose seems to have been passed by. I think it is now made clear that this bill only deals with the future structures and does not undertake to regulate theaters. As said by the gentleman from California [Mr. KAHN], we can not pass a retroactive act and require people to construct their buildings over again. But it may be well enough sometimes in some bill to have regulations that will regulate theaters and prevent performances being held in places that are not fireproof. That is another question altogether.

Mr. CAMPBELL. I quite agree with the gentleman from Ohio [Mr. KEIFER] and the gentleman from Wisconsin [Mr. STAFFORD].

Mr. KEIFER. This is not a bill to increase the height, but rather to regulate how they shall be built if above a certain number of stories.

Mr. CAMPBELL. That is the purpose of the bill.

Mr. KAHN. As a matter of fact, if the gentleman will allow me, this bill reduces the height of buildings that are not fireproof.

Mr. KEIFER. That is all right, too.

Mr. HINSHAW. I noticed in the paper a short time ago that a new theater is to be constructed in the city, supposed to be equal to or better than any now existing. I would like to know whether the provisions of this bill will require that that structure when completed will be fireproof.

Mr. CAMPBELL. It will. We want to get this bill through before they can get their plans approved by the commissioners under the present law. That is the purpose of the bill.

Mr. Speaker, I ask for a vote.

The SPEAKER pro tempore. The question is on agreeing to the amendment.

The question was taken, and the amendment was agreed to.

The bill as amended was ordered to be read a third time, was read the third time, and passed.

Mr. SMITH of Michigan. Mr. Speaker, I ask unanimous consent to have the report in connection with this bill just passed printed in the RECORD.

The SPEAKER pro tempore. Is there objection? [After a pause.] The Chair hears none.

The report is as follows:

[House Report No. 720, Sixty-first Congress, second session.]

The Committee on the District of Columbia, to whom was referred the bill (H. R. 19070) to regulate the height of buildings in the District of Columbia, report the same back to the House with the recommendation that it do pass.

The draft of this bill was submitted to this committee by the Commissioners of the District of Columbia and its passage recommended in the following letter:

OFFICE COMMISSIONERS OF THE DISTRICT OF COLUMBIA,
*Washington, January 22, 1910.*

SIR: The Commissioners of the District of Columbia have the honor to submit herewith draft of a bill to regulate the height of buildings in the District of Columbia, and to request its enactment.

There are various laws now existing in relation to this matter, and what conflicting and obscure, and also to make other provisions designed to limit the construction of combustible buildings and to encourage the construction of fireproof buildings.

The changes, in detail, from the provision of existing law and regulations are indicated on the inclosed memorandum.

Very respectfully,

HENRY B. F. MACFARLAND,
*President of the Board of Commissioners of the District of Columbia.*

Hon. SAMUEL W. SMITH,
*Chairman Committee on the District of Columbia, House of Representatives.*

The following is the memorandum of the changes in detail proposed to be made in the present law by this bill, which is referred to in the last clause of the above letter:

"Section 1: Present act permits the erection of a nonfireproof building to a height of 5 stories, or 60 feet above the sidewalk.

"Proposed act permits 4 stories, or 50 feet in height.

"Section 2: Present act permits the erection of a building used for business purposes solely to a height of 75 feet, without being of fireproof construction.

"Proposed act reduces this height to 60 feet.

"Section 3: Proposed act requires all hotels, apartment houses, and tenement houses 3 stories in height or over to be of fireproof construction up to and including the main floor, and increases the floor area that must be inclosed by fireproof partition walls to 2,500 square feet.

"The present act has no requirement that this class of buildings shall be fireproof up to and including the main floor, but there is a building regulation (sec. 122a) requiring a subdivision of area not greater than 1,600 square feet to be completely inclosed by fireproof partition walls.

"Under the proposed act every building, including churches, with a hall having a seating capacity of more than 300 persons shall be of fireproof construction up to and including the auditorium floor.

"The present law makes this requirement for churches only, whatever their size.

"The present building regulations make this requirement for other buildings than churches.

"Section 4: Prohibits additions in height to combustible buildings, when such addition would raise the height of the combustible building to a greater limit than that permitted for combustible buildings.

"The present act makes this same requirement, but the wording has proved to be ambiguous.

"The proposed act provides towers, spires, and domes constructed more than 60 feet above the sidewalk must be fireproof throughout.

"The present act does not make this requirement.

"The proposed act requires every theater and any part of the building used as a theater to be of fireproof construction.

"The present building regulations require this, but not in such specific language.

"Section 5: The proposed act permits the erection of fireproof buildings on a business street to a height of 20 feet in excess of the limit permitted by the present law, except that no building is permitted to be erected to exceed in height the present extreme limit of 130 feet.

"The proposed act permits, on a residence street 90 feet or over in width, the erection of a building to a height of 85 feet at the highest part of the roof, whereas the present act does not permit the erection on a residence street 90 feet or over in width a building over 80 feet in height.

"The proposed act requires that on blocks immediately adjacent to public buildings the maximum height of a building to be erected shall be regulated by a schedule adopted by the Commissioners of the District of Columbia.

"The present act has no such provisions. The commissioners have found it advisable to make such regulations, and the present building regulations fix the height of buildings on G and F streets, between Seventh and Ninth, adjacent to the United States Patent Office, and on Fifteenth street, between Pennsylvania avenue and G street, adjacent to the Treasury. This clause is inserted in order that there may be no question as to the right of the commissioners to make such a regulation.

"The proposed act requires that buildings erected to front or abut on the plaza shall be fireproof and shall not be of a greater height than 80 feet. The present act has similar requirements.

"The proposed act permits spires, towers, penthouses, ventilation shafts, etc., to be erected to a greater height than any limit prescribed in this act when approved by the Commissioners of the District of Columbia, provided, however, that such structures shall be fireproof, not used for human occupancy, and they shall set back from the exterior walls distances equal to their respective heights above the adjacent roof.

"The present act permits the erection of these structures to a height greater than the permissible roof height of the building, but does not require them to be fireproof nor to set back from the exterior walls.

"Section 6 is not changed.

"Section 7: The proposed act fixes the height of buildings to be measured from the sidewalk opposite the middle of the front of the building to the highest point of the roof. If the building has more than one front the height to be measured from the elevation of the sidewalk opposite the middle of the front that will permit the greater height.

"The present building regulations fix the height to be measured if the building has more than one front from the main elevation of the sidewalk at the street corners.

"Section 8: Makes buildings erected, altered, or raised or converted in violation of the provisions of this act a common nuisance, and fixes the manner of prosecution in such cases and fine for maintenance of the nuisance.

"The present act has no such provisions."

ST. VINCENT'S ORPHAN ASYLUM.

Mr. SMITH of Michigan. I call up the bill (H. R. 17871) to amend an act entitled "An act to incorporate St. Vincent's Orphan Asylum, in the District of Columbia."

The bill was read, as follows:

Whereas it appears that by an act of Congress approved February 25, 1831, William Matthews, Matthew Deagle, Peter S. Shreiber, Thomas Carbery, and William Hickey, and their successors in office, were constituted a body corporate in the District of Columbia under