**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Civil Action No. 26-cv-544 (TSC) |
| DISTRICT OF COLUMBIA and COMMONWEALTH OF VIRGINIA,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, et al.,<br><br>Defendants. | Civil Action No. 26-cv-3838 (TSC)<br><br>**CONSOLIDATED CASES** |

**LEMMON PLAINTIFFS' [PROPOSED] SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth (hereafter, Lemmon Plaintiffs) hereby supplement their original complaint of February 19, 2026. The Lemmon Plaintiffs allege as follows:

## INTRODUCTION

1. The Lemmon Plaintiffs filed this lawsuit on February 19, 2026, against Defendants Donald J. Trump, Vince Haley, Executive Office of the President, and National Park Service (NPS). The Lemmon Plaintiffs challenged, as ultra vires and in violation of President Trump's

constitutional duty to take care that Congress's laws be faithfully executed, Defendants' decision to construct, without congressional authorization, a monumental arch in Memorial Circle.

2. Since the filing of the original complaint, NPS and supplemental defendant Department of the Interior (hereafter, Agency Defendants) have taken independently unlawful action to further Defendants' ultra vires and unconstitutional decision by granting final authorization on November 5, 2026, for construction of an arch to commence in Memorial Circle in accordance with design, site, and building plans developed by Agency Defendants.

3. Agency Defendants' final agency action to green-light construction of a commemorative monument that Congress has not authorized on NPS land in the District of Columbia is contrary to the Commemorative Works Act of 1986 and 40 U.S.C. § 8106.

4. This final agency action is also arbitrary and capricious. Throughout the administrative process, Agency Defendants' own findings consistently revealed that the design, site, and building plans for the arch will, if implemented, cause irrevocable adverse impacts on the surrounding area and that public sentiment strongly disfavors the project. Nonetheless, in issuing final authorization for construction to begin in accordance with those plans, Agency Defendants disregarded these findings, refused to consider alternative sites or meaningfully alternative designs, and barreled forward to a predetermined result.

**SUPPLEMENTAL DEFENDANT**

5. Defendant Department of the Interior is a federal agency headquartered in Washington, DC, with responsibility for protecting and managing the Nation's natural resources and cultural heritage. Defendant NPS is an agency within Department of the Interior.

## SUPPLEMENTAL FACTUAL ALLEGATIONS

**Background**

6. As set forth in the Lemmon Plaintiffs' original complaint, President Trump announced in October 2025 that a 250-foot-tall arch would be constructed in Memorial Circle to commemorate the Nation's 250th anniversary.

7. Memorial Circle sits within the District of Columbia on land administered by NPS. It is situated directly on the visual axis that connects the Lincoln Memorial with Arlington House, the Robert E. Lee Memorial in Arlington National Cemetery.

8. The Commemorative Works Act specifies a detailed, multi-step process for authorizing, designing, and siting any "monument[] … or other structure" that is "designed to perpetuate in a permanent manner the memory of an … event or other significant element of American history" on NPS land within the District of Columbia. 40 U.S.C. § 8902(a)(1); *see id.* §§ 8901(4), 8903(a). Among other things, the Act provides that such works may be built "only as specifically authorized by law," *id.* § 8903(a)(1), and only following congressional designation of a project sponsor and the sponsor's consultation with the National Capital Memorial Advisory Commission, *id.* § 8905(a)(1). In addition, when a commemorative work will be constructed in a part of the capital that is designated by the Act as "Area I," the Secretary of the Interior or the Administrator of General Services must make a recommendation to Congress that the work be sited in Area I, and construction can proceed "only if the recommendation is approved by law not later than 150 calendar days after the notification." *Id.* § 8908(b)(1).

9. 40 U.S.C. § 8106 provides that any "building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

10. Congress has not authorized the construction of a monumental arch in Memorial Circle.

11. Congress has not designated a project sponsor for the construction of an arch in Memorial Circle to commemorate the Nation's 250th anniversary, and the National Capital Memorial Advisory Commission necessarily has not consulted with such a sponsor.

12. Memorial Circle sits inside "Area I" for purposes of the Commemorative Works Act. Neither the Secretary of the Interior nor the Administrator of General Services has recommended to Congress that a commemorative arch be constructed in Area I, and Congress necessarily has not approved any such recommendation.

13. Notwithstanding the absence of congressional authorization for the arch, Agency Defendants have advanced Defendants' ultra vires project through a pro forma administrative process, culminating in independently unlawful final agency action, as detailed below.

