**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL LEMMON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Civil Action No. 26-cv-544 (TSC) |
| DISTRICT OF COLUMBIA and COMMONWEALTH OF VIRGINIA,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, et al.,<br><br>Defendants. | Civil Action No. 26-cv-3838 (TSC)<br><br>**CONSOLIDATED CASES** |

**REPLY IN SUPPORT OF LEMMON PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT**

Defendants dispute none of the arguments that Plaintiffs Michael Lemmon, Shaun Byrnes, Jon Gundersen, and Calder Loth (Lemmon Plaintiffs) made in support of their motion for leave to file a supplemental complaint: Defendants do not dispute that the Lemmon Plaintiffs' proposed supplemental complaint raises claims and allegations that were previously unavailable. *See* Pls. Memo. in Support of Pls. Mot. for Leave to File Suppl. Compl., ECF 112-1, at 4. Defendants do not dispute that these supplemental claims and allegations support the addition of the U.S. Department of the Interior as a defendant. *See id.* at 5. Defendants do not dispute that requiring the Lemmon Plaintiffs to bring their supplemental claims in a separate action would disserve judicial

economy. *See id.* at 6. Defendants do not dispute that granting leave to supplement would neither delay the case's progress nor prejudice Defendants. *See id.* And Defendants do not dispute that the supplemental claims that the Lemmon Plaintiffs seek to assert are the very claims that Defendants themselves have previously identified as proper vehicles for the Lemmon Plaintiffs' legal arguments against the construction of an unauthorized arch in Memorial Circle. *See id.* at 7.

Instead, Defendants argue that supplementation would be futile because, in their view, the Lemmon Plaintiffs lack standing. For all the reasons explained in multiple previous filings, *see* Pls. Opp. to Defs. Mot. to Dismiss, ECF 33, at 10–16; Pls. Memo. in Support of Pls. Mot. for Summ. J., ECF 36-1, at 9–12; Pls. Opp. to Defs. Cross-Mot. for Summ. J. and Reply in Support of Pls. Mot. for Summ. J., ECF 49, at 9–19; Pls. Notice of Suppl. Auth., ECF 54, at 1–5; Pls. Reply in Support of Pls. Mot. for Prelim. Inj., ECF 85, at 1–4; Pls. Memo. in Support of Pls. Mot. for Prelim. Inj., ECF 115-1, at 7–10, and as explained again below, this Court should reject Defendants' arguments. And because standing is Defendants' only objection to the Lemmon Plaintiffs' motion for leave to file a supplemental complaint, the Court should grant the motion.

## ARGUMENT

### I. The challenged action inflicts concrete, particularized injury on the Lemmon Plaintiffs.

Defendants' own findings establish that the action that the Lemmon Plaintiffs challenge—construction of an arch in Memorial Circle—will "detract from the broader commemorative landscape" of the area and "modify one of the most important designed views associated with the Arlington House Cultural Landscape: the axial relationship intentionally established between the Arlington House portico and the Lincoln Memorial." NPS, *Triumphal Arch at Memorial Circle: Revised Environmental Assessment* (NPS, *Env't Assessment*) (Oct. 9, 2026), ECF 74-1, at 22, 42. And the Lemmon Plaintiffs have each testified to holding a concrete, individualized interest in the

continued integrity of this commemorative landscape, which they regularly visit, to which they hold a deep personal connection, and which Defendants' actions will concededly degrade. As Plaintiff Michael Lemmon, a Vietnam veteran, testified: "The effect of combat produces trauma in all of us, different kinds of trauma.… So when I would walk … to the Lincoln Memorial and look across at Arlington National Cemetery, where so many of my brothers are buried, I personally felt the hurt, the anger, the pain, the trauma recede." Oct. 30, 2026, Hearing Tr. at 23–24. Mr. Lemmon went on to explain that introducing a "250-foot monstrous edifice" into the landscape, "looming over and dominating it," would "change[] the entire experience in a profoundly negative way." *Id.* at 24.[1] The looming arch that Defendants aim to create as a tourist attraction will also degrade the solemnity of Plaintiffs' personal experiences when they visit the gravesites of their comrades at the cemetery where two of them hope to be interred. *See* Lemmon Decl., ECF 7-2, ¶¶ 7–9; Byrnes Decl., ECF 7-3, ¶¶ 8–9, 12; Gundersen Decl., ECF 7-4, ¶¶ 6–9. These allegations are more than adequate to support leave to supplement the complaint. *Cf. New Mexico v. Musk*, 784 F. Supp. 3d 174, 192 (D.D.C. 2025) ("At the motion to dismiss stage, general factual allegations of injury resulting from the defendant's conduct suffice." (internal quotation marks and citation omitted)).

