# Exhibit G

Mail Processing Center
Federal Aviation Administration
Southwest Regional Office
Obstruction Evaluation Group
10101 Hillwood Parkway
Fort Worth, TX 76177

Aeronautical Study No.
2026-AEA-8628-OE

Issued Date: 09/18/2026

NATIONAL PARK SERVICE
NATIONAL PARK SERVICE
1849 C Street
Washington, DC 20240

**** DETERMINATION OF NO HAZARD TO AIR NAVIGATION ****

The Federal Aviation Administration has conducted an aeronautical study under the provisions of 49 U.S.C., Section 44718 and if applicable Title 14 of the Code of Federal Regulations, part 77, concerning:

| | |
|---|---|
| Structure: | Building Monumental Arch |
| County, State: | District of Columbia, District of Columbia |

Collected Point(s):

| Label | Latitude | Longitude | SE | DET AGL | AMSL |
|---|---|---|---|---|---|
| pt-1 | 38-53-09.13N | 77-3-36.98W | 32 Ft | 173 Ft | 205 Ft |
| pt-2 | 38-53-09.55N | 77-3-35.83W | 32 Ft | 173 Ft | 205 Ft |
| pt-3 | 38-53-07.97N | 77-3-34.89W | 32 Ft | 173 Ft | 205 Ft |
| pt-4 | 38-53-07.55N | 77-3-36.04W | 32 Ft | 173 Ft | 205 Ft |
| pt-5 | 38-53-08.61N | 77-3-36.11W | 32 Ft | 260 Ft | 292 Ft |

This aeronautical study revealed that the structure would have no substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or on the operation of air navigation facilities. Therefore, pursuant to the authority delegated to me, it is hereby determined that the structure would not be a hazard to air navigation provided the following condition(s) is(are) met:

As a condition to this Determination, the structure is to be marked/lighted with lighting, as noted below.

Any failure or malfunction that lasts more than thirty (30) minutes and affects a top light or flashing obstruction light, regardless of its position, should be reported immediately to (877) 487-6867 so a Notice to Airmen (NOTAM) can be issued. As soon as the normal operation is restored, notify the same number.

It is required that FAA Form 7460-2, Notice of Actual Construction or Alteration, be e-filed any time the project is abandoned or:

__X__ At least 10 days prior to start of construction (7460-2, Part 1)
__X__ Within 5 days after the construction reaches its greatest height (7460-2, Part 2)

See attachment for additional condition(s) or information.

This determination expires on 03/18/2028 unless:

(a) the construction is started (not necessarily completed) and FAA Form 7460-2, Notice of Actual Construction or Alteration, is received by this office.
(b) extended, revised, or terminated by the issuing office.
(c) the construction is subject to the licensing authority of the Federal Communications Commission (FCC) and an application for a construction permit has been filed, as required by the FCC, within 6 months of the date of this determination. In such case, the determination expires on the date prescribed by the FCC for completion of construction, or the date the FCC denies the application.

NOTE: REQUEST FOR EXTENSION OF THE EFFECTIVE PERIOD OF THIS DETERMINATION MUST BE E-FILED AT LEAST 15 DAYS PRIOR TO THE EXPIRATION DATE. AFTER RE-EVALUATION OF CURRENT OPERATIONS IN THE AREA OF THE STRUCTURE TO DETERMINE THAT NO SIGNIFICANT AERONAUTICAL CHANGES HAVE OCCURRED, YOUR DETERMINATION MAY BE ELIGIBLE FOR ONE EXTENSION OF THE EFFECTIVE PERIOD.

This determination is subject to review if an interested party files a petition that is received by the FAA on or before October 18, 2026. In the event an interested party files a petition for review, it must contain a full statement of the basis upon which the petition is made. Petitions can be submitted to the Manager, Rules and Regulations Group via email at OEPetitions@faa.gov, or via mail to Federal Aviation Administration, Air Traffic Organization, Rules and Regulations Group, 5th floor, 600 Independence Ave, SW., Washington, DC 20597. FAA encourages the use of email to ensure timely processing.

