**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL LEMMON**, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**DONALD J. TRUMP**, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-cv-544 (TSC) |
| **DISTRICT OF COLUMBIA AND COMMONWEALTH OF VIRGINIA**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**NATIONAL PARK SERVICE**, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-cv-3838 (TSC)<br><br>**CONSOLIDATED CASES** |

**DEFENDANTS' COMBINED OPPOSITION**
**TO KENNEDY MOTIONS TO INTERVENE AND**
**TO JOIN AND SUPPLEMENT MOTIONS FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 4

- I. Movants Are Not Entitled To Intervene ..... 4
  - A. Movants Have No Right To Intervene ..... 4
  - B. Movants Cannot Permissively Intervene ..... 11
- II. The Court Should Deny Movants' Request To Join And Supplement Preliminary Injunction Motions ..... 12
- III. Movants Are Not Entitled To Preliminary Relief ..... 12

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BCP Trading & Invs., LLC v. Comm'r of Internal Revenue*,
991 F.3d 1253 (D.C. Cir. 2021) .................... 4

*Beatty v. Kurtz*,
27 U.S. (2 Pet.) 566 (1829) .................... 9

*Brunton v. Roberts*,
97 S.W. 2d 413 (Ky. 1936) .................... 9

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .................... 13

*Clean Air Council v. EPA*,
181 F.4th 1292 (D.C. Cir. 2026) .................... 5

*Concerned Loved Ones & Lot Owners Ass'n of Beverly Hills Memorial Gardens ex rel. Koon v. Pence*,
383 S.E. 2d 831 (W. Va. 1989) .................... 10

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2013) .................... 12

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998) .................... 11

*Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc.*,
114 So. 2d 357 (Fla. Dist. Ct. App. 1959) .................... 10

*Food and Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .................... 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................... 6

*IGas Holdings, Inc. v. EPA*,
146 F.4th 1126 (D.C. Cir. 2025) .................... 5

*In re Endangered Species Act Section 4 Deadline Litig.*,
704 F.3d 972 (D.C. Cir. 2013) .................... 11

*Kruger v. Shramek*,
565 N.W. 2d 742 (Neb. App. 1997) .................... 10

*Murthy v. Missouri*,
603 U.S. 43 (2024) .................... 13

*Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*,
185 F.4th 1185 (D.C. Cir. 2026) .................... 6, 7

*National Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004)........................................................................................................ 10

**National Park Service v. National Trust for Historic Preservation (NPS)*,
609 U.S. 1068 (2026)............................................................................................ 6, 7, 8, 9

*New Mexico v. Musk*,
769 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................................11

*Penobscot Nation v. Mills*,
No. 1:12-CV-254-GZS, 2013 WL 3098042 (D. Me. June 18, 2013) ...................................... 12

*Powers v. Ohio*,
499 U.S. 400 (1991)........................................................................................................ 12

*SEC v. Prudential Sec. Inc.*,
136 F.3d 153 (D.C. Cir. 1998) ........................................................................................... 4

*Signal Peak Energy LLC v. Haaland*,
No. 24-cv-366-TSC, 2024 WL 3887386 (D.D.C. Aug. 21, 2024)............................................ 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................................... 9, 10

*United Mexican States v. Lion Mexico Consol. L.P.*,
172 F.4th 1 (D.C. Cir. 2026) .....................................................................................4, 5, 11

**United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
45 F.4th 426 (D.C. Cir. 2022) ........................................................................................ 4, 5

*United States v. Straker*,
800 F.3d 570 (D.C. Cir. 2015) ......................................................................................... 12

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
454 U. S. 464 (1982).................................................................................................. 7, 8, 9

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................................................................... 13

*Yome v. Gorman*,
152 N.E. 126 (N.Y. 1926) .................................................................................................. 9

## INTRODUCTION

Defendants respectfully submit this opposition to two motions filed by members of the Kennedy family. The Kennedy Movants seek to intervene as plaintiffs, but fail to demonstrate why their distaste for changing views from Arlington National Cemetery is not adequately represented by the existing *Lemmon* Plaintiffs, who assert essentially identical interests. Indeed, Movants seek to join in and adopt existing parties' arguments—confirming the adequacy of existing representation under D.C. Circuit law. Their motion to intervene should thus be denied.