**Commission of Fine Arts proceedings**

14. After the Lemmon Plaintiffs filed suit, Agency Defendants submitted a "concept" design for a monumental arch in Memorial Circle for consideration at the April 16, 2026, meeting of the U.S. Commission of Fine Arts. *See* Sansone Decl., Exh. H, ECF 36-11.

15. The Commission received approximately 1,000 public comments regarding the arch prior to its April 16 meeting. Comm'n of Fine Arts, *CFA Meeting—16 April 2026*, https://www.cfa.gov/records-research/record-cfa-actions/2026/04/cfa-meeting (linked "Meeting Recording" at 59:30–59:49). Of these comments, 100% opposed the arch. *Id.*

16. Following the meeting, the Commission's Secretary sent a letter to the Secretary of the Interior, noting, among other things, that "the great scale and solidity of the proposed structure[] … may block oblique views within th[e] monumental setting" between the Lincoln

Memorial and Arlington National Cemetery. Letter from Sec'y Thomas E. Luebke, Comm'n of Fine Arts, to Sec'y Doug Burgum, Dep't of the Interior (Apr. 23, 2026), https:// www.cfa.gov/records-research/project-search/cfa-16-apr-26-1. The letter also voiced concern with "the 84-foot-high monumental grouping of a gilded, winged allegorical figure and flanking eagles on a stepped base proposed for the top of the arch" and "observ[ed] that the project would appear more compatible with Washington's monumental context without these elements." *Id.*

17. Notwithstanding this feedback, Agency Defendants submitted a design proposal for consideration at the Commission's May 21, 2026, meeting that reflected only minimal revisions and that did not alter either the height of the monument or the lines of visibility. *See* Sansone Decl, Exh. I, ECF 36-12.

18. Between the Commission's April 16 and May 21 meetings, the Commission received approximately 600 additional public comments regarding the arch. Comm'n of Fine Arts, *CFA Meeting—21 May 2026*, https://cfa.gov/records-research/record-cfa-actions/2026/05/cfa-meeting (linked "Meeting Recording" at 39:48–40:12). Of these additional comments, all but three opposed the arch, and only one unequivocally supported the arch as designed. *Id.* at 40:26–40:50.

19. The Commission gave final design approval for the arch at its May 21 meeting, aside from certain minor ornamental touches that the Commission reserved for consideration at a later date. *See* Letter from Sec'y Thomas E. Luebke, Comm'n of Fine Arts, to Sec'y Doug Burgum, Dep't of the Interior (May 28, 2026), https://www.cfa.gov/records-research/project-search/cfa-21-may-26-1.

**National Environmental Policy Act review**

20. Subject to certain exceptions that are inapplicable here, *see* 42 U.S.C. § 4336(a), the National Environmental Policy Act (NEPA) requires an agency to "issue an environmental

impact statement with respect to a proposed agency action … that has a reasonably foreseeable significant effect on the quality of the human environment," *id.* § 4336(b)(1). The agency must invite public comment "on alternatives or impacts and on relevant information, studies, or analyses with respect to the proposed agency action" prior to issuing its final statement, *id.* § 4336a(c), and the final statement must include, among other things, analysis of "a reasonable range of alternatives to the proposed agency action," *id.* § 4332(C)(iii).

21. If "a proposed agency action … does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," an agency may prepare a "concise" environmental assessment instead of an environmental impact statement. *Id.* § 4336(b)(2). The assessment must "set forth the basis of [the] agency's finding of no significant impact or," if the assessment reveals that there *is* a significant impact, the agency's "determination that an environmental impact statement is necessary." *Id.*

22. In June 2026, after the Commission of Fine Arts approved Agency Defendants' arch design, Agency Defendants issued an environmental assessment and a finding that building an arch of the approved design in Memorial Circle would have no reasonably significant effect on the quality of the human environment. NPS, *Triumphal Arch—Environmental Assessment and Finding of No Significant Impact*, https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151577. Agency Defendants published revised versions of the environmental assessment and finding of no significant impact on October 9. *See id.*

23. The environmental assessment analyzed only two alternatives: constructing a 250-foot-tall monumental arch in Memorial Circle or not constructing a 250-foot-tall monumental arch in Memorial Circle. NPS, *Triumphal Arch at Memorial Circle: Revised Environmental Assessment* at 3–11 (Oct. 9, 2026), *available at* https://parkplanning.nps.gov/document.cfm?parkID=186&

projectID=136973&documentID=151577. Agency Defendants declined to consider other alternatives, such as "smaller or more discreet commemorations," because "[t]he purpose and need for action is to celebrate 250 years of American independence … through installation of an Arch in Memorial Circle" and "[t]he proposed Arch's size, design and statuary are intended to celebrate America's independence through a grand and ornate design." *Id.* at A-2.