A wealth of Supreme Court and D.C. Circuit authority establishes that this sort of threatened injury to a plaintiff's aesthetic interests is sufficient to establish standing. *See, e.g.*,

---

[1] *See also* Lemmon Decl., ECF 7-2, ¶ 6 (explaining that the visual link between Arlington National Cemetery and the Lincoln Memorial "holds deep personal significance to me, embodying the reunification of our country after a bloody civil war and the commitment to bind up its wounds and to honor those who died in its defense"); Byrnes Decl., ECF 7-3, ¶ 9 (explaining that the "beautiful and uninterrupted view of the Lincoln Memorial" from the cemetery "symbolizes the restoration of the Union after the bloody Civil War, in which several of my ancestors fought"); Gundersen Decl., ECF 7-4, ¶ 6 (explaining that "the inspiring view of the Lincoln Memorial" from the cemetery "reminds me of the ideals for which I fought and fills me with pride for my many years of service"); Loth Decl., ECF 7-5, ¶ 6 (explaining that the "axial vista [that] visually connects the Lincoln Memorial to Arlington House[] … creates a symbolic link between the North and the South" that "I revere" as "a native Virginian and descendent of Confederate veterans").

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972))); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992) (explaining that "the desire to … observe" a particular phenomenon, "even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 146 F.4th 1144, 1157–58 (D.C. Cir. 2025) (finding standing based on aesthetic injury); *Int'l Dark-Sky Ass'n, Inc. v. FCC*, 106 F.4th 1206, 1217 (D.C. Cir. 2024) (same); *see also Friends of Gateway v. Slater*, 257 F.3d 74, 78 (2d Cir. 2001) (holding that plaintiffs had standing to challenge construction of an "eyesore" in a park that they "regularly use[d]"). These precedents confirm that construction of a massive arch that will radically transform the Lemmon Plaintiffs' personal experiences when visiting Arlington National Cemetery, including by adversely impacting a symbolic viewshed that holds strong personal meaning for each of them, will cause cognizable injury.

Defendants do not address any of this precedent. Instead, they rely entirely on an interim order entered by the Supreme Court in *National Park Service v. National Trust for Historic Preservation in the United States*, 609 U.S. 1068 (2026) (per curiam). The *National Park Service* decision, however, did not purport to overrule or modify the aesthetic-standing precedents on which the Lemmon Plaintiffs rely. To the contrary, *National Park Service* reaffirmed that "the 'desire to … observe'" a particular phenomenon, "'even for purely esthetic purposes,' can constitute 'a cognizable interest for purpose of standing.'" *Id.* at 1072 (omission in original; quoting *Lujan*, 504 U.S. at 562–63).