This determination becomes final on October 28, 2026 unless a petition is timely filed. In which case, this determination will not become final pending disposition of the petition. Interested parties will be notified of the grant of any review. Any questions regarding your petition, contact Rules and Regulations Group via telephone (202) 267-8783.

This determination is based, in part, on the foregoing description which includes specific coordinates, heights, frequency(ies) and power. Any changes in coordinates, heights and frequencies or use of greater power, except those frequencies specified in the Colo Void Clause Coalition; Antenna System Co-Location; Voluntary Best Practices, will void this determination. Any future construction or alteration, including increase to heights, power or the addition of other transmitters, requires separate notice to the FAA. This determination includes all previously filed frequencies and power for this structure.

If construction or alteration is dismantled or destroyed, you must submit notice to the FAA within 5 days after the construction or alteration is dismantled or destroyed.

This determination does include temporary construction equipment such as cranes, derricks, etc., which may be used during actual construction of the structure. However, this equipment shall not exceed the overall heights as indicated above. Equipment which has a height greater than the studied structure requires separate notice to the FAA.

This determination concerns the effect of this structure on the safe and efficient use of navigable airspace by aircraft and does not relieve the sponsor of compliance responsibilities relating to any law, ordinance, or regulation of any Federal, State, or local government body.

This aeronautical study considered and analyzed the impact on existing and proposed arrival, departure, and en route procedures for aircraft operating under both visual flight rules and instrument flight rules; the impact

on all existing and planned public-use airports, military airports and aeronautical facilities, and the cumulative impact resulting from the studied structure when combined with the impact of other existing or proposed structures. The study disclosed that the described structure would have no substantial adverse effect on air navigation.

An account of the study findings, aeronautical objections received by the FAA during the study (if any), and the basis for the FAA's decision in this matter can be found on the following page(s).

If we can be of further assistance, please contact Kelly Nelson, at 1-404-305-6430, or kelly.r.nelson@faa.gov. On any future correspondence concerning this matter, please refer to Aeronautical Study Number 2026-AEA-8628-OE.

**Signature Control No: 714939644-725003318** ( DNH )
Julie A. Morgan
Manager, Obstruction Evaluation Group

Attachment(s)
Additional Information
Map(s)

A full list of acronyms and abbreviations are available at the FAA's public website at https://www.faa.gov/about/abbreviations.

1. LOCATION OF PROPOSED CONSTRUCTION
The proposed building project, consisting of five (5) points, would be located between 1.65 and 1.68 nautical miles (NM) northwest of the Ronald Reagan Washington National Airport (DCA), Arlington, VA, Runway (RWY) 15 landing threshold.

Each of the five building points have been studied separately using the following information:

PT1: 38-53-09.13N / 77-03-36.98W / 173 ft. above ground level (AGL) / 205 ft. above mean sea level (AMSL)
PT2: 38-53-09.55N / 77-03-35.83W / 173 ft. AGL / 205 ft. AMSL
PT3: 38-53-07.97N / 77-03-34.89W / 173 ft. AGL / 205 ft. AMSL
PT4: 38-53-07.55N / 77-03-36.04W / 173 ft. AGL / 205 ft. AMSL
PT5: 38-53-08.61N / 77-03-36.11W / 260 ft. AGL / 292 ft. AMSL

2. OBSTRUCTION STANDARDS EXCEEDED
The proposed building project has been identified as an obstruction under the standards of Title 14, Code of Federal Regulations (CFR), Part 77, as applied to DCA:

Section 77.17 (a)(2): A height that is 200 feet AGL, or above the established airport elevation, whichever is higher, within 3 nautical miles of the established reference point of an airport, excluding heliports, with its longest runway more than 3,200 feet in actual length, and that height increases in the proportion of 100 feet for each additional nautical mile from the airport up to a maximum of 499 feet. The proposed crane points would exceed by the following:

PT5: 60 feet (ft.)