The Court should also deny their motion to join and supplement the pending motions for preliminary injunction. They cannot join the existing Plaintiffs' fact-bound arguments under D.C. Circuit law. And they cannot "supplement" other parties' motions with their standing declarations as the existing Plaintiffs cannot assert the rights of third parties to obtain injunctive relief. Because they, like the *Lemmon* Plaintiffs, lack Article III standing based on their distaste for the arch, their request to join and supplement existing preliminary injunction motions is futile.

And Movants' attempt to inject a Washington Post analysis about shadows into this litigation does not give them standing. The shadow analyses discussed by the Post claim that the arch shadow might reach the Kennedy graves at most 0.03% of the year—in the early morning hours when the Cemetery is not open and only on limited days of the year. And Movants' declarations nowhere aver past visits during those times, much less intent to undertake such visits in the future. Because Movants have not clearly established standing, they are not entitled to relief.

## BACKGROUND

The Kennedy gravesite is located in Arlington National Cemetery over a kilometer from Memorial Circle. The gravesite is surrounded by trees casting shadows on the site.[1] One such tree

[1] *See* https://www.arlingtoncemetery.mil/explore/monuments-and-memorials/president-john-f-kennedy-gravesite.

was the Arlington Oak "that had shaded visitors to the Kennedy gravesite for 48 years" before falling during Hurricane Irene.[2] Saplings from that tree have since been planted in the same location to restore this "key part of the grave site."[3]

Less than a month ago, the Washington Post published an "analysis" it described as "Visual Forensics" about the shadows the proposed arch might cast.[4] The Post analysis asserts that on May 12, the arch would cast its longest shadow, which would pass over the Kennedy gravesite "[f]or nine minutes" around 6:02 am "briefly covering the eternal flame."[5] The Cemetery does not open until 8:00 AM.[6]

The Post's analysis was inspired by another shadow analysis from a veteran advocacy organization (VoteVets) opposed to the arch.[7] The VoteVets analysis asserted that the arch shadow would cross the John F. Kennedy grave and eternal flame "for an estimated 29 minutes a year."[8] It estimated that "the shadow falls [on the JFK plot] on 17 mornings, from May 13–20 and July 23–31, between about 5:55 and 6:13 a.m., one to four minutes at a time."[9] It further noted that "vegetation may already block the sun" of other Kennedy graves that lie in the arch's shadow for

---

[2] CBS News, *Irene topples "Arlington Oak" at JFK gravesite* (Sept. 2, 2011), https://www.cbsnews.com/news/irene-topples-arlington-oak-at-jfk-gravesite/.

[3] U.S. Army, *Fallen centuries-old 'mother' oak lives on through saplings at Arlington* (Apr. 30, 2012), https://www.army.mil/article/78839/fallen_centuries_old_mother_oak_lives_on_through_saplings_at_arlington.

[4] Jarrett Ley, et al., Washington Post, *Trump's arch would cast shadow on Arlington graves, including Kennedy's* (Oct. 27, 2026), https://www.washingtonpost.com/investigations/interactive/2026/10/27/trumps-arch-would-cast-shadow-arlington-cemetery/.

[5] *Id.*

[6] "Arlington National Cemetery is open daily from 8 a.m. to 5 p.m." Visiting Arlington National Cemetery, https://www.arlingtoncemetery.mil/visit.

[7] Ley, *supra* n.4.

[8] VoteVets, Overshadowing the Fallen 3, https://votevets.org/wp-content/uploads/2026/10/Overshadowing-the-Fallen.pdf?itid=lk_inline_enhanced-template.

[9] *Id.* at 5.

those 29 minutes a year.[10] Even under broader assumptions, the VoteVets analysis predicted the arch shadow might fall on a Kennedy grave (including graves already shadowed by vegetation) for at most 161 minutes per year,[11] or 0.03% of the year.