24. The environmental assessment identified several adverse impacts that the arch, as designed, would have on the surrounding environment. For example, "the Arch would obstruct a portion of th[e] reciprocal view" between the Lincoln Memorial and Arlington House, "impact[ing] the alignment and alter[ing] a defining sightline." *Id.* at 18; *see id.* at 42 (noting that "[t]he installation of the Arch at Memorial Circle would modify one of the most important designed views associated with the Arlington House Cultural Landscape: the axial relationship intentionally established between the Arlington House portico and the Lincoln Memorial"). "The presence of the Arch," Agency Defendants found, "could detract from the broader commemorative landscape." *Id.* at 22. And "[t]he Arch would become a dominant visual element along a route designed to highlight natural features and subtle architectural forms" that has historically "emphasize[d] horizontally oriented views, natural scenery, and modestly scaled built features." *Id.* at 39.

25. Agency Defendants nonetheless issued a finding that the arch will have no significant impact on the human environment and that an environmental impact statement was thus unnecessary. Agency Defendants downplayed what they accepted as the arch's "adverse effects on the integrity of the [Memorial Avenue] corridor's historic viewshed" as insignificant because the "designed landscape" will "remain understandable." NPS, *Revised Finding of No Significant Impact* at 11 (Oct. 9, 2026), *available at* https://parkplanning.nps.gov/document.cfm?

parkID=186&projectID=136973&documentID=151577. And Agency Defendants dismissed as insignificant the arch's "permanent adverse effects" of "altering view composition, diminishing openness, and changing the visual hierarchy among contributing features" in several cultural landscapes, because "historic visual relationships, though modified, would generally not be eliminated." *Id.* at 13.

**Preliminary National Capital Planning Commission proceedings**

26. Agency Defendants submitted "concept" designs for a 250-foot-tall monumental arch in Memorial Circle, as approved by the Commission of Fine Arts, for consideration by the National Capital Planning Commission (NCPC) at its June 4, 2026, meeting. Hundreds of pages of public comments were submitted in advance of the meeting, overwhelmingly opposed to the project. *See* NCPC, *Public Comments for New Memorial Arch* (May 29, 2026), https://www.ncpc.gov/files/projects/2026/8778_New_Monumental_Arch_Public_Comments_1_Jun2026.pdf; NCPC, *Public Comments for New Memorial Arch 2* (May 29, 2026), https://www.ncpc.gov/files/projects/2026/8778_New_Monumental_Arch_Public_Comments_2_Jun2026.pdf.

27. Following the June 4 meeting, the NCPC noted that, "according to the submission materials, the view of the Lincoln Memorial from Arlington House will be blocked by the proposed arch, and views from the Lincoln Memorial to the Arlington House will be altered." NCPC, *Commission Action* at 2 (June 4, 2026), https://www.ncpc.gov/docs/actions/2026June/8778_New_Monumental_Arch_Commission_Action_Jun2026.pdf. The NCPC encouraged Agency Defendants to provide "any design options that were explored to avoid or minimize impacts on the visual connection between Arlington House and the Lincoln Memorial." *Id.* at 3.

28. Ahead of the NCPC's next meeting on July 9, hundreds of additional public comments regarding the arch were submitted. *See* NCPC, *Public Comments for New Memorial*

*Arch* (July 2, 2026), https://www.ncpc.gov/files/projects/2026/8778_New_Monumental_Arch_12._Public_Comments_1_Jul2026.pdf; NCPC, *Public Comments for New Memorial Arch 2* (July 2, 2026), https://www.ncpc.gov/files/projects/2026/8778_New_Monumental_Arch_13_-_Public_Comments_2_Jul2026.pdf. Again, the comments overwhelmingly opposed the arch. *Id.*

29. Agency Defendants submitted additional renderings of the arch ahead of the NCPC's July 9 meeting but did not substantially revise the proposed design. *See* NCPC, *Commission Action* at 4 (July 9, 2026), https://www.ncpc.gov/docs/actions/2026July/8778_New_Monumental_Arch_Commission_Action_Jul2026.pdf. The NCPC found that the arch would "[f]ully obstruct reciprocal views of the Lincoln Memorial and Arlington [House] from the higher elevations of Arlington House and the Lincoln Memorial terrace" and asked that Agency Defendants "continue to explore ways to minimize impacts to historic resources, and to determine appropriate mitigation to resolve adverse effects." *Id.* The NCPC nonetheless approved Agency Defendants' preliminary site and building plans at the July 9 meeting. *Id.* at 1.