Moreover, the Supreme Court's assessment of the evidence of standing presented in *National Park Service* casts no doubt on the Lemmon Plaintiffs' standing here. In *National Park Service*, the Court held that an organizational plaintiff likely lacked standing to challenge the construction of a new White House ballroom where the organization had submitted a declaration from one of its members who found "the government's design" to be "distasteful." *Id.* at 1070. As the Court explained, "mere offense, disagreement, or distaste does not qualify as a concrete and particularized injury under Article III," *id.* at 1071: a cognizable aesthetic harm "involve[s] *more* than mere offense," *id.* at 1072. Here, in contrast, the Lemmon Plaintiffs' injury is not based on "distaste" for the arch's design but on the adverse impact that the arch will have on a historic viewshed that the Lemmon Plaintiffs regularly visit and admire and plan to continue visiting and admiring, and on their experience visiting the gravesites of fallen comrades at Arlington National Cemetery. Thus, their aesthetic injury does not derive from the specifics of the arch's design, but from the impact of *any* sizable arch in Memorial Circle on the viewshed and on their experience of the cemetery. The degradation that the arch will work to the Lemmon Plaintiffs' future visits to Arlington National Cemetery is precisely the sort of concrete, particularized injury that supports standing under the Supreme Court's precedents. *See, e.g.*, *Sierra Club*, 405 U.S. at 735 (explaining that an aesthetic injury is concrete and particularized where a plaintiff "use[s]" a particular area "in a[ ] way that would be significantly affected by the proposed actions of the [defendants]").

Defendants attempt to analogize this case to *National Park Service* by stating that the declarant in *National Park Service*, like the Lemmon Plaintiffs here, "used the affected area and would derive less aesthetic and recreational value because of the" challenged construction. Defs. Opp. to Pls. Mot. for Leave to File Suppl. Compl. (Defs. Opp.), ECF 125, at 7. This assertion, however, does not match the Supreme Court's description of the evidence. To the contrary, as

Defendants point out, the declarant's interest in *National Park Service* was in observing a symmetrical White House that embodied historic design elements of republican simplicity, *see id.* at 6–7, but the injury to this interest had been inflicted by the destruction of the White House's East Wing *before* the plaintiff filed suit. *See NPS*, 609 U.S. at 1069 (explaining that the relief sought by the *National Park Service* plaintiff "focused not on the already-completed demolition of the old East Wing but on halting the ongoing construction of a new one"). Nothing in the Court's opinion suggests that the declarant in *National Park Service* held a particularized aesthetic interest in the White House grounds as they existed at the time of the Court's opinion—an active construction site with "a partially completed superstructure" already in place. *Id.* at 1075. And nothing in the Court's opinion casts doubt on the standing of a plaintiff, like the Lemmon Plaintiffs here, who file suit to prevent the destruction of a landscape that holds profound personal aesthetic significance and offers deeply felt emotional relief *before* the destruction occurs.

Moreover, although the Court in *National Park Service* held that the declarant's "special interest" in historic architecture was insufficient to create a personalized stake in the construction of the ballroom, *id.* at 1073 (quoting *Lujan*, 504 U.S. at 563), Defendants are wrong to read this statement to suggest that the Lemmon Plaintiffs' "personal and professional experiences" are irrelevant to their standing. Defs. Opp. 11. In stating that a plaintiff's interest in the *subject matter* of historic preservation is insufficient to create standing to challenge a government construction project where standing would not otherwise exist, the Court did not negate the wealth of precedent establishing that a plaintiff's concrete and ongoing interest in using the *physical landscape* that will be adversely affected by a challenged construction project is sufficient for standing. And here, the Lemmon Plaintiffs have established precisely such an interest in continuing to visit and appreciate the carefully planned landscape that serves as the final resting place of hundreds of

thousands of American servicemembers, some of them known personally to the Lemmon Plaintiffs. *See* Lemmon Decl. ¶ 6; Byrnes Decl. ¶ 8; Gundersen Decl. ¶ 6.

**II. The threatened injury is not speculative and was not speculative when the suit was filed.**

Defendants do not dispute that, absent judicial relief, the Lemmon Plaintiffs' aesthetic injuries will imminently come to pass. Again, Defendants' own findings make clear that the arch will have substantial adverse impacts on the viewshed that holds great personal meaning to the Lemmon Plaintiffs and on the solemnity of their experience when visiting Arlington Cemetery. *See* NPS, *Env't Assessment* at 22, 42. Further, Defendants have left no doubt that they intend to move forward rapidly with construction if they are permitted to do so, explaining that construction will proceed "year-round with work occurring in two 10-hour shifts per day (20 hours per day)," *id.* at 10, and indicating that they are prepared to begin work immediately, *see* Notice, ECF 63 (stating that Defendants were prepared to begin construction as early as November 5).