Section 77.19 (a): Horizontal Surface. A horizontal plane 150 feet above the established airport elevation, the perimeter of which is constructed by swinging arcs of a specified radii from the center of each end of the primary surface of each runway of each airport and connecting the adjacent arcs by lines tangent to those arcs. The proposal would exceed the Horizontal Surface by the following:

PT3: 41 ft.
PT4: 41 ft.
PT5: 128 ft.

Section 77.19 (b): Conical surface. A surface extending outward and upward from the periphery of the horizontal surface at a slope of 20 to 1 for a horizontal distance of 4,000 feet. The proposals exceed the Conical Surface by the following:

PT1: 40 ft.
PT2: 41 ft.

3. EFFECT ON AERONAUTICAL OPERATIONS
Aeronautical study disclosed that the proposal would have no effects on existing or proposed arrival, departure, or en route instrument flight rule (IFR) operations, minimum flight altitudes, minimum vectoring altitudes

(MVA), aeronautical procedures, or aeronautical facilities at DCA or at any other known public use or military airport. Information on the proposals shall be forwarded for appropriate aeronautical charting.

4. CIRCULARIZATION AND COMMENTS RECEIVED

In order to facilitate the public comment process, the study was circularized on July 28, 2026, to all known aviation interests and to non-aeronautical interests that may be affected by the proposals. One response was received as a result of the circularization. The comments are summarized below.

Comment 1: A comment indicated that the proposed structure limits aircraft maneuverability during runway 19 instrument approaches (including RNAV, River Visual 19, and LDA procedures) due to its proximity to Prohibited Area 56 (P-56).

Response: The proposed structure will not restrict aircraft maneuverability during instrument approach procedures to RWY 19 at DCA. Published minimum and recommended altitudes throughout these approach procedures remain well above the proposed structure's height. Furthermore, the site is situated approximately 0.47 NM west of the nearest boundary of P-56, ensuring adequate lateral separation from restricted airspace.

Comment 2: A comment stated that DCA RWY 1 departures require an immediate left turn toward the Arch. Meeting One Engine Inoperative (OEI) obstacle avoidance requirements may force operators to reduce takeoff weight, delay departures during low visibility/ceilings, require excessive climb gradients, decline SIDs/ODPs, or cancel flights.

Response: OEI obstacle departure profiles fall outside the regulatory scope of 14 CFR Part 77. Part 77 establishes standard imaginary surfaces intended to safeguard aircraft during normal operating conditions. Conversely, OEI procedures address contingency scenarios and are developed by individual air carriers to account for specific aircraft weights, payloads, environmental conditions, and fleet performance characteristics. Because these escape paths are carrier-specific, proprietary, and highly variable, they are not evaluated under Part 77 airspace studies.

Comment 3: A comment stated that the MT Vernon Visual RWY 1 procedure lacks a missed approach procedure, creating a high collision risk with the Arch and potential delays or evasive actions during a go-around. Runway 1 instrument approach missed procedures require an immediate climbing left turn toward the Arch's location to avoid P-56, leaving limited options to safely amend missed approach procedures.

Response: Though the proposed structure is located northwest of the departure end of Runway 1 at DCA, an analysis of historical DCA flight track data indicates that missed approach operations rarely enter the immediate project area, with no recorded overflights. Furthermore, the closest aircraft executing a missed approach in the proximity of the project area maintained an altitude of 2,000 feet AMSL. Consequently, operational data does not suggest that fixed-wing or rotary-wing aircraft would require flight path modifications upon completion of the proposed construction.

Comment 4: A comment stated that required Part 77 obstruction lighting combined with planned decorative monument lighting will increase pilot night-vision impairment, hinder the ability to identify other aircraft at night, and cause severe glare during arrivals and departures.