Whereas the VoteVets study compared its analysis of the shadows cast by the arch to shadows cast by existing trees, the Post analysis excluded trees from its analysis: "When identifying parts of the cemetery that would be impacted by the arch's shadow, we did not take into account shade from trees."[12] And, unlike the VoteVets analysis, the Post analysis did not report the total time per year that the arch shadow is anticipated to fall on Kennedy graves.

Two weeks after the Post published its analysis, nine members of the Kennedy family moved to intervene as plaintiffs in this litigation. Dkt. 9, Case No. 26-cv-3838. Three days later, the Kennedy Movants sought to join, adopt, and supplement motions for preliminary injunction filed by the existing plaintiffs. Dkt. 124.

The Kennedy filings contain an incongruity. Their counsel claim that the Kennedy Movants visit the gravesites "sometimes early in the morning, before Arlington National Cemetery officially opens." Mot. to Join 4, Dkt. 124 (citing Ex. 1 ¶ 8, Dkt. 124-1; Ex. 2 ¶¶ 9-11, Dkt. 124-2; Ex. 4 ¶¶ 9-10, Dkt. 124-4). But the cited declarations say nothing about early morning visits. *See* Dkts. 124-1 to 124-4. Instead, the declarations discuss "visit[ing] the Gravesites at dusk." Dkt. 124-4 ¶ 9.

---

[10] *Id.* at 3.
[11] *Id.* at 4.
[12] Ley, *supra* n.4.

## ARGUMENT

### I. Movants Are Not Entitled To Intervene.

#### A. Movants Have No Right To Intervene.

"Parties have the right under Rule 24(a)(2) to intervene in an action if they meet four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *United Mexican States v. Lion Mexico Consol. L.P.*, 172 F.4th 1, 11 (D.C. Cir. 2026) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)).

1. Movants have failed to meet the last requirement, as they never explain why their interests cannot be adequately represented by existing Plaintiffs. *See* Intervention Mot. 5 (arguing only that this requirement is minimal). And, in fact, their request to "join [and] adopt the arguments in" the Lemmon and DC/VA's Motion for Preliminary Injunction, Dkt. 124 at 5, "reveal[s]" that "they find [Plaintiffs'] representation adequate." *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022). "A would-be intervenor is adequately represented when she "offer[s] no argument not also pressed by" an existing party." *Guernsey*, 45 F.4th at 432; *see BCP Trading & Invs., LLC v. Comm'r of Internal Revenue*, 991 F.3d 1253, 1273 (D.C. Cir. 2021) (affirming denial of intervention as of right where proposed intervenor "asserted no other basis [for the challenged acts] invalidity"). In *Guernsey*, a politician's child sought to intervene in litigation and adopt an existing party's arguments "wholesale," but the D.C. Circuit denied intervention (and a related motion to supplement the record) for failure to establish inadequate representation. 45 F.4th at 432 & n.1. Under *Guernsey*, Movants cannot intervene as of right.

Here, the Movants' interests directly overlap with that of the existing Plaintiffs. Movants' sole interest is to protect the "solemn and sacred" atmosphere surrounding gravesites in Arlington Cemetery. Mot. to Intervene Br. at 4., Civ. No. 26-3838, Dkt. 9. This interest is identical to that asserted by the *Lemmon* Plaintiffs who also seek to preserve the atmosphere surrounding gravesites in Arlington Cemetery. *See, e.g.*, Declaration of Michael Lemmon ¶¶ 6, 9 (describing his interest in "visit[ing] the gravesites of [his] comrades," and his interest in being buried at Arlington Cemetery, which he believes will be "in the shadow" of a distasteful arch), Dkt. 7-2; Declaration of Shaun Byrnes ¶¶ 9-9 (describing his interest in visiting the graves of his shipmates and protecting the "tranquility" of Arlington Cemetery), Dkt 7-3.