**National Historic Preservation Act review**

30. The National Historic Preservation Act requires a federal agency to "take into account the effect" of its undertakings "on any historic property," 54 U.S.C. § 306108, including by consulting extensively with State Historic Preservation Officers and other stakeholders and receiving public input, *see* 36 C.F.R. §§ 800.3(c)–(f). Consultation on an undertaking pursuant to Section 106 of the Act is meant to "commenc[e] at the early stages of project planning" in order to "identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties." *Id.* § 800.1(a).

31. In June 2026—*after* the Commission of Fine Arts had given design approval, and *after* Agency Defendants had performed their environmental assessment and made a finding of no

significant impact with respect to a 250-foot-tall monumental arch of that design in Memorial Circle—Agency Defendants initiated the Section 106 process by posting an Assessment of Effects Report online and giving the public ten days—from June 5 to June 15—to comment. *See* NPS, *Triumphal Arch—Section 106 Assessment of Effect and Draft Programmatic Agreement*, https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151576. In this brief period, Agency Defendants received more than 100,000 comments. NPS, *Triumphal Arch Project: Public Comment Summary Report*, *available at* https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=151576. Agency Defendants' summary of the public comments reflects that they were overwhelmingly negative, with many focusing on the adverse effects that the arch will have on the symbolic sightlines in the monumental landscape around Arlington National Cemetery. *See id.*

32. Agency Defendants reopened the public comment period between July 10 and July 30, during which time Agency Defendants received 6,254 further comments. *See* NPS, *July 10–July 30 Public Comment Summary Addendum*, *available at* https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=153235. Agency Defendants' summary of these comments reflects that they, like the comments submitted in June, overwhelmingly voiced concern over the project. *See id.*

33. Starting on July 10—*after* the Commission of Fine Arts had given final design approval, *after* Agency Defendants had issued an environmental assessment and finding of no significant impact based on that design, and *after* the NCPC approved Agency Defendants' preliminary site and building plans—Agency Defendants invited consulting parties to submit comments. *See* NPS, *Triumphal Arch at Memorial Circle: Assessment of Effects Report* at 6–7 (Aug. 28, 2026), *available at* https://parkplanning.nps.gov/document.cfm?parkID=186&

projectID=136973&documentID=153235. The consulting parties raised a variety of concerns, including concerns that the Section 106 consultation process began too late, that the arch would interrupt the visual and spatial relationships across the capital's monumental core, that the NEPA analysis was inadequate, and that insufficient consideration had been given to alternative designs or placements for the arch. *See id.* at 73–76.

34. Agency Defendants released a revised Assessment of Effects Report on August 28, 2026. The report concluded that the designs for the arch showed that it would "adversely affect several historic properties" and that "[t]he most substantial adverse effects are concentrated in the Memorial Circle, Arlington Memorial Bridge, Memorial Avenue, Arlington National Cemetery, Arlington House, and Lincoln Memorial corridor." *Id.* at 32–33. "Within this area," Agency Defendants explained, the arch will "alter the character, setting, and design continuity of a nationally significant commemorative landscape whose significance is defined by axial relationships, formal circulation patterns, designed views, and symbolic connections between Washington, D.C. and Arlington." *Id.* at 33. In addition, Agency Defendants continued, the arch will "adversely affect several National Mall and monumental-core resources, including the Lincoln Memorial Cultural Landscape, Lincoln Memorial, National Mall Site and National Mall Historic District, The Mall Cultural Landscape, Washington Monument, Washington Monument and Grounds Historic District, and Washington Monument and Grounds Cultural Landscape." *Id.*

35. Agency Defendants noted that "[a]lternative locations may reduce or avoid some adverse effects associated with Memorial Circle," but Agency Defendants "did not carry forward alternative locations outside Memorial Circle as reasonable alternatives for this undertaking." *Id.* at 11. Agency Defendants stated that "[a] relocated arch elsewhere in Washington, D.C. or Virginia would constitute a materially different commemorative project." *Id.* at 35.