Defendants instead argue that the Lemmon Plaintiffs lack standing because any impending injury was speculative in February 2026, when the Lemmon Plaintiffs filed suit. *See* Defs. Opp. 12. Defendants are wrong, as explained further below. *See infra* pp. 8–9. But in any event, Defendants' argument is rendered irrelevant by the D.C. Circuit's opinion in *Scahill v. District of Columbia*, 909 F.3d 1177 (D.C. Cir. 2018), which holds based on Federal Rule of Civil Procedure 15(d)'s authorization to file supplemental pleadings that "a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint." *Id.* at 1184. Whether the Lemmon Plaintiffs' injury was speculative at the time they filed suit to challenge the decision to build an arch in Memorial Circle, then, is irrelevant to whether the Lemmon Plaintiffs should be granted leave to supplement their original complaint to

challenge Defendants' authorization to proceed at once with construction according to Defendants' final design, site, and building plans.

Defendants contend that *Scahill* is "no longer good law" because intervening Supreme Court decisions have "reaffirmed" that standing is typically assessed at the time a complaint is filed. Defs. Opp. 15–16 (citing *Trump v. California*, 609 U.S. 1032 (2026), and *Trump v. New York*, 592 U.S. 125 (2020)). Defendants admit, however, that these cases simply restate a general rule that long predated *Scahill*. *See id.* at 16. And neither of the cases cited by Defendants addresses the specific issue resolved in *Scahill*—the jurisdictional effect of a supplemental complaint—let alone casts doubt on *Scahill*'s resolution of that issue. *Scahill* accordingly binds this Court. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (stating that, "[i]f a precedent … has direct application in a case," even if it "appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the appellate court] the prerogative of overruling its own decisions"); *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like [D.C. Circuit] panels[,] … are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule[s] it.").

Regardless, Defendants are incorrect that the Lemmon Plaintiffs' injury was speculative at the time they filed suit. The claims in the Lemmon Plaintiffs' original complaint challenge Defendants' settled decision to build an arch in Memorial Circle—a decision that the President had repeatedly announced to the American people. *See* Compl., ECF 1, ¶¶ 29–40. By the time the complaint was filed, Defendants had determined where the arch would be constructed, *id.* ¶ 30, had decided that it would be sizeable, *id.* ¶ 32, had begun to develop designs, *id.* ¶ 35, and had retained an architect to construct the arch, *id.* ¶ 37. And while design and building plans had not

yet been finalized, subsequent events have confirmed that the decision to build a massive arch in Memorial Circle was never a point in question. As the proposed supplemental complaint describes, although Defendants received evidence of overwhelming public opposition to the arch and of the adverse impacts that the arch will have on large numbers of surrounding historic properties, *see* Proposed Suppl. Compl., ECF 112-2, ¶¶ 15–16, 18, 24, 26–29, 31–34, they nonetheless refused to consider any alternative sites or designs (such as, for example, a pair of widely spaced columns) that might mitigate these adverse impacts. *See id.* ¶¶ 17, 23, 25, 29, 35–37.

In other words, by February 2026, Defendants had made the decision to build an arch in Memorial Circle. Far from engaging in "a long chain of speculative inferences about how numerous agencies might ultimately act," Defs. Opp. 13, the Lemmon Plaintiffs' original complaint alleged that Defendants had finalized their decision and would act to swiftly implement it absent judicial intervention. As it appeared at the time, and as has been confirmed by everything that has transpired between the filing of that complaint and Defendants' late-night rush on November 5 to authorize construction moments after securing National Capital Planning Commission approval, the Lemmon Plaintiffs' allegations in this regard were correct from the start.

## CONCLUSION

For the foregoing reasons and the reasons stated in the Lemmon Plaintiffs' opening memorandum, this Court should grant the Lemmon Plaintiffs' motion for leave to file their proposed supplemental complaint.

Dated: November 16, 2026

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Wendy Liu (DC Bar No. 1600942)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs Michael Lemmon, et al.*