Response: The obstruction lighting recommended for the proposed structure will be Night Vision Goggle (NVG) compatible. Additionally, glint and glare evaluations fall outside the regulatory scope of 14 CFR Part 77 for off-airport aeronautical studies. In the event of any lighting outage, the structure owner is required

to immediately submit an obstruction NOTAM to notify pilots of the unlit structure until repairs and/or maintenance are completed.

Comment 5: A comment stated that the OE/AAA study evaluates the Arch as a standalone case rather than accounting for the cumulative effects and risks of structures in heavily constrained airspace

Response: The FAA evaluates each Obstruction Evaluation/Airport Airspace Analysis (OE/AAA) filing on an individual basis, incorporating all existing structures into the aeronautical study baseline. Based on this evaluation, the proposed structure introduces no additional aeronautical impact beyond that of existing structures in the surrounding area.

Comment 6: The Arch will reduce overall DCA airport capacity and throughput while threatening flight safety. ALPA opposes mitigations that increase pilot workload (such as raised minima, excessive climb gradients, or complex visual procedures).

Response: The proposed structure was evaluated under the standards of 14 CFR Part 77 and FAA Order JO 7400.2. The evaluation confirmed that the structure does not require an increase to published instrument approach procedure minima, nor does it necessitate excessive climb gradients or complex visual flight procedures for aircraft operating at the airport. Furthermore, concerns regarding general airport capacity and operational throughput fall outside the regulatory scope of 14 CFR Part 77 aeronautical studies.

Comment 7: A comment states that flying the LDA RWY 19 procedure requires navigating a step-down fix and a 40-degree right turn close to the runway, which significantly increases pilot workload to maintain a stable approach while avoiding the proposed structure.

Response: Regarding the LDA RWY 19 approach at DCA, the step-down fix WEVPU is located prior to the location of the proposed structure. Per the Standard Instrument Approach Procedure (SIAP), aircraft must cross WEVPU at or above 1,100 feet AMSL. Because the proposed structure is situated between the WEVPU and ZAXEB fixes, aircraft on this segment may descend to the Minimum Descent Altitude (MDA) of 780 feet AMSL. With a proposed maximum height of 292 feet AMSL, the structure provides 488 feet of vertical clearance below the MDA segment floor. Furthermore, the required 40-degree visual alignment turn, which initiates at ZAXEB, occurs well past the location of the proposed structure.

5. DETERMINATION - NO HAZARD TO AIR NAVIGATION. It is determined that the proposal would not have a substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or on any air navigation facility and would not be a hazard to air navigation as long as all conditions written within this determination are met.

6. BASIS FOR DECISION

Study for possible visual flight rules (VFR) effect disclosed the proposal would exceed section 77.17 (a) 2, 77.19 (a) horizontal surface and 77.19 (b) conical surface, as noted above; but would have no greater effect on any existing or proposed arrival or departure VFR operations or procedures when compared to either existing terrain or other existing obstructions in proximity to the proposal. The proposal would not conflict with any airspace required to conduct normal VFR traffic pattern and/or visual approach operations at DCA or at any other public-use, joint-use, or military airport. Therefore, at the heights listed above, the proposed structure would have no substantial adverse effects on any existing or proposed VFR arrival, VFR departure, en route, minimum flight altitudes, or VFR helicopter routes in the vicinity of this location.

The cumulative impact of the proposal, when combined with other proposed and existing structures, is not considered to be significant. Study did not disclose any adverse effects on existing or proposed public-use or military airports or navigational facilities, nor do the proposals affect the capacity of any known existing or planned public-use or military airport.

7. CONDITIONS

The proposed structure should be appropriately marked/lighted with a non-standard eternal flame and continuously floodlighted by searchlight projectors installed at three or more equidistant points around the base of the structure. The searchlight projectors should provide an average illumination of at least 15 foot-candles (161.46 lux) over the top one-third of the structure, in accordance with FAA AC 70/7460-1N, Paragraph 4.5, to make it more conspicuous to airmen.

**Sectional Map for ASN 2026-AEA-8628-OE**