Not only are Movants' interests already represented, but they plan also to raise APA claims and *ultra vires* claims like the existing Plaintiffs—asserting the same substantive statutes as existing Plaintiffs. *See* Mot. to Join at 1, Dkt. 124 (conceding that their "claims overlap" with Plaintiffs). Indeed, as noted above, Movants seek to "join [and] adopt the arguments in" the *Lemmon* and *DC/VA's* Motions for Preliminary Injunction, and they assert their claims will succeed for the "reasons the existing Plaintiffs have noted" in those Motions. *Id.* at 2, 5. This Court has the expertise to resolve the identical claims raised by Plaintiffs, and the Movants have no unique expertise or perspective that warrants their participation as a party. *Guernsey*, 45 F.4th at 432.

2. The court should also deny the motion to intervene because Movants lack Article III standing. In the D.C. Circuit, "Article III standing is a prerequisite to intervention." *Clean Air Council v. EPA*, 181 F.4th 1292, 1300 n.3 (D.C. Cir. 2026) (quoting *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025)); *see Signal Peak Energy LLC v. Haaland*, No. 24-cv-366-TSC, 2024 WL 3887386, at *3–*4 (D.D.C. Aug. 21, 2024).

Movants lack standing under *National Park Service v. National Trust for Historic Preservation (NPS)*, 609 U.S. 1068 (2026) (per curiam). There, the plaintiff claimed injury to her "'aesthetic, cultural, and historical interests' because she [found] the 'scale,' 'height,' and 'massing' of the government's design distasteful." *Id.* at 1070. The Supreme Court held that this type of harm—which amounts to "mere offense, disagreement, or distaste"—"does not qualify as a concrete and particularized injury under Article III." *Id.* at 1071. The Court distinguished cases "where the plaintiff's injuries involved *more* than mere offense," such as where the plaintiffs injuries stemmed from pollution rather than distaste. *Id.* at 1072 (discussing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181–83 (2000)).

Professor Hoagland, a member and leader of the National Trust for more than 40 years and a professor of historic preservation, claimed a profound symbolic and professional interest in the preservation of the White House's "republican simplicity" through many renovations. *Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, 185 F.4th 1185, 1209 (D.C. Cir. 2026) (quoting Hoagland Decl. ¶ 10). She claimed that if the ballroom is constructed on the former site of the East Wing, it would "overshadow[] the White House, exceeding it in height and massing." Hoagland Decl. ¶ 13 (Pet. App. 75a), *NPS*, No. 26A203 (U.S.). This would obstruct unvarnished views and change the symbolic meaning of the site: "No longer would the eye be drawn to the jewel of the building in the center, declaring to viewers that our president lives in a *house*." *Id.* It would change the essential character of the site by "diminish[ing] the primacy of the White House, which makes its structural statement through its singularity on the landscape." *Id.*

The D.C. Circuit held that the National Trust had adequately alleged standing based on Professor Hoagland's assertions. *Nat'l Trust.*, 185 F.4th at 1210. The court observed that Hoagland had alleged a permanent alteration of her view: "Professor Hoagland will no longer be able to

'use[ and] derive benefit from' seeing and studying a White House with historic and intentionally designed 'republican simplicity,' and that permanent loss will injure her 'aesthetic, cultural, and historical interests.'" *Id.* at 1213 (citing Hoagland Decl. ¶¶ 3, 10, 14). And: "the historical and architectural coherence of President's Park and the White House that she routinely enjoys studying, viewing, and spending time with would be permanently lost by the construction of a structure that "overshadow[s] the White House," "exceeding it in height and massing[.]" *Id.* at 1210 (citing Hoagland Decl. ¶¶ 10, 13). The court also noted a change in the symmetry of the White House complex, rendering it out of "harmony with the symmetry of Major L'Enfant's axial plan of the capital city, in which the President's House and the Capitol building sit symmetrically on perpendicular axes." *Id.* at 1213 (explaining that the change would alter the "architectural integrity," and that the symmetrically designed "axial relationship" was "one of the defining attributes for the entirety of Washington, DC's monumental core"). The D.C. Circuit insisted that Hoagland alleged more than a mere "psychological" injury, and that she alleged "concrete" "recreational," "aesthetic," and "professional" injuries. *Id.* at 1211-13.