36. Agency Defendants also rejected the alternative of "eliminating the proposed vertical commemorative feature" as "not consistent with the undertaking's purpose." *Id.* at 36. "A no-build or non-monumental landscape treatment," Agency Defendants stated, "would avoid certain adverse effects, but it would not accomplish the undertaking's core purpose of completing" what Agency Defendants viewed as "the historically contemplated civic and commemorative role of Memorial Circle." *Id.*

37. On September 24, the Advisory Council on Historic Preservation (ACHP), which oversees the Section 106 consultation process, terminated the process without a memorandum of agreement between Agency Defendants and the consulting parties on the steps that Agency Defendants would take "to resolve [the arch's] adverse effects." Letter from Vice Chair Travis Voyles, ACHP, to Assoc. Regional Director Tammy Stidham, NPS (Sept. 24, 2026), https://www.achp.gov/sites/default/files/2026-09/Section106ConsultationTerminationArch.pdf. ACHP took this rare step, it explained, because Agency Defendants represented that "additional consultation on the existing proposal [was] unlikely to result in agreement" and "implementation of alternatives to avoid or minimize the adverse effects would alter the fundamental nature of the proposed undertaking and fail to achieve its goals." *Id.*

**Planned repurposing of the arch into a dual-purpose military facility**

38. On September 20, 2026, President Trump stated that he had "agreed to convert the magnificent Triumphal Arch[] … into a top grade Military Complex/Triumphal Arch, to house, store, and have the rapid ability to use large numbers of drones, plus Snipers, on both the roof and plaza areas, and additionally have and hold large quantities of sniper ammunition in storage." Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2026, 7:34 AM), https://truthsocial.com/@realDonaldTrump/posts/117303154231930646. On October 28, 2026,

Secretary of Defense Pete Hegseth confirmed in a sworn declaration that the arch "will be utilized as a dual-purpose structure: a major national monument that also incorporates military utility to support Homeland defense." Hegseth Decl., ECF 74-9, ¶ 10.

39. By the time of these announcements, the Commission of Fine Arts had already given final design approval. Agency Defendants had already completed their environmental assessment and finding of no significant impact. The NCPC had already approved Agency Defendants' preliminary site and building plans. And the Section 106 process was two business days away from termination.

40. The Commission of Fine Arts design proceedings, NEPA review, preliminary NCPC site and building plan review proceedings, and Section 106 process did not include consideration of the arch's potential function as a military facility, drone port, or ammunition storehouse. Agency Defendants did not take action to reopen any of these proceedings to account for the new military functions announced by the President.

41. President Trump's announcement and Secretary Hegseth's statement also post-dated the September 18, 2026, completion of an aeronautical study by the Federal Aviation Administration (FAA) to assess whether the arch posed a hazard to air navigation. *See* FAA, *Determination of No Hazard to Air Navigation* (Sept. 18, 2026), https://beyer.house.gov/uploadedfiles/bee4f20b-716e-479b-9453-2d0c6c18ec44.pdf. The study accordingly did not consider whether using the arch as a launchpad for aerial drones would impact air traffic safety.

**Final NCPC proceedings**

42. The NCPC considered Agency Defendants' final site and building plans at its November 5, 2026, meeting. Agency Defendants' plans for the arch did not include military

features. *See* NCPC, *Executive Director's Recommendation*, att. 1, https://www.ncpc.gov/docs/actions/2026November/8778_New_Monumental_Arch_Staff_Report_Nov2026.pdf.

43. Prior to the meeting, the NCPC received approximately 1,300 public comments on the arch. *Id.* at 13. The NCPC described the "vast majority" of the comments as "in opposition to the project, specifically the height, scale, location, traffic impacts, and lack of sufficient public review process for the project." *Id.*

44. The November 5 meeting lasted from approximately 1:00 PM to approximately 10:30 PM and involved hours of public testimony regarding the arch. At the conclusion of the meeting, an NCPC commissioner proposed that the NCPC withhold a vote on Agency Defendants' plans until the December NCPC meeting to allow the Commissioners time to consider the submissions and testimony they had received. Agency Defendants, however, stated that they desired a vote that evening. The NCPC then voted down the proposal to defer the matter until December.