The Supreme Court rejected all of this. It held that Professor Hoagland likely failed to establish a concrete and particularized injury. *NPS*, 609 U.S. at 1072–73. Hoagland's "desire to view" a symmetric White House demonstrated nothing beyond "'the psychological consequence presumably produced by observation of conduct with which one disagrees.'" *Id.* at 1071 (quoting *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U. S. 464, 485 (1982)). The asserted injuries were thus merely "distress at or disagreement with the activities of others," like doctors being distressed that other doctors might perform abortions in *Hippocratic Medicine*, which "is not a basis under Article III for a plaintiff to bring a federal lawsuit." *All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024).

Like Professor Hoagland, Movants' injuries are entirely visual and emotional. The declarants assert that the arch will change what they see when visiting the Kennedy gravesites by obstructing existing sightlines, Rory Kennedy Decl. ¶ 7, Dkt. 124-1; Christopher Kennedy Decl. ¶¶ 16, 21, Dkt. 124-3; Maxwell Kennedy Decl. ¶¶ 7, 13, Dkt. 124-4, casting a shadow, Rory Kennedy Decl. ¶ 10; Kerry Kennedy Decl. ¶¶ 12–13, Dkt. 124-2; Christopher Kennedy Decl. ¶ 20, Dkt. 124-3; Maxwell Kennedy Decl. ¶ 12, Dkt. 124-4, or by affecting the lighting at night, Maxwell Kennedy Decl. ¶¶ 8–9, Dkt. 124-4. The declarants assert that these changes to the visual experience would "destroy the intended effect and symbolic meaning" of the Kennedy gravesites and would represent "an insult to the legacy of [Movants'] family." Rory Kennedy Decl. ¶¶ 7, 10, Dkt. 124-1; Kerry Kennedy Decl. ¶¶ 12–13, Dkt. 124-2; Christopher Kennedy Decl. ¶¶ 16, 20, Dkt. 124-3; Maxwell Kennedy Decl. ¶¶ 7, 12, Dkt. 124-4.

Movants do not allege that the arch will interfere with any of their activities, such as by physically obstructing their access to the Kennedy gravesites. Movants state that they visit the Kennedy gravesites to pray, lay roses, and hold family memorials and remembrance events. Rory Kennedy Decl. ¶¶ 6, 8, Dkt. 124-1; Kerry Kennedy Decl. ¶¶ 6–9, 11, Dkt. 124-2; Christopher Kennedy Decl. ¶ 17, Dkt. 124-3; Maxwell Kennedy Decl. ¶¶ 6, 10, Dkt. 124-4. Movants do not allege that the arch will stop them from doing any of that—instead, they allege that changes in the lighting and sightlines will change how they subjectively experience those visits. Although Movants have unique interests in the Kennedy gravesites, the Supreme Court has repeatedly explained that standing does not turn on "the intensity of a litigant's interest." *Valley Forge Christian Coll.*, 454 U.S. at 486. The visual and emotional injuries Movants allege are not sufficiently concrete to establish standing. *National Trust*, 609 U.S. at 1071.

The existing shadows on the gravesites from surrounding vegetation confirm Movants' lack of standing. For example, the famed Arlington Oak shaded visitors to the Kennedy gravesite for decades. *Supra* 1-2. The difference between shade from such vegetation and shade from the arch is Movants' distaste for the arch—which cannot be a basis for Article III standing under *National Park Service*.