45. At the conclusion of the November 5, 2026, meeting, the NCPC approved Agency Defendants' final site and building plans for the arch. NCPC, *Commission Action* (Nov. 5, 2026), https://www.ncpc.gov/docs/actions/2026November/8778_New_Monumental_Arch_Commission_Action_Nov2026.pdf.

**Agency Defendants' issuance of a final authorization**

46. Roughly one hour after the NCPC voted to approve Agency Defendants' final plans, Agency Defendants posted a decision record on NPS's website. *See* NPS, *Decision Record—Triumphal Arch at Memorial Circle*, https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=154298.

47. The decision record states that Agency Defendants authorized construction of the arch in accordance with Agency Defendants' design, site, and building plans. *See* NPS, *Decision Record* at 16 (Nov. 5, 2026), *available at* https://parkplanning.nps.gov/document.cfm?parkID=186&projectID=136973&documentID=154298.

**SUPPLEMENTAL CLAIMS FOR RELIEF**

**Third Cause of Action**
**Violation of the APA—Agency Action Contrary to Commemorative Works Act**
**(Against Agency Defendants)**

48. The Administrative Procedure Act (APA) authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

49. Agency Defendants' authorization for construction of an arch in Memorial Circle constitutes final agency action under the APA.

50. The arch is a "monument[] … or other structure" that is "designed to perpetuate in a permanent manner the memory of an … event or other significant element of American history," 40 U.S.C. § 8902(a)(1), and so is a commemorative work subject to the requirements of the Commemorative Works Act.

51. The Commemorative Works Act requires that a commemorative work built on NPS land in the District of Columbia must be (1) "specifically authorized by law," *id.* § 8903(a)(1); (2) assigned a congressionally authorized sponsor that must consult with the National Capital Memorial Advisory Commission, *id.* § 8905(a)(1); and (3) given additional "approv[al] by law" if it is to be located within the region designated as Area I, *id.* § 8908(b)(1).

52. Memorial Circle is NPS-administered land located within the District of Columbia, and it sits within Area I as defined by the Commemorative Works Act.

53. The construction of a commemorative arch in Memorial Circle has not been specifically authorized by law, has not received consultation between a congressionally authorized sponsor and the National Capital Memorial Advisory Commission, and has not received the additional approval of law required for commemorative works sited in Area I.

54. Agency Defendants' action giving authorization for construction of an arch in Memorial Circle is contrary to the Commemorative Works Act.

**Fourth Cause of Action**
**Violation of the APA—Agency Action Contrary to 40 U.S.C. § 8106**
**(Against Agency Defendants)**

55. The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

56. Agency Defendants' authorization for construction of an arch in Memorial Circle constitutes final agency action under the APA.

57. 40 U.S.C. § 8106 provides that "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

58. The arch is a "building or structure" within the meaning of 40 U.S.C. § 8106, and Memorial Circle is a "reservation, park, or public grounds of the Federal Government in the District of Columbia."

59. Congress has not given express authority for an arch to be constructed in Memorial Circle.

60. Agency Defendants' action giving authorization for construction of an arch in Memorial Circle is contrary to 40 U.S.C. § 8106.

**Fifth Cause of Action**
**Violation of the APA—Arbitrary and Capricious Agency Action**
**(Against Agency Defendants)**

61. The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

62. Agency Defendants' authorization for construction of an arch in Memorial Circle constitutes final agency action under the APA.

63. Agency action is arbitrary and capricious under the APA if an agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

64. Despite finding that the arch will create irreversible adverse impacts to the historic landscape in and around Arlington National Cemetery and that the arch faces immense popular opposition, Agency Defendants have approved construction without giving consideration to alternative design, site, and building plans.

65. The arch's planned conversion into a dual-purpose military facility—which could be used to launch drones or stockpile combustible ammunition—was not placed before any of the administrative bodies that evaluated the project's impact. Authorizing construction on the existing administrative record thus fails to consider an important aspect of the project.

66. Agency Defendants' action authorizing construction of an arch in Memorial Circle is arbitrary and capricious.

## SUPPLEMENTAL PRAYER FOR RELIEF

WHEREFORE, the Lemmon Plaintiffs request that this Court:

A. Declare unlawful and vacate Agency Defendants' authorization for construction of an arch in Memorial Circle as contrary to law and arbitrary and capricious;

B. Award the Lemmon Plaintiffs their reasonable costs and attorneys' fees; and

C. Grant such other relief as this Court may deem just and proper.

Dated: November 7, 2026

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs Michael Lemmon, et al.*