As Movants observe, "history and tradition offer a meaningful guide" to determining whether a harm is sufficiently concrete to establish standing. Mot. to Join 4, Dkt. 124 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). But the injury Movants allege has not historically been treated as a concrete injury. At common law, the rights of sepulcher and interment allowed surviving family members to seek equitable relief "to preserve the repose of the ashes of the dead, and the religious sensibilities of the living." *Beatty v. Kurtz*, 27 U.S. (2 Pet.) 566, 585 (1829). But these rights were limited to preventing "interference with the burial ground or the graves therein." *Brunton v. Roberts*, 97 S.W. 2d 413, 415 (Ky. 1936). For example, surviving family members could sue to prevent (or compel) the disinterment of a relative, *see, e.g.*, *Yome v. Gorman*, 152 N.E. 126, 128 (N.Y. 1926) (Cardozo, J.), or to enjoin incompatible land uses on the grounds of the cemetery itself, *see, e.g.*, *Concerned Loved Ones & Lot Owners Ass'n of Beverly Hills Memorial Gardens ex rel. Koon v. Pence*, 383 S.E. 2d 831, 835–36 (W. Va. 1989). Each of these claims involved some physical intrusion on the gravesite or burial ground.

Movants cite no cases recognizing a right of surviving family members to bring an action based on shadows cast on a gravesite. American courts have uniformly rejected the English doctrine of "ancient lights," which allowed a landowner to obtain an easement for the passage of light. *See Kruger v. Shramek*, 565 N.W. 2d 742, 747 (Neb. App. 1997) (collecting cases). Under American law, a landowner has no cause of action against a neighboring landowner even if a new

building "causes injury . . . by cutting off the light and air and interfering with the view that would otherwise be available over adjoining land in its natural state." *Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc.*, 114 So. 2d 357, 359 (Fla. Dist. Ct. App. 1959). Surviving family members, who do not own the gravesite in fee simple, presumably cannot have greater rights against neighboring property owners than the landowner could assert. Movants have not alleged any "close historical or common-law analogue for their asserted injury" and therefore cannot rely on their asserted injuries as a basis for Article III standing. *TransUnion*, 594 U.S. at 424.

Movants contend that the Supreme Court has recognized that surviving family members "have a personal stake in honoring and mourning their dead." Mot. to Join 4, Dkt. 124 (quoting *National Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 168 (2004)). But *Favish* was not a standing case; instead, it addressed whether the government could withhold photographs of a deceased individual under the Freedom of Information Act based on his survivors' privacy interests. *See* 541 U.S. at 162–64. The Court concluded that the government could withhold the photographs based on "the right of family members to direct and control disposition of the body" and their right to object to "unwarranted public exploitation." *Id.* at 167–68. Those rights are not implicated in this case. The Court had no occasion to address whether shadows cast on a gravesite or the disruption of sightlines around a gravesite inflicts an Article III injury on surviving family members. The history and tradition of equitable claims involving gravesites suggests that the harm Movants rely on here is not a concrete injury.

Even assuming shadows on a gravesite during a visit constituted cognizable harm, Movants have failed to establish a nonspeculative harm. The shadow analyses discussed above demonstrate that the arch might cast shadows on Kennedy gravesites for only a few minutes per year, during morning times the Cemetery is not open. *Supra* 2–3. And the Kennedy declarations never aver past

visits during these specific times, much less future intentions to visit at those times. Even the existence of shadows during those times is not supported by the current record because, as the Court has previously held, it cannot take judicial notice of contemporary news articles "for the truth of the statements asserted therein." *New Mexico v. Musk*, 769 F. Supp. 3d 1, 6 (D.D.C. 2025). Thus, Movants can only speculate that they would ever experience a shadow from the arch when visiting the gravesite.

**B. Movants Cannot Permissively Intervene.**

"A court 'may' allow intervention under Rule 24(b)(1) if the would-be intervenor presents '(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *United Mexican States*, 172 F.4th at 11 (quoting *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). The Court should deny permissive intervention for the same reasons as intervention by right.

The Court should deny permissive intervention because Movants have not demonstrated "an independent ground for subject matter jurisdiction." *United Mexican States*, 172 F.4th at 11. Although it is an "open question in this circuit whether Article III standing is required for permissive intervention," *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013), the court should exercise its discretion to deny intervention by prospective intervenors who lack standing, *see Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195–96 (D.C. Cir. 2013) (Silberman, J., concurring) (arguing that allowing permissive intervention without standing would be "intolerable at the district court level").

The Court should also deny permissive intervention because Movants' interests are adequately represented. "Courts are understandably reluctant to grant permissive intervention to

movants whose interests are already fully represented by existing parties." 6 Moore's Federal Practice - Civil § 24.10; *Penobscot Nation v. Mills*, No. 1:12-CV-254-GZS, 2013 WL 3098042, at *4 (D. Me. June 18, 2013). Because Movants' interests are already adequately represented by existing parties, *supra* 4–5, permissive intervention should be denied.

## II. The Court Should Deny Movants' Request To Join And Supplement Preliminary Injunction Motions.

Under D.C. Circuit law, "adoption by reference is permitted only to the extent we can readily apply the proponent's arguments to the adopter's case." *United States v. Straker*, 800 F.3d 570, 594 n.5 (D.C. Cir. 2015). Thus, whereas "purely legal" arguments "can be readily adopted," adoption by reference is "inappropriate" for fact-bound arguments. *Id.* Here, Movants seek to improperly adopt fact-bound arguments, such as those involving standing of existing Plaintiffs or balancing the equities for those Plaintiffs. Such arguments cannot be adopted under *Straker*. To the extent the Court authorizes Movants to adopt any arguments from existing Plaintiffs, Defendants adopt their oppositions to those arguments.

Nor can Plaintiffs "supplement" other parties' motions with their standing declarations. The existing Plaintiffs have not requested such supplementation and have no right to do so. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

## III. Movants Are Not Entitled To Preliminary Relief.

Even if the Court concludes that Movants have alleged a concrete harm (they have not), they have not made the "clear showing" of standing necessary to support a preliminary injunction. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Movants rely on an analysis from the *Washington Post*, which says that shadows from the Arch would "briefly cover Kennedy's eternal flame on 18

days" and reach the Kennedy memorial on 50 days out of the year, *without considering whether the gravesites would already be shaded by shadows from existing trees*. Lay*, supra* n.4. The analysis notes that shadows would be most pronounced early in the mornings in the spring and summer before the cemetery opens, when the sun is low on the horizon and casts light at a shallow angle. *Id.* But while Movants' proposed complaint asserts that they "typically visit the Gravesites" in the morning before the Cemetery officially opens, none of their declarations say they visit in the mornings. *Compare* Complaint ¶¶ 84, No. 26-cv-3838, Dkt. 9-1, *with* Kennedy Declarations, Dkts. 124-1 to 124-4. The only declarant to describe visiting the Cemetery at a particular time is Maxwell Taylor Kennedy, who described visiting the gravesites at dusk. Maxwell Kennedy Decl. ¶ 9, Dkt. 124-4. The sun sets in the west, so shadows at dusk would point east, over the Potomac and away from the Cemetery. Movants cannot make a clear showing of injury based on shadows that none of them will ever see.

Finally, Movants cannot establish irreparable harm requiring preliminary injunctive relief. Irreparable harm requires a showing that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (alteration and quotation marks omitted). Movants' alleged injuries are all based on the effects of a completed Arch on the Kennedy gravesites; they allege no injuries that can be traced to the early stages of construction. The first 6–8 months of construction are dedicated to site prep and foundation work, Dkt. 74-1 at 7, which will not cast any shadows or obstruct the view from the Kennedy gravesites. Even if Movants' harms are sufficient for standing, they have not established that they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Kennedy Movants' pending motions.

Date: November 18, 2026.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BENJAMIN HAYES
Deputy Assistant Attorney General

*/s/ Michael S. Sawyer*
MICHAEL S. SAWYER, Senior Attorney
ALISON S. VICKS, Trial Attorney
Energy and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-353-5134
E-mail: michael.sawyer@usdoj.gov
alison.vicks@usdoj.gov

*Counsel for Defendants*